UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

Musket Research Associates, Inc.

    Plaintiff,

v.

Ovion, Inc., William S. Tremulis, and Jeffrey P. Callister.

    Defendants.

No. 05 10416 MEL

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, PROMISSORY ESTOPPEL, QUANTUM MERUIT, CONVERSION, FRAUD, NEGLIGENT MISREPRESENTATION AND CONCEALMENT

JURY TRIAL DEMANDED

COMPLAINT

Plaintiff Musket Research Associates, Inc. alleges as follows:

## THE PARTIES

1. Plaintiff Musket Research Associates ("MRA") is a Massachusetts corporation having its principal place of business in Cambridge, Massachusetts.

2. On information and belief, Defendant Ovion, Inc. ("Ovion" or "Company") is a corporation organized and operating under the laws of the State of Delaware, with its principal place of business in San Mateo, California.

3. Defendant William S. Tremulis is an individual who, MRA is informed and believes, resides in San Mateo County, California. Tremulis is one of the founders of Ovion.

4. Defendant Jeffrey P. Callister is an individual who, MRA is informed and believes, resides in San Mateo County, California. Callister is one of the founders of Ovion.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because it is between citizens of different States and the matter in controversy exceeds the sum of $75,000.

6. Venue lies with this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events and omissions giving rise to the action occurred in this judicial district.

## BACKGROUND

7. Ovion is a start-up company that holds several patents for medical devices in the area of female permanent birth control. On several occasions prior to June 2004, Robert Hess, a director and major shareholder of Ovion, discussed his interest in having MRA, an investment banking firm, consider assisting Ovion in its financing activities. In

a series of meetings and conversations starting on or about June 6, 2004, Ovion requested MRA's assistance in soliciting investors in the Company culminating in a formal banking agreement dated July 21, 2004 and executed on July 29, 2004 between the two firms (the "Engagement Letter"). Ovion repeatedly highlighted its interest in utilizing MRA's extensive experience in medical device transactions and negotiating skills regarding financial structures; comments it reiterated multiple times during the course of MRA's engagement. A key part of MRA's decision to accept this assignment was Ovion's expressed view that its preferred financing method was a private placement of preferred stock. MRA made it clear to Ovion at these early discussions that it had no interest in being used as a "stalking horse" for a corporate transaction. Ovion represented that it had established communications with a small number of potential corporate partners but that it wanted to use the funds from the contemplated financing to build up its business before any such discussions would likely become serious. Language was added to the Engagement Letter to compensate MRA should "lightning strike" during the term of MRA's efforts.

8. The Engagement Letter provided that, among other things, MRA would analyze the Company's market potential, would assist in the development of presentation and due diligence materials for solicitation of investors in the proposed private placement and would contact and manage relationships with qualified potential investors. In exchange, the Engagement Letter provided that Ovion would pay MRA as "finder's fees" seven percent of the cash proceeds of any private placement to newly introduced investors solicited by MRA and a lesser amount to a small number of investors with whom Ovion's founders had already had extensive discussions. Despite the preexisting relationships with these latter funds, MRA insisted on at least a partial fee structure as it expected its work product and negotiation skills to be integral to the process and the Company readily agreed.

9. Neither the terms of the Engagement letter nor any other agreement by the

parties allowed Ovion to use MRA's research, presentation materials or other work product to solicit potential investors other than private placement investors, such as potential corporate partners.

10. The Engagement Letter did state that Ovion might decide to pursue a merger, or acquisition with a corporate partner instead of a private placement and provided for the payment to MRA of an "advisory fee" if Ovion did so. However, the provision for the payment of the advisory fee was conditioned on the parties' understanding that MRA's work product would not be used as part of any effort by Ovion to solicit corporate partners. In other words, the advisory fee was in the nature of a "kill fee" to compensate MRA for work done on the private placement if that placement did not go forward, not a substitute for the finder's fee that MRA would have expected to be entitled to if its work product were used to solicit corporate partners.

