UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MUSKET RESEARCH ASSOCIATES, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>OVION, INC., WILLIAM S. TREMULIS,<br>and JEFFREY P. CALLISTER,<br><br>    Defendants.<br><br>OVION, INC.,<br><br>    Counterclaimant,<br><br>    v.<br><br>MUSKET RESEARCH ASSOCIATES, INC.,<br>DAVID B. MUSKET, and<br>SUE ANN LATTERMAN,<br><br>    Counterdefendants. | **No. 05 10416 MEL** |

## PLAINTIFF AND COUNTERDEFENDANTS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

Plaintiff and Counterdefendant Musket Research Associates, Inc. and Counterdefendants David B. Musket ("Musket"), and Sue Ann Latterman ("Latterman"), collectively ("MRA") oppose Defendants Ovion, Inc., William S. Tremulis ("Tremulis") and Jeffrey P. Callister's ("Callister"), collectively ("Ovion") motion to compel responses to interrogatories and production of documents because the requests are unduly burdensome and call for the production of irrelevant information.

I.   PRELIMINARY STATEMENT

It should not be MRA's obligation to perform burdensome discovery that Ovion is fully capable of undertaking at its own expense.  As described more fully below, the documents MRA has provided to Ovion contain all the information necessary to ascertain the answers to its interrogatories.  Ovion's insistence that MRA perform this work for it is not supported by the rules of discovery.  As one magistrate judge ably put it:

> [Defendants] want this discovery but do not want to expend the effort and expense in procuring it.  *But the stated purpose of the rule* [former Rule 33(c)] *is to require the party seeking the discovery to expend the effort and expense to procure it . . . .*  What [Defendants] are saying is that they do not like the Rule.

Petroleum Insurance Agency, Inc. v. Hartford Accident and Indemnity Company, 111 F.R. D. 318, 320 (1984).

For instance, despite the fact that MRA has produced every document Ovion needs to identify MRA's work product and its authors (including the work product Ovion improperly shared with American Medical Systems, Inc. ("AMS")), Ovion continues to demand that MRA describe this work product "in detail," including "the contribution of each person who contributed to the work product."  Given the volume of work product produced by MRA, this would be an extremely time consuming and costly exercise.

Ovion's demand that MRA identify the MRA work product Ovion shared with AMS is particularly unreasonable.  While MRA has produced all the documents Ovion needs to identify this work product, Ovion has deliberately hidden the documents MRA needs to identify the same work product, blatantly and improperly designating all Ovion communications with AMS "Outside Counsel Eyes Only."  This tactic runs completely counter to the rules which encourage "the just, speedy, and inexpensive determination of every action."  See Fed.R.Civ.P. 1.  If Ovion wants MRA to identify the MRA work

product Ovion shared with AMS, Ovion need only remove its "Outside Counsel Eyes Only" designations.

The plain purpose of Ovion's demands is to increase MRA's litigation expenses while holding down Ovion's. This is true not only as to the interrogatories but also as to Ovion's request that MRA produce various third-party documents that have no relevance to this litigation. As described more fully below, MRA has responded appropriately to all of Ovion's discovery requests and no supplementation should be required.

II.     THE INTERROGATORIES

   A.     Interrogatory 1 Will Be Supplemented Only As Previously Agreed.

Interrogatory No. 1(a) asks MRA to "identify and describe in detail . . . all agreements and understandings between any of Ovion, Mr. Tremulis and Mr. Callister on the one hand and any of MRA, Mr. Musket, and Ms. Latterman on the other hand." In its answer, MRA identified the July 29, 2004 Engagement Letter. MRA has agreed to supplement this answer to identify the Nondisclosure Agreement between the parties. It is worth noting that MRA produced the Nondisclosure Agreement, which is signed by both parties, in its initial production on October 13, 2004, and identified the Nondisclosure Agreement in response to Ovion's Interrogatory 1(b). Thus, Ovion's concern with this issue is overwrought.

