UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MUSKET RESEARCH ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> OVION, INC., WILLIAM S. TREMULIS, and JEFFREY P. CALLISTER, <br><br> Defendants. | **No. 05 10416 MEL** |
| OVION, INC., <br><br> Counterclaimant, <br><br> v. <br><br> MUSKET RESEARCH ASSOCIATES, INC., DAVID B. MUSKET, and SUE ANN LATTERMAN, <br><br> Counterdefendants. | |

**MEMORANDUM IN SUPPORT OF MUSKET RESEARCH ASSOCIATES, INC.'S EMERGENCY MOTION TO QUASH OVION INC.'S NONPARTY SUBPOENAS AND FOR SANCTIONS**

I.   PRELIMINARY STATEMENT

Ovion Inc. ("Ovion") and its counsel, the law firm of McAndrews, Held, & Malloy Ltd., should be sanctioned for violating Rule 45(b)(1) of the Federal Rules of Civil Procedure (the "Rule") and for related abuses of the subpoena power. As part of these sanctions, the Court should quash all of Ovion's nonparty subpoenas. The basis for sanctions is clear. The Rule requires that parties receive prior notice of subpoenas served on nonparties in order to provide time for a party to object to improper subpoenas. Ovion flouted this rule by covertly and without

notice to Plaintiff's counsel, attaching a defamatory memorandum accusing Musket Research Associates, Inc. ("MRA") of extortion (the "Extortion Memorandum") to 51 subpoenas address to nonparty venture capital firms. Ovion and its counsel included this Extortion Memorandum with the subpoenas, knowing that these nonparty venture firms are important business contacts of MRA, and hoping to smear MRA's reputation in the marketplace. Such conduct is inexcusable and constitutes a textbook example of abuse of legal process.

Not only were the acts of Ovion and its counsel in ignoring the notice requirements of the Rule and including the defamatory Memorandum inexcusable, but Ovion has exacerbated the harm by refusing to take steps to mitigate the damage done to MRA. In fact, Ovion initially refused to withdraw the subpoenas that it admitted had been served in violation of the Rule and quibbled about the technicalities of the Rule's prior notice requirement with respect to others. Finally, after several letters and a telephone conference with MRA's counsel, Ovion has conceded that its subpoenas were improper by withdrawing and reissuing the subpoenas.[1] But these actions are too little, too late, and do nothing to address MRA's chief concerns about the damage that has been done to MRA's business reputation, by the widespread and gratuitous publication of the Extortion Memorandum to the venture community. As a result, all of Ovion's subpoenas should be quashed, and Ovion and its counsel should be sanctioned for their improper conduct and subversion of the legal process.[2]

---

[1] In the reissued subpoenas Ovion slightly narrowed the requests. However, the reissued subpoenas remain overly broad and unduly burdensome and should be quashed on these bases alone.

[2] MRA has requested that counsel for Ovion stipulate to allow MRA to amend its Complaint to assert additional claims of defamation, intentional interference with prospective economic advantage, and abuse of process against Ovion and its counsel. Ovion's counsel has refused to agree to such a stipulation. As a result, MRA will be filing a motion seeking leave of this Court to amend its Complaint to add these claims.

II.     BACKGROUND

On December 22, 2005, just before the Christmas holiday, Ovion issued 52 subpoenas to nonparties to this action. With the exception of one subpoena, Ovion directed these subpoenas to the venture capital firms that MRA solicited on Ovion's behalf during MRA's six plus month engagement as Ovion's advisor/finder. As Ovion is well aware, good relations with these firms is critical to MRA's business success, as MRA depends on these venture capital firms to obtain financing for its clients. Nevertheless, Ovion arranged for the Extortion Memorandum, which had been filed in Court only two days earlier, to be served on all of these MRA contacts with the subpoenas. The Memorandum accuses MRA of, among other things, engaging in a pattern of extorting its clients for money by threatening frivolous lawsuits.

Section III(C) of the Memorandum is captioned: "MRA's Present Attempts To Extort Ovion Are Consistent With MRA's Pattern of Extorting Its Clients By Threatening Litigation Based On Unfounded Claims." In this section, Ovion states that "MRA began attempting to extort money from Ovion shortly after Ovion informed MRA that Ovion had executed a letter of intent with a potential corporate partner." Ovion further states that "On information and belief, the MRA Parties have used the same strategy to extort other clients." (The Extortion Memorandum is attached as Exhibit A-4).

