IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc.,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>Ovion, Inc.,<br>William S. Tremulis, and<br>Jeffrey P. Callister,<br><br>　　　　　　　Defendants.<br>_____<br>Ovion, Inc.,<br><br>　　　　　　　Counterclaimant,<br><br>　　v.<br><br>Musket Research Associates, Inc.,<br>David B. Musket, and<br>Sue Ann Latterman,<br><br>　　　　　　　Counterdefendants. | **Case No. 05-10416 MEL** |

**DEFENDANTS' PRELIMINARY OPPOSITION AND MEMORANDUM
IN OPPOSITION TO MRA'S MOTION TO QUASH AND FOR SANCTIONS**

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND ..................................................................................................4

III.   MRA'S MOTION TO QUASH AND FOR SANCTIONS IS WITHOUT
       MERIT ...............................................................................................................5

       A.    MRA's Complaint About Service Of The Subpoenas Is
             Overwrought And Moot............................................................................5

       B.    Ovion Provided *Defendants' Memorandum* To The Subpoenaed
             Parties For The Legitimate Purpose Of Providing Context To
             Assist Them In Responding To The Subpoenas .........................................8

       C.    Ovion Had No Obligation To Serve MRA With Ovion's
             Correspondence With The Subpoenaed Parties.......................................10

       D.    The Scope Of The Subpoenas Is Proper, And In Any Event MRA
             Has No Standing To Object To The Scope Of The Subpoenas...........................11

             1.    MRA Lacks Standing.....................................................................12

             2.    MRA Has Raised Its Objections In The Wrong Court ..............13

             3.    The Scope Of The Subpoenas Is Proper ....................................13

       E.    The "Sanctions" Proposed By MRA Are Entirely Unwarranted..........................15

IV.    CONCLUSION..................................................................................................16

**DEFENDANTS' PRELIMINARY OPPOSITION AND MEMORANDUM
IN OPPOSITION TO MRA'S MOTION TO QUASH AND FOR SANCTIONS**

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d), Defendants hereby request to be heard at oral argument for MRA's motion to quash and for sanctions (Docket No. 42). MRA's motion was filed on January 12, 2006, and Defendants' opposition is not due until January 26, 2006. MRA requested, however, that its motion be heard on January 18, 2006, before Defendants' opposition is due. Accordingly, Defendants are submitting this preliminary opposition. In the event, however, that MRA's motion is not denied before January 26, Defendants may submit a supplemental opposition by that date (when the opposition is due), and may request to be heard at oral argument after the Court has considered Defendants' supplemental opposition.

**I.    INTRODUCTION**

In this lawsuit to date, MRA has proceeded on the basis that attorney bluster is somehow a substitute for actual evidence and legal authority. MRA's motion to quash and for sanctions is no different. According to MRA, its "chief concerns" raised in its motion relate to providing *Defendants' Memorandum In Support Of Motion To Compel The MRA Parties To (1) Answer Interrogatories And (2) Produce Documents And Things* ("*Defendants' Memorandum*") (Docket No. 34) to members of "the venture community," which were subpoenaed by Ovion for documents and things. (Docket No. 43, MRA Mem., at 2.)

When counsel for the parties met and conferred about these issues, Ovion's counsel asked MRA's counsel to share any legal authority supporting MRA's position that delivery of *Defendants' Memorandum* to the subpoenaed parties was (1) in any way improper and (2) governed by Rule 45(b)(1). MRA provided no such authority then and cites no such authority in support of its motion. Instead, with all the bravado it can muster, MRA recites a litany of

1

reckless accusations and unfounded conclusions, unsupported by either facts or legal authority as they relate to providing *Defendants' Memorandum* to the subpoenaed parties.

As described by MRA, the parties subpoenaed by Ovion are venture capital firms that "MRA solicited on Ovion's behalf during MRA's six plus month engagement as Ovion's advisor/finder." (Docket No. 43, MRA Mem., at 3.)   Likewise, when MRA was acting as a "nonexclusive finder/advisor" for Ovion, MRA represented that it was soliciting each of these firms on Ovion's behalf.   To the contrary, based on discovery to date, MRA never even contacted many of the firms. (Carani Aff., ¶¶ 12-13 (Exs. D & E).)   Indeed, some of them apparently have never heard of or from MRA, Mr. Musket, or Ms. Latterman. (*Id.*)

To gather information and evidence in support of Ovion's defenses and counterclaims, Ovion issued subpoenas for the production of documents and things to each of the firms that MRA allegedly solicited on Ovion's behalf.   Ovion provided each of these firms a cover letter enclosing a copy of *Defendants' Memorandum*, which was publicly available in the court file (Docket No. 34).   *Defendants' Memorandum* provides background information useful to the subpoenaed parties as they respond to the subpoenas, particularly because some of the information sought by the subpoenas relates to the information addressed in *Defendants' Memorandum*.

MRA raises four complaints in its motion to quash and supporting documents:

(1) the timing of serving MRA with the subpoenas;

(2) the timing of delivering to MRA the other materials provided to the subpoenaed parties (the cover letters and *Defendants' Memorandum*);

(3) providing a copy of *Defendants' Memorandum* to the subpoenaed parties; and

(4) the scope of the subpoenas.

With respect to MRA's first complaint (the timing of service of the subpoenas), Ovion's counsel has informed MRA's counsel that Ovion's counsel intended to provide "prior notice" to MRA consistent with Rule 45(b)(1). However, due to an oversight, some of the subpoenas were served on the subpoenaed parties one or two days before the subpoenas were served on MRA's counsel. Ovion's counsel apologized in writing for this oversight. In any event, the subpoenas were served on MRA's counsel more than two weeks before the date of compliance, and MRA's counsel received the subpoenas ten days before the date of compliance. Nevertheless, MRA and its counsel refused to accept the apology and insisted that the subpoenas be withdrawn even if MRA suffered no prejudice. Moreover, MRA's counsel insisted that Ovion should withdraw all the subpoenas that were served on or before the date that MRA's counsel acknowledges receiving the subpoenas. Accordingly, in order to avoid an unnecessary dispute, Ovion voluntarily withdrew all of these subpoenas and issued new subpoenas with a new date of compliance, after ensuring that MRA's counsel had received the new subpoenas before any of them were served on the subpoenaed parties. Nevertheless, MRA refuses to let go of this issue.

With respect to MRA's second complaint (the timing of delivery of the other materials provided to the subpoenaed parties), MRA's position is without merit. Rule 45(b)(1) applies only to the subpoenas, not other materials provided to subpoenaed parties (*e.g.*, the cover letters and *Defendants' Memorandum*). When the parties met and conferred regarding these issues, Ovion's counsel asked MRA's counsel to identify any authority supporting the proposition that the notice provision of Rule 45(b)(1) applies to these other materials as opposed to the subpoenas themselves. MRA has never provided any authority for that proposition, and MRA has not cited any such authority in its motion and supporting papers. In short, Ovion had <u>no</u> obligation to provide MRA with copies of the other materials provided to the subpoenaed parties, let alone

3

"prior notice" of the materials. Accordingly, because Ovion had no obligation to provide copies of these materials to MRA, the date when Ovion voluntarily provided copies to MRA is immaterial. MRA has no basis for its complaints.

MRA's third complaint (providing *Defendants' Memorandum* to the subpoenaed parties) also is without merit. MRA states that its "chief concerns" relate to this third complaint. (Docket No. 43, MRA Mem., at 2.) Again, when the parties met and conferred, Ovion's counsel asked MRA's counsel to identify any authority for their position that Ovion should not have provided *Defendants' Memorandum*, which was publicly available in the court file, to the subpoenaed parties. Despite Ovion's requests, MRA has never provided any authority for MRA's position, and MRA has not cited any such authority in its motion and supporting papers. Ovion was entirely within its rights to provide *Defendants' Memorandum* to the subpoenaed parties, and did so for the legitimate purpose of providing background information to the subpoenaed parties to assist them in responding to the subpoenas.

MRA's fourth complaint (scope of the subpoenas) also is without merit. In the first instance, the scope of the subpoenas is appropriate, as discussed more fully below. In any event, MRA lacks standing to move to quash subpoenas served on other parties on the basis of the scope of the subpoenas.

Finally, the sanctions demanded by MRA are unwarranted under the circumstances and unsupported by any authority on point.

