# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ovion, Inc., <br> William S. Tremulis, and <br> Jeffrey P. Callister, <br><br> Defendants. <br> _____ <br><br> Ovion, Inc., <br><br> Counterclaimant, <br><br> v. <br><br> Musket Research Associates, Inc., <br> David B. Musket, and <br> Sue Ann Latterman, <br><br> Counterdefendants. | **Case No. 05-10416 MEL** |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE, PURSUANT TO L.R. 56.1**

## TABLE OF CONTENTS

I.     THE PARTIES ..................................................................................................1

II.    PURSUANT TO A WRITTEN ENGAGEMENT LETTER, OVION
       RETAINED MRA AS A "NONEXCLUSIVE FINDER/ADVISOR" .................................2

       A.    MRA Agreed To Provide Services, Which MRA Now Describes
             As Its "Work Product" ......................................................................................3

       B.    MRA Agreed That Its Compensation, If Any, Would Be
             Contingent ........................................................................................................4

       C.    Ovion Was Entitled To Use MRA's Services (Or Work Product) In
             Connection With A Corporate Transaction ......................................................5

       D.    The Notice Provision Of The Engagement Letter Is Narrowly
             Drawn ...............................................................................................................5

       E.    Ovion Had No Obligation To Consummate A Transaction With
             Any Party Solicited By MRA .............................................................................5

III.   NEITHER    CONTINGENCY    CONTEMPLATED    IN    THE
       ENGAGEMENT LETTER WAS REALIZED ....................................................................6

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS NO GENUINE DISPUTE, PURSUANT TO L.R. 56.1**

Defendants hereby provide *Defendants' Statement Of Material Facts As To Which There Is No Genuine Dispute, Pursuant To L.R. 56.1* in support of *Defendants' Motion For Summary Judgment*, which is submitted herewith. Attached hereto are the following exhibits:

| | | |
|---|---|---|
| Exhibit A | Engagement Letter between Ovion and MRA, dated July 21, 2004, and executed on July 29, 2004 (hereinafter "Engagement Letter") |
| Exhibit B | First Amended Complaint For Breach Of The Covenant Of Good Faith And Fair Dealing, Promissory Estoppel, Quantum Meruit, Conversion, Fraud, Negligent Misrepresentation, Concealment And Violation of Massachusetts General Law Ch. 93A, filed March 16, 2005 (Docket No. 11) (hereinafter "First Am. Compl.") |
| Exhibit C | Musket Research Associates, Inc.'s Supplemental Answer To Ovion, Inc.'s First Set Of Interrogatories (1-2), dated January 23, 2006 (hereinafter "MRA Suppl. Interrog. Resp.") |
| Exhibit D | Memorandum In Support Of Musket Research Associates, Inc.'s Motion For Entry Of A single-Tier Protective Order (Docket No. 31) (hereinafter "MRA Protect. Order Mem.") |
| Exhibit E | Plaintiff And Counterdefendants' Opposition to Defendants' Motion To Compel (Docket No. 38) (hereinafter "MRA Opp'n To Compel") |
| Exhibit F | Musket Research Associates, Inc., David B. Musket And Sue Ann Latterman's Response To Ovion, Inc.'s First Set Of Requests To Admit (1-12) (hereinafter "MRA Resp. To Req. To Admit") |
| Exhibit G | Affidavit of William S. Tremulis In Support Of Defendants' Motion For Summary Judgment (hereinafter "Tremulis Aff.") |

These exhibits are referenced herein and in *Defendants' Memorandum In Support Of Motion For Summary Judgment*, which is submitted herewith.

## I.    THE PARTIES

1.    In this action, the Defendants are Ovion, Inc. ("Ovion"), William S. Tremulis ("Mr. Tremulis"), and Jeffrey P. Callister ("Mr. Callister"). (Exhibit B, First Am. Compl. (Docket No. 11).) The Plaintiff is Musket Research Associates, Inc. ("MRA"). (*Id.*) Ovion has

1

counterclaimed against MRA, David B. Musket ("Mr. Musket"), and Sue Ann Latterman ("Ms. Latterman"). (Answer & Countercl. (Docket No. INSERT).)

2.      In July, 2004, Ovion was a small company with a focus on minimally invasive alternatives to surgical sterilization. (Exhibit G, Tremulis Aff., ¶ 3.) Ovion was founded by Mr. Tremulis and Mr. Callister in 1996. (*Id*, ¶ 2.)

3.      According to MRA, "MRA is a small firm that specializes in securing venture financing for start-up companies. [Mr.] Musket is its founder and president and his principal employee is [Ms.] Latterman." (Exhibit D, MRA Protect. Order Mem. (Docket No. 31), at 3.)

## II.     PURSUANT TO A WRITTEN ENGAGEMENT LETTER, OVION RETAINED MRA AS A "NONEXCLUSIVE FINDER/ADVISOR"

4.      In July, 2004, Ovion retained MRA "as a nonexclusive finder/advisor" on the terms set forth in a written agreement (the "Engagement Letter"). (Exhibit A.) MRA acknowledges that the Engagement Letter is an agreement between Ovion and MRA. (Exhibit C, MRA Suppl. Interrog. Resp., at 2.)

5.      Pursuant to the Engagement Letter, MRA agreed to provide certain services and also agreed that its compensation, if any, would depend on the realization of certain contingencies set forth in the Engagement Letter. (Exhibit A, Engagement Letter, §§ 2-3.)

6.      MRA now alleges that Ovion and MRA entered certain oral agreements or understandings regarding MRA's services as a nonexclusive finder/advisor. (Exhibit C, MRA Suppl. Interrog. Resp., at 2-3.) In response to Ovion's interrogatories, MRA has conceded that there are no documents or other written undertakings related to these alleged oral agreements. (*Id*. at 3 (identifying the Engagement Letter and a Nondisclosure Agreement as the only documents and things relating to any alleged agreements and understandings between Ovion and MRA).)

2

**A.     MRA Agreed To Provide Services, Which MRA Now Describes As Its "Work Product"**

7.     As set forth in the Engagement Letter, MRA agreed, as a "nonexclusive finder/advisor," to provide the following services:

> MRA shall (i) analyze the financial performance and projections of the Company and provide advice regarding the appropriate valuation range for the new equity capital; (ii) assist in the development of presentation materials for investor solicitations; (iii) contact qualified investors and, if acceptable to you or your representative, send the necessary documents ourselves or through your office . . . ; (iv) after appropriate screening, set up and accompany you to meetings with interested parties as often as scheduling allows; and (v) manage ongoing discussions and coordinate the closings with investors solicited, or caused to be solicited by MRA.

(Exhibit A, Engagement Letter, § 2(a).)

8.     For purposes of this litigation, MRA now has adopted the term "work product" to describe the services it agreed to provide. For instance, MRA now alleges:

> Over the course of a more than six month engagement with Ovion, MRA produced thousands of pages of budgets, forecasts, plans, due diligence materials, and presentation materials on Ovion's behalf. . . . MRA did not create this work product out of thin air. By necessity, it worked with materials provided by Ovion. . . . In each case, MRA made multiple revisions and additions to a working document. . . .
>
> MRA conducted hundreds of telephone conversations with doctors, venture capitalists, and others in the course of preparing due diligence materials for Ovion and in the course of soliciting inventors on behalf of Ovion. In addition, MRA answered multiple different questions for venture capital investors in face to face meetings to promote Ovion. All these communications constitute MRA's work product.

(Exhibit E, MRA Opp'n. To Compel (Docket No. 38), at 4-5.)

9.     According to MRA, documents such as "budgets, forecasts, plans, due diligence materials, and presentation materials" are "working documents" that evolve over time. (Exhibit E, MRA Opp'n. To Compel (Docket No. 38), at 4-5.) MRA apparently now contends that Ovion's materials became MRA's property once MRA "put its mark on" them by editing or updating them in some fashion. (*Id*. at 4.)

3

**B.    MRA Agreed That Its Compensation, If Any, Would Be Contingent**

10.    As set forth in the Engagement Letter, MRA agreed that its compensation, if any, would depend on the realization of certain contingencies. (Exhibit A, Engagement Letter, § 3.)

11.    More specifically, the Engagement Letter set forth two circumstances where MRA could become entitled to compensation:

(a)  private placement of Ovion stock with "MRA Contacts" or "Ovion VC Contacts," or

(b)  a "Corporate Transaction" (i.e., a merger, acquisition, or private placement of Ovion stock with a corporate partner) consummated "during the term of" and before "the 180th day following the date" of the Engagement Letter.

(*Id.*, §§ 1, 3.)[1]

12.    If the first contingency were realized, MRA could receive "Finder's Fees" and possibly a "Success Fee." (*Id.* §§ 3(a), 3(c).)[2]  The Engagement Letter expressly provided: "MRA shall receive no fees for any entity that is not either an MRA Contact or an Ovion VC Contact." (Id., § 3(a).)

13.    If the second contingency were realized, MRA could receive an "Advisory Fee" not to exceed $225,000 less any Finder's Fees. (Id. § 3(d).)[3]

---

[1] "MRA Contacts" were "parties solicited or caused to be solicited by MRA" and "accepted [by Ovion], as evidenced solely by a countersignature thereto on Schedule A." (Exhibit A, Engagement Letter, § 3(a).)  "Ovion VC Contacts" were listed on Schedule B. (*Id.*)

[2] More specifically, MRA could receive seven percent (7%) of the aggregate cash proceeds from the private placement of Ovion stock with "MRA Contacts." (Exhibit A, Engagement Letter, § 3(a).)  MRA could receive two percent (2%) of cash proceeds from U.S. Venture Partners and three percent (3%) of cash proceeds from other "Ovion VC Contacts." (*Id.*)  In addition, if this first contingency were realized during the term of the Engagement Letter, MRA could receive a "'Success Fee' equal to $225,000 less any" Finder's Fees. (*Id.*, § 3(c).)

[3] More specifically, if a Corporate Transaction were consummated during the term of the Engagement Letter and within 90 days of the date of the Engagement Letter, MRA could receive
(continued . . .)

4

C.    **Ovion Was Entitled To Use MRA's Services (Or Work Product) In Connection With A Corporate Transaction**

14.    A Corporate Transaction (such as a merger and acquisition) was one of two contingencies expressly contemplated by the parties as set forth in the Engagement Letter. (Exhibit A, Engagement Letter, § 3(d).)  Nothing in the Engagement Letter restricted or limited whether or to what extent Ovion could use MRA's services (or work product) for purposes of a Corporate Transaction.  (Exhibit A, Engagement Letter.)

D.    **The Notice Provision Of The Engagement Letter Is Narrowly Drawn**

15.    As executed by the parties, the Engagement Letter included a provision regarding notice to MRA during the term of the Engagement Letter.  (Exhibit A, Engagement Letter, § 3(g).)

16.    Specifically, Ovion was to give notice to MRA "if, during the term of the [Engagement Letter], [Ovion] engages any additional finders." (*Id.*)

17.    Ovion accepted no obligation to apprise MRA as to whether or to what extent Ovion was engaged in negotiations with any prospective investor or business partner.  (*Id.*)

18.    After Ovion and MRA executed the Engagement Letter, Ovion never engaged another "finder." (Exhibit G, Tremulis Aff., ¶ 7.)

E.    **Ovion Had No Obligation To Consummate A Transaction With Any Party Solicited By MRA**

19.    The Engagement Letter expressly states that MRA was retained as a "nonexclusive finder/advisor." (Exhibit A, Engagement Letter, § 1.)  Moreover, as set forth in

---

an "'Advisory Fee' equal to $125,000 less any" Finder's Fees (Exhibit A, Engagement Letter, § 3(d).)  If a Corporate Transaction were consummated between the 90th and the 180th day following the date of the Engagement Letter, MRA could receive an "'Advisory Fee' equal to $225,000 less any fees payable to MRA pursuant to Section 3(a)." (*Id.*)  As of the 180th day following the date of the Engagement Letter, MRA was no longer entitled to an Advisory Fee. (*Id.*)

the Engagement Letter, Ovion had no obligation to consummate a transaction with any party solicited by MRA. Indeed, the Engagement Letter expressly provides:

> The potential investors contacted by MRA are subject to acceptance by OVION in its sole and absolute discretion, and OVION is under no obligation to sell any of its capital stock to such parties.

(*Id.*, § 2(d).)

## III.  NEITHER CONTINGENCY CONTEMPLATED IN THE ENGAGEMENT LETTER WAS REALIZED

20.    Neither contingency contemplated in the Engagement Letter was realized. (Exhibit G, Tremulis Aff., ¶¶ 8-9.)

21.    With respect to the first contingency, no MRA Contact or Ovion VC Contact invested in Ovion, and none of Ovion's stock was placed with any of those entities.  (*Id.*, ¶ 8.)

22.    With respect to the second contingency, Ovion did not consummate a Corporate Transaction either during the term of the Engagement Letter or before the 180th day following the date of the Engagement Letter.  (*Id.*, ¶ 9.)

23.    The Engagement Letter is dated July 21, 2004.  (Exhibit A, Engagement Letter.) The "180th day following the date" of the Engagement Letter is January 17, 2005.

24.    On July 7, 2005, well after the 180th day following the date of the Engagement Letter, Ovion consummated a merger with and acquisition by American Medical Systems, Inc. ("AMS").  (Exhibit G, Tremulis Aff., ¶ 10.)

