**[REDACTED] AFFIDAVIT OF JEFFREY P. CALLISTER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH EXHIBITS 1-14**

**C.A. No. 05-10416 (MEL)**

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc., <br><br>      Plaintiff, <br><br>    v. <br><br> Ovion, Inc., <br> William S. Tremulis, and <br> Jeffrey P. Callister, <br><br>      Defendants. <br> ──────────────────── <br> Ovion, Inc., <br><br>      Counterclaimant, <br><br>    v. <br><br> Musket Research Associates, Inc., <br> David B. Musket, and <br> Sue Ann Latterman, <br><br>      Counterdefendants. | **Case No. 05-10416 MEL** |

## AFFIDAVIT OF JEFFREY P. CALLISTER

I, Jeffrey P. Callister, depose and say as follows:

1.   My name is Jeffrey P. Callister. I make this affidavit on my own personal knowledge.

2.   I am one of the founders of Ovion, Inc. ("Ovion"). William S. ("Steve") Tremulis is the other founder.

3.   In June, 2004, Ovion was a small company with a focus on minimally invasive alternatives to surgical sterilization. I was the president and chief financial officer and Steve

Tremulis was the chief executive officer.  We both served on the board of directors.  Rob Hess was an outside member of the board of directors.  He was not an officer, agent, or employee of Ovion.  Through a trust, he and his wife owned some Ovion stock (on the order of 5% of the company's total capital stock).

4.      We were aware of two other companies working in this area:  Conceptus, Inc. ("Conceptus") and Adiana, Inc. ("Adiana").  Conceptus had a product on the market with FDA approval.  According to public reports, Adiana had made substantial progress towards FDA approval.

5.

REDACTED

6.

REDACTED

7.

REDACTED

2

REDACTED

8.

REDACTED

9.

REDACTED

10.

REDACTED

11.

REDACTED

12.

REDACTED

13.

REDACTED

14.

REDACTED

15.

REDACTED

16.

REDACTED

17.

REDACTED

18.

REDACTED

19.    I have reviewed the affidavits of Mr. Musket (Docket No. 56) and Ms. Latterman (Docket No. 57).  Neither affidavit is accurate.

20.    In June, 2004, Steve Tremulis and I met David Musket and Sue Ann Latterman of MRA.  During our initial meetings with Mr. Musket and Ms. Latterman, we informed them both that we had opened discussions with a number of venture capital firms and potential corporate partners.  We openly discussed these venture capital firms and corporations. We also discussed our viewpoints regarding the circumstances under which it would be advisable to engage in discussions with venture capital firms and potential corporate partners.  (*See* paragraph 6 above.) We also discussed that, as officers of the corporation, it was our fiduciary duty to make the best available deal.  Mr. Musket and Ms. Latterman both agreed.

21.    During these initial meetings, I explained that I preferred to remain involved with the development of our technology at least through FDA approval.  Steve Tremulis expressed that he did not feel as strongly about that point.  I did not state that I preferred to make a deal

with a venture capital firm as opposed to a corporate partner. Indeed, I had worked in research and development as an employee of several corporations, and I was comfortable developing our technology in the corporate environment.

22.    We did not state that we were not pursuing or would not pursue potential corporate partners. Likewise, we did not state that we preferred to make a deal with venture capitalists as opposed to a corporation. To the contrary, we stated that we intended to purse all viable options, including venture capital firms and corporate partners. Neither Mr. Musket nor Ms. Latterman discouraged us from pursuing corporate partners. Neither of them ever stated that they did not want to work with us if we were pursuing corporate partners.

23.    During one of our initial meetings, on or about June 16, 2004, Steve Tremulis and I met with Ms. Latterman and Mr. Musket, who participated by telephone. In his affidavit, Mr. Musket states:  "During this meeting, Callister said that a corporate acquisition would only happen if 'lighting struck,' and a company approached them with a deal too good to be refused." (Docket No. 56, ¶ 9.)  Mr. Musket also states:  "Section 3(d) [of the Engagement Letter] covering default minimum Advisory Fees in the case of a corporate transaction was added to the contract after the prospect of the 'lightning strike' scenario was discussed." (Docket No. 56, ¶ 16.)

24.    Mr. Musket's statements are not accurate. I did not make such a statement, and the provision for an advisory fee was not added until July 21, well after June 16. More specifically, Mr. Musket sent me a proposed engagement letter after the meeting on June 16, 2004. (*See* Exhibit 2.) This June 16 version did <u>not</u> include section 3(d) or any other provision for an advisory fee. (*Id.*) I sent him a revised version on June 30, 2004. (*See* Exhibit 3.) The June 30 version did <u>not</u> include section 3(d) or any other provision for an advisory fee. (*Id.*) Mr.

Musket  sent me another version on July 6, 2004.  (*See* Exhibit 4.)  The July 6 version did <u>not</u> include section 3(d) or any other provision for an advisory fee.  (*Id.*)  I sent him a revision on July 12, 2004.  (*See* Exhibit 5.)  The July 12 version did <u>not</u> include section 3(d) or any other provision for an advisory fee.  (*See* Exhibit 7.)  In the July 12 draft, one of our revisions was:

> [Schedule B may be] updated from time to time by Ovion ~~and accepted by MRA~~ [in its sole discretion] . . .

(*Compare* Exhibit 4 at MRA07239 (§ 3(a)) and Exhibit 7 at MRA20896 (§ 3(a)).)  This revision made it clear that Ovion was not obligated to update Schedule B.

25.     On July 13, 2004, Mr. Musket sent me an email stating:  "Changes are acceptable. . . . Since we are in agreement please sign where indicated, initial each page and fax a copy to me with a hard copy in the mail.  I will countersign yours when I receive it and do the same."  (*See* Exhibit 6.)  On July 14, 2004, I signed the contract, which was the same as the July 12 version, and on July 15, 2004, I sent it by fax and Fed Ex to Mr. Musket.  (*See* Exhibit 7.)

26.     Schedule B, as I sent it to Mr. Musket on July 15, 2004, had three sections where contacts were listed by name (in addition to identifying "All existing Ovion Investors" without listing them by name).  (*Id.* at MRA20898-99.)  The three sections were:

(1) "OVION VC Contacts – 3% Placement Fee to MRA"

(2) "OVION VC Contacts – Placement Fee to be negotiated"

(3) "OVION NON 'VC Contacts' – No Placement Fee to MRA"

(*Id* )  In the third section for "OVION NON 'VC Contacts' – No Placement Fee to MRA," I listed a number of contacts which were not venture capital firms.  (*Id.* at MRA20899.)  The list of OVION NON VC Contacts included three corporations:  Olympus, Storz, and Cytyc.  (*Id*.)

27.     Mr. Musket did not return a countersigned copy of the version of the engagement letter that I sent him on July 15, 2004.  On or about July 20, 2004, Mr. Musket and I discussed

the engagement letter again.  Mr. Musket asked to negotiate additional terms.  Among other things, he proposed that Ovion and MRA negotiate a fee for the venture capital firms listed in the second section of Schedule B ("OVION VC Contacts – Placement Fee to be negotiated"), thereby eliminating the second section.  On the other hand, Mr. Musket did not ask to negotiate specific fees for the contacts listed as OVION NON VC Contacts.  Rather, Mr. Musket proposed that the parties negotiate terms addressing under what circumstances MRA could receive compensation in the event of a transaction involving Ovion's contacts that were not venture capitalists, thereby eliminating the third section in Schedule B.  I told him to make a specific proposal and we would consider it.

28.     On July 21, 2004, Mr. Musket sent me another draft.  (*See* Exhibit 8.)  In the July 21 draft, Mr. Musket eliminated the section for "OVION NON VC Contacts" in Schedule B and added, for a first time, section 3(c) for a "Success Fee" and section 3(d) for an "Advisory Fee" in the event of corporate transaction.  (*Id.* at MRA07251-52.)  Because I was unavailable, Steve Tremulis took over the negotiations for Ovion at this point.  Mr. Tremulis sent Mr. Musket revisions to sections 3(c) and 3(d).  (*See* Exhibit 9.)  These revisions made it clear that section 3(c) applied to "a Placement other than a Placement involving a corporate partner" and that section 3(d) applied to a "Corporate Transaction."  (*Id.*)  Mr. Musket accepted these revisions and sent back the final version of the engagement letter.  (*See* Exhibit 10.)  This version was executed by both parties.  (*See* Exhibit 11; Defs.' State. Facts (Docket No. 49), Exhibit A.)

29.     As reflected by the final language of the Engagement Letter and by the negotiation of the Engagement Letter, both Ovion and MRA understood and accepted that Ovion could pursue both corporate transactions and non-corporate transactions, with or without MRA's assistance.  Likewise, both Ovion and MRA understood and accepted that Ovion could use the

8

services provided by MRA to pursue both corporate and non-corporate transactions. Ovion's use of MRA's services (and the product of those services) was not limited in any way. During all the discussions between Ovion and MRA before the Engagement Letter was executed, MRA never requested any limitation on Ovion's pursuit of a corporate transaction or on Ovion's use of MRA's services in pursuit of such a transaction, and we never offered or suggested any such limitations.

30.    Also, as reflected in the final language of the Engagement Letter, both Ovion and MRA understood and accepted that "Schedule B <u>may</u> be updated from time to time <u>by Ovion in its sole discretion</u>." (State. Facts (Docket No. 49), Exhibit A, § 3(b) (emphasis added).)   As discussed ab

31.

REDACTED

32.

REDACTED

33.

REDACTED

34.

REDACTED

REDACTED

35.

REDACTED

36.

REDACTED

37.

REDACTED

38.

REDACTED

REDACTED

39.

REDACTED

40.    Throughout our engagement with MRA, David Musket and Sue Ann Latterman were both aware that we were pursing both venture capital firms and corporations.  On occasion, we told both Mr. Musket and Ms. Latterman about our discussions with various corporations. For example, we told both Mr. Musket and Ms. Latterman that Cytyc had told us that, if we were ever close to signing a term sheet with a venture capital firm, Cytyc would like a week or so to negotiate with us before we signed the term sheet.  Neither Mr. Musket nor Ms. Latterman ever discouraged us from pursing potential corporate partners or indicated that we should not use any of the materials that we were using with the venture capital firms.

41.    On one occasion, Sue Ann Latterman expressed some interest in participating in our discussions with potential corporate partners.    Specifically, on October 21, 2004, Ms. Latterman sent us the following email, which she copied to Mr. Musket:

| From: | Sue Ann Latterman <sueann@mrave.com> |
|---|---|
| Sent: | Thursday, October 21, 2004 6.29 PM |
| To: | JCovien@aol.com, AutoGX@aol.com |
| Cc: | David Musket (dmusket@mrave.com) |
| Subject: | to do list |

Please send me info on the following:
1.   contacts at Olympus, Stortz and AMS
2.   current schedule for the AAGL meeting
3.   When you want to get together to discuss your thoughts on an acquisition...price, timing, etc. Please keep in mind that corporations usually move slower than VCs. It usually takes many many months to come to final terms with a potential corporate buyer. On the other hand, there can be the potential to negotiate some up front money from a corporation to have them show their 'honorable intentions' and to keep you from needing to raise money from somewhere else. This is a balancing act in that you don't want to string along the VCs if your real intent is to sell the company sooner than later and yet you have the fiduciary responsibility to yourself and your investors to make the best deal possible. Timing thus is crucial. If you fully believe that Olympus is serious at this time, we should push that forward now. I would be happy to call your contacts there to get a feel for what they are thinking and/or we could do a conference call with them. Please let me know your thoughts

Thanks...
Sue Ann

Sue Ann Latterman, VMD
Musket Research Associates
314 Joyce Way
Mill Valley, CA 94941
O: 415-383-3055
F: 415-383-3900
C: 415-672-4644

(*See* Exhibit 13.)

42.    Just a few minutes after receiving her email, I sent her an email and identified our principal contact at Storz (Craig Traub) and our principal contacts at Olympus:

| From: | JCovion@aol.com |
|---|---|
| Sent: | Thursday, October 21, 2004 6:33 PM |
| To: | sueann@mravc.com |
| Cc: | AutoGX@aol.com |
| Subject: | Fwd: for your calendars |
| Attach: | for your calendars (1 26 KB).msg |

Sue Ann,

Ovion's investigators meeting is Thursday, 7:00 to 10:00 PM. Note: from 8:00 to 10:00PM will focus solely on discussions per the Prehyst study and Pivotal study (i.e., what standard inner uterine pressure? type of inflation catheter? etc., etc...). I am not sure this would be of interest to you. If so, we will reserve a seat for you. At present there will be 12 doctors attending, along with Craig Traub from Storz. The other two lunches are set up for you!! If others might attend these lunches, let us know now so we can make the appropriate number of seating arrangements.