11. After the Engagement Letter was signed, MRA did substantial work for the Ovion venture. In particular, MRA prepared budgets and forecasts, prepared extensive presentation and due diligence materials for use with potential private placement investors and developed numerous investor leads. During this process, MRA repeatedly asked Ovion if private placement continued to be its main strategy for obtaining financing. Ovion answered that it was and never suggested that it was actively pursuing a corporate partner. Ovion's representations to MRA about its intention to pursue financing by means of a private placement rather that a corporate partnership include, but are not limited to, the following:

- On or about June 8, 2004, Sue Ann Latterman—a principal of MRA who created much of MRA's work product for the Ovion engagement—met with Tremulis, Callister and Hess at the Ovion offices in San Mateo. Tremulis and Callister assured Latterman that they wanted to do a venture financing because they wanted to grow the company themselves;

- On or about June 15, 2004, Latterman and MRA founder David Musket had a

telephone conference with Tremulis and Callister. Musket raised the issue of the different valuations that Ovion could get with a venture financing versus a corporate financing. Again, Tremulis and Callister stated that they wanted to develop Ovion's technology themselves and therefore wanted to do a venture financing;

- On or about November 10, 2004 at the American Association of Gynecologic Laproscopists ("AAGL") conference held in San Francisco, Latterman asked Tremulis and Callister about a meeting they were going to have during the AAGL with Storz, a medical device company that could have been a potential corporate partner for Ovion. Tremulis and Callister assured Latterman that the only purpose of their meeting with Storz was to obtain equipment for Ovion's upcoming clinical trial and that they were not considering Storz as a corporate partner;

- On or about November 18, 2004, Musket and Latterman participated in a phone conference with Tremulis, Callister and Hess in which they discussed financing by means of private placement versus corporate partnership. Tremulis and Callister again assured Musket and Latterman that they wanted to do a private placement;

- On or about February 4, 2004, Latterman met with Tremulis, Callister and Hess at Ovion's offices in San Mateo to discuss a smaller round of venture financing. Tremulis and Callister reiterated to Latterman that they were committed to doing a venture financing-based deal.

12. MRA is informed, believes and thereupon alleges that Ovion was never intending to genuinely pursue private placement opportunities but was using the possibility of a private placement as a stalking horse to lure MRA into conducting analyses and creating presentation and due diligence materials that Ovion could then use to pursue corporate partners. MRA is informed, believes and thereupon alleges that,

COMPLAINT
-4-

unbeknownst to MRA, Ovion was actively pursuing corporate partners throughout the period when MRA believed that private placement was Ovion's preferred financing option and that Ovion concealed this fact from MRA. Furthermore, MRA is informed, believes and thereupon alleges that Ovion used MRA's budgets, forecasts, presentation materials and other work product as an integral part of, and critical support for, its solicitation of corporate partners.

13. On or about February 17, 2005, slightly more than six months after the Engagement Letter was signed, Ovion announced to MRA that it was entering into a merger and acquisition deal with an unnamed corporate partner. Subsequently, Ovion told MRA that the Engagement Letter was terminated and that it owed MRA nothing under the terms of the Engagement Letter. Ovion continues to refuse to pay MRA, or to reveal the identity of its corporate partner (who, on information and belief, could confirm MRA's suspicion that MRA's work product was a critical part of Ovion's solicitation of and/or negotiations with them).

## FIRST CAUSE OF ACTION
### (Breach of Contract, against Defendant Ovion)

14. MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 13, as if fully set out herein.

15. MRA's agreements with Ovion, including the Engagement Letter and oral agreements reached between the parties did not permit Ovion to use MRA's work product to solicit non-private placement investors.

16. Ovion has breached the terms of its agreements with MRA because it used MRA's work product to solicit and/or negotiate with a merger and acquisition partner.

17. As a result of Ovion's breaches, MRA has suffered damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Breach of the Covenant Of Good Faith and Fair Dealing, against Defendant Ovion)

18. MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 17, as if fully set out herein.

19. The agreements between MRA and Ovion, including the Engagement Letter and oral agreements, contain implied covenants of good faith and fair dealing that obligated Ovion to perform the terms of those agreements fairly and in good faith and to refrain from any act that would deprive MRA of the benefits of those agreements.