Interrogatory No. 1(b) asks MRA to identify the "documents and things" relating to the agreements identified in Interrogatory No. 1(a). Ovion complains that MRA must either identify additional documents in its answer to this interrogatory or "acknowledge that no documentary evidence supports [its] unfounded contentions." Defendants Memorandum, 11. MRA rejects these choices. First, MRA reserves the right to

supplement its answer to this interrogatory after it has been permitted to view the documents Ovion has withheld by improperly designating them "Outside Counsel Eyes Only." Second, MRA states that its contentions are well founded on the fraudulent representations that Ovion made both before and after the engagement began.

      B.      <u>Interrogatory 2(a) Is Unduly Burdensome.</u>

Interrogatory 2(a) asks MRA to "[i]dentify and describe in detail . . . all work product produced for or on behalf of Ovion including each person and the contribution of each person who contributed to the work product." Even if confined to documents containing work product, this is a virtually impossible task given the volume of work product MRA produced for Ovion and given the way in which MRA developed the work product. Over the course of a more than six month engagement with Ovion, MRA produced thousands of pages of budgets, forecasts, plans, due diligence materials, and presentation materials on Ovion's behalf. For example, MRA prepared over a dozen different PowerPoint presentations. MRA did not create this work product out of thin air. By necessity, it worked with materials provided by Ovion. For instance, in the case of the PowerPoint presentations, some slides were provided by Ovion. However, as Ovion is well aware, MRA added slides, subtracted slides, reordered slides, edited text, added text, rearranged graphics, and generally put its mark on the presentation. Describing all of these "contributions" for each of the different PowerPoint presentations is simply not feasible. The situation is no different when it comes to describing Ovion's contributions to other work product such as forecasts and budgets. In each case, MRA made multiple revisions and additions to a working document.

Asking MRA to "describe in detail" all of its documentary work product is unreasonable. Asking MRA to "describe in detail" all of its non-documentary work product is impossible. MRA conducted hundreds of telephone conversations with doctors, venture capitalists, and others in the course of preparing due diligence materials for Ovion and in the course of soliciting investors on behalf of Ovion. In addition, MRA answered multiple different questions from venture capital investors in face to face meetings to promote Ovion. All of these communications constitute MRA's work product. It is simply not possible for MRA to identify and "describe in detail" this work product in a written response to an interrogatory.

    C.    <u>MRA Has Given Ovion the Records Necessary to Answer Interrogatory 2(a).</u>

As argued above, it is unduly burdensome for MRA to identify and "describe in detail" all of the work product it produced on behalf of Ovion. Still, MRA has given Ovion the means to obtain the best answer, within reason, to this interrogatory. MRA has provided Ovion with all of the documents that contain its written work product. It has provided Ovion with the budgets, forecasts, plans, due diligence materials, and presentation materials it developed on Ovion's behalf. In addition, MRA has provided Ovion with the electronic "cover letters" that accompanied this work product as it passed through various stages of development. These cover letters clearly identify: (1) the original materials that Ovion sent to MRA; (2) the intervening drafts sent between MRA, Ovion, and others; and (3) the final work product that MRA sent to venture-capital investors. They are the "road map" that will allow Ovion to ascertain the answer to its interrogatory.

Moreover, MRA has gone further and provided Ovion with a reasonable way to ascertain non-documentary work product. MRA has provided the notes it took while conducting due diligence conversations for Ovion and while promoting Ovion to venture capital investors in meetings and on the telephone. In addition, MRA has provided the notebooks Latterman used to sketch out ideas concerning the PowerPoint presentations and strategies for due diligence. Finally, MRA has provided the running sheets on which Latterman and Musket recorded their various contacts with venture-capital firms while promoting Ovion. This is where MRA's work product lies. This is where Ovion will find the answer to its interrogatory.

D. The Burden of Answering Interrogatory 2(a) Is Substantially the Same For Ovion As It Is For MRA.

Identifying MRA's work product through review of the above-referenced materials is no more burdensome on Ovion than it is for MRA. It requires that Ovion review and compare the final work product that MRA sent to venture-capital investors with any earlier material that Ovion may have supplied. This is the same process that MRA would need to undertake to answer this interrogatory. In these circumstances, the rules recognize that the interrogating party should bear the burden of reviewing the documents to find the answer. See Fed.R.Civ.P. 33(d), 1970 Reporters Notes ("This provision . . . places the burden of discovery on its potential benifittee."). Therefore, the Court should deny Ovion's motion to compel a further response to Interrogatory 2(a).