These accusations are false and it is clear that Ovion made them without a good faith basis in fact. For instance, Ovion has yet to identify a single MRA client who claims to have been extorted by MRA, either in its initial discovery disclosure or in any supplemental disclosures. And as Ovion's counsel are well aware, a party that follows through on a claim for damages by filing a lawsuit, as MRA has done here, has not committed any wrongdoing, much less extortion.

~BOST1:404091.v1

In addition to the extortion claims, Ovion also alleges in Section III(C) that, "On present information and belief, it appears that the MRA Parties, by delaying and deterring potential investors in Ovion, were attempting to position Ovion so that the MRA Parties themselves could invest in Ovion on terms favorable to them and their allied interests and unfavorable to Ovion." See Exhibit A-4 at 19. This claim is also false, and Ovion made it and then published it widely without any factual basis.

It is worth noting that Ovion chose not to raise any of these issues in its Answer or Counterclaim. Nor did Ovion's counsel make these charges when presenting Ovion's case to the Court during the preliminary conference. This raises the suspicion that Ovion put these late blooming allegations in the record, in substantial part (if not entirely), for the improper purpose of publishing them to nonparties, thereby attempting to impugn MRA's reputation in the marketplace, and exert pressure on MRA to settle.

Although Ovion first commenced serving the subpoenaed parties as early as December 22, 2005, MRA did not receive notice of the nonparty subpoenas and the attached Memorandum until January 3, 2006, more than a week after Ovion's counsel first issued them. Ovion sent these papers to MRA's counsel under cover of a letter dated December 29, 2005, just prior to the New Year holiday weekend, and noting service "Via U.S. Mail." (The letter and enclosures are attached as Exhibit A). These papers failed to include the schedules designating the documents and things Ovion had commanded the nonparties produce. Ovion provided these only after being prompted by MRA. (The e-mail correspondence and schedules are attached as Exhibit B).

Because Ovion had not yet provided any actual proofs of service, MRA presumed, based on the December 22, 2005 date on the subpoenas and the December 22, 2005 cover letters to the nonparties indicating "Via Hand Delivery," that service on the nonparties had already been completed as of January 3, 2006. On January 5, 2006, MRA wrote to Ovion demanding that

- 4 -

~BOST1:404091.v1

Ovion withdraw the subpoenas and take immediate steps to mitigate the harm cause by the publication of the defamatory memorandum. MRA also objected to the overbroad scope of the subpoenas. (The letter is attached as <u>Exhibit C</u>). In its return letter, Ovion contended that it had intended to serve the subpoenas on MRA before they were served on the nonparties but that as a result of an "oversight" MRA was not mailed the subpoenas until December 29, 2005. (The letter is attached as <u>Exhibit D</u>). Ovion contended that only two of the subpoenas had been served on nonparties before MRA was served and that MRA had not suffered any prejudice. This assertion was untrue, and in fact, Ovion conceded in a letter the very next day that <u>23</u> subpoenas were served prior to December 29, 2005. (The letter is attached as <u>Exhibit E</u>). In this letter, Ovion stated that it believed none of the other subpoenas had been served before January 3, 2006.

In a follow-up telephone conference on January 6, 2006, however, Ovion's counsel confessed that at least one additional subpoena had been served before Ovion mailed notice to MRA. Ovion's counsel also stated that additional subpoenas had been served on January 3, 2006. (The additional proofs of service and covering e-mail sent by Ovion on January 6, 2006 after the conference are attached as <u>Exhibit F</u>). However, Ovion took the extraordinary position that the January 3rd service did not violate Rule 45(b)(1)'s "prior notice" requirement." According to Ovion, the act of placing copies of the nonparty subpoenas in the mail (albeit without the schedules describing the documents to be produced) on December 29, 2005, just prior to the New Year holiday weekend, was sufficient to give MRA "prior notice" of subpoenas served on nonparties on January 3, 2006, even though MRA did not actually receive the copies <u>before</u> January 3rd.