## II.    BACKGROUND

Quoting MRA's description of this case, "[i]n March 2005, MRA brought this lawsuit. MRA alleges that Ovion has violated its agreement with MRA by, among other things: (1) misleading MRA about [Ovion's] pursuit of corporate, as opposed to venture financing, and (2)

4

using MRA's work product to solicit, and negotiate an agreement with AMS." (Docket No. 31, MRA Memo. Re Protective Order, at 4-5.) These allegations are the core of MRA's claims in this action. On the basis of these allegations, MRA has asserted: the "conduct of Ovion, Tremulis and Callister was willful, oppressive, fraudulent and malicious, and was intended to cause injury to MRA." (Docket No. 11, Am. Compl., ¶¶ 33, 39, 47.)

The core of MRA's claims is expressly contrary to the written agreement between the parties. In particular, the Engagement Letter executed by the parties specifically contemplates the possibility of a corporate merger and acquisition and imposes no limitations on using MRA's services or work product to pursue such a corporate transaction. (*See* Docket No. 34, Defs.' Mem., at 5-7.) <u>After months of discovery, MRA has failed to identify a single document or other evidence that corroborates its unsupported allegations that Ovion represented that it was not pursuing corporate transactions and would not use MRA's work product to pursue such transactions.</u>

## III.    MRA'S MOTION TO QUASH AND FOR SANCTIONS IS WITHOUT MERIT

### A.    MRA's Complaint About Service Of The Subpoenas Is Overwrought And Moot

Rule 45(b)(1) provides: "Prior notice of any commanded production of documents and things . . . before trial shall be served on each party in the manner prescribed by Rule 5(b)." Fed. R. Civ. P. 45(b)(1). In pertinent part, Rule 5(b) provides: "Service by mail is complete on mailing." Fed. R. Civ. P. 5(b)(2)(B).[1] Ovion served MRA with the subpoenas by mail on

---

[1] MRA cites the case of *Cootes Drive LLC v. Internet Law Library*, 2002 U.S. Dist. LEXIS 4529 (S.D.N.Y. 2002) for the proposition that service is not effective until receipt. (Docket No. 43, MRA Mem., at 9 n.6.) The *Cootes* case, however, is inapposite. *Cootes* did not involve "service by mail" in accordance with Rule 5(b). Rather, *Cootes* involved service by *a private overnight courier. See id.* at *2-3. Service by private overnight courtier is akin hand-delivery and thus is not considered complete until receipt. *See, e.g., In Resolution Trust Corp. v.*

December 29, 2005. Therefore, by operation of Rules 45(b)(1) and Rule 5(b), MRA had "prior notice" of all subpoenas served on or after December 29, 2005,[2] more than two weeks before the date of compliance for the subpoenas (January 13, 2006).

Due to an oversight, some of the subpoenas were served on the subpoenaed parties one or two days (December 27 and 28) before the subpoenas were served on MRA. (Carani Aff., ¶¶ 3-7.) Ovion's counsel apologized in writing for this oversight. (*Id.*, ¶¶ 8-9.) MRA suffered no prejudice as confirmed by the fact that as of today, well after the original date of compliance and almost three weeks after MRA was served, MRA has not raised any proper objection or taken any other action for which "prior notice" is contemplated. The Advisory Committee Notes for the 1991 Amendment to Rule 45 describe the purpose of prior notice:

> A provision requiring service of prior notice pursuant to Rule 5 . . . has been added to paragraph (b)(1). The purpose of such notice is to afford other parties an opportunity to object to the production . . . , or to serve a demand for additional documents or things. . . . [O]ther parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced.

---

*Holmes*, 846 F. Supp 1310, 1313 (S.D. Tex. 1994) (holding that service by private overnight carrier is not "service by mail" and is not effective until receipt).

[2] "Under the Federal Rules of Civil Procedure, service by mail is complete on mailing, not upon receipt." *Maldonado v. Frio County*, 2004 U.S. Dist. LEXIS 10723 (W.D. Tex. 2004); *see also United States v. Severino*, 316 F.3d 939, 945 (9th Cir. 2003) ("Rule 49(b) provides that service 'shall be made in the manner provided in civil actions,' which, in turn, declares that, 'service by mail is complete on mailing.' Fed. R. Civ. P. 5(b)(2)(B) (emphasis added). Because Congress has defined what it means by service, we have no authority to require more. In fact, to do so here would create a conflict with the two other circuits that have confronted the question and held that, to satisfy section 851(a)'s service requirement, the government need only show that it 'mailed the information to [defense] counsel, and not that defense counsel actually received [it].' *United States v. Kennedy*, 328 U.S. App. D.C. 190, 133 F.3d 53, 59 (D.C. Cir. 1998); *see also United States v. White*, 980 F.2d 836, 840 n.8 (2d Cir. 1992) (holding that section 851 is satisfied even where defendant received service after trial began, so long as service was mailed before trial).").

Fed. R. Civ. P. 45 advisory committee notes. In this instance, MRA has not served its own demand for documents and things and has not pursued access to any information that may or should be produced by the subpoenaed parties. In addition, MRA has not made any proper objections to the subpoenas (as opposed to timing of service of the subpoenas). Indeed, as discussed below, MRA only has standing to object to the subpoenas to the extent that MRA claims a privilege or constitutional privacy interest in the subpoenaed information. *See supra* § III.D.1, at 12-13. MRA has not raised any such objection. MRA has no standing to raise the only objections (over breadth and undue burden) that it has made regarding the scope of the subpoenas. *Id.* In short, almost three weeks after MRA was served with the subpoenas, MRA has not taken any action for which "prior notice" is contemplated by Rule 45. Under the circumstances, MRA suffered no prejudice when, due to an oversight, some of the subpoenas were served on the subpoenaed parties one or two days before they were served on MRA.[3]

Moreover, to avoid an unnecessary dispute, Ovion voluntarily withdrew all the original subpoenas that were served on the subpoenaed parties before December 29 and issued new subpoenas with a later date of compliance (January 30 or February 3). (Carani Aff., ¶ 11.) In addition, Ovion voluntarily withdrew any additional subpoenas that were served on or before January 3, 2006, which is the date when MRA's counsel acknowledges receiving the subpoenas,

---

[3] Ignoring the law and the facts, MRA asserts: "Had MRA received prior notice of the subpoenas and particularly the attached memorandum accusing MRA of committing extortion against its clients, its counsel could have moved promptly to enjoin its publication before the damage was done." (Docket No. 43, MRA Mem., at 10.) As discussed below, Ovion had no obligation to provide "prior notice" of *Defendants' Memorandum. See supra* § III.C, at 10-11. Moreover, MRA's actual conduct belies its attorney argument. Specifically, even after MRA's counsel received the subpoenas and even after Ovion's counsel provided information indicating that many of the original subpoenas had not yet been served, MRA took no action to "enjoin" delivery of *Defendants' Memorandum* to subpoenaed parties that had not yet been served.

and issued new subpoenas with a later date of compliance (January 30 or February 3). (*Id.*, ¶ 11.)

In short, even though MRA has not and cannot demonstrate any prejudice, Ovion's counsel apologized in writing for the oversight, and Ovion withdrew all the subpoenas for which MRA raised an objection about timing of service, whether or not the objection was legitimate.[4] Any legitimate objection about service of the subpoenas is now moot. All of this transpired before MRA filed its motion. Under the circumstances, it is astounding that MRA refuses to let go of this issue and has burdened the Court with an "emergency" motion.

> **B.    Ovion Provided *Defendants' Memorandum* To The Subpoenaed Parties For The Legitimate Purpose Of Providing Context To Assist Them In Responding To The Subpoenas**

Ovion provided a copy of *Defendants' Memorandum* to the subpoenaed parties. It was accompanied by a cover letter stating:

> For your information, we have included a copy of *Defendants' Memorandum In Support Of Motion To Compel The MRA Parties To (1) Answer Interrogatories And (2) Produce Documents And Things*, which was filed with the Court on December 20, 2005. This document includes some background information about the case.

(Docket No. 44, Exhibit (A)(3).) The subject matter of *Defendants' Memorandum* overlaps substantially with the subject matter of the subpoenas. (*See supra* § III.D.3, at 13-15 (discussing the scope of the subpoenas).) *Defendants' Memorandum* also has background information about the issues in this case. (*See* Docket No. 34, Defs. Mem., at 4-9.) Accordingly, *Defendants' Memorandum* is useful to the subpoenaed parties in responding to the subpoenas.

Indeed, several of the subpoenaed parties have volunteered, in telephone conversations and email correspondence, that they found *Defendants' Memorandum* useful in responding to the

subpoenas. (*See, e.g.,* Carani Aff.,¶¶ 15-16, 24 (Exs. G, H, P).)  For example, counsel for U.S.