25.    On February 17, 2005, Ovion signed a letter of intent and agreed to negotiate exclusively with AMS.  (Exhibit G, Tremulis Aff., ¶ 11.)

26.    On February 17, 2005, Ovion informed MRA that Ovion had signed a letter of intent and agreed to negotiate exclusively with a potential corporate partner.  (Exhibit G, Tremulis Aff., ¶ 12.)

27.    On March 10, 2005, Ovion sent a letter to MRA terminating the agreement set forth in the Engagement Letter, pursuant to Section 7 of the Engagement Letter.

28.    MRA, Mr. Musket, and Ms. Latterman admit that they, individually and collectively, did not do any of the following:

"contact or solicit AMS on behalf of Ovion, or cause AMS to be contacted or solicited on behalf of Ovion"
"communicate with AMS on behalf of Ovion"
"set up any meetings between AMS and Ovion"
"accompany Ovion or its representatives to any meeting with AMS or its representatives"
"manage any discussions between Ovion and AMS"
"coordinate the closing between Ovion and AMS"

(Exhibit F, MRA Resp. To Req. To Admit, at 1-3.)

Respectfully submitted,

Dated: January 27, 2006                By _____
                                           Leland G. Hansen
                                           Christopher V. Carani
                                           McANDREWS, HELD & MALLOY, LTD.
                                           500 W. Madison Street, 34th Floor
                                           Chicago, Illinois 60661
                                           (312) 775-8000 (telephone)
                                           (312) 775-8100 (facsimile)

                                           Dale A. Malone (BBO #552376)
                                           BANNER & WITCOFF, LTD.
                                           28 State Street, 28th Floor
                                           Boston, Massachusetts  02109
                                           Telephone: (617) 720-9600
                                           Facsimile:  (617) 720-9601

                                           *Attorneys for Defendant and Counterclaimant
                                           Ovion, Inc. and Defendants William S. Tremulis
                                           and Jeffrey P. Callister.*

**Certificate of Service**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on January 27, 2006.

Date: January 27, 2006                    By: _____
                                              Christopher V. Carani

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ovion, Inc., <br> William S. Tremulis, and <br> Jeffrey P. Callister, <br><br> Defendants. <br><br>─────────────────────────── <br><br> Ovion, Inc., <br><br> Counterclaimant, <br><br> v. <br><br> Musket Research Associates, Inc., <br> David B. Musket, and <br> Sue Ann Latterman, <br><br> Counterdefendants. | Case No. 05-10416 MEL |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE, PURSUANT TO L.R. 56.1

# EXHIBIT A

# MRA

M U S K E T   R E S E A R C H   A S S O C I A T E S   I N C.

July 21, 2004

## CONFIDENTIAL

Jeff Callister
President
Ovion Inc
1900 O'Farrell Street
San Mateo, CA 94403

Dear Jeff:

This letter will confirm the agreement under which Musket Research Associates, Inc ("MRA") is engaged by Ovion Inc., or any affiliate of Ovion, Inc. (collectively "OVION" or the "Company") to assist the Company as described below

### 1. Engagement

OVION hereby engages and retains Musket Research Associates, Inc as a nonexclusive finder/advisor in connection with a proposed private placement of Convertible Preferred Stock of Ovion Inc., including any other debt or equity instrument arising out of this financing effort (the "Placement"), which involves investors solicited by MRA during that effort The specific services to be provided by MRA and fees to be received will be:

### 2. Services

(a) MRA shall (i) analyze the financial performance and projections of the Company and provide advice regarding the appropriate valuation range for the new equity capital; (ii) assist in the development of presentation materials for investor solicitations; (iii) contact qualified investors and, if acceptable to you or your representative, send the necessary documents ourselves or through your office. Documents sent by the Company at MRA's request should be accompanied by a cover letter and/or business card from MRA, or, if these are not available, a specific reference to our introduction; (iv) after appropriate screening, set up and accompany you to meetings with interested parties as often as scheduling allows; and (v) manage ongoing discussions and coordinate the closings with the investors solicited, or caused to be solicited by MRA.

(b) MRA acknowledges that the offering will be made pursuant to the private offering exemption from registration under Section 4(2) of the Securities Act of 1933 and Rule 506 promulgated thereunder, and that OVION securities are to be offered and sold only to "accredited investors" (as defined in the SEC's Regulation D) who also satisfy any applicable securities laws Before each closing, OVION will validate these "accredited investors" via a customary suitability questionnaire, copies of which will be provided to MRA upon request.

(c) Prior to sending any descriptive materials to potential investors, MRA will provide OVION a list of these investors so that OVION can make the appropriate securities law filings, if any, in such jurisdictions. MRA will send materials previously approved by OVION when cleared to do so by an OVION representative and will not be responsible for assuring that such jurisdictional

125 CAMBRIDGEPARK DRIVE · 1ST FLOOR · CAMBRIDGE, MA 02140  617-441-8800 FAX 617-441-0855

MRA20844

filings have been made beforehand. MRA will not make any general solicitation in connection with this financing and will conduct its obligations hereunder in a manner consistent with the requirements of Rule 506.

(d) The potential investors contacted by MRA are subject to acceptance by OVION in its sole and absolute discretion, and OVION is under no obligation to sell any of its capital stock to such parties. MRA shall be deemed to be an independent contractor and shall have no right, power or authority to create any obligations on behalf of OVION

## 3. Cash Fees

(a) OVION agrees to pay MRA Finder's Fees of seven percent (7%) of the aggregate cash proceeds received by OVION from the Placement to parties solicited by or caused to be solicited by MRA ("MRA Contacts"). "MRA Contacts" shall be those entities set forth on Schedule A of this contract, as updated from time to time, and accepted, as evidenced solely by a countersignature thereto on Schedule A, by the Company. OVION agrees to pay MRA an additional fee of three percent (3%) of the aggregate cash proceeds received by OVION from the Placement to "OVION VC Contacts" and two (2%) of the aggregate cash proceeds received by OVION from the Placement to US Venture Partners. "OVION VC Contacts" shall be those entities designated as "OVION VC Contact" on Schedule B of this contract. Schedule B may be updated from time to time by Ovion in its sole discretion; provided, however, that once an entity is designated as an "OVION VC Contact" on schedule B, such designation may not be removed without the consent of MRA. MRA shall receive no fees for any entity that is not either an MRA Contact or an Ovion VC Contact.

(b) MRA Contacts shall not include (i) current OVION investors and (ii) parties being actively solicited directly by OVION. A complete listing of these two exclusion groups will be provided to MRA by OVION as soon as possible but not later than the signing of this contract and will be attached hereto as Schedule B. At OVION's sole discretion, it may authorize a switch of an investor listed on Schedule B to Schedule A, carrying with it the obligation to pay the fees outlined in Section 3(a) above or a mutually agreeable amount to be specifically listed on both Schedules A and B.

(c) If, during the term of this Agreement, OVION consummates a Placement other than a Placement involving a corporate partner, and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $225,000, then OVION shall pay to MRA a "Success Fee" equal to $225,000 less any fees payable to MRA pursuant to Section 3(a).

(d) If, during the term of this Agreement, OVION consummates a merger, acquisition or Placement involving a corporate partner (a "Corporate Transaction") within 90 days of the date hereof and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $125,000, then OVION shall pay MRA an "Advisory Fee" equal to $125,000 less any fees payable to MRA pursuant to Section 3(a). If, during the term of this Agreement, OVION consummates a Corporate Transaction between the 90th and the 180th day following the date hereof and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $225,000, then OVION shall pay MRA an "Advisory Fee" equal to $225,000 less any fees payable to MRA pursuant to Section 3(a). This Advisory Fee will be payable at the time of the initial closing of whatever financial event OVION does consummate.

MRA20845

(e)  OVION will be obligated to pay MRA the same cash fees outlined in Sections 3(a) and 3(b) on any debt or equity related financing entered into with an MRA Contact within the earlier of eighteen (18) months following the final closing of the current Placement or within eighteen (18) months after the termination of this contract

(f)  All payments due to MRA will be made within 10 days of the closing of the financing for which they are payable. Cash or equity will be made out directly to Musket Research Associates, Inc. unless otherwise specified

(g)  The Company will inform MRA immediately if, during the term of this agreement, it engages any additional finders on this Placement, including in such notice a complete description of any fee agreement with such additional finder. If, during the term of this agreement, the Company agrees to pay finders fees in excess of those described in this contract, the fees payable to MRA will be increased to the same level, at the sole discretion of MRA

## 4. Expenses

Whether or not the financing contemplated herein is consummated, the Company will reimburse MRA for its reasonable out-of-pocket expenses incurred from this financing, provided such expenses have been approved in advance by OVION, such approval to not be unreasonably withheld. An initial non-refundable payment of $10,000 as an advance against these expenses will be paid to MRA upon the execution of this contract. OVION-approved expenses incurred by MRA prior to closing will be submitted for reimbursement by OVION and should be paid within two weeks of receipt.

## 5. Equity Participation/ Fee Substitution

MRA will be allowed, in its sole discretion, to substitute not less than 25% of the cash fees owed to it by OVION, as per Section 3 above for equity or debt instruments in OVION, in whatever form and at whatever value as was paid by the investors contacted by MRA and for which the fees are payable; provided that MRA shall be bound be similar terms and conditions as such investors and provided further that such issuance to MRA or its designee(s) shall comply with applicable state securities laws and shall not preclude OVION's reliance on Rule 506 with respect to the financing. MRA hereby represents that it is an "accredited investor" as defined by Regulation D.

## 6. Press Releases

OVION will list MRA as participating placement agent in any description of this financing it issues directly (i.e, press release) and will use its own discretion to list MRA similarly in any further communications to the investment community regarding this financing.

## 7. Termination

This engagement may be terminated by OVION or MRA at any time without cause, upon 10 days written notice to that effect by the other party. However, MRA shall be entitled to the fees described in Sections 3, 4, and 5 above, in the event that, at any time prior to the expiration of 18 months after either the termination of this agreement or the final closing of the current Placement,

MRA20846

whichever is applicable, a loan, credit facility, or other investment is consummated by OVION with an MRA Contact at the time of termination

**8. Indemnification**

The Company agrees to indemnify MRA under the terms set forth in Exhibit 1, which is included herein by reference

Sincerely,

David B. Musket    7/22/04

David B. Musket
President
Musket Research Associates

Agreed and Accepted:

Jeff Callister    Date 7/29/04
President
Ovion Inc.

MRA20847

## SCHEDULE A

Approved by _____
Date _____

**OVION  Investors Eligible for Full MRA Fees**

[MRA will add names to this list as we screen applicable parties]

OVION VC Contacts – Partial Fees as Indicated
| | |
|---|---|
| De Novo | 3% Fee |
| Interwest | 3% Fee |
| Medventures | 3% Fee |
| Sprout | 3% Fee |
| USVP | 2% Fee |
| Versant | 3% Fee |
| Vertical Group | 3% Fee |

and all parties and entities affiliated with any group listed above

MRA20848

## SCHEDULE B

### OVION Investors NOT Eligible fo Full MRA Fees

**All existing OVION Investors**

**OVION VC Contacts – 2% Placement Fee to MRA**

| OVION VC Contact (including affiliates thereof) | OVION Approval | MRA Approval |
|---|---|---|
| US Venture Partners | WST | |

**OVION VC Contacts – 3% Placement Fee to MRA**

| OVION VC Contact (including affiliates thereof) | OVION Approval | MRA Approval |
|---|---|---|
| De Novo | WST | |
| Interwest | WST | |
| Sprout | WST | |
| Versant | WST | |
| Vertical Group | WST | |

MRA20849

## EXHIBIT 1

Ovion Inc ("OVION") agrees to indemnify and hold harmless Musket Research Associates, Inc. ("MRA") and each of MRA's officers, directors, agents, employees and controlling persons (within the meaning of each of Section 20 of the Securities Exchange Act of 1934, as amended, and Section 15 of the Securities Act of 1933, as amended)(each of the foregoing, including MRA, being hereinafter referred to as an "Indemnified Person") to the fullest extent permitted by law from and against any and all losses, claims, damages, expenses (including reasonable fees and disbursements of counsel), actions (including shareholder derivative actions), proceedings, investigations (whether formal or informal, or in tort, contract or otherwise), inquiries or threats thereof (all of the foregoing being hereinafter referred to as "Liabilities"), based upon, relating to or arising out of MRA's engagement hereunder or any Indemnified Person's role therein including, without limitation, any liabilities relating to or arising out of the engagement by OVION of any other financial advisor or investment banker: provided, however, that OVION shall not be liable under this paragraph to the extent that it is finally judicially determined by a court of competent jurisdiction that such Liabilities resulted from the willful misconduct or gross negligence of the Indemnified Person seeking indemnification  In connection with OVION's obligation to indemnify for expenses as set forth above, OVION further agrees to advance or reimburse each Indemnified Person for such expenses (including reasonable fees for counsel) as they are incurred by such Indemnified Person:  provided, however, that if any Indemnified Person is reimbursed hereunder for any expenses, such reimbursement of expenses shall be refunded by the Indemnified Person who received such expenses to the extent it is finally judicially determined by a court of competent jurisdiction that the Liabilities in question resulted from the willful misconduct or gross negligence of such Indemnified Person.