The contacts at Olympus are Thomas Prsecher (s?) PHD, and Paul Abrahm (s?)
Thomas oversee the Gynecology division and Paul is Head of business Dev. Paul is going to get the NDA going ASAP. I'll keep you abreast.

Jeff C

(*See* Exhibit 14.)  I did not know why Ms. Latterman asked about our contacts at AMS because we previously had told both Mr. Musket and Ms. Latterman about our phone call with Jim Call. At this point, Mr. Musket probably knew Jim Call better than we did.

43.    Notably, neither Mr. Musket nor Ms. Latterman discouraged us from pursuing a transaction with AMS, Storz, or Olympus, or suggested that any of those corporations should be added to Schedule B of the Engagement Letter.  (*See, e.g.*, Exhibit 13.)  Likewise, neither Mr. Musket nor Ms. Latterman discouraged us from using any of the materials that we were using with the venture capital firms.

44.

REDACTED

45.    To the best of my present knowledge, neither David Musket nor Sue Ann Latterman ever followed up with any of our corporate contacts or asked for any additional information about our corporate contacts.

13

46.     After the annual meeting of the American Association of Gynecologic Laparoscopists ("AAGL") in November of 2004, we told Mr. Musket and Ms. Latterman that several corporations seemed to be very interested in Ovion and its technology.

47.     Again, neither Mr. Musket nor Ms. Latterman discouraged us from pursuing a corporate transaction, or suggested that corporations should be added to Schedule B of the Engagement Letter, or discouraged us from using any of the materials that we were using with the venture capital firms.

48.     I have reviewed the statements in Mr. Musket's affidavit (Docket No. 56) and Ms. Latterman's affidavit (Docket No. 57). Their statements are not accurate, particularly their statements suggesting that we kept our pursuit of corporate partners a secret from them or that we misled them about our pursuit of corporate partners.

49.     As they knew at the time, we were serious about our pursuit of both venture capital firms and potential corporate partners. We invested a great deal of time and energy pursuing venture capital firms. Only one venture capital firm, U.S. Venture Partners ("USVP"), ever gave us a written term sheet. In our judgment at the time, terms of the letter of intent with AMS were superior to the USVP terms.

50.     I am aware that MRA has raised an issue relating to a legal opinion letter provided to Ovion by John McDonnell of the law firm of McDonnell Boehnen Hulbert & Berghoff in Chicago. Ovion paid Mr. McDonnell for the legal opinion. To the best of my understanding, nothing in that opinion letter reflects the analysis or work product of MRA or Ms. Latterman.

Signed under the penalties of perjury this 3rd day of March, 2006.

Jeffrey P. Callister

_Jeffrey P. Callister_  3/3/06

14

FILED UNDER SEAL PURSUANT TO LR 7.2

EXHIBIT 1 TO THE AFFIDAVIT OF JEFFREY P. CALLISTER IN
SUPPORT OF DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

C.A. No. 05-10416 (MEL)

AFFIDAVIT OF JEFFREY P. CALLISTER

# EXHIBIT 2

| | |
|---|---|
| **From:** | David Musket <dmusket@mravc com> |
| **Sent:** | Wednesday, June 16, 2004 5:45 AM |
| **To:** | JCovion@aol com |
| **Cc:** | rhess@dnai com; sueann@mravc com |
| **Subject:** | MRA Contract-Ovion |
| **Attach:** | Doc4 doc |

Jeff,

Thank you for your time today. Our discussion certainly helped frame the large market opportunity that appears to be within your grasp. Obviously, time is of the essence now as you look to build your team and advance your clinical program We look forward to completing our due diligence and moving forward on this financing in rapid fashion.

Attached please find a confidential draft of our standard Finder's Agreement We have eliminated our typical minimum fees in exchange for the partial fees on the 5 investors carved out on Schedule B.

The NDA will be faxed separately.

I look forward to our mutual success on this and future financings.

Best regards,
David

David B. Musket
Musket Research Associates, Inc
125 Cambridgepark Drive
Cambridge, MA 02140
617-441-0259 Fax 441-0855
dmusket@mravc.com

MRA07213

June 17, 2004

# CONFIDENTIAL

Jeff Callister
President
Ovion, Inc.
1900 O'Farrell Street
San Mateo, CA 94403

Dear Kevin:

This letter will confirm the agreement under which Musket Research Associates, Inc. ("MRA") is engaged by Ovion, Inc., or any affiliate of Ovion, Inc (collectively "OVION" or the "Company") to assist the Company as described below.

## 1. Engagement

OVION hereby engages and retains Musket Research Associates, Inc as a nonexclusive finder/advisor in connection with a proposed private placement of Convertible Preferred Stock of OVION, Inc, including any other debt or equity instrument arising out of this financing effort (the "Placement") which involves investors solicited by MRA during that effort. The specific services to be provided by MRA and fees to be received will be:

## 2. Services

(a) MRA shall (i) analyze the financial performance and projections of the Company and provide advice regarding the appropriate valuation range for the new equity capital; (ii) assist in the development of presentation materials for investor solicitations; (iii) contact qualified investors and, if acceptable to you or your representative, send the necessary documents ourselves or through your office. Documents sent by the Company at MRA's request should be accompanied by a cover letter and/or business card from MRA, or, if these are not available, a specific reference to our introduction; (iv) after appropriate screening, set up and accompany you to meetings with interested parties as often as scheduling allows; and (v) manage ongoing discussions and coordinate the closings with the investors solicited, or caused to be solicited by MRA.

(b) MRA acknowledges that the offering will be made pursuant to the private offering exemption from registration under Section 4(2) of the Securities Act of 1933 and Rule 506 promulgated thereunder, and that OVION securities are to be sold only to "accredited investors" (as defined in the SEC's Regulation D) who also satisfy any applicable securities laws Before each closing, OVION will validate these "accredited investors" via the traditional suitability questionnaire, copies of which will be provided to MRA upon request

(c) Prior to sending any descriptive materials to potential investors, MRA will provide OVION a list of these investors so that OVION can make the appropriate securities law filings, if any, in such jurisdictions MRA will send materials previously approved by OVION when cleared to do so

MRA07214

by a OVION representative and will not be responsible for assuring that such jurisdictional filings have been made beforehand. MRA will not make any general solicitation in connection with this financing and will conduct its obligations hereunder in a manner consistent with the requirements of Rule 506

(d) The potential investors contacted by MRA are subject to acceptance by OVION in its sole and absolute discretion, and OVION is under no obligation to sell any of its capital stock to such parties. MRA shall be deemed to be an independent contractor and shall have no right, power or authority to create any obligations on behalf of OVION

## 3. Cash Fees

(a) OVION agrees to pay MRA Finder's Fees of seven percent (7%) of the aggregate cash proceeds received by OVION from the Placement to parties solicited by or caused to be solicited by MRA ("MRA Contacts or MRA Investors"). MRA Contacts will be determined by the mailings made directly by MRA, at its request, or at the request of these solicited parties. MRA Contacts will be listed on Schedule A of this contract and will be updated as new mailings are authorized.

(b) Schedule A investors will specifically exclude (i) current OVION investors and (ii) parties being actively solicited directly by OVION. A complete listing of these two exclusion groups will be provided to MRA by OVION as soon as possible but not later than the time of signing of this contract and will be attached hereto as Schedule B. OVION will be capable of making additions to Schedule B once MRA has been engaged on this financing only after consultation with MRA. At OVION's sole discretion, it may authorize a switch of an investor listed on Schedule B to Schedule A, carrying with it the obligation to pay the fees outlined in Section 3(a) above or a mutually agreeable amount to be specifically listed on both Schedules A and B

(c) OVION will be obligated to pay MRA the same cash fees outlined in Sections 3(a) and 3(b) on any debt or equity related financing entered into with an investor listed on Schedule A within eighteen (18) months following the final closing of the current Placement or within eighteen (18) months after the termination of this contract

(d) All payments due to MRA will be made within 10 days of the closing of the financing for which they are payable. Cash or equity will be made out directly to Musket Research Associates, Inc. unless otherwise specified

(e) The Company will inform MRA immediately if it engages any additional finders on this Placement, including at such notice a complete description of any fee agreement with such additional finder. If the Company agrees to pay fees in excess of those described in this contract the fees payable to MRA will be increased to the same level, at the sole discretion of MRA

## 4. Expenses

Whether or not the financing contemplated herein is consummated, the Company will reimburse MRA for its reasonable out-of-pocket expenses incurred from this financing, provided such expenses have been approved in advance by OVION, such approval to not be unreasonably withheld. An initial non-refundable payment of $10,000 as an advance against these expenses will be paid to MRA upon the execution of this contract. OVION-approved expenses incurred by MRA prior to closing will be submitted for reimbursement by OVION and should be paid within two

MRA07215

weeks of receipt

## 5. Equity Participation/ Fee Substitution

MRA will be allowed, in its sole discretion, to substitute not less than 25% of the cash fees owed to it by OVION, as per Section 3 above for equity or debt instruments in OVION, in whatever form and at whatever value as was paid by the investors contacted by MRA and for which the fees are payable; provided that MRA shall be bound be similar terms and conditions as such investors and provided further that such issuance to MRA or its designee(s) shall comply with applicable state securities laws and shall not preclude OVION's reliance on Rule 506 with respect to the financing  MRA hereby represents that it is an "accredited investor" as defined by Regulation D

## 6. Press Releases

OVION will list MRA as participating placement agent in any description of this financing it issues directly (i.e. press release) and will use its own discretion to list MRA similarly in any further communications to the investment community regarding this financing

## 7. Termination

This engagement may be terminated by OVION or MRA at any time without cause, upon 10 days written notice to that effect by the other party  However, MRA shall be entitled to the fees described in Sections 3, 4, and 5 above, in the event that, at any time prior to the expiration of 18 months after either the termination of this agreement or the closing of the current financing, whichever is applicable, a financing, loan, credit facility, or other investment is consummated by OVION with an investor listed on Schedule A at the time of termination

## 8. Indemnification

The Company agrees to indemnify MRA under the terms set forth in Exhibit 1, which is included herein by reference

Sincerely,


David B  Musket
President
Musket Research Associates

Agreed and Accepted:


_____
Jeff Callister                    Date
President
OVION, Inc

## SCHEDULE A

Approved by _____
Date            _____

**OVION  Investors Eligible for Full MRA Fees**

**[MRA will add names to this list as we screen applicable parties]**

| | |
|---|---|
| De Novo | 3% Fee |
| Interwest | 3% Fee |
| Medventures | 3% Fee |
| USVP | 3% Fee |
| Versant | 3% Fee |

and all parties and entities affiliated with any group listed above

MRA07217

## SCHEDULE B

Approved by _____
Date            _____

### OVION Investors NOT Eligible for Full MRA Fees

**All Existing OVION Investors**

| | |
|---|---|
| De Novo | 3% Fee |
| Interwest | 3% Fee |
| Medventures | 3% Fee |
| USVP | 3% Fee |
| Versant | 3% Fee |

MRA07218

AFFIDAVIT OF JEFFREY P. CALLISTER

# EXHIBIT 3

| | |
|---|---|
| **From:** | JCovion@aol com |
| **Sent:** | Wednesday, June 30, 2004 7:09 PM |
| **To:** | dmusket@mravc com, sueann@mravc com |
| **Subject:** | Ovion/Contract |
| **Attach:** | PALIB2_2825153_2 mra DOC |

Dave:

Attached is the revised contract from our attorneys

Steve and I look forward to finalizing this ASAP and to working with you and Sue Ann.

Jeff Callister
Ovion

MRA07226

June 17, 2004

**CONFIDENTIAL**

Jeff Callister
President
Ovion Inc.
1900 O'Farrell Street
San Mateo, CA 94403

Dear Jeff:

This letter will confirm the agreement under which Musket Research Associates, Inc ("MRA") is engaged by Ovion Inc ("OVION" or the "Company") to assist the Company as described below.