20. Ovion has breached the implied covenant of good faith and fair dealing by, among other things: (1) using MRA's work product to pursue a merger and acquisition deal instead of a private placement, and concealing the fact that it was doing so; (2) refusing to pay MRA a finder's fee in relation to Ovion's proposed merger and acquisition deal; and (3) denying that it has any obligation to pay the above-described fees under the terms of its agreements with MRA.

## THIRD CAUSE OF ACTION
### (Promissory Estoppel, against Defendant Ovion)

21. MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 20, as if fully set out herein.

22. Ovion promised MRA that it would be compensated for its efforts in helping Ovion attract investors.

23. MRA reasonably relied on the foregoing promises and decided to dedicate resources to assisting Ovion.

24. As a result of its reliance, MRA has suffered damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Quantum Meruit, against Defendant Ovion)

25. MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 24, as if fully set out herein.

26. MRA performed services at Ovion's request, including but not limited to preparing market analyses, budgets, forecasts, and presentation and due diligence materials for potential private placement investors.

27. Ovion has not paid MRA for those services.

28. As a result of Ovion's failure to pay, MRA has been damaged in an amount equal to the reasonable value of those services.

## FIFTH CAUSE OF ACTION
### (Conversion, against Ovion)

29. MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 28, as if fully set out herein.

30. At all times, MRA was the owner of the work product described in Paragraphs 8 and 11 above. As described in Paragraph 9 above, the agreement between MRA and Ovion did not permit Ovion to use MRA's work product to solicit investors other than private placement investors. Nonetheless, in or about October 2004, on information and belief, Ovion wrongfully converted MRA's work product by using it to solicit potential corporate partners.

31. As a proximate result of Ovion's conversion, MRA has suffered damages in an amount to be proven at trial

32. The above-described conduct of Ovion was willful, oppressive, fraudulent and malicious, and was intended to cause injury to MRA. MRA is therefore entitled to an award of exemplary or punitive damages according to proof at trial.

## SIXTH CAUSE OF ACTION
### (Fraud, against all Defendants)

33. MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 32, as if fully set out herein.

34. As set forth in Paragraph 11, on numerous occasions Ovion, Tremulis and Callister represented to MRA that Ovion was not actively pursuing a corporate partner. Said representations were false when made or without a reasonable basis for believing them to be true in that, on information and belief, Ovion intended to or was actively pursuing corporate partners at the time of the representations..

35. Ovion, Tremulis and Callister's representations were made with the intent of inducing MRA to prepare analyses, presentation materials and work product that could be used by Ovion to solicit corporate partners.

36. MRA reasonably relied on Ovion, Tremulis and Callister's representations to prepare the analyses and presentation materials described above and to turn them over to Ovion.

37. As a proximate result of Ovion, Tremulis and Callister's misrepresentations, MRA has suffered damage in an amount to be proven at trial

38. The above-described conduct of Ovion, Tremulis and Callister was willful, oppressive, fraudulent and malicious, and was intended to cause injury to MRA. MRA is therefore entitled to an award of exemplary or punitive damages according to proof at trial.

## SEVENTH CAUSE OF ACTION
### (Negligent Misrepresentation, against all Defendants)

39. MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 38, as if fully set out herein.

40. Ovion, Tremulis and Callister negligently made the representations set forth in Paragraph 11 above.

41. As a proximate result of Ovion, Tremulis and Callister's false representations, MRA has suffered damage in an amount to be proved at trial.

### EIGHTH CAUSE OF ACTION
### (Concealment, against all Defendants)

42. MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 42, as if fully set out herein.

43. As set forth in Paragraph 12, Ovion, Tremulis and Callister concealed from MRA the fact that Ovion was actively pursuing corporate partners and, on information and belief, that it was using MRA's work product as a critical part of the solicitation of those potential corporate partners.

44. This information was material to MRA because, if MRA had known it, it would have pursued other ventures or would have demanded—as a condition for providing Ovion with its work product—that Ovion agree to pay MRA a finder's fee with regard to investment in Ovion by corporate partners solicited with MRA's work product.