E. MRA Is Entitled to Discovery Before Answering Interrogatory 2(b-d).

Interrogatory 2(b-d) asks MRA to "[i]dentify and describe in detail" the following:

~BOST1:401865.v1

- all work product that you contend has been used improperly or without authorization by Ovion and how it was improperly used;

- all work product that you contend was used by Ovion in communications or negotiations with AMS or was used by Ovion in relation to the merger between Ovion and AMS;

- your bases for contending that any of Ovion, Mr. Tremulis, and Mr. Callister has used your work product improperly or without authorization.

This is an example of a contention interrogatory whose answer should be deferred until the parties have completed discovery. The rules, including Fed.R.Civ.P. 11, recognize that a litigant may need discovery from opposing parties or third parties to gather and confirm the evidentiary basis for certain allegations. See 1993 Reporters Notes to Rule 11.

Here, Ovion deliberately concealed its communications and negotiations with AMS from MRA. As a consequence, MRA requires discovery to fully answer this interrogatory. Specifically, MRA needs access to the documents Ovion shared with AMS. Ovion has withheld these documents from MRA by designating them "Outside Counsel Eyes Only." And AMS, represented by Ovion's counsel, has refused to produce documents without an "Outside Counsel Eyes Only" designation. Without access to this information, it is unreasonable to require MRA to further answer this interrogatory.[1]

---

[1] Ovion's citation to certain trade secret cases is misplaced. See Defendants Memorandum, 15 n.1. These cases do not allow a party to withhold non-trade secret information on the grounds that disclosure will hurt the withholding party by helping their litigation adversary meet their proof. But that is exactly what Ovion has done. Ovion's real concern is that MRA will easily and convincingly identify MRA work product in the documents Ovion shared with AMS. To prevent this from happening, Ovion has set up obstacles. It has without justification designated all of Ovion's communications with AMS "Outside Counsel Eyes Only." And it has requested that MRA perform the burdensome and unnecessary task of describing "in detail" all of its "contributions" to thousands of pages of work product that have already been disclosed to Ovion. This is a blatant attempt to obstruct MRA's discovery of key evidence in the case and is not related

Deferring a further answer to this interrogatory does not prejudice Ovion. Ovion already has the information it needs to identify the MRA work product at issue. Unlike MRA, Ovion knows exactly which budgets, forecasts, plans, due diligence materials, and presentation materials it shared with AMS. In addition, because Ovion was copied on all work product MRA sent to venture-capital investors on Ovion's behalf, Ovion is also fully capable of identifying MRA work product within these materials. If Ovion did not actually use any of MRA's materials to solicit AMS, Ovion could easily demonstrate this by showing that none of the materials it shared with AMS overlap with the materials MRA provided to venture-capital investors.[2] Instead, Ovion has made hysterical charges about Musket and Latterman's probity and refused to allow them to see these documents. It is apparent that Ovion is the party resisting full discovery of the relevant facts in this litigation and not MRA.

### III. THE REQUESTS FOR PRODUCTION

A. <u>Document Requests Nos. 2-4 Are Unduly Burdensome And Call For Irrelevant Information.</u>

Document requests Nos. 2-4 request that MRA produce the following:

- all documents and things relating to any and all agreements, contracts, or engagement letters with a provision for an advisory fee payable to any of MRA, Musket, and Latterman. <u>See</u> Request No. 2.

---

to any legitimate concern over trade secrets. For instance, Ovion has not submitted a single affidavit attesting to any current "trade secrets" contained in the documents it shared with AMS.

[2] It is worth noting that in its Answer Ovion did not deny outright the allegation that it used MRA's work product in soliciting and negotiating with AMS. Instead, Ovion stated it was without knowledge or information sufficient to admit or deny the allegation. <u>See</u> Complaint, ¶14, Answer, ¶14. With all of MRA's documentary work product now in its possession along with the "cover letters," that is no longer a plausible answer if it ever was.