On January 9, 2005, MRA sent a further letter to Ovion again demanding Ovion withdraw the subpoenas and take steps to mitigate the damages caused by the publication of the

- 5 -

Extortion Memorandum. (The letter is attached as Exhibit G). In its return letter, Ovion agreed to withdraw all subpoenas served on or before January 3, 2005 and issue new subpoenas under a cover letter indicating the prior subpoenas were being withdrawn. Ovion enclosed the new subpoenas and schedules with the letter. (The letter and enclosures are attached as Exhibit H).[3] Ovion provided a copy of this cover letter the next day. (The letter is attached as Exhibit I). The cover letter to the venture firms failed to address Ovion's Rule 45(b)(1) violation or its improper publication of the Extortion Memorandum. In addition, the attached schedule included with the new subpoenas continued to be overbroad. Again, MRA wrote to Ovion demanding that it take steps to mitigate the damages caused by the Extortion Memorandum and limit the scope of its subpoena. (The letter is attached as Exhibit J).[4] However, Ovion remains unrepentant about publishing the Memorandum and has not agreed to any modifications of its subpoenas.[5] In fact, at least one copy of the Memorandum was served as recently as January 10, 2006, indicating that Ovion permitted it to be served in spite of MRA's strong objection. (A copy of the proof of service to Sprout Group is attached as Exhibit K-1).

---

[3] Ovion forwarded additional subpoenas the following day. These are included in Exhibit H.
[4] A follow-up letter correcting an error in that letter is also attached. See Exhibit J-2.
[5] On January 11, 2005, Ovion submitted additional proofs of service. See Exhibit K. These showed that only 4 of Ovion's subpoenas were served with prior notice to MRA.

~BOST1:404091.v1

III.   ARGUMENT

    A.   Ovion's Violation of Rule 45(b)(1) Prevented MRA From Objecting To Publication of The Extortion Memorandum.

Rule 45(b)(1) of the Federal Rules of Civil Procedures states that:

**Prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b).**

Federal courts have uniformly held that "prior notice" requires parties to give notice to other parties before they issue the subpoena to nonparties. See, e.g., Butler v. Biocore Medical Technologies, 348 F.3d 1163, 1173 (10th Cir. 2003) (holding notice must be given to all parties before service of subpoena rather than before production); Firefighter's Institute for Racial Equality ex rel. Anderson v. City of St. Louis, 220 F.3d 898, 903 (8th Cir. 2000) (upholding motion to quash based on failure to serve other parties with prior notice of demand for production); Murphy v. Board of Education of Rochester School District, 196 F.R.D. 220, 222-223 (W.D.N.Y. 2000) (holding notice must be given before issuance of subpoena and not before its return date). The proper remedy for violation of the "prior notice" requirement is to quash the improperly noticed subpoena. See Firefighter's Institute, 220 F.3d at 903; Schweitzer v. Mulvehill, 93 F.Supp.2d 376, 412 (2000); Cootes Drive LLC v. Internet Law Library, Inc., 2002 WL 424647, **1-2 (S.D.N.Y. 2002). Here, Ovion does not dispute that it violated the Rule. For instance, after quibbling over the meaning of the Rule for several days, Ovion's counsel finally acceded to MRA's demand that Ovion withdraw all subpoenas issued on or before MRA received notice on January 3, 2006. This constitutes a clear admission by Ovion and its counsel of their wrongful acts.

    Ovion's violations strike at the heart of the Rule's prior notice requirement. "[T]he purpose of the prior notice requirement is to provide opposing counsel an opportunity to object

- 7 -

to the subpoena." Butler, 348 F.3d at 1173 (internal quotations and citations omitted). "To the extent that the subpoena is improper, opposing counsel must be able to interfere with its enforcement." Biocore Medical Technologies, Inc. v. Khosrowashahi, 181 F.R.D. 660, 667 (1998), *affirmed by* Butler, 348 F.3d 1163 (10th Cir. 2003). Here, as a result of Ovion's violation, MRA had no chance to object before the subpoenas and the Extortion Memorandum went out to its key business contacts in the venture capital community.