Venture Partners states:

> I appreciate that you included the Memorandum in Support of Motion to Compel as part of the original subpoena (which was quite helpful in analyzing the subpoena and our response thereto) . . .

(*Id.,* ¶ 16 (Ex. H).)  Likewise, counsel for Vantage Point Venture Partners states:

> Thank you for providing the Motion to Compel with the subpoena; the motion enabled me to gain a quick basic understanding of the litigation.

(*Id.,* ¶ 15 (Ex. G).)  And, counsel for Thomas, McNerney & Partners states:

> As we discussed, I appreciate your sending along the discovery pleading with the subpoena as it helped me get some context for the dispute.

(*Id.,* ¶ 24 (Ex. P).)  Without some background information, the subpoenaed parties could have

been at a loss to understand why they were receiving subpoenas.   Providing *Defendants'*

*Memorandum* to subpoenaed parties was an appropriate way to assist them in responding to the

subpoenas.

Defendants are entitled to correspond with persons, which are not parties, regarding this

litigation, particularly as Defendants gather information related to the claims, defenses, and

counterclaims in this action.   Contrary to MRA's assertions, such communications are well

within the scope of the "litigation privilege."[5]  In any event, Defendants provided *Defendants'*

---

[4] Ovion did not withdraw subpoenas to parties that had already confirmed that they had no responsive documents or things.

[5] The doctrine of "litigation privilege" applies to communications that relate either to the conduct of litigation or to matters preliminary to or in preparation for litigation. *Sriberg v. Raymond*, 370 Mass. 105, 108 (1976).  The absolute litigation privilege even attaches to communications made maliciously or in bad faith.  *Doe v. Nutter, McLennen & Fish*, 41 Mass. App. Ct. 137, 140 (1996).  The doctrine serves "the public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." *Sriberg*, 370 Mass. at 108.   More specifically, the litigation privilege provides "complete immunity from civil action, even though the statements are made with malice, because public policy favors the free and unhindered flow of information."  *Bushell v. Caterpillar, Inc.*, 683

*Memorandum* to the subpoenaed parties for the legitimate purpose of assisting them in responding to the subpoena. (Carani Aff., ¶ 4 .)

When counsel for the parties met and conferred about this issue, Ovion's counsel asked that MRA share any legal authority for the proposition that providing *Defendants' Memorandum* to the subpoenaed parties was in any way inappropriate. (Carani Aff., ¶ 10.) MRA has not provided any such authority and cites no such authority in support of its motion. (*Id.*) Contrary to MRA's overwrought complaints, Ovion (and its counsel) did nothing inappropriate in providing *Defendants' Memorandum* to subpoenaed parties.

### C.    Ovion Had No Obligation To Serve MRA With Ovion's Correspondence With The Subpoenaed Parties

At the same time that Ovion served MRA with copies of the original subpoenas, Ovion voluntarily provided MRA's counsel with copies of the cover letters to the subpoenaed parties, enclosing *Defendants' Memorandum*. (Carani Aff., ¶ 4.) Although Ovion voluntarily provided this information to MRA, Ovion had no obligation to do so. Rule 45(b)(1) only applies to the

---

N.E.2d 1286, 1287 (Ill. App. Ct. 1997). It is in the interest of public policy that judges, attorneys, parties, witnesses, and jurors engaging in litigation "'be permitted to speak and write freely without the restraint of fear of an ensuing defamation action, this sense of freedom being indispensable to the due administration of justice.'" *Hawkins v. Harris,* 661 A.2d 284, 288 (N.J. 1995) (quoting *Fenning v. S.G. Holding Corp.,* 135 A.2d 346, 350 (N.J. Super. Ct. App. Div. 1957)).

The litigation privilege provides protection for statements and writings made well outside the confines of the courtroom. *Kirschstein v. Haynes,* 788 P.2d 941, 947, 948-949 (Okla. 1990). Examples of protected communications include responses to demand letters, as in *Nutter,* and defamatory remarks made "during preparation for a judicial proceeding." *Buckhannon v. U.S. West Communications,* Inc., 928 P.2d 1331, 1334-35 (Colo. Ct. App. 1996). Other examples are "'preliminary conversations and interviews between a prospective witness and an attorney,'" *Hawkins v. Harris,* 661 A.2d 284, 287 (N.J. 1995), communications made "during investigation of a claim," *Selby v. Burgess,* 712 S.W.2d 898, 900 (Ark. 1986), and any other communication that may "possibly or plausibly be relevant or pertinent [to the litigation], with the barest rationality, divorced from any palpable or pragmatic degree of probability." *Grasso v. Mathew,* 564 N.Y.S.2d 576, 578 (N.Y. App. Div. 1991).

subpoenas. Fed. R. Civ. P. 45. Nothing in the Rule 45 is directed to correspondence with a subpoenaed party, including correspondence delivered when the subpoena is served. *Id.* Ovion would have been within its rights if it had never provided copies of the cover letters, enclosing *Defendants' Memorandum*, to MRA. In any event, Ovion had no obligation to provide "prior notice" to MRA that Ovion was providing *Defendants' Memorandum* to the subpoenaed parties.

When the parties met and conferred about this issue, Ovion's counsel asked that MRA share any authority for the proposition that Rule 45(b)(1) applies to the cover letters and *Defendants' Memorandum*, or for the proposition that Ovion was obligated for some other reason to provide "prior notice" to MRA that Ovion was providing *Defendants' Memorandum* to the subpoenaed parties. (Carani Aff., ¶ 10.) MRA has provided no such authority and cites no such authority in support of its motion. (*Id.*) MRA has no legal basis for its complaints regarding "prior notice" of the cover letters and *Defendants' Memorandum*.

**D.  The Scope Of The Subpoenas Is Proper, And In Any Event MRA Has No Standing To Object To The Scope Of The Subpoenas**

In its motion, MRA also argues that the subpoenas (both the withdrawn subpoenas and the new subpoenas) should be quashed on the grounds that the subpoenas are over broad and designed to harass MRA and the subpoenaed parties. (Docket No. 43, MRA Mem., at 11.) First, MRA has no standing to move to quash on this basis. Unless MRA establishes that it has a privileged or privacy right in the material sought by the subpoenas, the right to raise such objections rests solely with the subpoenaed parties. Second, a motion to quash on such grounds must be brought in the court from which the subpoena issued. Accordingly, excepting subpoenas that issued from this District, MRA has raised its objections in the wrong court. Third, the scope of the subpoenas is proper, and it appears that Ovion will be able to resolve any concerns raised by the subpoenaed parties. Each of these points is addressed more fully below.

1.    **MRA Lacks Standing**

"Generally, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (2d ed. 1995) (collecting cases). MRA makes no claim that it (or Mr. Musket or Ms. Latterman) has a privilege or personal right (*i.e.*, a privacy right) associated with any of the documents or things sought by the subpoenas.

> A motion to quash or modify a subpoena *duces tecum* may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena. . . . [The subpoenaed party] is the only one entitled to challenge the subpoena under Fed. R. Civ. P. 45(c)(3), unless a showing is made that [plaintiff] has a personal right to be protected or that the documents are subject to a privilege. Plaintiff makes no argument that she has a personal right to be protected or that the documents sought are privileged. She has thus failed to make the required showing.

*Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D. Kan. 1999) (internal quotations and citations omitted) (denying motion to quash where moving party was not the subpoenaed party and moving party failed to establish privilege or protected privacy right).[6]

---

[6] *See also Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) ("Moreover, a party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right. . . . . [The moving parties] cite cases where courts found standing to quash subpoenas . . . . These cases are inapposite since [the moving parties] have included no evidence to show that [the information that they seek to protect] was meant to be private or confidential in any manner. Their motion to quash is DENIED.") (citations omitted); *Perez v. Sphere Drake Ins., Ltd.*, 2002 U.S. Dist. LEXIS 7427, at *3 (D.V.I. 2002) ("Generally, a party has no standing to quash a subpoena served on a third party except for claims of privilege. . . Accordingly, there is no basis for Defendant's objection based on relevance.") (citations omitted); *United States v. Bell*, 2002 U.S. Dist. LEXIS 14470, at *2-3 (M.D. Pa. 2002) (denying motion to quash where moving party was not the subpoenaed party); *Std. Servs. Co. v. Witex USA, Inc.*, 2003 U.S. Dist. LEXIS 7215, at *3 (E.D. La. 2003) (denying motion to quash where moving party was not the subpoenaed party and the moving party failed to establish that information sought encompassed privileged materials or implicated a privacy right).