Each Indemnified Party shall, upon the service of a summons or other initial legal process upon it in any action or suit instituted against it or upon its receipt of written notification of the commencement of any investigation or inquiry of, or proceeding against, it or upon its receipt of other written notification of the assertion against it of any Liabilities, such Indemnified Party will promptly give written notice (hereinafter the "Notice") thereof to OVION (provided that delay in giving such notice shall not relieve OVION of its indemnification obligations hereunder except to the extent, if at all, that it shall have been prejudiced thereby)  OVION shall be entitled, if it so elects within fifteen days after receipt of the Notice, by giving written notice (hereinafter the "Defense Notice") to the Indemnified Party, to assume the entire defense of such Liabilities, in which event such defense shall be conducted at the expense of OVION by counsel chosen by it and reasonably satisfactory to the Indemnified Party; provided, however, that if the Indemnified Party reasonably determines (i) that there may be conflict between the positions of OVION and the Indemnified Party in conducting the defense of such Liabilities or (ii) that there may be legal defenses available to the Indemnified Party different from or in addition to those available to OVION, then counsel for the Indemnified Party shall be entitled to participate in such defenses, or conduct the defense to the extent reasonably determined by such counsel to be necessary to protect the interests of the Indemnified Party, and such participation in or separate conduct of such defense shall be covered by the indemnification by OVION hereunder. In any event, any  Indemnified Party shall retain the right to participate in the defense of any Liabilities with separate counsel, where the defense of such Liabilities has been assumed by OVION in accordance with the provisions hereof and the circumstances described in clauses (i) or (ii) of the above proviso are not present, but the Indemnified Party shall bear and be solely responsible for its own costs and expenses in connection with any such participation.

If the indemnification or reimbursement provided for hereunder is finally judicially determined by a court of competent jurisdiction to be unavailable to an Indemnified Person in respect to any Liabilities (other than as a consequence of a final judicial determination by such a court of willful misconduct or gross negligence of such Indemnified Person), then OVION agrees, in lieu of indemnifying such Indemnified Person, to contribute to the amount paid or payable by such Indemnified Person as a result of such Liabilities (i) in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by OVION on the one hand and by such Indemnified Person on the other from the transaction in connection with which MRA has been engaged, or (ii)  if (but only if) the allocation provided in clause (i) of this sentence is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of OVION and of such Indemnified Person: provided, however, that in no event shall the aggregate amount contributed by the

MRA20850

Indemnified Person exceed the amount of fees actually received by his or its affiliate or employer pursuant to such engagement. The relative benefits received or sought to be received by OVION on the one hand and by MRA on the other shall be deemed to be in the same proportion as (i) the gross proceeds raised in the transactions subject to this Agreement bears to (ii) the fees paid or payable to MRA hereunder.

MRA20851

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc., <br><br>         Plaintiff, <br><br>     v. <br><br> Ovion, Inc., <br> William S. Tremulis, and <br> Jeffrey P. Callister, <br><br>         Defendants. <br><br>--- <br><br> Ovion, Inc., <br><br>         Counterclaimant, <br><br>     v. <br><br> Musket Research Associates, Inc., <br> David B. Musket, and <br> Sue Ann Latterman, <br><br>         Counterdefendants. | Case No. 05-10416 MEL |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS NO GENUINE DISPUTE, PURSUANT TO L.R. 56.1**

# EXHIBIT B

FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS MAR 16 P 3: 53

BOSTON DIVISION    U.S. DISTRICT COURT
DISTRICT OF MASS.

COPY

| | |
|---|---|
| Musket Research Associates, Inc.<br><br>               Plaintiff,<br><br>   v.<br><br>Ovion, Inc., William S. Tremulis, and<br>Jeffrey P. Callister.<br><br>              Defendants. | No. 05 10416 MEL<br><br><br>FIRST AMENDED COMPLAINT FOR<br>BREACH OF CONTRACT, BREACH<br>OF THE COVENANT OF GOOD FAITH<br>AND FAIR DEALING, PROMISSORY<br>ESTOPPEL, QUANTUM MERUIT,<br>CONVERSION, FRAUD, NEGLIGENT<br>MISREPRESENTATION,<br>CONCEALMENT AND VIOLATION OF<br>MASSACHUSETTS GENERAL LAW<br>CH. 93A_____<br><br><br>JURY TRIAL DEMANDED |

FIRST AMENDED COMPLAINT

Plaintiff Musket Research Associates, Inc. alleges as follows:

## THE PARTIES

1.    Plaintiff Musket Research Associates ("MRA") is a Massachusetts corporation having its principal place of business in Cambridge, Massachusetts.

2.    On information and belief, Defendant Ovion, Inc. ("Ovion" or "Company") is a corporation organized and operating under the laws of the State of Delaware, with its principal place of business in San Mateo, California.

3.    Defendant William S. Tremulis is an individual who, MRA is informed and believes, resides in San Mateo County, California. Tremulis is one of the founders of Ovion.

4.    Defendant Jeffrey P. Callister is an individual who, MRA is informed and believes, resides in San Mateo County, California. Callister is one of the founders of Ovion.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because it is between citizens of different States and the matter in controversy exceeds the sum of $75,000.

6.    Venue lies with this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events and omissions giving rise to the action occurred in this judicial district.

## BACKGROUND

7.    Ovion is a start-up company that holds multiple patents for medical devices in the area of female permanent birth control. On several occasions prior to June 2004, Robert Hess, a director and major shareholder of Ovion, discussed his interest in having MRA, an investment banking firm, consider assisting Ovion in its financing activities. In

a series of meetings and conversations starting on or about June 6, 2004, Ovion requested MRA's assistance in soliciting investors in the Company culminating in a formal banking agreement dated July 21, 2004 and executed on July 29, 2004 between the two firms (the "Engagement Letter"). Ovion repeatedly highlighted its interest in utilizing MRA's extensive experience in medical device transactions and negotiating skills regarding financial structures, comments it reiterated multiple times during the course of MRA's engagement. A key part of MRA's decision to accept this assignment was Ovion's expressed view that its preferred financing method was a private placement of preferred stock. MRA made it clear to Ovion in their early discussions that it had no interest in being used as a "stalking horse" for a corporate transaction. Ovion represented that it had established communications with a small number of potential corporate partners but that it wanted to use the funds from the contemplated financing to build up its business before any such discussions would likely become serious. Language was added to the Engagement Letter to compensate MRA should "lightning strike" during the term of MRA's efforts.

8.    The Engagement Letter provided that, among other things, MRA would analyze the Company's market potential, would assist in the development of presentation and due diligence materials for solicitation of investors in the proposed private placement and would contact and manage relationships with qualified potential investors. In exchange, the Engagement Letter provided that Ovion would pay MRA as "finder's fees" seven percent of the cash proceeds of any private placement to newly introduced investors solicited by MRA and a lesser amount to a small number of investors with whom Ovion's founders had already had extensive discussions. Despite the preexisting relationships with these latter funds, MRA insisted on at least a partial fee structure as it expected its work product and negotiation skills to be integral to the process and the Company readily agreed.

9.    Neither the terms of the Engagement letter nor any other agreement by the

parties allowed Ovion to use MRA's research, presentation materials or other work product to solicit potential investors other than private placement investors, such as potential corporate partners.

10.    The Engagement Letter did state that Ovion might decide to pursue a merger, or acquisition with a corporate partner instead of a private placement and provided for the payment to MRA of an "advisory fee" if Ovion did so.  However, the provision for the payment of the advisory fee was conditioned on the parties' understanding that MRA's work product would not be used as part of any effort by Ovion to solicit corporate partners.  In other words, the advisory fee was in the nature of a "kill fee" to compensate MRA for work done on the private placement if that placement did not go forward, not a substitute for the finder's fee that MRA would have expected to be entitled to if its work product were used to solicit corporate partners.

11.    After the Engagement Letter was signed, MRA did substantial work for the Ovion venture.  In particular, MRA prepared budgets and forecasts, prepared extensive presentation and due diligence materials for use with potential private placement investors and developed numerous investor leads.  During this process, MRA repeatedly asked Ovion if private placement continued to be its main strategy.  At no time prior to or following the signing of the Engagement Letter did Ovion ever respond to any of these direct inquiries in a manner that suggested it was actively pursuing a corporate financing or acquisition path as an alternative to a traditional venture-type financing.  Ovion's representations to MRA about its intention to pursue financing by means of a private placement rather than a corporate partnership include, but are not limited to, the following:

- On or about June 8, 2004, Sue Ann Latterman—a principal of MRA who created much of MRA's work product for the Ovion engagement—met with Tremulis, Callister and Hess at the Ovion offices in San Mateo.  Tremulis and Callister assured Latterman that they wanted to do a venture financing because

they wanted to grow the company themselves;

- On or about June 15, 2004, Latterman, Tremulis and Callister had a meeting at the Ovion offices in San Mateo, in which MRA founder David Musket also participated by phone. Musket raised the issue of the different valuations that Ovion could get with a venture financing versus a corporate financing. Again, Tremulis and Callister stated that they wanted to develop Ovion's technology themselves and therefore wanted to do a venture financing;

- On or about August 3, 2004, Musket met with Callister, Tremulis, Dr. Keith Isaacson, one of Ovion's principal medical/scientific advisors, and a salesperson from Storz, a medical device company, in Newton, Massachusetts. At the meeting, the parties discussed the comparative merits of Ovion's technology, its competitive position, and the amount of clinical data required to validate the efficacy of Ovion's product. Callister and Tremulis gave no indication that they were interested in seeking a corporate partner prior to completing the clinical trials under discussion;

- On or about November 10, 2004 at the American Association of Gynecologic Laproscopists ("AAGL") conference held in San Francisco, Latterman asked Tremulis and Callister about a meeting they were going to have during the AAGL with Storz, a medical device company that could have been a potential corporate partner for Ovion. Tremulis and Callister assured Latterman that the only purpose of their meeting with Storz was to obtain equipment for Ovion's upcoming clinical trial and that they were not considering Storz as a corporate partner;

- On or about November 11, 2004, Musket met with Ovion during a Scientific Advisory Board dinner in San Francisco during which he specifically inquired if there had been any corporate activity during the AAGL meeting. Ovion's responses provided no indication that anything other than general informational

meetings had taken place or were being scheduled;

- On or about November 18, 2004, Musket and Latterman participated in a phone conference with Tremulis, Callister and Hess in which they discussed financing by means of private placement versus corporate partnership. Tremulis and Callister again assured Musket and Latterman that they wanted to do a private placement;

- On or about December 7, 2004, Latterman met with Tremulis, Callister and two venture capitalists for USVP at the USVP offices in Menlo Park, California. Musket participated by phone. Immediately after that meeting, Latterman, Tremulis, Callister and Hess had a further telephone call with Musket in which they discussed USVP's offer. Tremulis and Callister reiterated that they wanted to pursue a venture financing and not a corporate deal;

- On or about February 4, 2004, Latterman met with Tremulis, Callister and Hess at Ovion's offices in San Mateo to discuss a smaller round of venture financing. Tremulis and Callister reiterated to Latterman that they were committed to doing a venture financing-based deal.

12.    During the course of its engagement, MRA presented Ovion with several viable venture financing opportunities. Ovion received a term sheet from one venture firm and numerous other venture firms conducted extensive due diligence and, on information and belief, were contemplating making offers to Ovion. Both MRA and the venture firms in question expended considerable effort in pursuit of the venture financing opportunity with Ovion. Ovion chose not to pursue any of these deals. MRA's ability to do business with venture capitalists is highly dependent on the personal credibility of its principals. Ovion's refusal to pursue the venture deals that MRA was trying to facilitate has injured MRA's reputation within the venture capitalist community and negatively affected MRA's good will.

13.    MRA is informed, believes and thereupon alleges that Ovion was never

intending to genuinely pursue private placement opportunities but was using the possibility of a private placement as a stalking horse to lure MRA into conducting analyses and creating presentation and due diligence materials that Ovion could then use to pursue corporate partners. MRA is informed, believes and thereupon alleges that, unbeknownst to MRA, Ovion was actively pursuing corporate partners throughout the period when MRA believed that private placement was Ovion's preferred financing option and that Ovion concealed this fact from MRA knowing that MRA's interest in working on the financing was predicated on this being the only active financing effort. MRA is informed, believes and thereupon alleges that the venture financing options made available to Ovion during its discussions with potential corporate partners allowed it to improve its negotiating position with those potential partners. MRA is informed, believes and thereupon alleges that Ovion intentionally delayed the progress of venture financing efforts to advance its corporate discussions and/or circumvent the payment provisions of the Engagement Letter. Furthermore, MRA is informed, believes and thereupon alleges that Ovion used MRA's budgets, forecasts, presentation materials and other work product as an integral part of, and critical support for, its solicitation of corporate partners.

14. On or about February 17, 2005, slightly more than six months after the Engagement Letter was signed, Ovion announced to MRA that it was entering into a merger and acquisition deal with an unnamed corporate partner. Subsequently, Ovion told MRA that the Engagement Letter was terminated and that it owed MRA nothing under the terms of the Engagement Letter. In addition, despite the fact that MRA is operating under a valid non-disclosure agreement with Ovion—has refused to reveal the identity of its corporate partner (who, on information and belief, could confirm MRA's suspicion that MRA's work product was a critical part of Ovion's solicitation of and/or negotiations with them) or provide any details of the proposed transaction.