**1. Engagement**

   OVION hereby engages and retains Musket Research Associates, Inc as a nonexclusive finder/advisor in connection with a proposed private placement of Convertible Preferred Stock of Ovion Inc, including any other debt or equity instrument arising out of this financing effort (the "Placement"), which involves investors solicited by MRA during that effort The specific services to be provided by MRA and fees to be received will be:

**2. Services**

   (a) MRA shall (i) analyze the financial performance and projections of the Company and provide advice regarding the appropriate valuation range for the new equity capital; (ii) assist in the development of presentation materials for investor solicitations; (iii) contact qualified investors and, if acceptable to you or your representative, send the necessary documents ourselves or through your office. Documents sent by the Company at MRA's request should be accompanied by a cover letter and/or business card from MRA, or, if these are not available, a specific reference to our introduction; (iv) after appropriate screening, set up and accompany you to meetings with interested parties as often as scheduling allows; and (v) manage ongoing discussions and coordinate the closings with the investors solicited, or caused to be solicited by MRA

   (b) MRA acknowledges that the offering will be made pursuant to the private offering exemption from registration under Section 4(2) of the Securities Act of 1933 and Rule 506 promulgated thereunder, and that OVION securities are to be offered and sold only to "accredited investors" (as defined in the SEC's Regulation D) who also satisfy any applicable securities laws. Before each closing, OVION will validate these "accredited investors" via a customary suitability questionnaire, copies of which will be provided to MRA upon request

   (c) Prior to sending any descriptive materials to potential investors, MRA will provide OVION a list of these investors so that OVION can make the appropriate securities law filings, if any, in such jurisdictions MRA will send materials previously approved by OVION when cleared to do so by an OVION representative and will not be responsible for assuring that such jurisdictional filings

have been made beforehand. MRA will not make any general solicitation in connection with this financing and will conduct its obligations hereunder in a manner consistent with the requirements of Rule 506

(d) The potential investors contacted by MRA are subject to acceptance by OVION in its sole and absolute discretion, and OVION is under no obligation to sell any of its capital stock to such parties MRA shall be deemed to be an independent contractor and shall have no right, power or authority to create any obligations on behalf of OVION

## 3. Cash Fees

(a) OVION agrees to pay MRA Finder's Fees of six percent (6%) of the aggregate cash proceeds received by OVION from the Placement to "MRA Contacts" "MRA Contacts" shall be those entitles set forth on Schedule A of this contract, as updated from time to time, and accepted, as evidenced solely by a countersignature thereto on Schedule A, by the Company   OVION agrees to pay MRA an additional fee of three percent (3%) of the aggregate cash proceeds received by OVION from the Placement to "OVION VC Contacts" "OVION VC Contacts" shall be those entities set forth on Schedule B of this contract, as updated from time to time by OVION, and accepted by MRA   MRA shall receive no fees for any entity not listed, and appropriately approved via countersignature, on either Schedule A or Schedule B.

(b) MRA Contacts shall not include (i) current OVION investors and (ii) parties being actively solicited directly by OVION   At OVION's sole discretion, it may authorize a switch of an investor listed on Schedule B to Schedule A, carrying with it the obligation to pay the fees outlined in Section 3(a) above or a mutually agreeable amount to be specifically listed on both Schedules A and B

(c) OVION will be obligated to pay MRA the same cash fees outlined in Sections 3(a) and 3(b) on any debt or equity related financing entered into with an MRA Contact within the earlier of twelve (12) months following the final closing of the current Placement or within twelve (12) months after the termination of this contract

(d) All payments due to MRA will be made within 10 days of the closing of the financing for which they are payable  Cash or equity will be made out directly to Musket Research Associates, Inc  unless otherwise specified

(e) The Company will inform MRA immediately if, during the term of this agreement, it engages any additional finders on this Placement, including in such notice a complete description of any fee agreement with such additional finder  If, during the term of this agreement, the Company agrees to pay finders fees in excess of those described in this contract, the fees payable to MRA will be increased to the same level, at the sole discretion of MRA

## 4. Expenses

Whether or not the financing contemplated herein is consummated, the Company will reimburse MRA for its reasonable out-of-pocket expenses incurred from this financing, provided such expenses have been approved in advance by OVION, provided, however, that OVION shall not reimburse MRA for out-of-pocket expenses in excess of $15,000. An initial non-refundable payment of $10,000 as an advance against these expenses will be paid to MRA upon the execution

MRA07228

of this contract  OVION-approved expenses incurred by MRA prior to closing will be submitted for reimbursement by OVION and should be paid within two weeks of receipt

## 5. Equity Participation/ Fee Substitution

MRA will be allowed, in its sole discretion, to substitute not less than 25% of the cash fees owed to it by OVION, as per Section 3 above for equity or debt instruments in OVION, in whatever form and at whatever value as was paid by the investors contacted by MRA and for which the fees are payable; provided that MRA shall be bound be similar terms and conditions as such investors and provided further that such issuance to MRA or its designee(s) shall comply with applicable state securities laws and shall not preclude OVION's reliance on Rule 506 with respect to the financing  MRA hereby represents that it is an "accredited investor" as defined by Regulation D

## 6. Press Releases

OVION will list MRA as participating placement agent in any description of this financing it issues directly (i e , press release) and will use its own discretion to list MRA similarly in any further communications to the investment community regarding this financing

## 7. Termination

This engagement may be terminated by OVION or MRA at any time without cause, upon 10 days written notice to that effect by the other party  However, MRA shall be entitled to the fees described in Sections 3, 4, and 5 above, in the event that, at any time prior to the expiration of 12 months after the earlier of termination of this agreement or the initial closing of the first Placement to occur following the date hereof, a financing, loan, credit facility, or other investment is consummated by OVION with an MRA Contact at the time of termination

## 8. Indemnification

The Company agrees to indemnify MRA under the terms set forth in Exhibit 1, which is included herein by reference

Sincerely,


David B  Musket
President
Musket Research Associates

Agreed and Accepted:


_____

Jeff Callister                    Date
President
Ovion Inc

MRA07229

## <u>SCHEDULE A</u>

### MRA CONTACTS

MRA Contact (including affiliated thereof)                    Company Approval

MRA07231

## SCHEDULE B

### OVION VC CONTACTS

| OVION VC Contact (including affiliates thereof) | OVION Approval | MRA Approval |
| --- | --- | --- |
| De Novo | | |
| Interwest | | |
| USVP | | |
| Versant | | |

MRA07233

AFFIDAVIT OF JEFFREY P. CALLISTER

# EXHIBIT 4

| From: | David Musket <dmusket@mravc.com> |
|---|---|
| Sent: | Tuesday, July 6, 2004 5:11 PM |
| To: | JCovion@aol.com |
| Cc: | sueann@mravc.com |
| Subject: | MRA Contract Revision |
| Attach: | MRA Contract Revision.doc |

Jeff,
Thanks for providing us the revised contract. Unfortunately, the version sent was not marked for changes which thwarted my efforts toward a quick turnaround. As you will find, we have revised the contract back close to the original form with some of the minor legal clarifications suggested by Wilson Sonsini. Perhaps we can finalize this discussion on Wednesday and move on to the exciting work ahead.
Best regards,
David

MRA07237

July 7, 2004

# CONFIDENTIAL

Jeff Callister
President
Ovion Inc
1900 O'Farrell Street
San Mateo, CA 94403

Dear Jeff:

This letter will confirm the agreement under which Musket Research Associates, Inc ("MRA") is engaged by Ovion Inc, or any affiliate of Ovion, Inc (collectively "OVION" or the "Company") to assist the Company as described below

### 1. Engagement

OVION hereby engages and retains Musket Research Associates, Inc. as a nonexclusive finder/advisor in connection with a proposed private placement of Convertible Preferred Stock of Ovion Inc, including any other debt or equity instrument arising out of this financing effort (the "Placement"), which involves investors solicited by MRA during that effort The specific services to be provided by MRA and fees to be received will be:

### 2. Services

(a) MRA shall (i) analyze the financial performance and projections of the Company and provide advice regarding the appropriate valuation range for the new equity capital; (ii) assist in the development of presentation materials for investor solicitations; (iii) contact qualified investors and, if acceptable to you or your representative, send the necessary documents ourselves or through your office Documents sent by the Company at MRA's request should be accompanied by a cover letter and/or business card from MRA, or, if these are not available, a specific reference to our introduction; (iv) after appropriate screening, set up and accompany you to meetings with interested parties as often as scheduling allows; and (v) manage ongoing discussions and coordinate the closings with the investors solicited, or caused to be solicited by MRA

(b) MRA acknowledges that the offering will be made pursuant to the private offering exemption from registration under Section 4(2) of the Securities Act of 1933 and Rule 506 promulgated thereunder, and that OVION securities are to be offered and sold only to "accredited investors" (as defined in the SEC's Regulation D) who also satisfy any applicable securities laws Before each closing, OVION will validate these "accredited investors" via a customary suitability questionnaire, copies of which will be provided to MRA upon request

(c) Prior to sending any descriptive materials to potential investors, MRA will provide OVION a list of these investors so that OVION can make the appropriate securities law filings, if any, in such jurisdictions MRA will send materials previously approved by OVION when cleared to do so

MRA07238

by an OVION representative and will not be responsible for assuring that such jurisdictional filings have been made beforehand. MRA will not make any general solicitation in connection with this financing and will conduct its obligations hereunder in a manner consistent with the requirements of Rule 506.

(d) The potential investors contacted by MRA are subject to acceptance by OVION in its sole and absolute discretion, and OVION is under no obligation to sell any of its capital stock to such parties. MRA shall be deemed to be an independent contractor and shall have no right, power or authority to create any obligations on behalf of OVION.

## 3. Cash Fees

(a) OVION agrees to pay MRA Finder's Fees of seven percent (7%) of the aggregate cash proceeds received by OVION from the Placement to parties solicited by or caused to be solicited by MRA ("MRA Contacts"). "MRA Contacts" shall be those entitles set forth on Schedule A of this contract, as updated from time to time, and accepted, as evidenced solely by a countersignature thereto on Schedule A, by the Company. OVION agrees to pay MRA an additional fee of three percent (3%) of the aggregate cash proceeds received by OVION from the Placement to "OVION VC Contacts". "OVION VC Contacts" shall be those entities set forth on Schedule B of this contract, as updated from time to time by OVION, and accepted by MRA. MRA shall receive no fees for any entity not listed, and appropriately approved via countersignature, on either Schedule A or Schedule B.

(b) MRA Contacts shall not include (i) current OVION investors and (ii) parties being actively solicited directly by OVION. A complete listing of these two exclusion groups will be provided to MRA by OVION as soon as possible but not later than the signing of this contract and will be attached hereto as Schedule B. At OVION's sole discretion, it may authorize a switch of an investor listed on Schedule B to Schedule A, carrying with it the obligation to pay the fees outlined in Section 3(a) above or a mutually agreeable amount to be specifically listed on both Schedules A and B.

(c) OVION will be obligated to pay MRA the same cash fees outlined in Sections 3(a) and 3(b) on any debt or equity related financing entered into with an MRA Contact within the earlier of eighteen (18) months following the final closing of the current Placement or within eighteen (18) months after the termination of this contract.

(d) All payments due to MRA will be made within 10 days of the closing of the financing for which they are payable. Cash or equity will be made out directly to Musket Research Associates, Inc. unless otherwise specified.

(e) The Company will inform MRA immediately if, during the term of this agreement, it engages any additional finders on this Placement, including in such notice a complete description of any fee agreement with such additional finder. If, during the term of this agreement, the Company agrees to pay finders fees in excess of those described in this contract, the fees payable to MRA will be increased to the same level, at the sole discretion of MRA.

## 4. Expenses

Whether or not the financing contemplated herein is consummated, the Company will reimburse

MRA for its reasonable out-of-pocket expenses incurred from this financing, provided such expenses have been approved in advance by OVION, such approval to not be unreasonably withheld. An initial non-refundable payment of $10,000 as an advance against these expenses will be paid to MRA upon the execution of this contract. OVION-approved expenses incurred by MRA prior to closing will be submitted for reimbursement by OVION and should be paid within two weeks of receipt

## 5. Equity Participation/ Fee Substitution

MRA will be allowed, in its sole discretion, to substitute not less than 25% of the cash fees owed to it by OVION, as per Section 3 above for equity or debt instruments in OVION, in whatever form and at whatever value as was paid by the investors contacted by MRA and for which the fees are payable; provided that MRA shall be bound be similar terms and conditions as such investors and provided further that such issuance to MRA or its designee(s) shall comply with applicable state securities laws and shall not preclude OVION's reliance on Rule 506 with respect to the financing. MRA hereby represents that it is an "accredited investor" as defined by Regulation D.

## 6. Press Releases

OVION will list MRA as participating placement agent in any description of this financing it issues directly (i.e., press release) and will use its own discretion to list MRA similarly in any further communications to the investment community regarding this financing

## 7. Termination

This engagement may be terminated by OVION or MRA at any time without cause, upon 10 days written notice to that effect by the other party. However, MRA shall be entitled to the fees described in Sections 3, 4, and 5 above, in the event that, at any time prior to the expiration of 18 months after either the termination of this agreement or the final closing of the current Placement, whichever is applicable, a loan, credit facility, or other investment is consummated by OVION with an MRA Contact at the time of termination

## 8. Indemnification

The Company agrees to indemnify MRA under the terms set forth in Exhibit 1, which is included herein by reference

Sincerely,


David B. Musket
President
Musket Research Associates

Agreed and Accepted:


_____
Jeff Callister            Date

President
Ovion Inc

MRA07241

Let's use schedule A in original form provided – much easier to handle with a large number of names. Each time we add a new name we designate them such and send to you for approval.