45. As a proximate result of Ovion, Tremulis and Callister's misrepresentations, MRA has suffered damages in an amount to be proven at trial.

46. The above-described conduct of Ovion, Tremulis and Callister was willful, oppressive, fraudulent and malicious, and was intended to cause injury to MRA. MRA is therefore entitled to an award of exemplary or punitive damages according to proof at trial.

WHEREFORE, Musket Research Associates, Inc. prays for judgment as follows

1. For damages in a sum to be proved at trial;
2. For punitive damages;
3. For Musket Research Associates, Inc.'s costs of suit;
4. For Musket Research Associates, Inc.'s reasonable attorney's fees; and

5.   For such other and further relief and the Court may deem just and proper.

DATED: March 4, 2005.

>Respectfully submitted,

>MUSKET RESEARCH ASSOCIATES, INC.

>By Their Attorneys,

>*/s/ Lisa Gaulin*

>ERIC J. MARANDETT (BBO No. 561730)
>LISA GAULIN (BBO No. 654655)
>CHOATE, HALL & STEWART LLP
>Exchange Place
>53 State Street
>Boston, MA 02109-2804
>Telephone:    617/248-5000
>Facsimile:    617/248-4000

>ARTHUR S. BEEMAN (*pro hac vice pending*)
>PAMELA K. FULMER (*pro hac vice pending*)
>MICHAEL L. GALLO (*pro hac vice pending*)
>HOWARD RICE NEMEROVSKI CANADY
>FALK & RABKIN
>A Professional Corporation
>Three Embarcadero Center, 7th Floor
>San Francisco, California 94111-4024
>Telephone:    415/434-1600
>Facsimile:    415/217-5910

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Musket Research Associates, Inc. hereby demands a trial by jury for all issues so triable in this action.

DATED: March 4, 2005.

           Respectfully submitted,

           MUSKET RESEARCH ASSOCIATES, INC.

           By Their Attorneys,

           */s/ Lisa Gaulin*
           ERIC J. MARANDETT (BBO No. 561730)
           LISA GAULIN (BBO No. 654655)
           CHOATE, HALL & STEWART LLP
           Exchange Place
           53 State Street
           Boston, MA 02109-2804
           Telephone:   617/248-5000
           Facsimile:   617/248-4000

           ARTHUR S. BEEMAN (*pro hac vice pending*)
           PAMELA K. FULMER (*pro hac vice pending*)
           MICHAEL L. GALLO (*pro hac vice pending*)
           HOWARD RICE NEMEROVSKI CANADY
           FALK & RABKIN
           A Professional Corporation

           Three Embarcadero Center, 7th Floor
           San Francisco, California 94111-4024
           Telephone:   415/434-1600
           Facsimile:   415/217-5910

WD 030405/1-161680001/1202616/v8

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Musket Research Associates, Inc.

(b) County of Residence of First Listed Plaintiff: **Middlesex County**
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Eric J. Marandett, Esq. and Lisa M. Gaulin, Esq., Choate, Hall & Stewart LLP, 53 State Street, Boston, MA 02109 (617) 248-5000

## DEFENDANTS
Ovion Inc., Tremulis, William S., and Callister, Jeffrey P.

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332
Brief description of cause:
Breach of contract and related claims

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 03/04/2005
SIGNATURE OF ATTORNEY OF RECORD: Lisa Gaulin

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) **Musket Research Associates, Inc. v. Ovion, Inc.**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

    - [ ] I.  160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
    - [ ] II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases
    - [X] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.
    - [ ] IV. 220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.
    - [ ] V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
    YES [ ]    NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
    YES [ ]    NO [X]
    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
    YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
    YES [ ]    NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
    YES [X]    NO [ ]

    A. If yes, in which division do all of the non-governmental parties reside?
        Eastern Division [X]    Central Division [ ]    Western Division [ ]

    B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
        Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
    YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Lisa Gaulin__
ADDRESS __Choate, Hall & Stewart, 53 State Street, Boston, MA 02109__
TELEPHONE NO. __(617) 248-5000__

(CategoryForm.wpd - 2/15/05)