- all documents and things relating to any and all agreements, contracts, and engagement letters, from January 2000 to the present, whereby any of MRA, Musket, and Latterman was engaged, retained, or hired in connection with any proposed private placement of stock or any other financing effort.  <u>See</u> Request No. 3.

- documents and things relating to any and all agreements, contracts, or engagement letters whereby any of MRA, Musket, and Latterman was engaged, retained, or hired in connection with any proposed placement, merger, acquisition or other financing effort involving a corporate partner. <u>See</u> Request No. 4.

These requests impose an undue burden on MRA and seek information that is not relevant to this case.

MRA has produced approximately 20,000 pages of documents in response to Ovion's requests for production.  These documents represent all the materials "relating to" MRA's 2004 engagement with Ovion.  To produce all documents "related to" the other engagements described would require MRA to multiply this production exponentially.

Ovion has failed to show why such an extensive collateral inquiry into MRA's agreements with third-parties is justified.  Ovion argues that these agreements, and all documents "related" to them, are relevant to show that MRA only included "corporate transaction" or "advisory fee" provisions in those circumstances where it was aware that a corporate acquisition was a "distinct likelihood."  But this is not the case.  Production of these agreements and documents "related" to them would simply invite a lengthy and

ultimately unproductive inquiry into the specific facts and circumstances surrounding each particular agreement. Ovion already has all the documents related to the July 29 Engagement Letter. The fact that none of these documents demonstrate that MRA knew that a corporate transaction was a "distinct likelihood" should not give Ovion license to sift through MRA's agreements with third-parties. Those third-party agreements simply cannot shed light on the specific factual circumstances that led MRA to include "corporate transaction" and "advisory fee" provisions in this case. As the evidence will show, in this case those provisions were added in the event that "lightning struck."

B.  Document Request No. 9 Is Unduly Burdensome And Calls For Irrelevant Information.

Document request No. 9 requests "all documents and things related to any and all disputes regarding agreements, contracts, or engagement letters relating to services provided by any of MRA, Musket, and Latterman."

These documents are not relevant. Ovion's theory of relevance is grounded on inflammatory and false accusations about MRA's business practices. Ovion alleges that the documents are necessary to show a pattern of extortion by MRA. Ovion chose not to make this accusation in its Answer and Counterclaim or in the initial conference before the Court. And Ovion has yet to disclose in its automatic disclosures or in subsequent supplementations to those disclosures a single individual or entity who has been "extorted" by MRA. Thus, it is hard to understand when and how Ovion came to discern a pattern of extortion. Until Ovion identifies a good faith basis for this accusation, the Court should deny this request.

C.   <u>Document Requests Nos. 16 & 18 Are Unduly Burdensome And Call For Irrelevant Information.</u>

Document requests Nos. 16 & 18 ask for MRA to produce:

- all documents and things relating to any and all transactions involving ProMed and any party represented, engaged, retained, or hired by any of MRA, Musket, and Latterman.  <u>See</u> Request No. 16.

- all documents and things relating to any transactions involving both MRA and ProMed.  <u>See</u> Request No. 18.

Like Request No. 9, the relevance of these requests depends on a baseless accusation and therefore they should be denied.

## CONCLUSION

Ovion's requests go too far and should be denied.  MRA should not be required to further supplement its answers to interrogatories or to produce additional documents.

Respectfully submitted,

MUSKET RESEARCH ASSOCIATES, INC.,
DAVID B. MUSKET and
SUE ANN LATTERMAN

By their attorneys,

<u>/s/ Brooks A. Ames</u>
Brooks A. Ames (BBO #641192)
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
100 Oliver Street
Boston, MA  02110-2613
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

                                            Arthur S. Beeman (admitted pro hac vice)
                                            Pamela K. Fulmer (admitted pro hac vice)
                                            DLA PIPER RUDNICK GRAY CARY US LLP
                                            153 Townsend Street, Suite 800
                                            San Francisco, CA  94107
                                            (415) 836-2541 *(telephone)*
                                            (415) 836-2501 *(fax)*

Dated:  December 30, 2005