B.   Ovion and Its Counsel Should Be Sanctioned.

Rule 45 was amended in 1991 to permit counsel to act as officers of the court for the purpose of issuing subpoenas. The advisory committee recognized that this increased responsibility also required increased liability on the part of counsel. See Advisory Committee note to 1991 Amendment ("Necessarily accompanying the evolution of this power of the lawyer as an officer of the court is the development of increased responsibility and liability for the misuses of this power."). Accordingly, the Court has the authority to sanction Ovion's counsel for violating Rule 45(b)(1). See Butler, 348 F.3d at 1173-1174 (holding district court properly mailed order finding counsel violated rules of professional conduct by repeatedly violating Rule 45(b)(1) to all courts where counsel admitted to practice); Murphy, 196 F.R.D. at 227 ("[W]hen at attorney misuses his or her power under Rule 45 to command a non-litigant to produce documents in a lawsuit to which he or she is a stranger by failing to give appropriate notice to the parties, public confidence in the integrity of court processes is eroded," quoting Potomac Elec. Power Co. v. Electric Motor Supply, Inc., 190 F.R.D. 372, 380 (D.Md. 1999)).

Ovion's counsel should be sanctioned for abusing the power granted to them as officers of the court. First, Ovion's counsel abused the subpoena power by using it to publish the Extortion Memorandum to nonparties that it knew were important business contacts of MRA.

Second, Ovion's counsel did so without notice to MRA and with clear indifference to the Rule's prior notice requirement.

The Extortion Memorandum never should have been attached to subpoenas issued under the authority of the Court. By including the memorandum in this way, Ovion clearly sought to disguise its bare allegations as findings that somehow had been officially sanctioned and endorsed by the federal district courts from which the subpoenas issued. Contrary to Ovion's contentions, the memorandum was not necessary to provide the nonparties with background about the litigation or to assist them in identifying responsive documents. See Exhibit D. Instead, Ovion attached the memorandum to harm MRA and to injure its reputation in the marketplace with its critical business contacts. The idea that Ovion attached this memorandum as a public service to the nonparties is preposterous. The powers of the court should not be enlisted to publish gratuitous and defamatory memorandum to nonparties.

Ovion's counsel should also be sanctioned for their clear indifference to the Rule's prior notice requirement. On December 29, 2006, despite the fact that dozens of subpoenas had already been served on nonparties, Ovion chose to give notice to MRA by regular mail. Ovion knew that this method of service would of necessity delay notice to MRA and would prevent MRA from objecting to the publication of the Extortion Memorandum before it was too late. At best, this suggests that Ovion was trying to take advantage of what it apparently considered to be a loophole in the rule, i.e. that serving copies by mail constitutes prior notice of subpoenas served between the time of mailing and the time the copies are actually received.[6] At worst, it

---

[6] There is no such loophole and Ovion's counsel have conceded as much by withdrawing all subpoenas served on or before MRA received notice on January 3, 2006. Such a loophole would violate the plain language of the Rule. See Cootes Drive LLC v. Internet Law Library, 2002 WL 424647 (S.D.N.Y. 2002) (quashing twelve subpoenas served on March 7, 2002 where plaintiff served defendant with copies by overnight courier received on March 8, 2002).

shows that with full knowledge that subpoenas and the memorandum had already been served on nonparties, counsel nonetheless chose to deliberately delay notifying MRA.

The Court can and should impose sanctions on Ovion's counsel for violating Rule 45(b)(1) even absent a finding of prejudice to MRA. <u>See</u> <u>Spencer v. Steinman</u>, 179 F.R.D. 484, 489 (E.D.Pa. 1998) (rejecting attorney's "'no harm no foul' defense" and assessing sanctions based on abuse of Rule 45 subpoena power). But it should be noted that Ovion's failure to provide prior notice of the subpoenas <u>has</u> severely prejudiced MRA. Had MRA received prior notice of the subpoenas and particularly the attached memorandum accusing MRA of committing extortion against its clients, its counsel could have moved promptly to enjoin its publication before the damage was done. However, due to Ovion's complete disregard of the rule, MRA did not learn of the memorandum until after Ovion had arranged for its service on dozens of venture firms.