Here, MRA is not a subpoenaed party and has not set forth any facts to establish that MRA has any privilege or constitutionally protected privacy right in the information sought by the subpoenas. Therefore, MRA has no standing to object to the breadth of the subpoenas or the potential burden subpoenaed parties may incur in responding to the subpoenas.

### 2.    MRA Has Raised Its Objections In The Wrong Court

In any event, MRA has raised its objections regarding the scope of the subpoenas and the burden of responding to the subpoenas in the wrong court, excepting the subpoenas that issued from this District. Any objections to the scope of the subpoenas or the burden imposed by the subpoenas must be raised in the court that issued the subpoenas. *See In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) (Fed. R. Civ. P. 45(c)(3)(A) "allows enforcement of a subpoena following objections only 'pursuant to an order of the court by which the subpoena was issued.' Fed. R. Civ. P. 45(c)(2)(B). It provides that failure to obey a subpoena may be deemed contempt 'of the court from which the subpoena issued.' Fed. R. Civ. P. 45(e). All of this language suggests that only the issuing court has the power to act on its subpoenas. Subpoenas are process of the issuing court, and nothing in the Rules even hints that any other court may be given the power to quash or enforce them.") (citations omitted); *United States v. Star Sci.*, 205 F. Supp. 2d 482, 484-485 (D. Md. 2002) ("The language of Rule 45 clearly contemplates that the court enforcing a subpoena will be the court that issued the subpoena." However, if the non-party would prefer resolution in another forum, "the notes and commentary to the rule suggest that transfer, in the issuing court's discretion, would accord with Rule 45's purposes.").

### 3.    The Scope Of The Subpoenas Is Proper

Contrary to MRA's arguments, the subpoenas are not overly broad and unduly burdensome. MRA arguments are belied by the high degree of cooperation exhibited by the

subpoenaed parties in responding to the subpoenas. (*See, e.g.*, Carani Aff., ¶¶ 12-13, 15-24 (Exs. D-E & G-P).). This cooperation counters MRA's claim that the subpoenas are overly broad or unduly burdensome.[7]

> Given that the subpoenaed parties have produced documents, they obviously have not asserted that the requested production was burdensome or inconvenient, or that the subpoenas sought documents so far removed from relevant issues in the case that the non-parties should be put to the task of producing them. Thus, we reject those objections . . . .

*Kessel v. Cook County*, 2002 U.S. Dist. LEXIS 4185, at *5 (N.D. Ill. 2002) (denying plaintiffs' motion to quash and holding that objections regarding burden and inconvenience "properly lie with the subpoenaed party, and not with the plaintiffs.") Furthermore, the fact that the subpoenas seek "any and all documents regarding MRA, David Musket and Sue Ann Latterman" does not by itself render the subpoenas overly broad. *See Williams v. City of Dallas*, 178 F.R.D. 103, 110 n.6 (N.D. Tex. 1998) ("The question of undue burden is fact specific.").

In this instance, the information sought is directly related MRA's claims and Ovion's defenses and counterclaims. For example, the subpoenas seek information relevant to at least the following issues in this case:

1. whether and to what extent MRA provided services on behalf of Ovion;

2. whether and to what extent MRA contributed to Ovion's presentations, forecasts, budgets, market analyses, etc.;

3. MRA's claim that "standard industry practice" dictates that Ovion should compensate MRA for its work product despite the terms of the Engagement Letter;

4. whether and to what extent any of the venture capital firms were preparing an offer to Ovion, and whether any such offer was superior to the offer from AMS;

---

[7] Some of the subpoenaed parties have indicated that they will produce certain documents only on an Outside Counsel Eyes Only basis. (*See, e.g.*, Carani Aff., ¶¶ 16-17, 22 (Exs. H, I, & N).) Entry of a two-tier protective order should overcome that concern.

5. MRA's knowledge that Ovion was pursuing all its options (including venture capital financing and corporate transactions);

6. self-dealing by MRA, Mr. Musket, or Ms. Latterman when purportedly representing MRA clients;

7. MRA's fee disputes with other clients and using the threat of litigation to coerce the resolution of fee disputes; and

8. MRA's fee agreements and particularly the conditions under which MRA's fee agreements include provisions for a "Success Fee" or "Advisory Fee" in the event of a corporate transaction such as a merger and acquisition.

**E.      The "Sanctions" Proposed By MRA Are Entirely Unwarranted**

MRA argues that a variety of stringent sanctions should be imposed on Ovion and its counsel due to an inadvertent violation of the "prior notice" provision of Rule 45(b)(1). The sanctions proposed by MRA are entirely unwarranted.

First, as discussed above, any technical violation of Rule 45(b)(1) resulted from an oversight. (Carani Aff., ¶¶ 3-6.) MRA suffered no prejudice. Under such circumstances, no sanctions are warranted. *See McCurdy v. Wedgewood Capital Management Co.*, 1998 U.S. Dist. LEXIS 18875, at *28 (E.D. Pa. 1998) (denying motion for sanctions where moving party failed to show actual prejudice on the account of technical violation of Rule 45(b)(1) notice requirement); *see also Seewald v. IIS Intelligent Information Sys., Ltd.*, 1996 U.S. Dist. Lexis 22497, *12-15 (E.D.N.Y. 1996) (denying request to squash subpoena where moving party failed to show actual prejudice from violation Rule 45(b)(1) notice requirement).

 Second, MRA asserts that "the proper remedy for violation of the 'prior notice' requirement is to quash the improperly noticed subpoena." (Docket No. 43, MRA Mem., at 7 (citing cases).) In this instance, Ovion has voluntarily withdrawn any of the original subpoenas that were served on the subpoenaed parties before they were served on MRA. Accordingly, the

15

issue of quashing these subpoenas is moot. Under the present circumstances, MRA has cited no cases justifying the additional sanctions that MRA inexplicably demands.

## IV.    CONCLUSION

For all the foregoing reasons, MRA's motion to quash and for sanctions should be denied in its entirety.

Respectfully submitted,


Dated: January 18, 2006                         By _~Leland G. Hansen~_
                                                    Leland G. Hansen
                                                    Christopher V. Carani
                                                    McANDREWS, HELD & MALLOY, LTD.
                                                    500 W. Madison Street, 34th Floor
                                                    Chicago, Illinois 60661
                                                    (312) 775-8000 (telephone)
                                                    (312) 775-8100 (facsimile)

                                                    *Attorneys for Defendants*
                                                    *Ovion, Inc., William S. Tremulis and*
                                                    *Jeffrey P. Callister and Counterclaimant*
                                                    *Ovion, Inc.*

**Certificate of Service**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by email and US mail on January 18, 2006.

                                                    Christopher V. Carani

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc., <br><br>              Plaintiff, <br><br>     v. <br><br> Ovion, Inc., <br> William S. Tremulis, and <br> Jeffrey P. Callister, <br><br>              Defendants. | **Case No. 05-10416 MEL** |
| Ovion, Inc., <br><br>              Counterclaimant, <br><br>     v. <br><br> Musket Research Associates, Inc., <br> David B. Musket, and <br> Sue Ann Latterman, <br><br>              Counterdefendants. | |

**AFFIDAVIT OF CHRISTOPHER V. CARANI**

I, Christopher V. Carani, depose and say as follows:

1.      My name is Christopher V. Carani.

2.      I am an attorney licensed to practice in the Illinois Supreme Court, United States District Court for the Northern District of Illinois, and the United States Court of Appeals for the Federal Circuit, and am admitted *pro hac vice* in this action. I am a partner with the law firm of McAndrews, Held & Malloy, Ltd., and counsel for Defendant Ovion, Inc. ("Ovion"), William S. Tremulis and Jeffrey P. Callister. I make this affidavit on my own personal knowledge.

3.      On December 22, 2005, I prepared and signed 52 subpoenas in the above-captioned matter.  On the same day, I also prepared copies of those subpoenas for service on MRA.

4.      For purposes of providing context and background and of assisting the subpoenaed firms in responding to the subpoenas, we provided the subpoenaed firms with a cover letter enclosing a copy of *Defendants' Memorandum In Support Of Motion To Compel The MRA Parties To (1) Answer Interrogatories And (2) Produce Documents And Things* (hereinafter "*Defendants' Memorandum*").  We previously filed *Defendants' Memorandum* in the public court file.  (Docket No. 34.)

5.      I intended to serve MRA with copies of all of the subpoenas, so that MRA would receive prior notice in accordance with Rule 45(b)(1).

6.      I was out of the office during December 23-28, 2005.  When I returned to the office on December 29, 2005, I discovered that, due to my oversight, the service copies of the subpoenas had not been mailed to counsel for MRA.  Upon discovering this oversight, I promptly ensured that the service copies of the subpoenas were served on counsel for MRA.  I also provided copies of the cover letters, enclosing *Defendants' Memorandum*, that were provided to the subpoenaed firms.