## FIRST CAUSE OF ACTION
### (Breach of Contract, against Defendant Ovion)

15.  MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 14, as if fully set out herein.

16.  MRA's agreements with Ovion, including the Engagement Letter and oral agreements reached between the parties did not permit Ovion to use MRA's work product to solicit non-private placement investors.

17.  Ovion has breached the terms of its agreements with MRA because it used MRA's work product to solicit and/or improve its ability to negotiate with a merger and acquisition partner.

18.  As a result of Ovion's breaches, MRA has suffered damages in an amount to be proven at trial.


## SECOND CAUSE OF ACTION
### (Breach of the Covenant Of Good Faith and Fair Dealing, against Defendant Ovion)

19.  MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 18, as if fully set out herein.

20.  The agreements between MRA and Ovion, including the Engagement Letter and oral agreements, contain implied covenants of good faith and fair dealing that obligated Ovion to perform the terms of those agreements fairly and in good faith and to refrain from any act that would deprive MRA of the benefits of those agreements.

21.  Ovion has breached the implied covenant of good faith and fair dealing by, among other things: (1) using MRA's work product to pursue a merger and acquisition deal instead of a private placement, and concealing the fact that it was doing so; (2) turning down and/or intentionally delaying viable private placement deals in order to pursue corporate partnership deals after it had represented to MRA that its preferred avenue of investment was venture financing; (3) refusing to pay MRA a finder's or advisory fee in relation to Ovion's proposed merger and acquisition deal; and (4) denying

that it has any obligation to pay the above-described fees under the terms of its agreements with MRA.

## THIRD CAUSE OF ACTION
### (Promissory Estoppel, against Defendant Ovion)

22.   MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 21, as if fully set out herein.

23.   Ovion promised MRA that it would be compensated for its efforts in helping Ovion attract investors.

24.   MRA reasonably relied on the foregoing promises and decided to dedicate resources to assisting Ovion.

25.   As a result of its reliance, MRA has suffered damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Quantum Meruit, against Defendant Ovion)

26.   MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 25, as if fully set out herein.

27.   MRA performed services at Ovion's request, including but not limited to preparing market analyses, budgets, forecasts, and presentation and due diligence materials for potential private placement investors.

28.   Ovion has not paid MRA for those services.

29.   As a result of Ovion's failure to pay, MRA has been damaged in an amount equal to the reasonable value of those services.

## FIFTH CAUSE OF ACTION
### (Conversion, against Ovion)

30.   MRA realleges and incorporates by reference herein each and every allegation

of Paragraphs 1 through 29, as if fully set out herein.

31.  At all times, MRA was the owner of the work product described in Paragraphs 8 and 11 above.  As described in Paragraph 9 above, the agreement between MRA and Ovion did not permit Ovion to use MRA's work product to solicit investors other than private placement investors.  Nonetheless, in or about October 2004, on information and belief, Ovion wrongfully converted MRA's work product by using it to solicit potential corporate partners.

32.  As a proximate result of Ovion's conversion, MRA has suffered damages in an amount to be proven at trial

33.  The above-described conduct of Ovion was willful, oppressive, fraudulent and malicious, and was intended to cause injury to MRA.  MRA is therefore entitled to an award of exemplary or punitive damages according to proof at trial.

## SIXTH CAUSE OF ACTION
### (Fraud, against all Defendants)

34.  MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 33, as if fully set out herein.

35.  As set forth in Paragraph 11, on numerous occasions Ovion, Tremulis and Callister represented to MRA that Ovion was not actively pursuing a corporate partner. Said representations were false when made or without a reasonable basis for believing them to be true in that, on information and belief, Ovion intended to or was actively pursuing corporate partners at the time of the representations.

36.  Ovion, Tremulis and Callister's representations were made with the intent of inducing MRA to prepare analyses, presentation materials and work product that could be used by Ovion to solicit corporate partners.

37.  MRA reasonably relied on Ovion, Tremulis and Callister's representations to prepare the analyses and presentation materials described above and to turn them over to

Ovion.

38.  As a proximate result of Ovion, Tremulis and Callister's misrepresentations, MRA has suffered damage in an amount to be proven at trial

39.  The above-described conduct of Ovion, Tremulis and Callister was willful, oppressive, fraudulent and malicious, and was intended to cause injury to MRA.  MRA is therefore entitled to an award of exemplary or punitive damages according to proof at trial.

## SEVENTH CAUSE OF ACTION
### (Negligent Misrepresentation, against all Defendants)

40.  MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 39, as if fully set out herein.

41.  Ovion, Tremulis and Callister negligently made the representations set forth in Paragraph 11 above.

42.  As a proximate result of Ovion, Tremulis and Callister's false representations, MRA has suffered damage in an amount to be proved at trial.

## EIGHTH CAUSE OF ACTION
### (Concealment, against all Defendants)

43.  MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 42, as if fully set out herein.

44.  As set forth in Paragraph 12, Ovion, Tremulis and Callister concealed from MRA the fact that Ovion was actively pursuing corporate partners and, on information and belief, that it was using MRA's work product as a critical part of the solicitation of those potential corporate partners.

45.  This information was material to MRA because, if MRA had known it, it would have pursued other ventures or would have demanded—as a condition for providing Ovion with its work product—that Ovion agree to pay MRA an advisory or

finder's fee with regard to investment in Ovion by corporate partners solicited with MRA's work product that was commensurate with the fees it expected to earn on the intended venture financing.

46.    As a proximate result of Ovion, Tremulis and Callister's misrepresentations, MRA has suffered damages in an amount to be proven at trial.

47.    The above-described conduct of Ovion, Tremulis and Callister was willful, oppressive, fraudulent and malicious, and was intended to cause injury to MRA.  MRA is therefore entitled to an award of exemplary or punitive damages according to proof at trial.

## NINTH CAUSE OF ACTION
### (Mass. Gen. L. ch. 93A, against Ovion)

48.    MRA realleges and incorporates by reference herein each and every allegation of Paragraphs 1 through 47, as if fully set out herein.

49.    At all times relevant hereto, MRA and Ovion were engaged in trade or commerce.

50.    Ovion's actions towards MRA, including but not limited to (1) using MRA's work product to pursue a merger and acquisition deal instead of a private placement, and concealing the fact that it was doing so; (2) turning down and/or intentionally delaying viable private placement deals in order to pursue corporate partnership deals after it had represented to MRA that its preferred avenue of investment was venture financing; (3) refusing to pay MRA a finder's or advisory fee in relation to Ovion's proposed merger and acquisition deal; and (4) denying that it has any obligation to pay the above-described fees under the terms of its agreements with MRA constitute unfair and deceptive acts or practices that occurred primarily and substantially in Massachusetts in violation of Mass. Gen. Laws ch. 93A, §§2 and 11.

WHEREFORE, Musket Research Associates, Inc. prays for judgment as follows

1.    For damages in a sum to be proved at trial;

2.    For punitive damages;

3.    For treble damages and reasonable attorneys' fees in connection with Defendants' violation(s) of Mass. Gen. Laws ch. 93A;

4.    For Musket Research Associates, Inc.'s costs of suit;

5.    For Musket Research Associates, Inc.'s reasonable attorney's fees; and

6.    For such other and further relief and the Court may deem just and proper.

Respectfully submitted,

MUSKET RESEARCH ASSOCIATES, INC.

By Its Attorneys,

*Lisa Gaulin*

ERIC J. MARANDETT (BBO No. 561730)
LISA GAULIN (BBO No. 654655)
CHOATE, HALL & STEWART LLP
Exchange Place
53 State Street
Boston, MA 02109-2804
Telephone:   617/248-5000
Facsimile:   617/248-4000

ARTHUR S. BEEMAN (*pro hac vice pending*)
PAMELA K. FULMER (*pro hac vice pending*)
MICHAEL L. GALLO (*pro hac vice pending*)
HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone:   415/434-1600
Facsimile:   415/217-5910

DATED: March 16, 2005

FIRST AMENDED COMPLAINT
-12-

3879364v1

1

## PROOF OF SERVICE

2          I, Lynda Willow, declare:

3          I am a resident of the State of California and over the age of eighteen years, and not a
party to the within action; my business address is Three Embarcadero Center, 7th Floor, San
4     Francisco, California 94111-4024. On March 18, 2005, I served the following document
described as **FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT,**
5     **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING,**
**PROMISSORY ESTOPPEL, QUANTUM MERUIT, CONVERSION, FRAUD,**
6     **NEGLIGENT MISREPRESENTATION, CONCEALMENT AND VIOLATION OF**
**MASSACHUSETTS GENERAL LAW CH. 93A**

7
          ☐     by transmitting via facsimile the document(s) listed above to the fax number(s)
8                set forth below on this date before 5:00 p.m.

9          ☐     by placing the document(s) listed above in a sealed envelope with postage
                 thereon fully prepaid, in the United States mail at San Francisco, California
10               addressed as set forth below.

11         ☒     by causing personal delivery by First Legal of the document listed above to the
                 persons at the address set forth below.
12
          ☐     by placing the document(s) listed above in a sealed _____
13               envelope and affixing a pre-paid air bill, and causing the envelope to be
                 delivered to a _____ agent for delivery
14
          ☐     by personally delivering the document(s) listed above to the person(s) at the
15               address(es) set forth below.

16
Ovion, Inc.
17   Steven Tremulis
Jeffrey Callister
18   c/o Joseph Chu
Wilson Sonsini Goodrich & Rosati
19   A Professional Corporation
650 Page Mill Road
20   Palo Alto, CA 94304
Phone | 650-493-9300
21   Fax | 650-493-6811

22         I am readily familiar with the firm's practice of collection and processing
correspondence for mailing. Under that practice it would be deposited with the U.S. Postal
23   Service on that same day with postage thereon fully prepaid in the ordinary course of
business. I am aware that on motion of the party served, service is presumed invalid if
24   postal cancellation date or postage meter date is more than one day after date of deposit for
mailing in affidavit.
25
          I declare under penalty of perjury that the foregoing is true and correct. Executed at
26   San Francisco, California on March 18, 2005.

27                                            _Lynda Willow_
                                              Lynda Willow
28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

---

PROOF OF SERVICE

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ovion, Inc., <br> William S. Tremulis, and <br> Jeffrey P. Callister, <br><br> Defendants. <br> ――――――――――――――――― <br> Ovion, Inc., <br><br> Counterclaimant, <br><br> v. <br><br> Musket Research Associates, Inc., <br> David B. Musket, and <br> Sue Ann Latterman, <br><br> Counterdefendants. | Case No. 05-10416 MEL |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS NO GENUINE DISPUTE, PURSUANT TO L.R. 56.1**

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MUSKET RESEARCH ASSOCIATES, INC., | **No. 05 10416 MEL** |
| Plaintiff, | |
| v. | |
| OVION, INC., WILLIAM S. TREMULIS, and JEFFREY P. CALLISTER, | |
| Defendants. | |
| OVION, INC., | |
| Counterclaimant, | |
| v. | |
| MUSKET RESEARCH ASSOCIATES, INC., DAVID B. MUSKET, and SUE ANN LATTERMAN, | |
| Counterdefendants. | |

**MUSKET RESEARCH ASSOCIATES, INC.'S**
**SUPPLEMENTAL ANSWER TO OVION, INC.'S FIRST SET OF INTERROGATORIES**
**(1-2)**

Pursuant to Federal Rule of Civil Procedure 33, Musket Research Associates, Inc.

("MRA") hereby supplements its response to Ovion, Inc.'s First Set of Interrogatories (1-2) as

follows:

GENERAL OBJECTIONS

1.    MRA objects to each of the interrogatories to the extent that they seek

information protected from discovery by the attorney/client privilege, the work-product doctrine,

or other privilege. This General Objection is incorporated into each of the following responses

to Ovion, Inc.'s interrogatories, and the General Objection shall be deemed continuing as to each

interrogatory and is not waived, nor in any way limited, by the responses.

      2.      MRA objects to the Definitions and Instructions to the extent they seek to impose

upon MRA obligations that exceed those specified by the Federal Rules of Civil Procedure.

MRA will respond to the interrogatories as required by the Federal Rules of Civil Procedure.

RESPONSES TO INTERROGATORIES

      Subject to and without waiving the foregoing General Objections, MRA responds to the

individual interrogatories as follows:

Interrogatory No. 1

      Identify and describe in detail:

a.      all agreements and understandings between any of Ovion, Mr. Tremulis
and Mr. Callister on the one hand and any of MRA, Mr. Musket and
Ms. Latterman on the other hand;

b.      All documents and things relating to such agreements and understandings;
and

c.      All person (sic) with knowledge of such agreements and understandings.

Answer to Interrogatory No. 1

a.      Musket Research Associates, Inc. ("MRA") and Ovion, Inc. ("Ovion")

entered into an agreement dated July 21, 2004 and executed July 29, 2004 (the

"Engagement Letter"). The Engagement Letter speaks for itself.

      MRA executed the Engagement Letter based on the following agreements and

understandings with Ovion:

- Ovion would not pursue a potential corporate partner until after it had

  made a good faith effort to obtain venture financing.

- Ovion would not use MRA as a "stalking horse" for a corporate

- 2 -

transaction.

- Ovion would not use MRA's research, presentation materials, or other work product to solicit or negotiate with potential corporate partners.

- Ovion would inform MRA if a corporation offered to acquire, fund, or partner with Ovion to assist in the negotiation and financial analysis of any offer.