MRA07242

## SCHEDULE B

**OVION Investors NOT Eligible fo Full MRA Fees**

**All existing OVION Investors**

**OVION VC Contacts – 3% Placement Fee to MRA**

| OVION VC Contact (including affiliates thereof) | OVION Approval | MRA Approval |
|---|---|---|
| De Novo | | |
| Interwest | | |
| USVP | | |
| Versant | | |

MRA07243

AFFIDAVIT OF JEFFREY P. CALLISTER

# EXHIBIT 5

Subj:    **Ovion**
Date:    7/12/2004 8:46:20 PM Pacific Standard Time
From:    JCovion
To:      dmusket@mravc.com
CC:      AutoGX

Dave,

We talked with Casey today and we agreed to the revised contract except for a couple of changes (suggested) to the bottom of section 3(a). I have attached a redlined version.

Per those changes, both Steve and I wanted to discuss with you how the particulars of how friends and family work in per this agreement. As an example: If Rob Hess decides to put in more money, how does that work?  or if his company CalMedica (sp?) wants to? Also friends of the family (and acquaintances), how do they factor in? Our changes to the bottom of 3(a), I think, reflect these questions. We are available to go over these dynamics with you tomorrow morning. If there is a time that works (PST) in the morning, please let me know via e-mail. Note - Steve and I are out tomorrow afternoon.

Again, we are excited to move forward with you and Sue Anne, and look foreword to signing the contract tomorrow.

Jeff

Produced Pursuant to Protective Order          **Confidential**          OVN014907

AFFIDAVIT OF JEFFREY P. CALLISTER

# EXHIBIT 6

**From:**     David Musket <dmusket@mravc com>
**Sent:**     Tuesday, July 13, 2004 8:30 AM
**To:**       JCovion@aol com
**Cc:**       sueann@mravc.com
**Subject:**  Re  Ovion

Jeff,
Changes are acceptable  Rob would have been covered under the exclusion for all existing investors and the friends and family has never been a problem - we would not have many clients if we tried to get paid on these investors

Since we are in agreement please sign where indicated, initial each page and fax a copy to me with a hard copy in the mail. I will countersign yours when I receive it and do the same

Look forward to getting started

Best regards,

David

David B. Musket
Musket Research Associates
125 Cambridgepark Drive
Cambridge, MA 02140
617-441-0259 Fax 441-0855
dmusket@mravc com

—— Original Message ——
**From:** JCovion@aol.com
**To:** dmusket@mravc.com
**Cc:** AutoGX@aol.com
**Sent:** Monday, July 12, 2004 11:46 PM
**Subject:** Ovion

Dave,

We talked with Casey today and we agreed to the revised contract except for a couple of changes (suggested) to the bottom of section 3(a)  I have attached a redlined version.

Per those changes, both Steve and I wanted to discuss with you how the particulars of how friends and family work in per this agreement. As an example: If Rob Hess decides to put in more money, how does that work?  or if his company CalMedica (sp?) wants to? Also friends of the family (and acquaintances), how do they factor in? Our changes to the bottom of 3(a), I think, reflect these questions. We are available to go over these dynamics with you tomorrow morning. If there is a time that works (PST) in the morning, please let me know via e-mail  Note - Steve and I are out tomorrow afternoon

Again, we are excited to move forward with you and Sue Anne, and look foreword to signing the contract tomorrow.

Jeff

MRA07248

AFFIDAVIT OF JEFFREY P. CALLISTER

# EXHIBIT 7



**VION INC.**
ECLIPSE™ PERMANENT BIRTH CONTROL

# FAX Sheet

To: _David Musket_                      Date: _7/15/04_

Company: _Musket Research_
From: _Jeff Callister_

Fax #: _617- 441 0855_

Subject: _Engagement Letter_       Pages: _7_

Notes: _Dave_

_Please find following the signed_
_Engagement Letter. Two signed original_
_copies are being sent FedEx._

_Look forward to working_
_with you & Sue Ame._

_JBC_

This Fax and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this Fax (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this Fax and any attachments thereto.

1900 O'Farrell  •  Suite 210  •  San Mateo, CA 94403

MRA20894

July 14, 2004

**CONFIDENTIAL**

Jeff Callister
President
Ovion Inc.
1900 O'Farrell Street
San Mateo, CA 94403

Dear Jeff:

This letter will confirm the agreement under which Musket Research Associates, Inc. ("MRA") is engaged by Ovion Inc., or any affiliate of Ovion, Inc. (collectively "OVION" or the "Company") to assist the Company as described below.

### 1. Engagement

OVION hereby engages and retains Musket Research Associates, Inc. as a nonexclusive finder/advisor in connection with a proposed private placement of Convertible Preferred Stock of Ovion Inc., including any other debt or equity instrument arising out of this financing effort (the "Placement"), which involves investors solicited by MRA during that effort. The specific services to be provided by MRA and fees to be received will be:

### 2. Services

(a) MRA shall (i) analyze the financial performance and projections of the Company and provide advice regarding the appropriate valuation range for the new equity capital; (ii) assist in the development of presentation materials for investor solicitations; (iii) contact qualified investors and, if acceptable to you or your representative, send the necessary documents ourselves or through your office. Documents sent by the Company at MRA's request should be accompanied by a cover letter and/or business card from MRA, or, if these are not available, a specific reference to our introduction; (iv) after appropriate screening, set up and accompany you to meetings with interested parties as often as scheduling allows; and (v) manage ongoing discussions and coordinate the closings with the investors solicited, or caused to be solicited by MRA.

(b) MRA acknowledges that the offering will be made pursuant to the private offering exemption from registration under Section 4(2) of the Securities Act of 1933 and Rule 506 promulgated thereunder, and that OVION securities are to be offered and sold only to "accredited investors" (as defined in the SEC's Regulation D) who also satisfy any applicable securities laws. Before each closing, OVION will validate these "accredited investors" via a customary suitability questionnaire, copies of which will be provided to MRA upon request.

(c) Prior to sending any descriptive materials to potential investors, MRA will provide OVION a list of these investors so that OVION can make the appropriate securities law filings, if any, in such jurisdictions. MRA will send materials previously approved by OVION when cleared to do so by an OVION representative and will not be responsible for assuring that such jurisdictional

*JPC 7/14/04*

MRA20895

filings have been made beforehand. MRA will not make any general solicitation in connection with this financing and will conduct its obligations hereunder in a manner consistent with the requirements of Rule 506.

(d) The potential investors contacted by MRA are subject to acceptance by OVION in its sole and absolute discretion, and OVION is under no obligation to sell any of its capital stock to such parties. MRA shall be deemed to be an independent contractor and shall have no right, power or authority to create any obligations on behalf of OVION.

## 3. Cash Fees

(a) OVION agrees to pay MRA Finder's Fees of seven percent (7%) of the aggregate cash proceeds received by OVION from the Placement to parties solicited by or caused to be solicited by MRA ("MRA Contacts"). "MRA Contacts" shall be those entities set forth on Schedule A of this contract, as updated from time to time, and accepted, as evidenced solely by a countersignature thereto on Schedule A, by the Company. OVION agrees to pay MRA an additional fee of three percent (3%) of the aggregate cash proceeds received by OVION from the Placement to "OVION VC Contacts". "OVION VC Contacts" shall be those entities designated as "OVION VC contact" on Schedule B of this contract. Schedule B may be updated from time to time by Ovion in it sole discretion; provided, however, that once an entity is designated as an "OVION VC Contact" on schedule B, such designation may not be removed without the consent of MRA.   MRA shall receive no fees for any entity that is not either an MRA Contact or an Ovion VC Contact.

(b) MRA Contacts shall not include (i) current OVION investors and (ii) parties being actively solicited directly by OVION. A complete listing of these two exclusion groups will be provided to MRA by OVION as soon as possible but not later than the signing of this contract and will be attached hereto as Schedule B. At OVION's sole discretion, it may authorize a switch of an investor listed on Schedule B to Schedule A, carrying with it the obligation to pay the fees outlined in Section 3(a) above or a mutually agreeable amount to be specifically listed on both Schedules A and B.

(c) OVION will be obligated to pay MRA the same cash fees outlined in Sections 3(a) and 3(b) on any debt or equity related financing entered into with an MRA Contact within the earlier of eighteen (18) months following the final closing of the current Placement or within eighteen (18) months after the termination of this contract.

(d) All payments due to MRA will be made within 10 days of the closing of the financing for which they are payable. Cash or equity will be made out directly to Musket Research Associates, Inc. unless otherwise specified.

(e) The Company will inform MRA immediately if, during the term of this agreement, it engages any additional finders on this Placement, including in such notice a complete description of any fee agreement with such additional finder. If, during the term of this agreement, the Company agrees to pay finders fees in excess of those described in this contract, the fees payable to MRA will be increased to the same level, at the sole discretion of MRA.

## 4. Expenses

Whether or not the financing contemplated herein is consummated, the Company will reimburse MRA for its reasonable out-of-pocket expenses incurred from this financing, provided

OPC
7/14/04

MRA20896

such expenses have been approved in advance by OVION, such approval to not be unreasonably withheld. An initial non-refundable payment of $10,000 as an advance against these expenses will be paid to MRA upon the execution of this contract. OVION-approved expenses incurred by MRA prior to closing will be submitted for reimbursement by OVION and should be paid within two weeks of receipt.

## 5. Equity Participation/ Fee Substitution

MRA will be allowed, in its sole discretion, to substitute not less than 25% of the cash fees owed to it by OVION, as per Section 3 above for equity or debt instruments in OVION, in whatever form and at whatever value as was paid by the investors contacted by MRA and for which the fees are payable; provided that MRA shall be bound be similar terms and conditions as such investors and provided further that such issuance to MRA or its designee(s) shall comply with applicable state securities laws and shall not preclude OVION's reliance on Rule 506 with respect to the financing. MRA hereby represents that it is an "accredited investor" as defined by Regulation D.

## 6. Press Releases

OVION will list MRA as participating placement agent in any description of this financing it issues directly (i.e., press release) and will use its own discretion to list MRA similarly in any further communications to the investment community regarding this financing.

## 7. Termination

This engagement may be terminated by OVION or MRA at any time without cause, upon 10 days written notice to that effect by the other party. However, MRA shall be entitled to the fees described in Sections 3, 4, and 5 above, in the event that, at any time prior to the expiration of 18 months after either the termination of this agreement or the final closing of the current Placement, whichever is applicable, a loan, credit facility, or other investment is consummated by OVION with an MRA Contact at the time of termination.

## 8. Indemnification

The Company agrees to indemnify MRA under the terms set forth in Exhibit 1, which is included herein by reference.

Sincerely,


David B. Musket
President
Musket Research Associates

Agreed and Accepted:

_____    ___7/14/04___
Jeff Callister                          Date
President
Ovion Inc.

MRA20897

### SCHEDULE B

## OVION Investors NOT Eligible for Full MRA Fees

**All existing OVION Investors**

**OVION VC Contacts – 3% Placement Fee to MRA**

OVION VC Contact
(including affiliates thereof)                    OVION  Approval                         MRA Approval

De Novo

Interwest

Aberdare Ventures

Versant

Sanderling

**OVION VC Contacts –Placement Fee to be negotiated.**

US Venture Partners

Co lead Investor via USVP

MRA20898

## SCHEDULE B

OVION NON "VC Contacts" – No Placement Fee to MRA

All current Investors in Ovion

Tom Wippman

Pritzker Family

Peter Tremulis

Pulte Homes

Tom Green & Colleagues @ Work

Ballard Family

Lee Guterman/Nick Hopkins

Olympus

Storz

Cytyc

Frank Fisher

Jeff Gold

MRA20899

AFFIDAVIT OF JEFFREY P. CALLISTER

# EXHIBIT 8

| From: | David Musket <dmusket@mravc com> |
| Sent: | Wednesday, July 21, 2004 11:40 AM |
| To: | JCovion@aol com |
| Cc: | sueann@mravc com |
| Subject: | MRA Contract Revision |
| Attach: | July 21 Contract Revision Redline doc; July 21 Contract Revision Clean doc |

Jeff,
Attached please find the revised contract (redline and clean versions) based on our discussion yesterday afternoon. Please call me if you have any questions. If you find the changes to be acceptable please sign on page 3, initial all the pages and fax to me for countersignature. We continue to be optimistic regarding our mutual success on this financing. Best regards,
David

David B. Musket
Musket Research Associates
125 Cambridgepark Drive
Cambridge, MA 02140
617-441-0259 Fax 441-0855
dmusket@mravc.com

MRA07249

July 21, 2004

# CONFIDENTIAL

Jeff Callister
President
Ovion Inc.
1900 O'Farrell Street
San Mateo, CA 94403

Dear Jeff:

This letter will confirm the agreement under which Musket Research Associates, Inc. ("MRA") is engaged by Ovion Inc., or any affiliate of Ovion, Inc. (collectively "OVION" or the "Company") to assist the Company as described below.