    C.    <u>The Court Should Impose the Following Sanctions.</u>

First, to deter future violations the Court should quash <u>all</u> the nonparty subpoenas issued by Ovion, including the newly issued subpoenas and the original subpoenas that happened to be served after January 3rd. This is appropriate based on Ovion's clear indifference to the rule. For instance, Ovion took no steps to ensure that MRA received actual prior notice of <u>any</u> of the 52 subpoenas it issued on December 22, 2005. It was mere serendipity that MRA obtained copies of some of these subpoenas before they were actually served. For instance, it is apparent that Ovion arranged for service of these subpoenas as early as December 22, 2005, based on the fact that all the cover letters bear that date and note service "Via Hand Delivery." Thus, if a handful of Ovion's subpoenas complied with the rule it was likely by accident not design.

Second, the Court should require Ovion to pay MRA's costs to bring this motion.

- 10 -

Third, the Court should require Ovion to immediately return any documents provided by nonparties after first providing copies to MRA.

Fourth, the Court should order Ovion not to issue any further nonparty subpoenas without first making application to the Court, with at least 14 days prior notice to MRA.

Fifth, the Court should require Ovion to write letters to all of the nonparties asking them to return the memorandum and instructing them that Ovion improperly attached it to the subpoenas and has been sanctioned by the Court for doing so. Moreover, Ovion should be required to write a letter of apology to MRA, David B. Musket, and Sue Ann Latterman, apologizing for sending the memorandum to the nonparties. In the same letter, Ovion should be required to recant the charge that MRA has extorted its clients. Ovion should be required to forward a copy of that letter to all of the nonparties it served with the memorandum.

    D.    The Court Should Quash The New Subpoenas Overbroad Requests.

In addition to quashing the new subpoenas as a sanction, the Court should also quash the new subpoenas because they are overly broad and designed to harass MRA, as well as non-parties to the lawsuit. The new subpoenas, while revised slightly, continue to make breathtakingly overbroad requests. For instance, they command that nonparties produce "all documents and things concerning any and all of the following: Musket Research Associates, Inc. ("MRA"), David B. Musket ("David Musket"), and Sue Ann Latterman. See Exhibit H-3, Request No.3. This request, like all but one of the others, is without any limitation on time and specifies no specific documents. See Williams v. City of Dallas, 178 F.R.D. 103, 109-110, 115-116 (N.D. Tex. 1998)(quashing subpoena requiring production of "any and all documents related to" three individuals as overbroad on its face because it did not provide particular documentary restrictions nor reasonable restrictions on time."). It is clearly designed to elicit information about MRA that has no bearing on this litigation.

In addition, Ovion has commanded the production of "all documents and things concerning any and all of the following: ProMed, DBM, and DBM Corporate Consulting, Ltd." None of these entities played any role in MRA's six month engagement with Ovion. See Exhibit H-3, Request No. 4. The only purpose for requesting these documents is to harass MRA's president, David Musket, by seeking documents concerning his other ventures.

Finally, even the one request that Ovion has modified from its original subpoena, remains overbroad. Ovion requests that the nonparty venture firms "produce all documents and things concerning information or materials provided after June 2004, by MRA, David Musket, and/or Sue Ann Latterman, including information or materials concerning and all of the following: American Medical Systems, Inc. ("AMS"), Conceptus, Inc. and Adiana, Inc." See Exhibit H-3, Request No. 3. This request will obviously bring in information that has nothing to do with MRA's engagement for Ovion. Therefore, the Court should quash all of the above described requests.

    Respectfully submitted,

    MUSKET RESEARCH ASSOCIATES, INC.,
    DAVID B. MUSKET and
    SUE ANN LATTERMAN
    By their attorneys,

    /s/ Brooks A. Ames
    Brooks A. Ames (BBO #641192)
    DLA PIPER RUDNICK GRAY CARY US LLP
    One International Place, 21st Floor
    100 Oliver Street
    Boston, MA  02110-2613
    (617) 406-6000 (*telephone*)
    (617) 406-6100 (*fax*)

- 12 -

~BOST1:404091.v1

>Arthur S. Beeman (admitted pro hac vice)
>Pamela K. Fulmer (admitted pro hac vice)
>DLA PIPER RUDNICK GRAY CARY US LLP
>153 Townsend Street, Suite 800
>San Francisco, CA  94107
>(415) 836-2541 *(telephone)*
>(415) 836-2501 *(fax)*

Dated:  January 12, 2006