7.      On January 5, 2006, we received a letter from MRA counsel complaining about service of the subpoenas.  (Exhibit A.)  After we received that letter, we contacted the firm retained to serve the subpoenas.  We were informed that one of the subpoenas had been served on December 27, 2005 and another had been served on December 28, 2005.  The service firm had no other information regarding service of remaining subpoenas.

8.      Based on this information, on January 5, 2006, I prepared a letter to MRA's counsel whereby I apologized for the oversight and explained to him that we intended to serve him with copies of the subpoenas before any of the subpoenas were served on the subpoenaed parties.  (Exhibit B.)  I also explained that neither myself nor anyone else at the firm had discussions with

any of the subpoenaed parties before January 3, 2006.  Further, I enclosed copies of the only two documents (5 pages) that we had received from the subpoenaed parties in response to the subpoenas (2 parties).  We did not receive any documents from any of the subpoenaed parties before January 3, 2006.

9.    On January 6, 2006, I wrote a letter to MRA counsel providing copies of all of the proofs of service we had received at that point from the firm retained to serve the subpoenas. (Exhibit C.)  In that same letter, I again apologized for my oversight and explained that we intended to serve MRA with notice prior to serving the subpoenas.

10.    On January 6, 2006, I participated in a teleconference with Arthur S. Beeman, Pamela K. Fulmer, and Brooks A. Ames (counsel for MRA) and Leland G. Hansen.  During that teleconference, we asked MRA counsel to provide any legal authority for the proposition that providing *Defendants' Memorandum* to subpoenaed parties was improper or governed by Rule 45. They have never provided any such authority.  We also asked MRA counsel to provide any legal authority for the proposition that Ovion was required to provide prior notice to MRA before providing *Defendants' Memorandum* to subpoenaed parties.  They have never provided any such authority.

11.    We withdrew the original subpoenas that were served (1) before December 29, 2005, and (2) on or before January 3, 2006, excepting those subpoenas where the subpoenaed party had informed us in writing that they had searched and found no documents or things responsive to the subpoenas.

12.    Attached as Exhibit D is a true and accurate copy of a letter from Scott Osman to Christopher Carani dated January 5, 2006.

13.    Attached as Exhibit E is a true and accurate copy of an e-mail from Brendan Spillane to Christopher Carani dated January 5, 2006.

14.     Attached as Exhibit F is a true and accurate copy of an letter from Liam Collins to Christopher Carani dated January 9, 2006.

15.     Attached as Exhibit G is a true and accurate copy of an e-mail from Richard Ulmer Jr. to Leland Hansen dated January 9, 2006.

16.     Attached as Exhibit H is a true and accurate copy of an e-mail from Stephen Scott to Leland Hansen dated January 9, 2006.

17.     Attached as Exhibit I is a true and accurate copy of an e-mail from Grant Fondo to Leland Hansen dated January 9, 2006.

18.     Attached as Exhibit J is a true and accurate copy of an e-mail from Grant Fondo to Leland Hansen dated January 9, 2006.

19.     Attached as Exhibit K is a true and accurate copy of an e-mail from Grant Fondo to Leland Hansen dated January 9, 2006.

20.     Attached as Exhibit L is a true and accurate copy of an e-mail from Grant Fondo to Leland Hansen dated January 9, 2006.

21.     Attached as Exhibit M is a true and accurate copy of an e-mail from Ken Shank to Leland Hansen dated January 10, 2006.

22.     Attached as Exhibit N is a true and accurate copy of a letter from Patrick Latterell to Christopher Carani dated January 10, 2006.

23.     Attached as Exhibit O is a true and accurate copy of a letter from David Collier to Christopher Carani dated January 11, 2006.

24.     Attached as Exhibit P is a true and accurate copy of an e-mail from James Quarles to Leland Hansen dated January 16, 2006.

Signed under the penalties of perjury this 18th day of January, 2006

_____
Christopher V. Carani

## **Certificate of Service**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by email and US mail on January 18, 2006.

_____
Christopher V. Carani

5

EXHIBIT A



**DLA Piper Rudnick Gray Cary US LLP**
One International Place, 21st Floor
Boston, Massachusetts 02110-2613
**T** 617.406.6000
**F** 617.406.6100
**W** www.dlapiper.com

BROOKS A. AMES
brooks.ames@dlapiper.com
**T** 617.406.6045  **F** 617.406.6145

January 5, 2006

**VIA E-MAIL (lhansen@mhmlaw.com) (ccarani@mhmlaw.com)**
**AND FIRST-CLASS MAIL**

Leland G. Hansen, Esq.
Christopher V. Carani, Esq.
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, 34th Floor
Chicago, IL  60661

> Re:  *Musket Research Associates, Inc. v. Ovion, Inc., et al.*
> *Ovion, Inc. v. Musket Research Associates, Inc., et al.*
> Civil Action No. 05 10416 MEL

Dear Messrs. Hansen and Carani:

On January 3, 2006, this office received for the first time a cover letter from Mr. Carani, which forwarded 52 subpoenas that Ovion had improperly served on December 22, 2005.  These subpoenas were served on 52 venture firms across the country without prior notice to MRA and in violation of Federal Rule of Civil Procedure 45(b)(1).  The subpoenas are overbroad, seek irrelevant information, and impose an undue burden on 52 non-party venture firms.  In addition, Mr. Carani, as an officer of the court, arranged for service of these subpoenas and gratuitously attached to each, a memorandum accusing MRA of engaging in criminal conduct.  These actions were intentionally designed to harm MRA's professional reputation and its relationships in the venture community, and appear to be calculated to improperly pressure MRA to drop its lawsuit. Ovion, and its counsel's actions, violate the Federal Rules of Civil Procedure, the rules of professional conduct, are patently unethical and constitute a flagrant abuse of legal process.  This letter is to notify you that MRA will not tolerate these abusive, harassing, and unethical tactics, and will seek all appropriate relief from the Court, including filing an emergency motion to quash and moving to amend its Complaint to assert additional claims against Ovion and its counsel.

MRA hereby demands that Ovion immediately withdraw the 52 subpoenas served on December 22, 2005 in clear violation of Rule 45(b)(1) of the Federal Rules of Civil Procedure. As you well know, that rule required Ovion to provide MRA with "prior notice" of the commanded production of documents.  The federal courts have repeatedly held that violation of

~BOST1:403260.v1
358547-1

**Serving clients globally**



Leland G. Hansen, Esq.
Christopher V. Carani, Esq.
January 5, 2006
Page 2

this rule warrants both quashing the *ex parte* subpoenas and sanctioning the attorneys involved in issuing them. *See, e.g., Firefighter's Institute for Racial Equality ex rel. Anderson v. City of St. Louis*, 220 F.3d 898 (8th Cir. 2000); *Butler v. Biocore Medical Technologies*, 348 F.3d 1163 (10th Cir. 2003).

MRA also objects to the subpoenas on the basis that they are overbroad, request irrelevant information, and seek to impose undue burdens on third parties. Given the timing of the subpoenas that were served over the holidays, and without prior notice to MRA, MRA also objects that the production date set forth in each subpoena is unreasonable and should be extended until after MRA's motion to quash is heard and decided.

By itself, Ovion's effort to conduct discovery behind MRA's back is sanctionable. But Ovion's misconduct goes beyond even the egregious Rule 45 violation. Ovion has abused the subpoena power by using the court's authority to publish baseless accusations of criminal conduct against MRA.

- Ovion published the criminal charge of extortion against MRA to the venture firms that form the lifeblood of MRA's business with the clear intent of damaging MRA's reputation within the venture community.

- Ovion published the memorandum in violation of its express agreement to treat all materials exchanged in the litigation as "attorney's eyes only" pending the entry of a protective order.

- Ovion published this for no legitimate purpose related to the litigation.

MRA hereby puts Ovion on notice that it intends to move to amend its complaint to add claims based on the above-described conduct. In addition, MRA intends to seek emergency relief from the Court for Ovion and its counsel's abuse of process and flagrant violations of law. MRA demands that Ovion immediately take steps to withdraw the improper subpoenas and to mitigate the damages caused to MRA by this inappropriate course of conduct.