- Ovion would compensate MRA, commensurate with standard industry practice, to the extent that Ovion used MRA's research, presentation materials, or other work product to consummate a transaction with a corporate partner.

   b.  Objection: This interrogatory is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, MRA responds as follows:

     The Engagement Letter

     The Nondisclosure Agreement

   c.  Robert Hess

     Jeffrey P. Callister

     William S. Tremulis

     David B Musket

     Sue Ann Latterman

**Supplemental Answer to Interrogatory No. 1(a)**

Musket Research Associates, Inc. ("MRA") and Ovion, Inc. ("Ovion") entered into a

Nondisclosure Agreement dated June 17, 2004. The Nondisclosure Agreement speaks for itself.

Interrogatory No. 2

Identify and describe in detail:

a. all work product on (sic) produced for or on behalf of Ovion including
each person and the contribution of each person who contributed to the
work product;

b all work product that you contend has been used improperly or without
authorization by Ovion and how it was improperly used;

c all work product that you contend was used by Ovion in communications
or negotiations with AMS or was used by Ovion in relation to the merger
between Ovion and AMS;

d. your bases for contending that any of Ovion, Mr. Tremulis, and
Mr. Callister has used your work product improperly or without
authorization; and

e. all persons with knowledge of work product produced for or on behalf of
Ovion and all documents and things relating to such work product.

Answer to Interrogatory No. 2

Objection: This interrogatory is overly broad, unduly burdensome, and not reasonably

calculated to lead to the discovery of admissible evidence. Without waiving this objection, MRA

responds as follows:

a. MRA prepared budgets, forecasts, plans, due diligence materials, and presentation

materials on behalf of Ovion. Sue Ann Latterman was the MRA employee primarily involved in

developing this work product. Pursuant to Fed. R. Civ. P. 33(d), MRA will produce documents

containing the work product it developed on behalf of Ovion.

b. MRA contends that all of MRA's work product that was used by Ovion to solicit

- 4 -

or negotiate with American Medical Systems, Inc ("AMS") or any other potential corporate partner was used improperly and without authorization. MRA will supplement this response once it has completed discovery.

      c.    Such information is uniquely within the knowledge of Ovion and AMS. MRA will supplement this response once it has completed discovery.

      d.    If any work product was used to solicit potential corporate partners, it was done improperly and without authorization. MRA will supplement this response once it has completed discovery.

      e.    Pursuant to Fed. R. Civ. P. 33(d), MRA will produce (a) documents containing the work product it developed on behalf of Ovion, and (b) documents identifying the individuals who received this work product and who have knowledge thereof.

## Supplemental Answer to Interrogatory No. 2

Without waiving the objections set forth above, MRA states that MRA's work product, documents sufficient to identify the persons who contributed to the work product, and documents sufficient to identify the individuals with knowledge of MRA's work product are contained within the following Bates ranges of documents produced to Ovion:

Sue Ann Latterman Paper Files

| | |
|---|---|
| MRA00001-00157 | (Due Diligence Materials, Notes) |
| MRA00158-00167 | (Ovion VC List 2004) |
| MRA00168-00172 | (VC-Sprout) |
| MRA00173-00339 | (10/20/04 Advisory Opinion re: Ovion/Conceptus) |
| MRA00340-00366 | (Notes) |
| MRA00367-00433 | (Competition-Conceptus) |

MRA00434-00526        (Market Info)

MRA00528-00530        (Competition IUDs)

MRA00531-00553        (VC Due Diligence Package)

MRA00554-00671        (VC's)

MRA00672-00721        (Ovion Presentation Notes)

MRA00722-00736        (Competition-Adiana)

MRA00737-00758        (Ovion Financials)

MRA00759-01049        (Interference)

MRA01050-01098        (OBGYNS)

MRA01099-01150        (Presentations)

MRA01151-01210        (Patents)

MRA01256-01282        (Reimbursement)

MRA01283-01303        (Meeting Notes)

MRA01308-01319        (Legal Documents)

MRA01321-01327        (Lawsuit)

<u>Sue Ann Latterman Hard Drive</u>

MRA01331-01340        (Due Diligence Outline)

MRA01771-01817        (Drafts)

MRA01821-02227        (Financials)

MRA02239              (Market)

MRA02242              (MRA)

MRA02349              (Patents)

MRA02352-03112        (Presentations)

MRA03210-03233          (Reimbursement)

MRA03235-03982          (VC Materials)

MRA03984-04029          (VCs)

MRA E-Mails

MRA04030-05419          (Ovion)

MRA05486-05568          (Articles)

MRA05569-05666          (Business Docs)

MRA05667-07208          (Financials)

MRA07393-08017          (Competition)

MRA08018-08269          (Drafts)

MRA08279-08476          (Markets)

MRA08566-09091          (Presentations)

MRA09374-09554          (Reimbursement)

MRA09566-20601          (VC Emails)

The foregoing answers are based in part on the personal knowledge of the undersigned and in part on information gathered from MRA employee Sue Ann Latterman. Signed under the pains and penalties of perjury this 23 day of Jan , 2006 .

MUSKET RESEARCH ASSOCIATES, INC.

Name: David B. Musket
Title:   President

- 7 -

AS TO OBJECTIONS:

_____

Brooks A. Ames (BBO #641192)
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
100 Oliver Street
Boston, MA  02110-2613
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Arthur S. Beeman (admitted pro hac vice)
Pamela K. Fulmer (admitted pro hac vice)
DLA PIPER RUDNICK GRAY CARY US LLP
153 Townsend Street, Suite 800
San Francisco, CA  94107
(415) 836-2541 (*telephone*)
(415) 836-2501 (*fax*)

Dated:    1/23/06

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above
document was served upon the attorney of record
for each other party by mail (by hand) on 1/25/06
S~ A. A~          & e-mail attachment

- 8 -

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ovion, Inc., <br> William S. Tremulis, and <br> Jeffrey P. Callister, <br><br> Defendants. <hr> Ovion, Inc., <br><br> Counterclaimant, <br><br> v. <br><br> Musket Research Associates, Inc., <br> David B. Musket, and <br> Sue Ann Latterman, <br><br> Counterdefendants. | **Case No. 05-10416 MEL** |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS NO GENUINE DISPUTE, PURSUANT TO L.R. 56.1**

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MUSKET RESEARCH ASSOCIATES, INC., ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> OVION, INC., WILLIAM S. TREMULIS, ) and JEFFREY P. CALLISTER, ) <br><br> Defendants. ) | **No. 05 10416 MEL** |

| |
|---|
| OVION, INC., ) <br><br> Counterclaimant, ) <br><br> v. ) <br><br> MUSKET RESEARCH ASSOCIATES, INC., ) DAVID B. MUSKET, and ) SUE ANN LATTERMAN, ) <br><br> Counterdefendants. ) |

## MEMORANDUM IN SUPPORT OF MUSKET RESEARCH ASSOCIATES, INC.'S MOTION FOR ENTRY OF A SINGLE-TIER PROTECTIVE ORDER

I.    PRELIMINARY STATEMENT

In this case, Musket Research Associates, Inc. ("MRA"), a finder/advisor, seeks damages

from former client, Ovion, Inc., and its founders, William S. Tremulis and Jeffrey P. Callister

(collectively "Ovion"), based on Ovion's unfair and deceptive conduct in pursuing, and

eventually consummating, an acquisition by American Medical Systems, Inc. ("AMS").

Throughout its engagement with Ovion, extending from July 2004 to Ovion's announcement of

the AMS deal in February 2005, MRA worked diligently to obtain venture financing for Ovion, preparing extensive presentation and due diligence materials, establishing contacts with potential funders, and conducting advanced discussions with venture capital firms. At the same time, Ovion secretly and actively pursued potential corporate buyers, including AMS. Two of MRA's central claims are that (1) Ovion deliberately misled MRA about its pursuit of merger and acquisition opportunities with AMS and other corporations to induce MRA's services and that (2) Ovion unjustly enriched itself by using MRA's work product to sell itself to AMS without properly compensating MRA. Without justification, Ovion has frustrated MRA's ability to review and discuss with counsel documents that go to the heart of these claims by designating them "Outside Counsel Eyes Only."

To expedite discovery, MRA and Ovion agreed to treat information they exchanged in the litigation as attorneys' eyes only pending the Court's entry of an appropriate protective order. Pursuant to this informal interim agreement, Ovion produced 22,690 pages of documents, designating 13,236 of those documents "Outside Counsel Eyes Only," thus placing more than half of its production, some 58% of its documents, outside the reach of MRA. See Affidavit of Karlyn Gould ("Gould Affidavit"). Despite demands by MRA, Ovion has refused to remove the "Outside Counsel Eyes Only" designations and has insisted on defining that term so liberally in its proposed order as to effectively rubber stamp its designations.

Ovion has gone so far as to mark every single communication between it and AMS "Outside Counsel Eyes Only." As a result of this tactic, David B. Musket ("Musket") and Sue Ann Latterman ("Latterman"), MRA's president and principal employee respectively, and the individuals responsible for preparing work product on behalf of Ovion, have not been able to review the documents Ovion shared with AMS to identify MRA's work product. In addition,

- 2 -

counsel for MRA has been unable to communicate with MRA basic facts underlying Ovion's pursuit of AMS and other potential corporate buyers.

The extraordinary restrictions imposed by an "Outside Counsel Eyes Only" protective order are not warranted in this case. Ovion and MRA are not competitors and thus Ovion does not risk any injury as a result of disclosing confidential information to MRA. In fact, as the former finder/advisor for Ovion, MRA was given access pursuant to a nondisclosure agreement to much of the information that Ovion now seeks to mark off limits. Accordingly, a standard single-tier protective order, which prevents either party from disclosing confidential information to parties outside of the litigation, will adequately protect the parties' interests.

II.    BACKGROUND

A.    The Engagement

MRA is a small firm that specializes in securing venture financing for start-up companies. Musket is its founder and president and his principal employee is Latterman. In July 2004, pursuant to an engagement letter, MRA agreed to assist Ovion, a start-up medical device company, in securing venture capital financing, including preparing presentation and due diligence materials and managing relationships with potential investors. In turn, Ovion agreed to pay MRA a percentage commission of a successful venture financing. MRA entered into this agreement based on Ovion's representation that it preferred venture financing to being acquired by another corporation and under the understanding that Ovion would not use MRA as a "stalking horse" for a corporate transaction. Still, in the event that "lightning" struck and a corporation acquired Ovion in the following six months, Ovion agreed to pay MRA a minimum fee but not a percentage commission. It was understood, however, that Ovion would make a good faith effort to obtain venture financing before actively pursuing corporate financing and

that, in any event, Ovion would not use MRA's work product (i.e., presentation and due diligence materials) to solicit corporate partners.

Following the execution of the engagement letter, MRA prepared budgets, forecasts, and extensive presentation materials for use with potential venture capital investors. As part of this process, MRA requested documents from Ovion, which Ovion shared pursuant to a nondisclosure agreement between the parties. These documents included, but were not limited to, powerpoint presentations, draft business plans, and budgets. With a complete presentation and a comprehensive due diligence package in place, MRA actively pursued venture financing on Ovion's behalf, securing an offer of financing from venture firm USVP in December 2004, an offer which Ovion ultimately rejected. In addition to the USVP offer, MRA engaged in substantive discussions with other venture capital firms regarding potential investments in Ovion. During this process, MRA shared the materials it had developed for venture investors with Ovion, with the understanding that Ovion would not use this work product to pursue corporate financing.

In February 2005, shortly after the minimum fee provision expired, and while MRA was involved in advanced discussions with venture capital firms regarding Ovion, Ovion informed MRA that it had entered into a letter of intent to be acquired by AMS, a medical device company, and that MRA was not entitled to any fees or commissions. Although not disclosed to MRA, Ovion had begun negotiating the terms of a merger and acquisition agreement with AMS as early as November 2004. The transaction was eventually consummated in June 2005.

In March 2005, MRA brought this lawsuit. MRA alleges that Ovion has violated its agreement with MRA by, among other things: (1) misleading MRA about its pursuit of

corporate, as opposed to venture financing, and (2) using MRA's work product to solicit, and negotiate an agreement with AMS.

B.    Protective Order Negotiations and Compliance with Local Rule 37.1

Early on in this case, counsel for Ovion requested that all information exchanged in the litigation be treated as attorneys' eyes only pending the negotiation of a stipulated protective order. In the interest of expediting discovery, counsel for MRA agreed to this informal interim agreement. On August 25, 2005, after attending the initial scheduling conference, counsel for Ovion indicated that Ovion would provide MRA with a draft protective order by the end of the next week. On September 22, four weeks later and after the parties had sent out responses to written discovery, Ovion forwarded a draft protective order to counsel for MRA, following up with a revised version the following day. Copies of these draft orders, and subsequent revisions, are attached as Exhibit A. Pursuant to an amended pre-trial schedule filed with the court, the parties had agreed to exchange written responses to discovery requests on September 22 and responsive documents on September 29.