## 1. Engagement

OVION hereby engages and retains Musket Research Associates, Inc. as a nonexclusive finder/advisor in connection with a proposed private placement of Convertible Preferred Stock of Ovion Inc., including any other debt or equity instrument arising out of this financing effort (the "Placement"), which involves investors solicited by MRA during that effort. The specific services to be provided by MRA and fees to be received will be:

## 2. Services

(a) MRA shall (i) analyze the financial performance and projections of the Company and provide advice regarding the appropriate valuation range for the new equity capital; (ii) assist in the development of presentation materials for investor solicitations; (iii) contact qualified investors and, if acceptable to you or your representative, send the necessary documents ourselves or through your office. Documents sent by the Company at MRA's request should be accompanied by a cover letter and/or business card from MRA, or, if these are not available, a specific reference to our introduction; (iv) after appropriate screening, set up and accompany you to meetings with interested parties as often as scheduling allows; and (v) manage ongoing discussions and coordinate the closings with the investors solicited, or caused to be solicited by MRA.

(b) MRA acknowledges that the offering will be made pursuant to the private offering exemption from registration under Section 4(2) of the Securities Act of 1933 and Rule 506 promulgated thereunder, and that OVION securities are to be offered and sold only to "accredited investors" (as defined in the SEC's Regulation D) who also satisfy any applicable securities laws. Before each closing, OVION will validate these "accredited investors" via a customary suitability questionnaire, copies of which will be provided to MRA upon request.

(c) Prior to sending any descriptive materials to potential investors, MRA will provide OVION a list of these investors so that OVION can make the appropriate securities law filings, if any, in such jurisdictions. MRA will send materials previously approved by OVION when cleared to do so

MRA07250

by an OVION representative and will not be responsible for assuring that such jurisdictional filings have been made beforehand. MRA will not make any general solicitation in connection with this financing and will conduct its obligations hereunder in a manner consistent with the requirements of Rule 506

(d) The potential investors contacted by MRA are subject to acceptance by OVION in its sole and absolute discretion, and OVION is under no obligation to sell any of its capital stock to such parties. MRA shall be deemed to be an independent contractor and shall have no right, power or authority to create any obligations on behalf of OVION

## 3. Cash Fees

(a) OVION agrees to pay MRA Finder's Fees of seven percent (7%) of the aggregate cash proceeds received by OVION from the Placement to parties solicited by or caused to be solicited by MRA ("MRA Contacts") "MRA Contacts" shall be those entitles set forth on Schedule A of this contract, as updated from time to time, and accepted, as evidenced solely by a countersignature thereto on Schedule A, by the Company. OVION agrees to pay MRA an additional fee of three percent (3%) of the aggregate cash proceeds received by OVION from the Placement to "OVION VC Contacts" and two (2%) of the aggregate cash proceeds received by OVION from the Placement to US Venture Partners. "OVION VC Contacts" shall be those entities designated as "OVION VC Contact" on Schedule B of this contract. Schedule B may be updated from time to time by Ovion in its sole discretion; provided, however, that once an entity is designated as an "OVION VC Contact" on schedule B, such designation may not be removed without the consent of MRA. MRA shall receive no fees for any entity that is not either an MRA Contact or an Ovion VC Contact.

(b) MRA Contacts shall not include (i) current OVION investors and (ii) parties being actively solicited directly by OVION. A complete listing of these two exclusion groups will be provided to MRA by OVION as soon as possible but not later than the signing of this contract and will be attached hereto as Schedule B. At OVION's sole discretion, it may authorize a switch of an investor listed on Schedule B to Schedule A, carrying with it the obligation to pay the fees outlined in Section 3(a) above or a mutually agreeable amount to be specifically listed on both Schedules A and B

(c) Recognizing that OVION's independent solicitation of new investors under Schedule B could limit the participation of MRA's Schedule A investors, OVION agrees to pay MRA a Success Fee in addition to any Finder's Fees owed under Section 3(a) above in the event that the Finder's Fees owed to MRA do not total at least $225,000. This Success Fee will be the remainder after subtracting the amount of the Finder's Fee owed to MRA under Section 3(a) above from $225,000 such that the maximum Success Fee payable would be $225,000 if OVION accepted no investments from MRA investors and the minimum amount would be zero if MRA investors generated at least $225,000 in Finder's Fees

(d) Recognizing that OVION may decide to pursue a merger, acquisition, credit facility, equity investment or other financial event with a corporate partner which may eliminate or postpone the desire to pursue this Placement, OVION agrees to pay MRA an Advisory Fee of up to $225,000 should it decide to consummate a financial transaction with a corporate partner during the six months following the signing of this contract which hinders or prevents MRA from earning the

MRA07251

Finder's Fees or Success Fees as described in Sections 3(a) and 3(c) above. Any Advisory Fee earned will be in addition to the Finder's Fees and Success Fees earned under Sections 3(a) and 3(c) above. The maximum eligible amount of the Advisory Fee payable to MRA during the first 90 days following the signing if this contract will be the positive difference, if any, between $125,000 and the total amount of the combination of Finder's Fees and Success Fees paid to MRA under Sections 3(a) and 3(c) above on this Placement. The maximum eligible amount of the Advisory Fee payable to MRA during the 90th to 180th days following the signing if this contract will be the positive difference, if any, between $225,000 and the total amount of the combination of Finder's Fees and Success Fees paid to MRA under Sections 3(a) and 3(c) above on this Placement. This Advisory Fee will be payable at the time of the initial closing of whatever financial event OVION does consummate.

(e) OVION will be obligated to pay MRA the same cash fees outlined in Sections 3(a) and 3(b) on any debt or equity related financing entered into with an MRA Contact within the earlier of eighteen (18) months following the final closing of the current Placement or within eighteen (18) months after the termination of this contract.

(f) All payments due to MRA will be made within 10 days of the closing of the financing for which they are payable. Cash or equity will be made out directly to Musket Research Associates, Inc. unless otherwise specified.

(g) The Company will inform MRA immediately if, during the term of this agreement, it engages any additional finders on this Placement, including in such notice a complete description of any fee agreement with such additional finder. If, during the term of this agreement, the Company agrees to pay finders fees in excess of those described in this contract, the fees payable to MRA will be increased to the same level, at the sole discretion of MRA.

## 4. Expenses

Whether or not the financing contemplated herein is consummated, the Company will reimburse MRA for its reasonable out-of-pocket expenses incurred from this financing, provided such expenses have been approved in advance by OVION, such approval to not be unreasonably withheld. An initial non-refundable payment of $10,000 as an advance against these expenses will be paid to MRA upon the execution of this contract. OVION-approved expenses incurred by MRA prior to closing will be submitted for reimbursement by OVION and should be paid within two weeks of receipt.

## 5. Equity Participation/ Fee Substitution

MRA will be allowed, in its sole discretion, to substitute not less than 25% of the cash fees owed to it by OVION, as per Section 3 above for equity or debt instruments in OVION, in whatever form and at whatever value as was paid by the investors contacted by MRA and for which the fees are payable, provided that MRA shall be bound by similar terms and conditions as such investors and provided further that such issuance to MRA or its designee(s) shall comply with applicable state securities laws and shall not preclude OVION's reliance on Rule 506 with respect to the financing. MRA hereby represents that it is an "accredited investor" as defined by Regulation D.

MRA07252

## 6. Press Releases

OVION will list MRA as participating placement agent in any description of this financing it issues directly (i e , press release) and will use its own discretion to list MRA similarly in any further communications to the investment community regarding this financing

## 7. Termination

This engagement may be terminated by OVION or MRA at any time without cause, upon 10 days written notice to that effect by the other party  However, MRA shall be entitled to the fees described in Sections 3, 4, and 5 above, in the event that, at any time prior to the expiration of 18 months after either the termination of this agreement or the final closing of the current Placement, whichever is applicable, a loan, credit facility, or other investment is consummated by OVION with an MRA Contact at the time of termination

## 8. Indemnification

The Company agrees to indemnify MRA under the terms set forth in Exhibit 1, which is included herein by reference.

Sincerely,


David B  Musket
President
Musket Research Associates

Agreed and Accepted:

_____
Jeff Callister                    Date
President
Ovion Inc

## SCHEDULE A

Approved by _____
Date        _____

**OVION  Investors Eligible for Full MRA Fees**

**[MRA will add names to this list as we screen applicable parties]**

**OVION VC Contacts – Partial Fees as Indicated**

| | |
|---|---|
| De Novo | 3% Fee |
| Interwest | 3% Fee |
| Medventures | 3% Fee |
| Sprout | 3% Fee |
| USVP | 2% Fee |
| Versant | 3% Fee |
| Vertical Group | 3% Fee |

and all parties and entities affiliated with any group listed above

MRA07254

## SCHEDULE  B

### OVION Investors NOT Eligible fo Full MRA Fees

**All existing OVION Investors**

**OVION VC Contacts – 2% Placement Fee to MRA**

OVION VC Contact                     OVION  Approval                     MRA Approval
(including affiliates thereof)

**US Venture Partners**

**OVION VC Contacts – 3% Placement Fee to MRA**

OVION VC Contact                     OVION  Approval                     MRA Approval
(including affiliates thereof)

De Novo

Interwest

Sprout


Versant

Vertical Group

MRA07255

AFFIDAVIT OF JEFFREY P. CALLISTER

# EXHIBIT 9

| From: | AutoGX@aol.com |
| --- | --- |
| Sent: | Wednesday, July 21, 2004 7.09 PM |
| To: | dmusket@mravc com |
| Cc: | JCovion@aol.com, sueann@mravc com |
| Subject: | (no subject)-MRA contract |

Dave,

To help clarify, how does this wording sound:

3(c)    If, during the term of this Agreement, OVION consummates a Placement other than a Placement involving a corporate partner, and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $225,000, then OVION shall pay to MRA a "Success Fee" equal to $225,000 less any fees payable to MRA pursuant to Section 3(a)

3(d)    If, during the term of this Agreement, OVION consummates a merger, acquisition or Placement involving a corporate partner (a "Corporate Transaction") within 90 days of the date hereof and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $125,000, then OVION shall pay MRA an "Advisor Fee" equal to $125,000 less any fees payable to MRA pursuant to Section 3 (a)  If, during the term of this Agreement, OVION consummates a Corporate Transaction between the 90th and the 180th day following the date hereof and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $225,000, then OVION shall pay MRA an "Advisor Fee" equal to $225,000 less any fees payable to MRA pursuant to Section 3(a)

Give me a call at 650-212-4403

Steve

MRA07269

AFFIDAVIT OF JEFFREY P. CALLISTER

# EXHIBIT 10

| From: | David Musket <dmusket@mravc com> |
| Sent: | Wednesday, July 21, 2004 8.12 PM |
| To: | AutoGX@aol.com; JCovion@aol com |
| Cc: | sueann@mravc com |
| Subject: | July 21 Contract Revision Clean |
| Attach: | July 21 Contract Revision Clean.doc |

Steve,
Clean version of contract incorporating your redraft of Sections 3(c) and 3(d)  If acceptable, please sign where indicated on page 3, initial all the pages, sign where needed on Schedules A and B and fax back to me for countersignature.
Thank you.
David

David B. Musket
Musket Research Associates
125 Cambridgepark Drive
Cambridge, MA 02140
617-441-0259 Fax 441-0855
dmusket@mravc.com

MRA07270

July 21, 2004

## CONFIDENTIAL

Jeff Callister
President
Ovion Inc.
1900 O'Farrell Street
San Mateo, CA 94403

Dear Jeff:

This letter will confirm the agreement under which Musket Research Associates, Inc. ("MRA") is engaged by Ovion Inc., or any affiliate of Ovion, Inc. (collectively "OVION" or the "Company") to assist the Company as described below.

### 1. Engagement

OVION hereby engages and retains Musket Research Associates, Inc. as a nonexclusive finder/advisor in connection with a proposed private placement of Convertible Preferred Stock of Ovion Inc., including any other debt or equity instrument arising out of this financing effort (the "Placement"), which involves investors solicited by MRA during that effort. The specific services to be provided by MRA and fees to be received will be:

### 2. Services

(a) MRA shall (i) analyze the financial performance and projections of the Company and provide advice regarding the appropriate valuation range for the new equity capital; (ii) assist in the development of presentation materials for investor solicitations; (iii) contact qualified investors and, if acceptable to you or your representative, send the necessary documents ourselves or through your office. Documents sent by the Company at MRA's request should be accompanied by a cover letter and/or business card from MRA, or, if these are not available, a specific reference to our introduction; (iv) after appropriate screening, set up and accompany you to meetings with interested parties as often as scheduling allows; and (v) manage ongoing discussions and coordinate the closings with the investors solicited, or caused to be solicited by MRA.

(b) MRA acknowledges that the offering will be made pursuant to the private offering exemption from registration under Section 4(2) of the Securities Act of 1933 and Rule 506 promulgated thereunder, and that OVION securities are to be offered and sold only to "accredited investors" (as defined in the SEC's Regulation D) who also satisfy any applicable securities laws. Before each closing, OVION will validate these "accredited investors" via a customary suitability questionnaire, copies of which will be provided to MRA upon request.