Sincerely,

Brooks A. Ames

BAA/lnf

EXHIBIT B

LAW OFFICES

# McANDREWS, HELD & MALLOY, LTD.

34TH FLOOR
500 WEST MADISON STREET
CHICAGO, ILLINOIS 60661

TELEPHONE: (312) 775-8000
FACSIMILE: (312) 775-8100
WWW.MHMLAW.COM

GEORGE P. McANDREWS
JOHN J. HELD
TIMOTHY J. MALLOY
WILLIAM H. WESLEY
LAWRENCE H. JARVIS
GREGORY J. VOGLER
JEAN DUDEK KUELPER
HERBERT D. HART III
ROBERT W. FIESELER
THOMAS J. WIMBISCUS
STEVEN J. HAMPTON
PRISCILLA F. GALLAGHER
STEPHEN F. SHERRY
PATRICK J. ARNOLD JR.
GEORGE F. WHEELER
JANET M. McNICHOLAS
CHRISTOPHER C. WINSLADE
EDWARD A. MAS II
GREGORY C. SCHODDE
EDWARD W. REMUS
DONALD J. POCHOPIEN
SHARON A. HWANG
DAVID D. HEADRICK
ALEJANDRO MENCHACA

KIRK A. VANDER LEEST
RICHARD T. McCAULLEY JR.
PETER J. McANDREWS
LELAND G. HANSEN
JAMES H. HAFERTEPE
JONATHAN R. SICK
ELIGIO C. PIMENTEL
JAMES P. MURPHY
DEAN A. PELLETIER
MICHAEL D. HARLIN
JAMES R. NUTTALL
ROBERT A. SURRETTE
JOSEPH M. BARICH
SCOTT P. McBRIDE
PATRICIA J. McGRATH
TROY A. GROETKEN
GERALD C. WILLIS
JOHN A. WIBERG
WILHELM L. RAO
SANDRA A. FRANTZEN
RONALD H. SPUHLER
CHRISTOPHER V. CARANI
RONALD A. DICERBO
JENNIFER E. LACROIX

JOSEPH F. HARDING
JOSEPH H. BUTSCHER
SARA J. BARTOS
JOHN L. ABRAMIC
MICHAEL J. FITZPATRICK
DAVID Z. PETTY
MICHAEL T. CRUZ*
HIRUT P. DALAL
CHRISTOPHER N. GEORGE
MATTHEW A. ANDERSON
YUFENG HA
DENNIS H. JASKOVIAK
DEBORAH A. LAUGHTON
WILLIAM B. GONT
DENNIS P. HACKETT
HOPETON S. WALKER
SHAWN L. PETERSON
OGNYAN I. BEREMSKI
PHILIP H. SHERIDAN
CHRISTOPHER R. CARROLL
CHRISTOPHER M. SCHARFF
CONSUELO G. ERWIN
PETER J. PROMMER

MERLE S. ELLIOTT
BRIAN C. BIANCO
PAUL W. McANDREWS
ANDREW B. KARP
LAURA M. PERSONICK
JONATHAN M. RUSHMAN
JEREMY N. GAYED
CHRISTOPHER J. BUCHKO
LEONARD D. CONAPINSKI
MICHAEL J. KRAUTNER
ADAH J. FAIER
JAMES H. WILLIAMS
SARAH A. KOFFLIN
ALI H. SHAH
PATRICK V. BRADLEY
CHRISTINA F. POLYN

OF COUNSEL
S. JACK SAUER

*ADMITTED TO PRACTICE IN CA

January 5, 2006

**Via Email and U.S Mail**

Brooks A. Ames
DLA Piper Rudnick Gray Cary US LLP
One International Place, 21st Floor
Boston, Massachusetts 02110-2613

Re:     *Musket Research Associates, Inc. v. Ovion, Inc., et al;*
        *Ovion, Inc. v. Musket Research Associates, Inc., et al*
        Civil Action No. 05 10416 MEL

Dear Brooks:

I am writing in response to your letter of today's date.

First, your letter is replete with rash, unfounded accusations, including accusations directed against us in our professional capacities. If you follow through with the threats in your letter, you will do so in violation of your Rule 11 obligations. Leland and I were out of the office on Monday, but we both have been in the office the rest of this week. You have made no attempt to call us to discuss your concerns before sending your letter at the close of business today.

Second, the subpoenas issued by our office are proper. Each subpoena is directed to an individual or organization that, according to MRA, was contacted by MRA on behalf of Ovion. The subpoenas are reasonable in scope and seek the production of documents and things relevant to this litigation. You provide no basis or explanation for your assertions to the contrary. We are prepared to take reasonable steps to avoid imposing undue burden or expense on the subpoenaed parties or your clients with regard to the subpoenas. Please call to discuss any accommodations that you feel are necessary. We do not believe that your clients have standing to move to quash the subpoenas.

Third, contrary to your assertions, none of the subpoenas were served on the subpoenaed parties on December 22. Regarding prior notice, we intended to serve you with copies of the

McANDREWS, HELD & MALLOY, LTD.

Brooks A. Ames
January 5, 2006
Page 2

subpoenas before any of them were served on the subpoenaed parties. Due to an oversight, you were served on December 29, which is more than two weeks before the date for compliance with the subpoenas. In any event, based on our present information, only two of the subpoenas were served on the subpoenaed parties before you were served on December 29. One party was served on December 27 and a second party was served on December 28. At this point, we do not know which parties were served on December 27 and 28. We are waiting for further information from the process server. We did not discuss the subpoenas with any of the subpoenaed parties until after December 29.[1]  We apologize that two of the subpoenas were served on the subpoenaed parties before they were served on you. Neither you nor your client has suffered any prejudice as a result of this inadvertent error.

Fourth, on December 29, we also served you with copies of the cover letters and enclosures sent with the subpoenas. According to your letter, you have been in receipt of these materials since at least January 3. However, you raised no concerns before sending your letter at the close of our business today, January 5. *Defendants' Memorandum In Support Of Motion To Compel The MRA Parties To (1) Answer Interrogatories And (2) Produce Documents And Things* was provided to some of the subpoenaed parties because it includes background information that may assist them in identifying relevant, responsive documents and things. *Defendants' Memorandum* is a public document that was served on you on December 16 and filed with the Court on December 20. Until your letter at the close of business today, you raised no concerns about *Defendants' Memorandum*. It does not disclose any information that the parties agreed to treat as Outside Counsel Eyes Only. Your suggestions to the contrary are unfounded. Indeed, you filed your opposition memorandum in the public court file. Ovion believes that it has a good faith basis for all of the assertions in *Defendants' Memorandum*.

Please call if you have any questions or concerns after carefully considering this letter.

Sincerely,

Christopher V. Carani

Enclosures

---

[1] To date, two parties have produced documents (total of 5 pages) in response to the subpoenas. These documents are enclosed. Specifically, Prospect Venture Partners produced four pages, all of which were previously produced by MRA (*see* MRA 11892-95). MedVenture Associates produced the additional page.

EXHIBIT C

LAW OFFICES

# McANDREWS, HELD & MALLOY, LTD.

34TH FLOOR

500 WEST MADISON STREET

CHICAGO, ILLINOIS 60661

TELEPHONE: (312) 775-8000

FACSIMILE: (312) 775-8100

WWW.MHMLAW.COM

GEORGE P. MCANDREWS
JOHN J. HELD
TIMOTHY J. MALLOY
WILLIAM M. WESLEY
LAWRENCE M. JARVIS
GREGORY J. VOGLER
JEAN DUDEK KUELPER
HERBERT D. HART III
THOMAS J. WIMBISCUS
STEVEN J. HAMPTON
ROBERT W. FIESELER
PRISCILLA F. GALLAGHER
STEPHEN F. SHERRY
PATRICK J. ARNOLD JR
GEORGE F. WHEELER
JANET M. MCNICHOLAS
CHRISTOPHER C. WINSLADE
EDWARD A. MAS II
EDWARD W. REMUS
DONALD J. POCHOPIEN
SHARON A. HWANG
DAVID D. HEADRICK
ALEJANDRO MENCHACA

KIRK A. VANDER LEEST
RICHARD T. MCCAULLEY JR
PETER J. MCANDREWS
LELAND G. HANSEN
JAMES M. HAFERTEPE
JONATHAN R. SICK
ELIGIO C. PIMENTEL
JAMES P. MURPHY
DEAN A. PELLETIER
MICHAEL B. HARLIN
JAMES R. NUTTALL
ROBERT A. SURRETTE
JOSEPH M. BARICH
SCOTT P. MCBRIDE
PATRICIA J. MCGRATH
TROY A. GROETKEN
GERALD C. WILLIS
JOHN A. WIBERG
WILHELM L. RAO
SANDRA A. FRANTZEN
RONALD H. SPUHLER
CHRISTOPHER V. CARANI
RONALD A. DICERBO
JENNIFER E. LACROIX