Ovion's Proposed Order provided for two levels of protection: "Confidential Information" and "Confidential-Outside Counsel Eyes Only Information." Ovion defined those terms as follows:

> The term "Confidential Information" shall mean information that the designating party reasonably and in good faith believes constitutes (1) trade secrets, (2) confidential or proprietary (e.g., technical, research, development, commercial, financial, budgeting, and/or accounting) information, or (3) information invasive of an individual's privacy interests, which is not publicly known and which cannot be ascertained from an inspection of publicly available documents and materials.
>
> The term "Confidential–Outside Counsel Eyes Only Information" shall mean information that the designating party reasonably and in good faith believes meets the qualifications of section 2(a) above and is information of the designating

party, which, if disclosed to persons described in section 6(d) below, (1) would
likely disturb the designating party's competitive, economic, or general business
interests, (2) would likely reveal information that the designating party is under a
contractual or legal obligation to protect from disclosure, or (3) would be invasive
of an individual's privacy interests.

Under Ovion's proposed order, neither MRA's president, Musket, nor its principal employee,

Latterman, would be permitted to review information designated "Confidential-Outside Counsel

Eyes Only Information."

After counsel for MRA received this proposed order, Ovion indicated it would be unable

to produce documents on September 29, as called for by the pre-trial schedule. As a courtesy,

MRA extended the time for production until October 6, but Ovion was also unable to meet this

deadline. A new deadline was not set because Ovion was unable to provide any certainty as to

when it could produce documents.

On October 7, MRA provided Ovion with a revised protective order that, among other

changes, defined "Confidential Information" and "Confidential-Outside Counsel Eyes Only

Information" more restrictively.[1] At this time, the parties had not yet exchanged documents.

MRA's proposed language reads as follows:

The term "Confidential Information" shall mean information that the designating
party reasonably and in good faith believes constitutes information of the most
sensitive nature, which if disclosed would reveal significant technical or business
advantages of the producing party and which includes subject matter that is
believed to be unknown to the opposing party or parties, or any of the employees
of the corporate parties.

The term "Confidential – Outside Counsel Eyes Only Information" shall mean
information that the designating party reasonably and in good faith believes meets
the qualifications of section 2(a) above and is information of the designating

---

[1] This revision was sent to Ovion's counsel as a "redline" document. However, for technical reasons,
Ovion did not receive it as "redline" but rather as a new draft.

- 6 -

party, which, if disclosed to persons described in section 6(d) below, would create a substantial risk of injury to the designating party that could not be avoided by less restrictive means.

On October 11, counsel for MRA and counsel for Ovion conducted a telephone conference to discuss MRA's revisions and possible compromise language. Counsel for MRA indicated that MRA felt strongly about defining "Confidential--Outside Counsel Eyes Only Information" strictly. Counsel for MRA suggested that counsel for Ovion incorporate any proposed changes into a revised order for MRA's review.

On October 12, after receiving confirmation from Ovion that it was prepared to exchange documents, MRA extended the time for production originally set for September 29 to October 13, and, on October 13, Ovion and MRA exchanged documents. Ovion produced 22,690 pages of documents, designating 13,236, or 58% of its production, as "Outside Counsel Eyes Only." See Gould Affidavit. Ovion produced only a handful of documents that had not been designated either "Confidential" or "Confidential-Outside Counsel Eyes Only."

On October 28, counsel for MRA and counsel for Ovion conducted a telephone conference regarding MRA's designations. In that conference, counsel for MRA challenged Ovion's sweeping use of the "Confidential-Outside Counsel Eyes Only" designation. Counsel for MRA further indicated that MRA could not agree to a protective order that would set an unreasonably low bar for what information could be designated "eyes only." In addition, counsel for MRA indicated that MRA intended to move for relief if Ovion did not remove its designations. Following the conference, counsel for Ovion forwarded a further revision to the proposed protective order to counsel for MRA. That revision read, in part, as follows:

The term "Confidential Information" shall mean information that the designating party reasonably and in good faith believes constitutes information which if disclosed: (1) would reveal trade secrets, confidential or proprietary information, or technical or business advantages, (2) would violate a legal or contractual

- 7 -

obligation of the designating party to protect from disclosure, or (3) would be invasive of an individual's privacy interests.

The term "Confidential – Outside Counsel Eyes Only Information" shall mean information that the designating party reasonably and in good faith believes constitutes information which, if disclosed to persons described in section 6(d) below, (1) would reveal trade secrets, confidential or proprietary information, or technical or business advantages, (2) would violate a legal or contractual obligation of the designating party to protect from disclosure, or (3) would be invasive of an individual's privacy interests.

On October 31, counsel for MRA sent counsel for Ovion a letter following up on the October 28 conference. In that letter, counsel for MRA indicated that MRA was not satisfied with Ovion's designations or with Ovion's revised order and intended to move for relief. On November 1, counsel for Ovion responded in an e-mail that the letter failed to accurately reflect the October 28 conference and requested a further meet and confer. On November 1, counsel for MRA replied in a return e-mail that the parties appeared to have a fundamental disagreement over what documents should be designated "Outside Counsel Eyes Only" and how a protective order should define that term. Counsel for Ovion has not responded to that e-mail. The correspondence between counsel is attached hereto as Exhibit B.

C.    The "Outside Counsel Eyes Only" Designations

Ovion has designated 13,236 documents "Outside Counsel Eyes Only." See Gould Affidavit. These include the following, representative samples of which are attached as Exhibit C:

- Materials that Ovion used to solicit potential investors, e.g., powerpoint presentations, business plans, budgets, and forecasts. Images used in powerpoint presentations including multiple pictures of Ovion's headquarters.

- All internal Ovion memorandum, e.g., memorandum documenting Ovion's pursuit of venture and corporate financing, minutes from Ovion's board of directors meetings, travel itineraries.

- 8 -

- All e-mails, and other correspondence, exchanged between Ovion and AMS, e.g., e-mails confirming meetings and telephone conferences, e-mails referring to the attachment of business plans and financials, e-mails documenting the negotiation of a merger and acquisition agreement, and of a "Mutual Confidentiality Agreement" between Ovion and AMS.

- All e-mails, and other correspondence, exchanged between Ovion and potential corporate buyers, e.g., e-mails confirming meetings and telephone conferences, e-mails referring to the attachment of presentation materials, e-mails referring to proposed acquisition terms.

- All e-mails, and other correspondence, exchanged between Ovion and its medical director Dr. Keith Isaacson, e.g., e-mails documenting the beginning of Ovion's relationship with AMS.

- Almost every e-mail, and other correspondence, excepting correspondence copied to MRA, exchanged between Ovion and potential venture capital investors, e.g., e-mail correspondence with USVP concerning MRA, e-mail correspondence with USVP concerning potential funding, the term sheet provided by USVP to Ovion.

- Selected e-mail correspondence involving <u>both</u> Ovion and MRA, e.g., e-mail from Latterman to Ovion, e-mail from Latterman with cc's to Ovion.

## III.    ARGUMENT AND AUTHORITY

### A.    A Two-Tiered Protective Order is Unnecessary In This Case

Under Ovion's proposed order, Musket and Latterman would not be permitted to review the 13,236 documents designated "Outside Counsel Eyes Only" to identify documents containing MRA's work product. Moreover, counsel for MRA could not share the information contained in the documents with MRA other than in a "very general way." There is no cause for such an extraordinary provision in this case.

Two tiered protective orders are rare, and are used predominantly in the trade secret and patent context, when the parties are competitors. See <u>Brown Bag Software v. Symantex Corp.</u>, 960 F.2d 1465, 1470 (9th Cir. 1992) (stipulated two-tiered protective order upheld because of the "potential damage . . . should the trade secrets inadvertently become subject to misuse by" the

appellant, the appellee's competitor); <u>GTE Prods. Corp. v. Gee</u>, 112 F.R.D. 169, 170 (D.Mass.

1986) (limited "attorney's eyes only" protective order issued based on specific factual showing

to keep defendants from reviewing sensitive business information of their competitors). Here,

MRA does not compete with Ovion, nor does it compete with Ovion's merger partner, AMS. To

the contrary, MRA acted as a finder/advisor for Ovion in its efforts to obtain venture capital

financing. In this capacity, MRA was provided with much of the information that Ovion now

seeks to declare off limits to MRA. Thus, allowing MRA to see the relevant documents in this

case will not harm Ovion competitively and Ovion will not be unduly prejudiced by the entry of

a standard one-tiered protective order.

However, permitting Ovion to make "Outside Counsel Eyes Only" designations will

prejudice MRA. "District Courts must be . . . chary of issuing protective orders that restrict the

ability of counsel and client to consult with one another during trial or during the preparation

therefore." <u>Doe v. District of Columbia</u>, 697 F.2d 1115, 1119 (D.C.Cir. 1983). Here, Ovion has

designated "Outside Counsel Eyes Only" documents that go to the heart of MRA's claims in this

case. For instance, MRA alleges that Ovion misled it about its intent to pursue a corporate buyer

and misappropriated MRA's work product to solicit corporations. Yet Ovion has designated all

of its communications with AMS, the corporation partner it pursued during its engagement with

MRA, as "Outside Counsel Eyes Only." In doing so, Ovion has denied MRA the opportunity to

identify its work product and to understand the development of AMS and Ovion's relationship.

MRA cannot effectively prosecute its claims in the face of these restrictions; it must be permitted

to discuss with its counsel the key documents in the case. Moreover, to fulfill their ethical

duties, MRA's counsel must be able to communicate with their client about the significant

evidence in the case.

- 10 -

B.    Entry of a Two-Tiered Order Will Reward Ovion's Over-Designation

Protective orders that permit an "attorney's eyes-only" designation invite over-designation as a litigation tactic. See THK America, Inc. v. NSK Co. Ltd., 33 U.S.P.Q 2d 1248, 1255-1256 (N.D. Ill. 1993). In THK America, Inc., defendants in a patent infringement case produced 75,000 pages of documents and designated 39,000 of those documents as "attorney eyes-only." Id. at 1254. The Court, in allowing a motion for sanctions against the defendants, noted that the protective order "was intended to be used for extremely sensitive trade secrets and, thus, to be used sparingly." Id. at 1251. The Court, finding the defendants over-designation to be in bad faith, observed:

> Courts are too overburdened with heavy caseloads and backlogs to be taxed by parties engaging in uncooperative, dilatory, and obstructionist litigation tactics, or similar strategems designed to increase the litigation expenses of the opposing party. The risks for engaging in such conduct must be substantial in order to act as an effective deterrent.

Id. at 1256.

Like the defendants in THK America, Inc., Ovion has designated over half of its production as "Outside Counsel Eyes Only" (13,236 out of 22,690). See Gould Affidavit. Those designations include e-mails both to and from MRA, information previously disclosed to MRA, and e-mail communications with AMS setting up meetings with Ovion. None of this information remotely qualifies for "eyes only" protection. Ovion's sweeping use of the "Outside Counsel Eyes Only" designation has had the effect of delaying MRA's discovery and substantially increasing MRA's litigation costs. To enter a two-tiered order would reward Ovion's tactics by essentially rubber stamping the overreaching designations it has already made. Moreover, it would force MRA to individually challenge each of Ovion's 13,236 designations. This would be a waste of both MRA and the Court's resources.

- 11 -

C.    <u>A Single Tier Protective Order is Necessary And Appropriate In This Case</u>

Courts have broad discretion "to decide when a protective order is appropriate and what

degree of protection is required." <u>Baker v. Liggett Group, Inc.</u>, 132 F.R.D. 123, 125 (D.Mass.

1990) (citing <u>Seattle Times v. Rhinnart</u>, 467 U.S. 20, 36 (1984)). MRA's proposed order will

protect the confidentiality of the documents Ovion has designated "Outside Counsel Eyes Only"

by considering them as "Confidential." Under the terms of MRA's proposed order, confidential

documents are restricted to a) attorneys of records, b) experts, c) the Court, d) the parties, and

e) specifically qualified persons. The order further requires the parties to execute affidavit's

swearing to be bound by the terms of the order under the penalty of both sanctions and contempt.

CONCLUSION

The federal discovery rules are to be liberally construed and there are to be no

unnecessary restrictions on relevant discovery. MRA's proposed single tiered order is consistent

with this principle. It protects confidential information while at the same time freeing MRA to

review, and discuss with counsel, the documents that go to the heart of its case. Accordingly, the

- 12 -

court should enter a single-tiered protective order and permit MRA to review all of Ovion's

production subject to the order's restrictions.

        Respectfully submitted,

        MUSKET RESEARCH ASSOCIATES, INC.,
        DAVID B. MUSKET and
        SUE ANN LATTERMAN
        By their attorneys,


        Brooks A. Ames (BBO #641192)
        DLA PIPER RUDNICK GRAY CARY US LLP
        One International Place, 21st Floor
        100 Oliver Street
        Boston, MA 02110-2613
        (617) 406-6000 (*telephone*)
        (617) 406-6100 (*fax*)

        Arthur S. Beeman (admitted pro hac vice)
        Pamela K. Fulmer (admitted pro hac vice)
        DLA PIPER RUDNICK GRAY CARY US LLP
        153 Townsend Street, Suite 800
        San Francisco, CA 94107
        (415) 836-2541 (*telephone*)
        (415) 836-2501 (*fax*)

Dated: November 21, 2005

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above document was served upon the defendants' attorney of record by mail on November 21, 2005.