(c) Prior to sending any descriptive materials to potential investors, MRA will provide OVION a list of these investors so that OVION can make the appropriate securities law filings, if any, in such jurisdictions. MRA will send materials previously approved by OVION when cleared to do so

MRA07271

by an OVION representative and will not be responsible for assuring that such jurisdictional filings have been made beforehand  MRA will not make any general solicitation in connection with this financing and will conduct its obligations hereunder in a manner consistent with the requirements of Rule 506.

(d) The potential investors contacted by MRA are subject to acceptance by OVION in its sole and absolute discretion, and OVION is under no obligation to sell any of its capital stock to such parties  MRA shall be deemed to be an independent contractor and shall have no right, power or authority to create any obligations on behalf of OVION.

## 3. Cash Fees

(a) OVION agrees to pay MRA Finder's Fees of seven percent (7%) of the aggregate cash proceeds received by OVION from the Placement to parties solicited by or caused to be solicited by MRA ("MRA Contacts")  "MRA Contacts" shall be those entitles set forth on Schedule A of this contract, as updated from time to time, and accepted, as evidenced solely by a countersignature thereto on Schedule A, by the Company.  OVION agrees to pay MRA an additional fee of three percent (3%) of the aggregate cash proceeds received by OVION from the Placement to "OVION VC Contacts" and two (2%) of the aggregate cash proceeds received by OVION from the Placement to US Venture Partners  "OVION VC Contacts" shall be those entities designated as "OVION VC Contact" on Schedule B of this contract  Schedule B may be updated from time to time by Ovion in its sole discretion; provided, however, that once an entity is designated as an "OVION VC Contact" on schedule B, such designation may not be removed without the consent of MRA   MRA shall receive no fees for any entity that is not either an MRA Contact or an Ovion VC Contact.

(b) MRA Contacts shall not include (i) current OVION investors and (ii) parties being actively solicited directly by OVION. A complete listing of these two exclusion groups will be provided to MRA by OVION as soon as possible but not later than the signing of this contract and will be attached hereto as Schedule B  At OVION's sole discretion, it may authorize a switch of an investor listed on Schedule B to Schedule A, carrying with it the obligation to pay the fees outlined in Section 3(a) above or a mutually agreeable amount to be specifically listed on both Schedules A and B.

(c) If, during the term of this Agreement, OVION consummates a Placement other than a Placement involving a corporate partner, and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $225,000, then OVION shall pay to MRA a "Success Fee" equal to $225,000 less any fees payable to MRA pursuant to Section 3(a)

(d)  If, during the term of this Agreement, OVION consummates a merger, acquisition or Placement involving a corporate partner (a "Corporate Transaction") within 90 days of the date hereof and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $125,000, then OVION shall pay MRA an "Advisory Fee" equal to $125,000 less any fees payable to MRA pursuant to Section 3(a)  If, during the term of this Agreement, OVION consummates a Corporate Transaction between the 90th and the 180th day following the date hereof and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $225,000, then OVION shall pay MRA an "Advisory Fee" equal to $225,000 less any fees payable to MRA pursuant to Section 3(a)   This Advisory Fee will be payable at the time of the initial closing of whatever financial event OVION does consummate.

(e)  OVION will be obligated to pay MRA the same cash fees outlined in Sections 3(a) and 3(b) on any debt or equity related financing entered into with an MRA Contact within the earlier of eighteen (18) months following the final closing of the current Placement or within eighteen (18) months after the termination of this contract

(f)  All payments due to MRA will be made within 10 days of the closing of the financing for which they are payable  Cash or equity will be made out directly to Musket Research Associates, Inc. unless otherwise specified

(g) The Company will inform MRA immediately if, during the term of this agreement, it engages any additional finders on this Placement, including in such notice a complete description of any fee agreement with such additional finder  If, during the term of this agreement, the Company agrees to pay finders fees in excess of those described in this contract, the fees payable to MRA will be increased to the same level, at the sole discretion of MRA

## 4. Expenses

Whether or not the financing contemplated herein is consummated, the Company will reimburse MRA for its reasonable out-of-pocket expenses incurred from this financing, provided such expenses have been approved in advance by OVION, such approval to not be unreasonably withheld  An initial non-refundable payment of $10,000 as an advance against these expenses will be paid to MRA upon the execution of this contract  OVION-approved expenses incurred by MRA prior to closing will be submitted for reimbursement by OVION and should be paid within two weeks of receipt

## 5. Equity Participation/ Fee Substitution

MRA will be allowed, in its sole discretion, to substitute not less than 25% of the cash fees owed to it by OVION, as per Section 3 above for equity or debt instruments in OVION, in whatever form and at whatever value as was paid by the investors contacted by MRA and for which the fees are payable; provided that MRA shall be bound be similar terms and conditions as such investors and provided further that such issuance to MRA or its designee(s) shall comply with applicable state securities laws and shall not preclude OVION's reliance on Rule 506 with respect to the financing. MRA hereby represents that it is an "accredited investor" as defined by Regulation D

## 6. Press Releases

OVION will list MRA as participating placement agent in any description of this financing it issues directly (i e , press release) and will use its own discretion to list MRA similarly in any further communications to the investment community regarding this financing

## 7. Termination

This engagement may be terminated by OVION or MRA at any time without cause, upon 10 days written notice to that effect by the other party  However, MRA shall be entitled to the fees described in Sections 3, 4, and 5 above, in the event that, at any time prior to the expiration of 18

months after either the termination of this agreement or the final closing of the current Placement, whichever is applicable, a loan, credit facility, or other investment is consummated by OVION with an MRA Contact at the time of termination

## 8. Indemnification

The Company agrees to indemnify MRA under the terms set forth in Exhibit 1, which is included herein by reference.

Sincerely,


David B. Musket
President
Musket Research Associates

Agreed and Accepted:


_____
Jeff Callister                    Date
President
Ovion Inc

## SCHEDULE A

Approved by _____
Date          _____

**OVION  Investors Eligible for Full MRA Fees**

**[MRA will add names to this list as we screen applicable parties]**

**OVION VC Contacts – Partial Fees as Indicated**
De Novo              3% Fee
Interwest            3% Fee
Medventures          3% Fee
Sprout               3% Fee
USVP                 2% Fee
Versant              3% Fee
Vertical Group       3% Fee

and all parties and entities affiliated with any group listed above

MRA07275

## SCHEDULE  B

### OVION Investors NOT Eligible fo Full MRA Fees

**All existing OVION Investors**

**OVION VC Contacts – 2% Placement Fee to MRA**

OVION VC Contact                    OVION  Approval                    MRA Approval
(including affiliates thereof)

**US Venture Partners**

**OVION VC Contacts – 3% Placement Fee to MRA**

OVION VC Contact                    OVION  Approval                    MRA Approval
(including affiliates thereof)

De Novo

Interwest

Sprout

Versant

Vertical Group

MRA07276

AFFIDAVIT OF JEFFREY P. CALLISTER

# EXHIBIT 11

Subj:     **Re: July 21 Contract Revision Clean**
Date:     7/22/2004 4:40:47 PM Pacific Standard Time
From:     dmusket@mravc.com
To:       AutoGX@aol.com

Steve,
Thank you for the follow up. Everything but the last page arrived. I have just faxed back to you. Hard copies coming in the mail. Glad we are past this and can pursue this opportunity.
Best regards,
David

----- Original Message -----
**From:** AutoGX@aol.com
**To:** dmusket@mravc.com
**Sent:** Thursday, July 22, 2004 4:20 PM
**Subject:** Re: July 21 Contract Revision Clean

Dave,

I signed and sent the contract back to your fax, but I'm not sure if you received it   Let me know if it arrived intact...

Steve

# MRA

MUSKET RESEARCH ASSOCIATES INC.

TO: _____ Steve _____

FROM: _____ David _____

DATE: _____ 7/22 _____

FAX #: _____

NUMBER OF PAGES __9__ INCLUDING COVER SHEET

Countersigned

IF THERE ARE ANY QUESTIONS, PLEASE CONTACT THE NUMBER LISTED BELOW

125 CAMBRIDGEPARK DRIVE - 1ST FLOOR - CAMBRIDGE, MA 02140  617-441-8800  FAX 617-441-0855

MRA20859

July 21, 2004

**CONFIDENTIAL**

Jeff Callister
President
Ovion Inc.
1900 O'Farrell Street
San Mateo, CA 94403

Dear Jeff:

This letter will confirm the agreement under which Musket Research Associates, Inc, ("MRA") is engaged by Ovion Inc., or any affiliate of Ovion, Inc. (collectively "OVION" or the "Company") to assist the Company as described below.

**1. Engagement**

OVION hereby engages and retains Musket Research Associates, Inc, as a nonexclusive finder/advisor in connection with a proposed private placement of Convertible Preferred Stock of Ovion Inc., including any other debt or equity instrument arising out of this financing effort (the "Placement"), which involves investors solicited by MRA during that effort. The specific services to be provided by MRA and fees to be received will be:

**2. Services**

(a) MRA shall (i) analyze the financial performance and projections of the Company and provide advice regarding the appropriate valuation range for the new equity capital; (ii) assist in the development of presentation materials for investor solicitations; (iii) contact qualified investors and, if acceptable to you or your representative, send the necessary documents ourselves or through your office. Documents sent by the Company at MRA's request should be accompanied by a cover letter and/or business card from MRA, or, if these are not available, a specific reference to our introduction; (iv) after appropriate screening, set up and accompany you to meetings with interested parties as often as scheduling allows; and (v) manage ongoing discussions and coordinate the closings with the investors solicited, or caused to be solicited by MRA.

(b) MRA acknowledges that the offering will be made pursuant to the private offering exemption from registration under Section 4(2) of the Securities Act of 1933 and Rule 506 promulgated thereunder, and that OVION securities are to be offered and sold only to "accredited investors" (as defined in the SEC's Regulation D) who also satisfy any applicable securities laws. Before each closing, OVION will validate these "accredited investors" via a customary suitability questionnaire, copies of which will be provided to MRA upon request.

(c) Prior to sending any descriptive materials to potential investors, MRA will provide OVION a list of these investors so that OVION can make the appropriate securities law filings, if any, in such jurisdictions. MRA will send materials previously approved by OVION when cleared to do so by an OVION representative and will not be responsible for assuring that such jurisdictional

MRA20860

filings have been made beforehand. MRA will not make any general solicitation in connection with this financing and will conduct its obligations hereunder in a manner consistent with the requirements of Rule 506.

(d) The potential investors contacted by MRA are subject to acceptance by OVION in its sole and absolute discretion, and OVION is under no obligation to sell any of its capital stock to such parties. MRA shall be deemed to be an independent contractor and shall have no right, power or authority to create any obligations on behalf of OVION.

### 3. Cash Fees

(a) OVION agrees to pay MRA Finder's Fees of seven percent (7%) of the aggregate cash proceeds received by OVION from the Placement to parties solicited by or caused to be solicited by MRA ("MRA Contacts"). "MRA Contacts" shall be those entities set forth on Schedule A of this contract, as updated from time to time, and accepted, as evidenced solely by a countersignature thereto on Schedule A, by the Company. OVION agrees to pay MRA an additional fee of three percent (3%) of the aggregate cash proceeds received by OVION from the Placement to "OVION VC Contacts" and two (2%) of the aggregate cash proceeds received by OVION from the Placement to US Venture Partners. "OVION VC Contacts" shall be those entities designated as "OVION VC Contact" on Schedule B of this contract. Schedule B may be updated from time to time by Ovion in its sole discretion; provided, however, that once an entity is designated as an "OVION VC Contact" on schedule B, such designation may not be removed without the consent of MRA. MRA shall receive no fees for any entity that is not either an MRA Contact or an Ovion VC Contact.

(b) MRA Contacts shall not include (i) current OVION investors and (ii) parties being actively solicited directly by OVION. A complete listing of these two exclusion groups will be provided to MRA by OVION as soon as possible but not later than the signing of this contract and will be attached hereto as Schedule B. At OVION's sole discretion, it may authorize a switch of an investor listed on Schedule B to Schedule A, carrying with it the obligation to pay the fees outlined in Section 3(a) above or a mutually agreeable amount to be specifically listed on both Schedules A and B.

(c) If, during the term of this Agreement, OVION consummates a Placement other than a Placement involving a corporate partner, and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $225,000, then OVION shall pay to MRA a "Success Fee" equal to $225,000 less any fees payable to MRA pursuant to Section 3(a).