JOSEPH F. HARDING
JOSEPH M. BUTSCHER
SARA J. BARTOS
JOHN L. ABRAMIC
MICHAEL J. FITZPATRICK
DAVID Z. PETTY
MICHAEL T. CRUZ*
MIRUT P. DALAL
CHRISTOPHER M. GEORGE
MATTHEW A. ANDERSON
YUFENG MA
DENNIS H. JASKOVIAK
DEBORAH A. LAUGHTON
WILLIAM B. GONT
DENNIS P. HACKETT
HOPETON S. WALKER
SHAWN L. PETERSON
OGNYAN I. BEREMSKI
PHILIP H. SHERIDAN
CHRISTOPHER R. CARROLL
CHRISTOPHER M. SCHARFF
CONSUELO G. ERWIN
PETER J. PROMMER

MERLE S. ELLIOTT
BRIAN C. BIANCO
PAUL W. MCANDREWS
ANDREW B. KARP
LAURA M. PERSONICK
JONATHAN M. RUSHMAN
JEREMY N. GAYED
CHRISTOPHER J. BUCHKO
LEONARD D. CONAPINSKI
MICHAEL J. KRAUTNER
ADAM J. FAIER
JAMES H. WILLIAMS
SARAH A. KOFFLIN
ALI H. SHAH
PATRICK V. BRADLEY
CHRISTINA F. POLYN

————

OF COUNSEL
S. JACK SAUER

*ADMITTED TO PRACTICE IN CA

January 6, 2006

**Via Email and U.S Mail**

Brooks A. Ames
DLA Piper Rudnick Gray Cary US LLP
One International Place, 21st Floor
Boston, Massachusetts 02110-2613

> Re:  *Musket Research Associates, Inc. v. Ovion, Inc., et al.;*
> *Ovion, Inc. v. Musket Research Associates, Inc., et al.*
> Civil Action No. 05 10416 MEL

Dear Brooks:

I am writing to follow up on my earlier letter in response to the letter that you sent last night.

I have enclosed copies of the proofs of service for 23 subpoenas, which we received this morning from the process server. You will note that each of these subpoenas was served on either December 27 or 28. As I explained in my previous letter, you were served on December 29 due to an oversight. We intended to serve you before the subpoenaed parties were served. Based on our present information, we believe that none of the other subpoenas were served before January 3. We will forward any additional proofs of service to you as we receive them, as is our ordinary practice. Again, we did not discuss the subpoenas with any of the subpoenaed parties before January 3. We again apologize that any of the subpoenas were served on the subpoenaed parties before they were served on you. Neither you nor your client has suffered any prejudice as a result of this inadvertent error. If you believe otherwise, please call to discuss your concerns.

Sincerely,

Christopher V. Carani

Enclosures

EXHIBIT D



**CHANNEL**
MEDICAL PARTNERS

January 5, 2006

Mr. Christopher V. Carani
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, IL 60661

Re:    Musket Research Associates v. Ovion, Inc.

Dear Christopher:

Pursuant to our telephone conversation, we have reviewed our files and medical device company database and have not found any business plans, executive summaries, or any specific information on Ovion, Inc. nor have our partners had any telephone conversations with anyone from Musket Research Associates regarding a potential financing for Ovion.

If you have any questions on the above, please contact me at 847-779-1503.

Sincerely,

Scott Osman
Vice President
Finance and Administration

EXHIBIT E

**Chris Carani**

| | |
|---|---|
| **From:** | BSpillane@svip.com |
| **Sent:** | Thursday, January 05, 2006 10:15 AM |
| **To:** | Chris Carani |
| **Subject:** | Musket / Ovion |

**Attachments:**     ENVELOPE.TXT



ENVELOPE.TXT
(781 B)

Mr. Carani,

I can find no evidence in our files of any deals from/by/named either Musket or Ovion.  Moreover, the Fund we currently advise would not invest in a "start-up medical device company" or "emerging healthcare companies".

Regards,

Brendan J. Spillane
Chief Financial Officer
SV Investment Partners
540 Madison Avenue
New York, NY  10022

1

EXHIBIT F

GUNDERSON DETTMER
ATTORNEYS AT LAW

GUNDERSON
DETTMER
STOUGH
VILLENEUVE
FRANKLIN &
HACHIGIAN, LLP

VIA OVERNIGHT MAIL

January 9, 2005

McAndrews, Held & Malloy, Ltd.
Attn: Christopher V. Carani
34th Floor
500 West Madison Street
Chicago, IL 60661

Re:  **Subpoena in Civil Action No. 1:05-CV-10416-MEL, U.S. District Court for the
District of Massachusetts, *Musket Research Associates Inc. v. Ovion, Inc., et al***

Dear Mr. Carani:

We are counsel to Polaris Venture Partners ("Polaris"). I am writing in reference to
Subpoena in Civil Action No. 1:05-CV-10416-MEL attached as <u>Exhibit A</u> (the
"Subpoena"), copies of which were delivered to Polaris at its Waltham, MA and
Seattle, WA offices January 3, 2005. This letter and its objections are intended to
respond to both subpoenas. In the Subpoena, Polaris was commanded to produce
documents and things as specified in Attachment A thereto.

For the purpose of reserving its rights with respect to the Subpoena, Polaris objects to
such request as follows:

A. Polaris objects to defendants' instructions, definitions and requests to the
extent they attempt to impose requirements or obligations that exceed the scope of
discovery required under the Federal Rules of Civil Procedure.

B. Polaris objects to defendants' requests on the ground that they are overly
broad, unduly burdensome, and vague. Polaris objects to defendants' requests to
the extent that they use terms that are not defined or commonly understood.

C. Polaris objects to defendants' requests to the extent they seek documents
protected by the attorney-client privilege, work-product doctrine, or any other
privilege and Polaris will not produce such documents.

D. Polaris objects to defendants' requests to the extent that compliance therewith
would cause Polaris to breach a contract with or other legal rights of another
person or entity. Polaris also objects to the defendants' requests to the extent that

they seek trade secret or confidential information of Polaris or non-parties. Polaris will not produce any such documents without the proper permission or without the entry of a proper protective order.

E. Polaris objects to defendants' requests to the extent that they seek to impose an obligation to search for documents at any location other than at which they would be expected to be stored in the ordinary course of business.

Polaris expressly reserves its right to supplement these objections or add additional objections in the future.

Subject to and without waiving Polaris' objections, and in the interest of economy and cooperation, I hereby inform you that after review of its records, Polaris has concluded that, to the best of its knowledge, it has no documents or things concerning the subject matter specified in the Subpoena.

I hope this adequately addresses the Subpoena request, which Polaris will consider satisfied absent further communication from you. Please copy me on any further correspondence regarding this matter. If any additional information is needed, please do not hesitate to call me directly at 781-795-3610.

Sincerely,

Liam J. Collins

attachment

cc: Kevin Littlejohn

EXHIBIT G

From:      Ulmer, Dick (SV)
Sent:      Monday, January 09, 2006 3:22 PM
To:        'lhansen@mhlaw.com'
Cc:        Ulmer, Dick (SV)
Subject:   Subpoena to Vantage Point Venture Partners

Hi, Leland.  This confirms our telephone conversation of just now regarding Ovion's subpoena to Vantage Point Venture Partners ("VPVP") in Ovion's litigation with Musket Research.

--Thank you for providing the Motion to Compel with the subpoena; the motion enabled me to gain a quick basic understanding of the litigation.

--You stated that the subpoena dated December 22, 2005 is being withdrawn, and that a new one would be served with a return date of January 30, 2006.  I agreed to accept service of that new subpoena on VPVP's behalf.

--The new subpoena will seek documents related to: (1) Musket Research and its principals; and (2) information that Musket may have provided to VPVP regarding Ovion.  I don't foresee a subpoena of that scope being problematic.


Richard Ulmer Jr.

LATHAM & WATKINS LLP
135 Commonwealth Drive
Menlo Park, CA 94025
Direct Dial: (650) 463-2648
Fax: (650) 463-2600
Email: dick.ulmer@lw.com
www.lw.com

*************************************************************************
To comply with IRS regulations, we advise you that any discussion of Federal tax issues in this e-mail was not intended or written to be used, and cannot be used by you, (i) to avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any transaction or matter addressed herein.