        Brooks A. Ames

- 13 -

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**BOSTON DIVISION**

| | |
|---|---|
| Musket Research Associates, Inc., | |
| Plaintiff, | |
| v. | |
| Ovion, Inc., William S. Tremulis, and Jeffrey P. Callister, | |
| Defendants. | **Case No. 05-10416 MEL** |
| Ovion, Inc., | |
| Counterclaimant, | |
| v. | |
| Musket Research Associates, Inc., David B. Musket, and Sue Ann Latterman, | |
| Counterdefendants. | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO**
**WHICH THERE IS NO GENUINE DISPUTE, PURSUANT TO L.R. 56.1**

# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MUSKET RESEARCH ASSOCIATES, INC.,     ) | **No. 05 10416 MEL** |

MUSKET RESEARCH ASSOCIATES, INC.,     )

    Plaintiff,     )

    v.     )

OVION, INC., WILLIAM S. TREMULIS,     )
and JEFFREY P. CALLISTER,     )

    Defendants.     )

_____)

OVION, INC.,     )

    Counterclaimant,     )

    v.     )

MUSKET RESEARCH ASSOCIATES, INC.,     )
DAVID B. MUSKET, and     )
SUE ANN LATTERMAN,     )

    Counterdefendants.     )

_____)

## PLAINTIFF AND COUNTERDEFENDANTS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

    Plaintiff and Counterdefendant Musket Research Associates, Inc. and

Counterdefendants David B. Musket ("Musket"), and Sue Ann Latterman ("Latterman"),

collectively ("MRA") oppose Defendants Ovion, Inc., William S. Tremulis ("Tremulis")

and Jeffrey P. Callister's ("Callister"), collectively ("Ovion") motion to compel responses

to interrogatories and production of documents because the requests are unduly

burdensome and call for the production of irrelevant information.

I.    PRELIMINARY STATEMENT

It should not be MRA's obligation to perform burdensome discovery that Ovion is

fully capable of undertaking at its own expense.  As described more fully below, the

documents MRA has provided to Ovion contain all the information necessary to ascertain

the answers to its interrogatories.  Ovion's insistence that MRA perform this work for it

is not supported by the rules of discovery.  As one magistrate judge ably put it:

> [Defendants] want this discovery but do not want to expend the effort and
> expense in procuring it.  *But the stated purpose of the rule* [former Rule 33(c)] *is*
> *to require the party seeking the discovery to expend the effort and expense to*
> *procure it . . . .* What [Defendants] are saying is that they do not like the Rule.

Petroleum Insurance Agency, Inc. v. Hartford Accident and Indemnity Company, 111

F.R.D. 318, 320 (1984).

For instance, despite the fact that MRA has produced every document Ovion

needs to identify MRA's work product and its authors (including the work product Ovion

improperly shared with American Medical Systems, Inc. ("AMS")), Ovion continues to

demand that MRA describe this work product "in detail," including "the contribution of

each person who contributed to the work product."  Given the volume of work product

produced by MRA, this would be an extremely time consuming and costly exercise.

Ovion's demand that MRA identify the MRA work product Ovion shared with

AMS is particularly unreasonable.  While MRA has produced all the documents Ovion

needs to identify this work product, Ovion has deliberately hidden the documents MRA

needs to identify the same work product, blatantly and improperly designating all Ovion

communications with AMS "Outside Counsel Eyes Only."  This tactic runs completely

counter to the rules which encourage "the just, speedy, and inexpensive determination of

every action."  See Fed.R.Civ.P. 1.  If Ovion wants MRA to identify the MRA work

product Ovion shared with AMS, Ovion need only remove its "Outside Counsel Eyes Only" designations.

The plain purpose of Ovion's demands is to increase MRA's litigation expenses while holding down Ovion's  This is true not only as to the interrogatories but also as to Ovion's request that MRA produce various third-party documents that have no relevance to this litigation  As described more fully below, MRA has responded appropriately to all of Ovion's discovery requests and no supplementation should be required.

II.     THE INTERROGATORIES

A.    Interrogatory 1 Will Be Supplemented Only As Previously Agreed.

Interrogatory No. 1(a) asks MRA to "identify and describe in detail . . . all agreements and understandings between any of Ovion, Mr. Tremulis and Mr. Callister on the one hand and any of MRA, Mr. Musket, and Ms. Latterman on the other hand."  In its answer, MRA identified the July 29, 2004 Engagement Letter.  MRA has agreed to supplement this answer to identify the Nondisclosure Agreement between the parties.  It is worth noting that MRA produced the Nondisclosure Agreement, which is signed by both parties, in its initial production on October 13, 2004, and identified the Nondisclosure Agreement in response to Ovion's Interrogatory 1(b)  Thus, Ovion's concern with this issue is overwrought.

Interrogatory No. 1(b) asks MRA to identify the "documents and things" relating to the agreements identified in Interrogatory No. 1(a)  Ovion complains that MRA must either identify additional documents in its answer to this interrogatory or "acknowledge that no documentary evidence supports [its] unfounded contentions."  Defendants Memorandum, 11. MRA rejects these choices  First, MRA reserves the right to

supplement its answer to this interrogatory after it has been permitted to view the

documents Ovion has withheld by improperly designating them "Outside Counsel Eyes

Only." Second, MRA states that its contentions are well founded on the fraudulent

representations that Ovion made both before and after the engagement began.

      B      Interrogatory 2(a) Is Unduly Burdensome.

      Interrogatory 2(a) asks MRA to "[i]dentify and describe in detail . . . all work

product produced for or on behalf of Ovion including each person and the contribution of

each person who contributed to the work product." Even if confined to documents

containing work product, this is a virtually impossible task given the volume of work

product MRA produced for Ovion and given the way in which MRA developed the work

product. Over the course of a more than six month engagement with Ovion, MRA

produced thousands of pages of budgets, forecasts, plans, due diligence materials, and

presentation materials on Ovion's behalf. For example, MRA prepared over a dozen

different PowerPoint presentations. MRA did not create this work product out of thin air

By necessity, it worked with materials provided by Ovion. For instance, in the case of

the PowerPoint presentations, some slides were provided by Ovion. However, as Ovion

is well aware, MRA added slides, subtracted slides, reordered slides, edited text, added

text, rearranged graphics, and generally put its mark on the presentation. Describing all

of these "contributions" for each of the different PowerPoint presentations is simply not

feasible. The situation is no different when it comes to describing Ovion's contributions

to other work product such as forecasts and budgets. In each case, MRA made multiple

revisions and additions to a working document.

Asking MRA to "describe in detail" all of its documentary work product is unreasonable. Asking MRA to "describe in detail" all of its non-documentary work product is impossible. MRA conducted hundreds of telephone conversations with doctors, venture capitalists, and others in the course of preparing due diligence materials for Ovion and in the course of soliciting investors on behalf of Ovion. In addition, MRA answered multiple different questions from venture capital investors in face to face meetings to promote Ovion. All of these communications constitute MRA's work product. It is simply not possible for MRA to identify and "describe in detail" this work product in a written response to an interrogatory.

C.     MRA Has Given Ovion the Records Necessary to Answer Interrogatory 2(a).

As argued above, it is unduly burdensome for MRA to identify and "describe in detail" all of the work product it produced on behalf of Ovion. Still, MRA has given Ovion the means to obtain the best answer, within reason, to this interrogatory. MRA has provided Ovion with all of the documents that contain its written work product. It has provided Ovion with the budgets, forecasts, plans, due diligence materials, and presentation materials it developed on Ovion's behalf. In addition, MRA has provided Ovion with the electronic "cover letters" that accompanied this work product as it passed through various stages of development. These cover letters clearly identify: (1) the original materials that Ovion sent to MRA; (2) the intervening drafts sent between MRA, Ovion, and others; and (3) the final work product that MRA sent to venture-capital investors. They are the "road map" that will allow Ovion to ascertain the answer to its interrogatory.

Moreover, MRA has gone further and provided Ovion with a reasonable way to

ascertain non-documentary work product.  MRA has provided the notes it took while

conducting due diligence conversations for Ovion and while promoting Ovion to venture

capital investors in meetings and on the telephone.  In addition, MRA has provided the

notebooks Latterman used to sketch out ideas concerning the PowerPoint presentations

and strategies for due diligence.  Finally, MRA has provided the running sheets on which

Latterman and Musket recorded their various contacts with venture-capital firms while

promoting Ovion.  This is where MRA's work product lies.  This is where Ovion will find

the answer to its interrogatory.

> D.    The Burden of Answering Interrogatory 2(a) Is Substantially the Same For
>        Ovion As It Is For MRA.

Identifying MRA's work product through review of the above-referenced

materials is no more burdensome on Ovion than it is for MRA.  It requires that Ovion

review and compare the final work product that MRA sent to venture-capital investors

with any earlier material that Ovion may have supplied.  This is the same process that

MRA would need to undertake to answer this interrogatory.  In these circumstances, the

rules recognize that the interrogating party should bear the burden of reviewing the

documents to find the answer.  See Fed.R.Civ.P. 33(d), 1970 Reporters Notes ("This

provision . . . places the burden of discovery on its potential benifittee.").  Therefore, the

Court should deny Ovion's motion to compel a further response to Interrogatory 2(a).

> E.    MRA Is Entitled to Discovery Before Answering Interrogatory 2(b-d).

Interrogatory 2(b-d) asks MRA to "[i]dentify and describe in detail" the

following:

- all work product that you contend has been used improperly or without authorization by Ovion and how it was improperly used;

- all work product that you contend was used by Ovion in communications or negotiations with AMS or was used by Ovion in relation to the merger between Ovion and AMS;

- your bases for contending that any of Ovion, Mr. Tremulis, and Mr. Callister has used your work product improperly or without authorization.

This is an example of a contention interrogatory whose answer should be deferred until the parties have completed discovery. The rules, including Fed.R.Civ.P. 11, recognize that a litigant may need discovery from opposing parties or third parties to gather and confirm the evidentiary basis for certain allegations. See 1993 Reporters Notes to Rule 11.

Here, Ovion deliberately concealed its communications and negotiations with AMS from MRA. As a consequence, MRA requires discovery to fully answer this interrogatory. Specifically, MRA needs access to the documents Ovion shared with AMS. Ovion has withheld these documents from MRA by designating them "Outside Counsel Eyes Only." And AMS, represented by Ovion's counsel, has refused to produce documents without an "Outside Counsel Eyes Only" designation. Without access to this information, it is unreasonable to require MRA to further answer this interrogatory.[1]

---

[1] Ovion's citation to certain trade secret cases is misplaced. See Defendants Memorandum, 15 n 1. These cases do not allow a party to withhold non-trade secret information on the grounds that disclosure will hurt the withholding party by helping their litigation adversary meet their proof. But that is exactly what Ovion has done. Ovion's real concern is that MRA will easily and convincingly identify MRA work product in the documents Ovion shared with AMS. To prevent this from happening, Ovion has set up obstacles. It has without justification designated all of Ovion's communications with AMS "Outside Counsel Eyes Only." And it has requested that MRA perform the burdensome and unnecessary task of describing "in detail" all of its "contributions" to thousands of pages of work product that have already been disclosed to Ovion. This is a blatant attempt to obstruct MRA's discovery of key evidence in the case and is not related

Deferring a further answer to this interrogatory does not prejudice Ovion. Ovion already has the information it needs to identify the MRA work product at issue. Unlike MRA, Ovion knows exactly which budgets, forecasts, plans, due diligence materials, and presentation materials it shared with AMS. In addition, because Ovion was copied on all work product MRA sent to venture-capital investors on Ovion's behalf, Ovion is also fully capable of identifying MRA work product within these materials. If Ovion did not actually use any of MRA's materials to solicit AMS, Ovion could easily demonstrate this by showing that none of the materials it shared with AMS overlap with the materials MRA provided to venture-capital investors.[2] Instead, Ovion has made hysterical charges about Musket and Latterman's probity and refused to allow them to see these documents. It is apparent that Ovion is the party resisting full discovery of the relevant facts in this litigation and not MRA.

III.    THE REQUESTS FOR PRODUCTION

    A.    Document Requests Nos. 2-4 Are Unduly Burdensome And Call For Irrelevant Information.

Document requests Nos. 2-4 request that MRA produce the following:

- all documents and things relating to any and all agreements, contracts, or engagement letters with a provision for an advisory fee payable to any of MRA, Musket, and Latterman. See Request No. 2.

---

to any legitimate concern over trade secrets. For instance, Ovion has not submitted a single affidavit attesting to any current "trade secrets" contained in the documents it shared with AMS.

[2] It is worth noting that in its Answer Ovion did not deny outright the allegation that it used MRA's work product in soliciting and negotiating with AMS. Instead, Ovion stated it was without knowledge or information sufficient to admit or deny the allegation. See Complaint, ¶14, Answer, ¶14. With all of MRA's documentary work product now in its possession along with the "cover letters," that is no longer a plausible answer if it ever was.

- all documents and things relating to any and all agreements, contracts, and engagement letters, from January 2000 to the present, whereby any of MRA, Musket, and Latterman was engaged, retained, or hired in connection with any proposed private placement of stock or any other financing effort. See Request No. 3.

- documents and things relating to any and all agreements, contracts, or engagement letters whereby any of MRA, Musket, and Latterman was engaged, retained, or hired in connection with any proposed placement, merger, acquisition or other financing effort involving a corporate partner. See Request No. 4.

These requests impose an undue burden on MRA and seek information that is not relevant to this case.

MRA has produced approximately 20,000 pages of documents in response to Ovion's requests for production. These documents represent all the materials "relating to" MRA's 2004 engagement with Ovion. To produce all documents "related to" the other engagements described would require MRA to multiply this production exponentially.