(d) If, during the term of this Agreement, OVION consummates a merger, acquisition or Placement involving a corporate partner (a "Corporate Transaction") within 90 days of the date hereof and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $125,000, then OVION shall pay MRA an "Advisory Fee" equal to $125,000 less any fees payable to MRA pursuant to Section 3(a). If, during the term of this Agreement, OVION consummates a Corporate Transaction between the 90th and the 180th day following the date hereof and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $225,000, then OVION shall pay MRA an "Advisory Fee" equal to $225,000 less any fees payable to MRA pursuant to Section 3(a). This Advisory Fee will be payable at the time of the initial closing of whatever financial event OVION does consummate.

MRA20861

(e)  OVION will be obligated to pay MRA the same cash fees outlined in Sections 3(a) and 3(b) on any debt or equity related financing entered into with an MRA Contact within the earlier of eighteen (18) months following the final closing of the current Placement or within eighteen (18) months after the termination of this contract.

(f)  All payments due to MRA will be made within 10 days of the closing of the financing for which they are payable. Cash or equity will be made out directly to Musket Research Associates, Inc. unless otherwise specified.

(g)  The Company will inform MRA immediately if, during the term of this agreement, it engages any additional finders on this Placement, including in such notice a complete description of any fee agreement with such additional finder. If, during the term of this agreement, the Company agrees to pay finders fees in excess of those described in this contract, the fees payable to MRA will be increased to the same level, at the sole discretion of MRA.

## 4. Expenses

Whether or not the financing contemplated herein is consummated, the Company will reimburse MRA for its reasonable out-of-pocket expenses incurred from this financing, provided such expenses have been approved in advance by OVION, such approval to not be unreasonably withheld. An initial non-refundable payment of $10,000 as an advance against these expenses will be paid to MRA upon the execution of this contract. OVION-approved expenses incurred by MRA prior to closing will be submitted for reimbursement by OVION and should be paid within two weeks of receipt.

## 5. Equity Participation/ Fee Substitution

MRA will be allowed, in its sole discretion, to substitute not less than 25% of the cash fees owed to it by OVION, as per Section 3 above for equity or debt instruments in OVION, in whatever form and at whatever value as was paid by the investors contacted by MRA and for which the fees are payable; provided that MRA shall be bound be similar terms and conditions as such investors and provided further that such issuance to MRA or its designee(s) shall comply with applicable state securities laws and shall not preclude OVION's reliance on Rule 506 with respect to the financing. MRA hereby represents that it is an "accredited investor" as defined by Regulation D.

## 6. Press Releases

OVION will list MRA as participating placement agent in any description of this financing it issues directly (i.e., press release) and will use its own discretion to list MRA similarly in any further communications to the investment community regarding this financing.

## 7. Termination

This engagement may be terminated by OVION or MRA at any time without cause, upon 10 days written notice to that effect by the other party. However, MRA shall be entitled to the fees described in Sections 3, 4, and 5 above, in the event that, at any time prior to the expiration of 18 months after either the termination of this agreement or the final closing of the current Placement,

MRA20862

whichever is applicable, a loan, credit facility, or other investment is consummated by OVION with an MRA Contact at the time of termination.

## 8. Indemnification

The Company agrees to indemnify MRA under the terms set forth in Exhibit 1, which is included herein by reference.

Sincerely,

David B. Musket
President
Musket Research Associates

Agreed and Accepted:

Steve Tremulis
Chairman of the Board
Ovion Inc.

Date

## SCHEDULE  A

Approved by _____
Date      _____

**OVION  Investors Eligible for Full MRA Fees**

**[MRA will add names to this list as we screen applicable parties]**

**OVION VC Contacts – Partial Fees as Indicated**
| | |
|---|---|
| De Novo | 3% Fee |
| Interwest | 3% Fee |
| Medventures | 3% Fee |
| Sprout | 3% Fee |
| USVP | 2% Fee |
| Versant | 3% Fee |
| Vertical Group | 3% Fee |

and all parties and entities affiliated with any group listed above

MRA20864

## SCHEDULE B

### OVION Investors NOT Eligible fo Full MRA Fees

**All existing OVION Investors**

**OVION VC Contacts – 2% Placement Fee to MRA**

| OVION VC Contact (including affiliates thereof) | OVION Approval | MRA Approval |
|---|---|---|
| US Venture Partners | | |

**OVION VC Contacts – 3% Placement Fee to MRA**

| OVION VC Contact (including affiliates thereof) | OVION Approval | MRA Approval |
|---|---|---|
| De Novo | | |
| Interwest | | |
| Sprout | | |
| Versant | | |
| Vertical Group | | |

EXHIBIT 1

Ovion Inc. ("OVION") agrees to indemnify and hold harmless Musket Research Associates, Inc. ("MRA") and each of MRA's officers, directors, agents, employees and controlling persons (within the meaning of each of Section 20 of the Securities Exchange Act of 1934, as amended, and Section 15 of the Securities Act of 1933, as amended)(each of the foregoing, including MRA, being hereinafter referred to as an "Indemnified Person") to the fullest extent permitted by law from and against any and all losses, claims, damages, expenses (including reasonable fees and disbursements for counsel), actions (including shareholder derivative actions), proceedings, investigations (whether formal or informal, or in tort, contract or otherwise), inquiries or threats thereof (all of the foregoing being hereinafter referred to as "Liabilities"), based upon, relating to or arising out of MRA's engagement hereunder or any Indemnified Person's role therein including, without limitation, any liabilities relating to or arising out of the engagement by OVION of any other financial advisor or investment banker: provided, however, that OVION shall not be liable under this paragraph to the extent that it is finally judicially determined by a court of competent jurisdiction that such Liabilities resulted from the willful misconduct or gross negligence of the Indemnified Person seeking indemnification. In connection with OVION's obligation to indemnify for expenses as set forth above, OVION further agrees to advance or reimburse each Indemnified Person for such expenses (including reasonable fees for counsel) as they are incurred by such Indemnified Person: provided, however, that if any Indemnified Person is reimbursed hereunder for any expenses, such reimbursement of expenses shall be refunded by the Indemnified Person who received such expenses to the extent it is finally judicially determined by a court of competent jurisdiction that the Liabilities in question resulted from the willful misconduct or gross negligence of such Indemnified Person.

Each Indemnified Party shall, upon the service of a summons or other initial legal process upon it in any action or suit instituted against it or upon its receipt of written notification of the commencement of any investigation or inquiry of, or proceeding against, it or upon its receipt of other written notification of the assertion against it of any Liabilities, such Indemnified Party will promptly give written notice (hereinafter the "Notice") thereof to OVION (provided that delay in giving such notice shall not relieve OVION of its indemnification obligations hereunder except to the extent, if at all, that it shall have been prejudiced thereby). OVION shall be entitled, if it so elects within fifteen days after receipt of the Notice, by giving written notice (hereinafter the "Defense Notice") to the Indemnified Party, to assume the entire defense of such Liabilities, in which event such defense shall be conducted at the expense of OVION by counsel chosen by it and reasonably satisfactory to the Indemnified Party: provided, however, that if the Indemnified Party reasonably determines (i) that there may be conflict between the positions of OVION and the Indemnified Party in conducting the defense of such Liabilities or (ii) that there may be legal defenses available to the Indemnified Party different from or in addition to those available to OVION, then counsel for the Indemnified Party shall be entitled to participate in such defenses, or conduct the defense to the extent reasonably determined by such counsel to be necessary to protect the interests of the Indemnified Party, and such participation in or separate conduct of such defense shall be covered by the indemnification by OVION hereunder. In any event, any Indemnified Party shall retain the right to participate in the defense of any Liabilities with separate counsel, where the defense of such Liabilities has been assumed by OVION in accordance with the provisions hereof and the circumstances described in clauses (i) or (ii) of the above proviso are not present, but the Indemnified Party shall bear and be solely responsible for its own costs and expenses in connection with any such participation.

If the indemnification or reimbursement provided for hereunder is finally judicially determined by a court of competent jurisdiction to be unavailable to an Indemnified Person in respect to any Liabilities (other than as a consequence of a final judicial determination by such a court of willful misconduct or gross negligence of such Indemnified Person), then OVION agrees, in lieu of indemnifying such Indemnified Person, to contribute to the amount paid or payable by such Indemnified Person as a result of such Liabilities (i) in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by OVION on the one hand and by such Indemnified Person on the other from the transaction in connection with which MRA has been engaged, or (ii) if (but only if) the allocation provided in clause (i) of this sentence is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of OVION and of such Indemnified Person: provided, however, that in no event shall the aggregate amount contributed by the

Indemnified Person exceed the amount of fees actually received by his or its affiliate or employer pursuant to such engagement. The relative benefits received or sought to be received by OVION on the one hand and by MRA on the other shall be deemed to be in the same proportion as (i) the gross proceeds raised in the transactions subject to this Agreement bears to (ii) the fees paid or payable to MRA hereunder.

MRA20867

# MRA

## MUSKET RESEARCH ASSOCIATES INC.

July 21, 2004

Jeff Callister
President
Ovion Inc.
1900 O'Farrell Street
San Mateo, CA 94403

Dear Jeff:

Enclosed please find two copies of the executed Finder's Agreement. Please initial all pages, sign on page 4 and at the top of page 5 (Schedule A), and where indicated on Schedule B and mail one copy back to me

Sue Ann and I look forward to our mutual success on this and future Ovion financings.

Best regards,

David

125 CAMBRIDGEPARK DRIVE - 1ST FLOOR - CAMBRIDGE, MA 02140  617-441-8800 FAX 617-441-0855

Produced Pursuant to Protective Order          Confidential                    OVN001513

# MRA

## MUSKET RESEARCH ASSOCIATES INC.

July 21, 2004

**CONFIDENTIAL**

Jeff Callister
President
Ovion Inc
1900 O'Farrell Street
San Mateo, CA 94403

Dear Jeff:

This letter will confirm the agreement under which Musket Research Associates, Inc. ("MRA") is engaged by Ovion Inc., or any affiliate of Ovion, Inc. (collectively "OVION" or the "Company") to assist the Company as described below.

### 1. Engagement

OVION hereby engages and retains Musket Research Associates, Inc. as a nonexclusive finder/advisor in connection with a proposed private placement of Convertible Preferred Stock of Ovion Inc., including any other debt or equity instrument arising out of this financing effort (the "Placement"), which involves investors solicited by MRA during that effort. The specific services to be provided by MRA and fees to be received will be:

### 2. Services

(a) MRA shall (i) analyze the financial performance and projections of the Company and provide advice regarding the appropriate valuation range for the new equity capital; (ii) assist in the development of presentation materials for investor solicitations; (iii) contact qualified investors and, if acceptable to you or your representative, send the necessary documents ourselves or through your office. Documents sent by the Company at MRA's request should be accompanied by a cover letter and/or business card from MRA, or, if these are not available, a specific reference to our introduction; (iv) after appropriate screening, set up and accompany you to meetings with interested parties as often as scheduling allows; and (v) manage ongoing discussions and coordinate the closings with the investors solicited, or caused to be solicited by MRA.

(b) MRA acknowledges that the offering will be made pursuant to the private offering exemption from registration under Section 4(2) of the Securities Act of 1933 and Rule 506 promulgated thereunder, and that OVION securities are to be offered and sold only to "accredited investors" (as defined in the SEC's Regulation D) who also satisfy any applicable securities laws. Before each closing, OVION will validate these "accredited investors" via a customary suitability questionnaire, copies of which will be provided to MRA upon request.

(c) Prior to sending any descriptive materials to potential investors, MRA will provide OVION a list of these investors so that OVION can make the appropriate securities law filings, if any, in such jurisdictions. MRA will send materials previously approved by OVION when cleared to do so by an OVION representative and will not be responsible for assuring that such jurisdictional

125 CAMBRIDGEPARK DRIVE · 1ST FLOOR · CAMBRIDGE, MA 02140   617-441-8800 FAX 617-441-0855

filings have been made beforehand. MRA will not make any general solicitation in connection with this financing and will conduct its obligations hereunder in a manner consistent with the requirements of Rule 506.

(d) The potential investors contacted by MRA are subject to acceptance by OVION in its sole and absolute discretion, and OVION is under no obligation to sell any of its capital stock to such parties. MRA shall be deemed to be an independent contractor and shall have no right, power or authority to create any obligations on behalf of OVION.

## 3. Cash Fees

(a) OVION agrees to pay MRA Finder's Fees of seven percent (7%) of the aggregate cash proceeds received by OVION from the Placement to parties solicited by or caused to be solicited by MRA ("MRA Contacts"). "MRA Contacts" shall be those entitles set forth on Schedule A of this contract, as updated from time to time, and accepted, as evidenced solely by a countersignature thereto on Schedule A, by the Company. OVION agrees to pay MRA an additional fee of three percent (3%) of the aggregate cash proceeds received by OVION from the Placement to "OVION VC Contacts" and two (2%) of the aggregate cash proceeds received by OVION from the Placement to US Venture Partners. "OVION VC Contacts" shall be those entities designated as "OVION VC Contact" on Schedule B of this contract. Schedule B may be updated from time to time by Ovion in its sole discretion; provided, however, that once an entity is designated as an "OVION VC Contact" on schedule B, such designation may not be removed without the consent of MRA. MRA shall receive no fees for any entity that is not either an MRA Contact or an Ovion VC Contact.