For more information please go to http://www.lw.com/resource/Publications/_pdf/pub1289_1.pdf



This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

EXHIBIT H

| From: | sscott@hayesdavis.com |
| --- | --- |
| Sent: | Monday, January 09, 2006 6:21 PM |
| To: | Leland Hansen |
| Subject: | Musket Research Associates, Ins. v. Ovion, Inc. et al. |
| Attachments: | ENVELOPE.TXT |

*Mr. Hansen,*

*This will confirm that I will accept service of the amended subpoena directed to "US Venture Partners" in the referenced case. I appreciate that you included the Memorandum in Support of Motion to Compel as part of the original subpoena (which was quite helpful in analyzing the subpoena and our response thereto), but you do not need to send us another copy with the amended subpoena.*

*We have not yet formulated our response to your clients' subpoena, but to the extent my client does produce documents, we would like access to the documents to be restricted as much as possible, perhaps with an "Attorney's Eyes Only" designation. Thank you.*

*Stephen A. Scott*
*Hayes Davis Ellingson McLay & Scott*
*203 Redwood Shore Pkwy Suite 480*
*Redwood Shores, Ca 94065*
*(650) 486-2867 (Direct)*
*(650) 637-8071 (Fax)*
*(408) 204-1716 (Cell)*
*sscott@hayesdavis.com*

EXHIBIT I

| **From:** | gfondo@cooley.com |
|---|---|
| **Sent:** | Monday, January 09, 2006 7:35 PM |
| **To:** | Leland Hansen |
| **Cc:** | dkaleba@cooley.com |
| **Subject:** | Subpoenas re MPA v. Ovion |
| **Attachments:** | ENVELOPE.TXT |

Leland:  Per our telephone conversation, this will confirm that your client will be reissuing subpoenas to my venture capital clients Onset, Versant, Interwest and Sutter Hill Ventures.  Without committing as to how my clients will respond to your new requests, as we discussed, at a minimum, some of the information your client seeks is highly confidential information that involves trade secrets that that my clients would not willingly produce without an attorneys' eyes only designation.  The parties at issue in this case undoubtedly would like to see these documents for the competitive advantage it would give them, and my clients will not willingly produce such information.  I will get back to you as soon as practicable about whether any of my clients will permit me to accept service on their behalf.  Thank you.

**Grant P. Fondo**
Cooley Godward LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Direct: 650-843-5458 ◊ Fax: 650-857-0663
Email: gfondo@cooley.com ◊ www.cooley.com


This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

EXHIBIT J

| | |
|---|---|
| **From:** | gfondo@cooley.com |
| **Sent:** | Monday, January 09, 2006 7:51 PM |
| **To:** | Leland Hansen |
| **Cc:** | dkaleba@cooley.com |
| **Subject:** | Onset: Subpoenas re MPA v. Ovion |

**Attachments:** ENVELOPE.TXT

Leland: This will confirm that Cooley is authorized to accept service on Onset's behalf. Please be aware that the entity you named (and this holds true for all my clients) is not a specific proper entity. Assuming we can reach agreement on things, as we seem to be doing, my clients will waive that technical defect. Thanks.

Grant P. Fondo
Cooley Godward LLP
5 Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Tel:  (650) 843-5458
Fax: (650) 857-0663
email:  gfondo@cooley.com


This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

EXHIBIT K

| | |
|---|---|
| **From:** | gfondo@cooley.com |
| **Sent:** | Monday, January 09, 2006 8:01 PM |
| **To:** | Leland Hansen |
| **Cc:** | dkaleba@cooley.com |
| **Subject:** | Interwest-- Subpoenas re MPA v. Ovion |

**Attachments:** ENVELOPE.TXT

Leland:  This will confirm that Cooley is authorized to accept service on Interwest's behalf.  Please be aware that the entity you named is not a specific proper entity.  Assuming we can reach agreement on things, as we seem to be doing, my client will waive that technical defect.  Thanks.

Grant P. Fondo
Cooley Godward LLP
5 Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Tel:  (650) 843-5458
Fax: (650) 857-0663
email:  gfondo@cooley.com


This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# EXHIBIT L

| From: | gfondo@cooley.com |
|---|---|
| Sent: | Monday, January 09, 2006 8:17 PM |
| To: | gfondo@cooley.com; Leland Hansen |
| Cc: | dkaleba@cooley.com |
| Subject: | Sutter-- Subpoenas re MPA v. Ovion |
| Attachments: | ENVELOPE.TXT |

Leland:  This will confirm that Cooley is authorized to accept service on Sutter Hill's behalf.  Please be aware that the entity you named is not a specific proper entity.  Assuming we can reach agreement on things, as we seem to be doing, my client will waive that technical defect.  Thanks.

Grant P. Fondo
Cooley Godward LLP
5 Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Tel:  (650) 843-5458
Fax: (650) 857-0663
email:  gfondo@cooley.com

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

EXHIBIT M

| | |
|---|---|
| **From:** | kshank@wilentz.com |
| **Sent:** | Tuesday, January 10, 2006 9:03 AM |
| **To:** | Leland Hansen |
| **Subject:** | Ovion Litigation -- Vertical Subpoena |
| **Attachments:** | ENVELOPE.TXT |



ENVELOPE.TXT
(766 B)

      Leland -- I just wanted to confirm that you and I spoke last week concerning the subpoena served on my client, Vertical Group. You explained the types of documents you are seeking and also told me what categories of documents were of no interest. I won't bother to summarize our discussion herein.

However, we agreed that Vertical will search for the requested documents (as modified by our conversation) and produce them as promptly as reasonably possible. (My guess is that we will have them for you early next week.) It is possible, but probably unlikely, that we would want confidential treatment for one or more documents for business reasons.

      Pending our production of those documents, and your review thereof, each of us reserve our rights with respect to the subpoena, including our rights to object to its scope and your rights to seek enforcement if you are unsatisfied with our production. Further, the return date of the subpoena is indefinitely adjourned from the current return date of 1/13/06.

      Thanks for your cooperation.

C. Kenneth Shank, Esq.
Wilentz, Goldman & Spitzer, P.A.
90 Woodbridge Center Drive
Woodbridge, NJ  07095-0958
Phone:  (732) 855-6145
Fax:     (732) 726-6575
Email:   kshank@wilentz.com

1

EXHIBIT N

# Latterell Venture Partners

Four Embarcadero Center
Suite 2500
San Francisco, CA 94111

Office: 415-399-9880
Fax: 415-399-9879
www.lvpcapital.com

January 10, 2006

Via Federal Express

Christopher V. Carani
McAndrews, Held & Malloy
500 West Madison, 34th Floor
Chicago, IL 60661

Dear Mr. Carani:

As requested in the subpoena, rather than meet on January 13 we have enclosed
copies of the materials we have been able to locate with reasonable effort
regarding Musket Research Associates vs Ovion, Tremulis, and Collister. In
addition to these materials we have a few internal communications and
confidential due diligence call summaries which we object to providing as we
consider these proprietary and confidential.

We hope you find these useful for your case. You may contact our Office
Manager, LaTonya Fontenot, if you have additional questions.

Sincerely,

Patrick F. Latterell
General Partner

Enclosure

EXHIBIT O

# CMEA VENTURES

www.cmeaventures.com

January 11, 2006

Christopher V. Carani
McAndrews, Held & Malloy
500 West Madison, 34th Floor
Chicago, IL 60661

*Via Federal Express*

Dear Mr. Carani,

Please find attached printouts of various electronic documents in response to your subpoena to CMEA ventures in the case of Musket Research Associates, Inc. v. Ovion, Inc., etc. (case number 1:05-CV-10416 MEL).

As we discussed on the telephone this afternoon, I have redacted the material slightly in order to maintain confidential the identity of the gynecologist I consulted for an opinion on Ovion's sterilization technology. I believe this information is not relevant to the case. However, if you disagree, please let me know and I can provide an un-redacted version.

Sincerely,

David J. Collier, MD
General Partner
CMEA Ventures

Enclosure

EXHIBIT P

**From:**        James.Quarles@wilmerhale.com
**Sent:**        Monday, January 16, 2006 3:37 PM
**To:**          Leland Hansen
**Subject:**     Acceptance of Service
**Attachments:** ENVELOPE.TXT

Leland:

   I have spoken with the client and am authorized to accept service of the subpoena.

   As we discussed, I appreciate your sending along the discovery pleading with the subpoena as it helped me get some context for the dispute.

Regards.

Jim


James L. Quarles
WilmerHale
1455 Pennsylvania Avenue, N.W.
Washington, DC 20004 USA
+1 (202) 942-8404 (t)
+1 (202) 942-8484 (f)
james.quarles@wilmerhale.com

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately -- by replying to this message or by sending an email to postmaster@wilmerhale.com -- and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.