Ovion has failed to show why such an extensive collateral inquiry into MRA's agreements with third-parties is justified. Ovion argues that these agreements, and all documents "related" to them, are relevant to show that MRA only included "corporate transaction" or "advisory fee" provisions in those circumstances where it was aware that a corporate acquisition was a "distinct likelihood." But this is not the case. Production of these agreements and documents "related" to them would simply invite a lengthy and

ultimately unproductive inquiry into the specific facts and circumstances surrounding each particular agreement. Ovion already has all the documents related to the July 29 Engagement Letter. The fact that none of these documents demonstrate that MRA knew that a corporate transaction was a "distinct likelihood" should not give Ovion license to sift through MRA's agreements with third-parties. Those third-party agreements simply cannot shed light on the specific factual circumstances that led MRA to include "corporate transaction" and "advisory fee" provisions in this case. As the evidence will show, in this case those provisions were added in the event that "lightning struck."

     B.    <u>Document Request No. 9 Is Unduly Burdensome And Calls For Irrelevant Information.</u>

     Document request No. 9 requests "all documents and things related to any and all disputes regarding agreements, contracts, or engagement letters relating to services provided by any of MRA, Musket, and Latterman."

     These documents are not relevant. Ovion's theory of relevance is grounded on inflammatory and false accusations about MRA's business practices. Ovion alleges that the documents are necessary to show a pattern of extortion by MRA. Ovion chose not to make this accusation in its Answer and Counterclaim or in the initial conference before the Court. And Ovion has yet to disclose in its automatic disclosures or in subsequent supplementations to those disclosures a single individual or entity who has been "extorted" by MRA. Thus, it is hard to understand when and how Ovion came to discern a pattern of extortion. Until Ovion identifies a good faith basis for this accusation, the Court should deny this request.

C.    Document Requests Nos. 16 & 18 Are Unduly Burdensome And Call For
Irrelevant Information.

Document requests Nos. 16 & 18 ask for MRA to produce:

- all documents and things relating to any and all transactions involving

  ProMed and any party represented, engaged, retained, or hired by any of

  MRA, Musket, and Latterman. See Request No. 16

- all documents and things relating to any transactions involving both MRA

  and ProMed. See Request No. 18.

Like Request No. 9, the relevance of these requests depends on a baseless accusation and

therefore they should be denied.

## CONCLUSION

Ovion's requests go too far and should be denied. MRA should not be required to

further supplement its answers to interrogatories or to produce additional documents.

Respectfully submitted,

MUSKET RESEARCH ASSOCIATES, INC.,
DAVID B. MUSKET and
SUE ANN LATTERMAN

By their attorneys,

/s/ Brooks A. Ames
Brooks A. Ames (BBO #641192)
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
100 Oliver Street
Boston, MA  02110-2613
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Arthur S. Beeman (admitted pro hac vice)
Pamela K. Fulmer (admitted pro hac vice)
DLA PIPER RUDNICK GRAY CARY US LLP
153 Townsend Street, Suite 800
San Francisco, CA  94107
(415) 836-2541 *(telephone)*
(415) 836-2501 *(fax)*

Dated:  December 30, 2005

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ovion, Inc., <br> William S. Tremulis, and <br> Jeffrey P. Callister, <br><br> Defendants. <br> ──────────────── <br> Ovion, Inc , <br><br> Counterclaimant, <br><br> v. <br><br> Musket Research Associates, Inc., <br> David B. Musket, and <br> Sue Ann Latterman, <br><br> Counterdefendants. | Case No. 05-10416 MEL |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS NO GENUINE DISPUTE, PURSUANT TO L.R. 56.1**

# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MUSKET RESEARCH ASSOCIATES, INC., | ) | No. 05 10416 MEL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OVION, INC., WILLIAM S. TREMULIS, | ) | |
| and JEFFREY P. CALLISTER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| OVION, INC., | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MUSKET RESEARCH ASSOCIATES, INC., | ) | |
| DAVID B. MUSKET, and | ) | |
| SUE ANN LATTERMAN, | ) | |
| | ) | |
| Counterdefendants. | ) | |
| | ) | |

**MUSKET RESEARCH ASSOCIATES, INC.,
DAVID B. MUSKET AND SUE ANN LATTERMAN'S
RESPONSE TO OVION, INC.'S FIRST SET OF REQUESTS TO ADMIT (1-12)**

Pursuant to Federal Rules of Civil Procedure 36, Musket Research Associates, Inc.,

David B. Musket and Sue Ann Latterman (collectively "MRA") respond to Ovion, Inc.'s First

Set of Requests to Admit (1-12) as follows:

Request No. 1

Admit that MRA, Musket, and Latterman, individually and collectively, did not contact

or solicit AMS on behalf of Ovion or cause AMS to be contacted or solicited on behalf of Ovion.

<u>Response to Request No. 1</u>

Admitted.

<u>Request No. 2</u>

Admit that MRA, Musket, and Latterman, individually and collectively, did not communicate with AMS on behalf of Ovion.

<u>Response to Request No. 2</u>

Admitted.

<u>Request No. 3</u>

Admit that MRA, Musket, and Latterman, individually and collectively, did not set up any meetings between AMS and Ovion.

<u>Response to Request No. 3</u>

Admitted.

<u>Request No. 4</u>

Admit that MRA, Musket, and Latterman, individually and collectively, did not accompany Ovion or its representatives to any meeting with AMS or its representatives.

<u>Response to Request No. 4</u>

Admitted.

<u>Request No. 5</u>

Admit that MRA, Musket, and Latterman, individually and collectively, did not manage any discussions between Ovion and AMS.

<u>Response to Request No. 5</u>

Admitted.

Request No. 6

Admit that MRA, Musket, and Latterman, individually and collectively, did not coordinate the closing between Ovion and AMS.

Response to Request No. 6

Admitted.

Request No. 7

Admit that, as of the dates of the Complaint and the First Amended Complaint, MRA, Musket, and Latterman had no knowledge that Ovion was negotiating with AMS.

Response to Request No. 7

Admitted.

Request No. 8

Admit that, as of the dates of the Complaint and the Amended Complaint, MRA, Musket, and Latterman had no knowledge of the content or substance of any communications between Ovion and AMS.

Response to Request No. 8

Admitted.

Request No. 9

Admit that MRA, Musket, and Latterman, individually and collectively, did not prepare any budgets, forecasts, due diligence materials, presentation materials, or other work product for discussions, communications, or negotiations between Ovion and AMS.

Response to Request No. 9

Objection: This request is vague and ambiguous to the extent it fails to define what is meant by "for discussions, communications, or negotiations between Ovion and AMS." Without

- 3 -

waiving this objection, Musket Research Associates, Inc., David B. Musket, and Sue Ann Latterman (collectively "MRA") state as follows:

MRA admits that it did not prepare any budgets, forecasts, due diligence materials, presentation material, or other work product, with the intent or knowledge that Ovion would use these materials in discussions, communications, or negotiations between Ovion and AMS.

Request No. 10

Admit that MRA, Musket, and Latterman, individually and collectively, publicly disclosed by March 4, 2005 that Ovion was engaged in negotiations to merge with a corporate partner.

Response to Request No. 10

Objection: This request is vague and ambiguous to the extent that it fails to define what is meant by "publicly disclosed." Without waiving this objection, MRA states as follows:

MRA admits that on March 4, 2005 it filed a complaint in the United States District Court, District of Massachusetts, which alleges, among other things, that:

> On or about February 17, 2005, slightly more than six months after the Engagement Letter was signed, Ovion announced to MRA that it was entering into a merger and acquisition deal with an unnamed corporate partner.

Request No. 11

Admit that, if Ovion did not use your work product in relation to its communications negotiations, and merger with AMS, you are not entitled to compensation pursuant to the Engagement Letter.

Response to Request No. 11

Denied.

Request No. 12

Admit that, if Ovion did not use your work product in relation to its communications negotiations, and merger with AMS, you are not entitled to compensation pursuant to any agreement or understanding with any of Ovion, Mr. Tremulis, and Mr. Callister.

Response to Request No. 12

Denied.

Signed under the pains and penalties of perjury this 22nd day of September, 2005.

MUSKET RESEARCH ASSOCIATES, INC.

Name: DAVID B. MUSKET
Title: PRESIDENT

DAVID B. MUSKET

SUE ANN LATTERMAN

- 5 -

<u>Request No. 12</u>

Admit that, if Ovion did not use your work product in relation to its communications

negotiations, and merger with AMS, you are not entitled to compensation pursuant to any

agreement or understanding with any of Ovion, Mr. Tremulis, and Mr. Callister.

<u>Response to Request No. 12</u>

Denied.

Signed under the pains and penalties of perjury this 2 2 day of September, 2005.

MUSKET RESEARCH ASSOCIATES, INC.

Name:
Title:

DAVID B. MUSKET

SUE ANN LATTERMAN

- 5 -

AS TO OBJECTIONS:


_____

Brooks A. Ames (BBO #641192)
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
100 Oliver Street
Boston, MA  02110-2613
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Arthur S. Beeman (admitted pro hac vice)
Pamela K. Fulmer (admitted pro hac vice)
DLA PIPER RUDNICK GRAY CARY US LLP
153 Townsend Street, Suite 800
San Francisco, CA  94107
(415) 836-2541 (*telephone*)
(415) 836-2501 (*fax*)

Dated:  September 22, 2005


CERTIFICATION OF SERVICE
I hereby certify that a true copy of the above
document was served upon the attorney of record
for each other party by mail (by hand) on  9/22/05
_____

- 6 -

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc., <br><br> Plaintiff, <br><br>  v. <br><br> Ovion, Inc., <br> William S. Tremulis, and <br> Jeffrey P. Callister, <br><br> Defendants. <br> ——————————————— <br> Ovion, Inc., <br><br> Counterclaimant, <br><br>  v. <br><br> Musket Research Associates, Inc., <br> David B. Musket, and <br> Sue Ann Latterman, <br><br> Counterdefendants. | Case No. 05-10416 MEL |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS NO GENUINE DISPUTE, PURSUANT TO L.R. 56.1**

# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

Musket Research Associates, Inc.,

              Plaintiff,

     v.

Ovion, Inc.,
William S. Tremulis, and
Jeffrey P. Callister,

              Defendants.

**Case No. 05-10416 MEL**

Ovion, Inc.,

              Counterclaimant,

     v.

Musket Research Associates, Inc.,
David B. Musket, and
Sue Ann Latterman,

              Counterdefendants.

## AFFIDAVIT OF WILLIAM S. TREMULIS IN SUPPORT
## OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, William S. Tremulis, depose and say as follows:

1.     My name is William S. Tremulis. I make this affidavit on my own personal knowledge.

2.     I am one of the founders of Ovion, Inc. ("Ovion"). Jeffrey P. Callister is the other founder.

3.     In July, 2004, Ovion was a small company with a focus on minimally invasive alternatives to surgical sterilization.

4.      On July 29, 2004, Ovion retained Musket Research Associates, Inc. ("MRA") "as a nonexclusive finder/advisor" on the terms set forth in a written agreement dated July 21, 2004 (the "Engagement Letter").

5.      I understand that MRA now alleges that Ovion and MRA entered certain oral agreements or understandings. Specifically, I am informed that MRA now alleges that "MRA executed the Engagement Letter based on the following agreements and understandings with Ovion:

- Ovion would not pursue a potential corporate partner until after it had made a good faith effort to obtain venture financing.

- Ovion would not use MRA as a 'stalking horse' for a corporate transaction.

- Ovion would not use MRA's research, presentation materials, or other work product to solicit or negotiate with potential corporate partners.

- Ovion would inform MRA if a corporation offered to acquire, fund, or partner with Ovion to assist in the negotiation and financial analysis of any offer.

- Ovion would compensate MRA, commensurate with standard industry practice, to the extent that Ovion used MRA's research, presentation materials, or other work product to consummate a transaction with a corporate partner."

There were no such agreements or understandings between Ovion and MRA when the Engagement Letter was executed in July, 2004, or at any other time. Ovion made no such representations to MRA.

6.      Pursuant to the Engagement Letter, Ovion did agree to pay an "Advisory Fee" to MRA if a "Corporate Transaction" were consummated under the conditions set forth in the Engagement Letter, particularly Section 3(d).

7.      After Ovion and MRA executed the Engagement Letter, Ovion never engaged another "finder."

2

8.     After Ovion and MRA executed the Engagement Letter, no "MRA Contact" or "Ovion VC Contact" invested in Ovion, and none of Ovion's stock was placed with or sold to any of those entities.

9.     Ovion did not consummate a "Corporate Transaction" either during the term of the Engagement Letter or before the 180th day following the date of the Engagement Letter.

10.    On July 7, 2005, Ovion consummated a merger with and acquisition by American Medical Systems, Inc. ("AMS").

11.    On February 17, 2005, Ovion signed a letter of intent and agreed to negotiate exclusively with AMS.

12.    On February 17, 2005, Ovion informed MRA that Ovion had signed a letter of intent and agreed to negotiate exclusively with a potential corporate partner.

13.    On March 10, 2005, Ovion sent a letter to MRA terminating the agreement set forth in the Engagement Letter, pursuant to Section 7 of the Engagement Letter.

Signed under the penalties of perjury this 27th day of January, 2006.

William S. Tremulis