(b) MRA Contacts shall not include (i) current OVION investors and (ii) parties being actively solicited directly by OVION. A complete listing of these two exclusion groups will be provided to MRA by OVION as soon as possible but not later than the signing of this contract and will be attached hereto as Schedule B. At OVION's sole discretion, it may authorize a switch of an investor listed on Schedule B to Schedule A, carrying with it the obligation to pay the fees outlined in Section 3(a) above or a mutually agreeable amount to be specifically listed on both Schedules A and B.

(c) If, during the term of this Agreement, OVION consummates a Placement other than a Placement involving a corporate partner, and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $225,000, then OVION shall pay to MRA a "Success Fee" equal to $225,000 less any fees payable to MRA pursuant to Section 3(a).

(d) If, during the term of this Agreement, OVION consummates a merger, acquisition or Placement involving a corporate partner (a "Corporate Transaction") within 90 days of the date hereof and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $125,000, then OVION shall pay MRA an "Advisory Fee" equal to $125,000 less any fees payable to MRA pursuant to Section 3(a). If, during the term of this Agreement, OVION consummates a Corporate Transaction between the 90th and the 180th day following the date hereof and the aggregate fees payable to MRA pursuant to Section 3(a) are less than $225,000, then OVION shall pay MRA an "Advisory Fee" equal to $225,000 less any fees payable to MRA pursuant to Section 3(a). This Advisory Fee will be payable at the time of the initial closing of whatever financial event OVION does consummate.

(e)  OVION will be obligated to pay MRA the same cash fees outlined in Sections 3(a) and 3(b) on any debt or equity related financing entered into with an MRA Contact within the earlier of eighteen (18) months following the final closing of the current Placement or within eighteen (18) months after the termination of this contract.

(f)  All payments due to MRA will be made within 10 days of the closing of the financing for which they are payable. Cash or equity will be made out directly to Musket Research Associates, Inc. unless otherwise specified.

(g) The Company will inform MRA immediately if, during the term of this agreement, it engages any additional finders on this Placement, including in such notice a complete description of any fee agreement with such additional finder. If, during the term of this agreement, the Company agrees to pay finders fees in excess of those described in this contract, the fees payable to MRA will be increased to the same level, at the sole discretion of MRA.

## 4. Expenses

Whether or not the financing contemplated herein is consummated, the Company will reimburse MRA for its reasonable out-of-pocket expenses incurred from this financing, provided such expenses have been approved in advance by OVION, such approval to not be unreasonably withheld. An initial non-refundable payment of $10,000 as an advance against these expenses will be paid to MRA upon the execution of this contract. OVION-approved expenses incurred by MRA prior to closing will be submitted for reimbursement by OVION and should be paid within two weeks of receipt

## 5. Equity Participation/ Fee Substitution

MRA will be allowed, in its sole discretion, to substitute not less than 25% of the cash fees owed to it by OVION, as per Section 3 above for equity or debt instruments in OVION, in whatever form and at whatever value as was paid by the investors contacted by MRA and for which the fees are payable; provided that MRA shall be bound be similar terms and conditions as such investors and provided further that such issuance to MRA or its designee(s) shall comply with applicable state securities laws and shall not preclude OVION's reliance on Rule 506 with respect to the financing. MRA hereby represents that it is an "accredited investor" as defined by Regulation D.

## 6. Press Releases

OVION will list MRA as participating placement agent in any description of this financing it issues directly (i.e., press release) and will use its own discretion to list MRA similarly in any further communications to the investment community regarding this financing.

## 7. Termination

This engagement may be terminated by OVION or MRA at any time without cause, upon 10 days written notice to that effect by the other party. However, MRA shall be entitled to the fees described in Sections 3, 4, and 5 above, in the event that, at any time prior to the expiration of 18 months after either the termination of this agreement or the final closing of the current Placement,

whichever is applicable, a loan, credit facility, or other investment is consummated by OVION with an MRA Contact at the time of termination.

**8. Indemnification**

The Company agrees to indemnify MRA under the terms set forth in Exhibit 1, which is included herein by reference.

Sincerely,

David B. Musket
President
Musket Research Associates

Agreed and Accepted:

Jeff Callister                    Date
President
Ovion Inc.

<u>SCHEDULE A</u>

Approved by ___WS1_____
Date          ___7/29/04_____

**OVION  Investors Eligible for Full MRA Fees**

**[MRA will add names to this list as we screen applicable parties]**

**OVION VC Contacts – Partial Fees as Indicated**

| | |
|---|---|
| De Novo | 3% Fee |
| Interwest | 3% Fee |
| Medventures | 3% Fee |
| Sprout | 3% Fee |
| USVP | 2% Fee |
| Versant | 3% Fee |
| Vertical Group | 3% Fee |

and all parties and entities affiliated with any group listed above

## SCHEDULE B

**OVION Investors NOT Eligible fo Full MRA Fees**

.

**All existing OVION Investors**

**OVION VC Contacts – 2% Placement Fee to MRA**

| OVION VC Contact (including affiliates thereof) | OVION Approval | MRA Approval |
|---|---|---|
| **US Venture Partners** | WSJ | DM |

**OVION VC Contacts – 3% Placement Fee to MRA**

| OVION VC Contact (including affiliates thereof) | OVION Approval | MRA Approval |
|---|---|---|
| De Novo | WSJ | DYY |
| Interwest | WSJ | DYY |
| Sprout | WSJ | DYW |
| Versant | WSJ | DY |
| Vertical Group | WSJ | DYY |

EXHIBIT 1

Ovion Inc. ("OVION") agrees to indemnify and hold harmless Musket Research Associates, Inc. ("MRA") and each of MRA's officers, directors. agents, employees and controlling persons (within the meaning of each of Section 20 of the Securities Exchange Act of 1934, as amended, and Section 15 of the Securities Act of 1933, as amended)(each of the foregoing, including MRA, being hereinafter referred to as an "Indemnified Person") to the fullest extent permitted by law from and against any and all losses, claims, damages, expenses (including reasonable fees and disbursements of counsel), actions (including shareholder derivative actions), proceedings, investigations (whether formal or informal, or in tort, contract or otherwise), inquiries or threats thereof (all of the foregoing being hereinafter referred to as "Liabilities"), based upon, relating to or arising out of MRA's engagement hereunder or any Indemnified Person's role therein including, without limitation, any liabilities relating to or arising out of the engagement by OVION of any other financial advisor or investment banker: provided, however,  that OVION shall not be liable under this paragraph to the extent that it is finally judicially determined by a court of competent jurisdiction that such Liabilities resulted from the willful misconduct or gross negligence of the Indemnified Person seeking indemnification  In connection with OVION's  obligation to indemnify for expenses as set forth above, OVION further agrees to advance or reimburse each Indemnified Person for such expenses (including reasonable fees for counsel) as they are incurred by such Indemnified Person:  provided, however, that if any Indemnified Person is reimbursed hereunder for any expenses, such reimbursement of expenses shall be refunded by the Indemnified Person who received such expenses to the extent it is finally judicially determined by a court of competent jurisdiction that the Liabilities in question resulted from the willful misconduct or gross negligence of such Indemnified Person.

Each Indemnified Party shall, upon the service of a summons or other initial legal process upon it in any action or suit instituted against it or upon its receipt of written notification of the commencement of any investigation or inquiry of, or proceeding against, it or upon its receipt of other written notification of the assertion against it of any Liabilities, such Indemnified Party will promptly give written notice (hereinafter the "Notice") thereof to OVION (provided that delay in giving such notice shall not relieve OVION of its indemnification obligations hereunder except to the extent, if at all, that it shall have been prejudiced thereby). OVION shall be entitled, if it so elects within fifteen days after receipt of the Notice, by giving written notice (hereinafter the "Defense Notice") to the Indemnified Party, to assume the entire defense of such Liabilities, in which event such defense shall be conducted at the expense of OVION by counsel chosen by it and reasonably satisfactory to the Indemnified Party; provided, however, that if the Indemnified Party reasonably determines (i) that there may be conflict between the positions of OVION and the Indemnified Party in conducting the defense of such Liabilities or (ii) that there may be legal defenses available to the Indemnified Party different from or in addition to those available to OVION, then counsel for the Indemnified Party shall be entitled to participate in such defenses, or conduct the defense to the extent reasonably determined by such counsel to be necessary to protect the interests of the Indemnified Party, and such participation in or separate conduct of such defense shall be covered by the indemnification by OVION hereunder. In any event, any  Indemnified Party shall retain the right to participate in the defense of any Liabilities with separate counsel, where the defense of such Liabilities has been assumed by OVION in accordance with the provisions hereof and the circumstances described in clauses (i) or (ii) of the above proviso are not present, but the Indemnified Party shall bear and be solely responsible for its own costs and expenses in connection with any such participation.

If the indemnification or reimbursement provided for hereunder is finally judicially determined by a court of competent jurisdiction to be unavailable to an Indemnified Person in respect to any Liabilities (other than as a consequence of a final judicial determination by such a court of willful misconduct or gross negligence of such Indemnified Person), then OVION agrees, in lieu of indemnifying such Indemnified Person, to contribute to the amount paid or payable by such Indemnified Person as a result of such Liabilities (i) in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by OVION on the one hand and by such Indemnified Person on the other from the transaction in connection with which MRA has been engaged, or (ii) if (but only if) the allocation provided in clause (i) of this sentence is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of OVION and of such Indemnified Person: provided, however, that in no event shall the aggregate amount contributed by the

Indemnified Person exceed the amount of fees actually received by his or its affiliate or employer pursuant to such engagement. The relative benefits received or sought to be received by OVION on the one hand and by MRA on the other shall be deemed to be in the same proportion as (i) the gross proceeds raised in the transactions subject to this Agreement bears to (ii) the fees paid or payable to MRA hereunder.

**FILED UNDER SEAL PURSUANT TO LR 7.2**

**EXHIBIT 12 TO THE AFFIDAVIT OF JEFFREY P. CALLISTER IN SUPPORT OF DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**C.A. No. 05-10416 (MEL)**

AFFIDAVIT OF JEFFREY P. CALLISTER

# EXHIBIT 13

| From: | Sue Ann Latterman <sueann@mravc com> |
|---|---|
| Sent: | Thursday, October 21, 2004 6:29 PM |
| To: | JCovion@aol com; AutoGX@aol com |
| Cc: | David Musket (dmusket@mravc com) |
| Subject: | to do list |

Please send me info on the following:
1.   contacts at Olympus, Stortz and AMS
2.   current schedule for the AAGL meeting
3     When you want to get together to discuss your thoughts on an acquisition...price, timing, etc  Please keep in mind that corporations usually move slower than VCs  It usually takes many many months to come to final terms with a potential corporate buyer.  On the other hand, there can be the potential to negotiate some up front money from a corporation to have them show their "honorable intentions" and to keep you from needing to raise money from somewhere else.  This is a balancing act in that you don't want to string along the VCs if your real intent is to sell the company sooner than later and yet you have the fiduciary responsibility to yourself and your investors to make the best deal possible. Timing thus is crucial. If you fully believe that Olympus is serious at this time, we should push that forward now.  I would be happy to call your contacts there to get a feel for what they are thinking and/or we could do a conference call with them   Please let me know your thoughts.

Thanks. .
Sue Ann

Sue Ann Latterman, VMD
Musket Research Associates
314 Joyce Way
Mill Valley, CA 94941
O: 415-383-3255
F: 415-383-3900
C: 415-672-4644

MRA05004

**AFFIDAVIT OF JEFFREY P. CALLISTER**

# EXHIBIT 14

| From: | JCovion@aol.com |
| Sent: | Thursday, October 21, 2004 6:33 PM |
| To: | sueann@mravc.com |
| Cc: | AutoGX@aol.com |
| Subject: | Fwd: for your calendars |
| Attach: | for your calendars (1 26 KB) msg |

Sue Ann,

Ovion's investigators meeting is Thursday, 7:00 to 10:00 PM. Note: from 8:00 to 10:00PM will focus solely on discussions per the Prehyst study and Pivotal study (i.e., what standard inner uterine pressure? type of inflation catheter? etc., etc...). I am not sure this would be of interest to you If so, we will reserve a seat for you. At present there will be 12 doctors attending, along with Craig Traub from Storz The other two lunches are set up for you!!! If others might attend these lunches, let us know now so we can make the appropriate number of seating arrangements.

The contacts at Olympus are Thomas Prsecher (s?) PHD, and Paul Abrahm (s?)
Thomas oversee the Gynecology division and Paul is Head of business Dev. Paul is going to get the NDA going ASAP I'll keep you abreast.

Jeff C

MRA05005