LAW OFFICES

# McANDREWS, HELD & MALLOY, LTD.

34TH FLOOR

500 WEST MADISON STREET

CHICAGO, ILLINOIS 60661

TELEPHONE: (312) 775-8000

FACSIMILE: (312) 775-8100

WWW.MHMLAW.COM

GEORGE P. McANDREWS
JOHN J. HELD
TIMOTHY J. MALLOY
WILLIAM M. WESLEY
LAWRENCE M. JARVIS
GREGORY J. VOGLER
JEAN DUDEK KUELPER
HERBERT D. HART III
ROBERT W. FIESELER
THOMAS J. WIMBISCUS
STEVEN J. HAMPTON
PRISCILLA F. GALLAGHER
STEPHEN F. SHERRY
PATRICK J. ARNOLD JR.
GEORGE F. WHEELER
JANET M. McNICHOLAS
CHRISTOPHER C. WINSLADE
EDWARD A. MAS II
GREGORY C. SCHODDE
EDWARD W. REMUS
DONALD J. POCHOPIEN
SHARON A. HWANG
DAVID D. HEADRICK
ALEJANDRO MENCHACA

KIRK A. VANDER LEEST
RICHARD T. McCAULLEY JR.
PETER J. McANDREWS
LELAND G. HANSEN
JAMES M. HAFERTEPE
JONATHAN R. SICK
ELIGIO C. PIMENTEL
JAMES P. MURPHY
DEAN A. PELLETIER
MICHAEL B. HARLIN
JAMES R. NUTTALL
ROBERT A. SURRETTE
JOSEPH M. BARICH
SCOTT P. McBRIDE
PATRICIA J. McGRATH
TROY A. GROETKEN
GERALD C. WILLIS
JOHN A. WIBERG
WILHELM L. RAO
SANDRA A. FRANTZEN
RONALD H. SPUHLER
CHRISTOPHER V. CARANI
RONALD A. DICERBO
JENNIFER E. LACROIX

JOSEPH F. HARDING
JOSEPH M. BUTSCHER
SARA J. BARTOS
JOHN L. ABRAMIC
MICHAEL J. FITZPATRICK
DAVID Z. PETTY
MICHAEL T. CRUZ*
MIRUT P. DALAL
CHRISTOPHER N. GEORGE
MATTHEW A. ANDERSON
YUFENG MA
DENNIS H. JASKOVIAK
DEBORAH A. LAUGHTON
WILLIAM B. GONT
DENNIS P. HACKETT
HOPETON S. WALKER
SHAWN L. PETERSON
OGNYAN I. BEREMSKI
PHILIP H. SHERIDAN
CHRISTOPHER R. CARROLL
CHRISTOPHER M. SCHARFF
CONSUELO G. ERWIN
PETER J. PROMMER

MERLE S. ELLIOTT
BRIAN C. BIANCO
PAUL W. McANDREWS
ANDREW B. KARP
LEONARD D. CONAPINSKI
LAURA M. PERSONICK
JONATHAN M. RUSHMAN
JEREMY N. GAYED
CHRISTOPHER J. BUCHKO
MICHAEL J. KRAUTNER
ADAM J. FAIER
JAMES H. WILLIAMS
SARAH A. KOFFLIN
ALI H. SHAH
PATRICK V. BRADLEY
CHRISTINA F. POLYN

OF COUNSEL
S. JACK SAUER

*ADMITTED TO PRACTICE IN CA

March 21, 2006

**Via ECF**

The Honorable Morris E. Lasker
United States District Court for
    the District of Massachusetts
One Courthouse Way
Boston, Massachusetts 02210

      Re:    *Musket Research Associates, Inc. v. Ovion, Inc., et al.;*
               *Ovion, Inc. v. Musket Research Associates, Inc., et al.*
               Civil Action No. 05 10416 MEL

Dear Judge Lasker:

      I write regarding two matters discussed at the hearing on March 8, 2006, specifically (1) the production of documents that Defendants previously moved to compel and (2) entry of a protective order. With respect to document production, a Proposed Order is attached as Exhibit A. With respect to entry of a protective order, a proposed protective order, which was submitted previously by Defendants, is attached as Exhibit B. As instructed by Your Honor, we have conferred with Plaintiff's counsel regarding these matters but have not reached agreement, as explained below.

      In addition, Plaintiff's counsel has raised the issue of lifting the stay on discovery previously entered by the Court pending resolution of Defendants' motion for summary judgment. Following a hearing on January 24, 2006, the Court entered an order providing that "the following discovery shall be stayed:  discovery between the parties, discovery pursuant to subpoenas directed to American Medical Systems, Inc. ("AMS"), and all depositions." (Docket

## McANDREWS, HELD & MALLOY, LTD.

The Honorable Morris E. Lasker
March 21, 2006
Page 2

No. 53, ¶ 1.)  The Court's order also provided:  "The Court will address the case schedule with the parties after resolution of Defendants' summary judgment motion."  (*Id.*, ¶ 2.)

At the hearing, the Court stated that, if Plaintiff believed that discovery was necessary to respond to Defendants' motion for summary judgment, Plaintiff could apply for relief from the stay pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.  Plaintiff did not raise Rule 56(f) or otherwise apply for discovery in response to Defendants' motion for summary judgment. At this juncture, the stay should remain in place until the Court has ruled on Defendants' summary judgment motion, which may significantly narrow the issues for discovery.

1.     **Plaintiff Should Be Compelled To Produce Where Plaintiff Alleged Irrelevance In Opposition To Defendants' Motion To Compel And Plaintiff Then Raised The Allegedly Irrelevant Subject Matter In Opposition To Defendants' Motion For Summary Judgment**

Within ten (10) days after the Court lifts the stay on discovery between the parties, Plaintiff and Counterdefendants should be compelled to produce documents concerning the following:

    a) MRA's contracts (*e.g.*, engagement letters) with its clients, including all schedules and attachments;

    b) the negotiation of MRA's contracts with its clients or potential clients;

    c) disputes between MRA and its clients; and

    d) fees received by MRA and any investment by MRA (or any affiliated persons such as the ProMed entities) in any investment vehicle for which MRA earned fees.

A Proposed Order is attached as Exhibit A.

Defendants previously moved to compel the production of these documents.  (*See* Docket No. 33; Docket No. 34 at 16-20.)  In opposition to Defendants' motion, Plaintiff alleged that the subject matter was irrelevant.  (*See* Docket No. 38 at 8-11.)  Relying on Plaintiff's representations, the Court denied <u>without prejudice</u> Defendants' motion to compel the production of documents and things. (Docket No. 53, ¶ 3.)

At the summary judgment hearing on March 8, 2006, Defendants noted that, despite Plaintiff's prior representations, Plaintiff raised the allegedly irrelevant subject matter in its affidavits in opposition to Defendants' motion for summary judgment.  Plaintiff should not be

## McANDREWS, HELD & MALLOY, LTD.

The Honorable Morris E. Lasker
March 21, 2006
Page 3

allowed to withhold documents and information, on the basis that the subject matter allegedly is irrelevant, and then affirmatively place the same subject matter at issue in the case.  Accordingly, at the March 8 hearing, the Court instructed Defendants to prepare a proposed order to compel the production of documents and things that Plaintiff previously had asserted were irrelevant.

### a.    Plaintiff's Quid Pro Quo Demand Is Inappropriate

Following the March 8 hearing, Defendants sent a draft proposed order to Plaintiffs.  (*See* Exhibit C.)  In response, Plaintiff also insisted that, "because discovery is not a one way street," Defendants should be compelled to produce documents on behalf of non-parties (American Medical Systems, Inc. ("AMS"), Dr. Isaacson, and Mr. Hess) as quid pro quo for Plaintiff producing the documents that it withheld on grounds of irrelevance.  (*See* Exhibit D.)  Plaintiff has subpoenaed AMS and Dr. Isaacson for documents but not Mr. Hess.

Plaintiff's "quid pro quo" demand is inappropriate for at least two reasons.  First, unlike Plaintiff, AMS and Dr. Isaacson have agreed to produce documents in response to the subpoenas "provided that an appropriate protective order is in place."  (*See* Exhibit E at 2; Exhibit F at 3.)  In contrast, Plaintiff refused to produce documents based on its unilateral assertion that the subject matter was irrelevant, an assertion unmasked by Plaintiff's affidavits in opposition to Defendants' summary judgment motion.    Second, Defendants should not be compelled to produce documents that are not in their possession, custody, or control.  Plaintiff asserts that "Ovion has demonstrated its ability to exercise custody and control over the documents . . ." because "Ovion submitted [two] AMS documents as exhibits to Jim Call's Affidavit."  (*See* Exhibit D at 1.)  To the contrary, the fact that AMS cooperated with Defendants and voluntarily provided two documents for submission to the Court under seal does not mean that Defendants have custody and control of AMS documents generally, let alone the documents of Dr. Isaacson and Mr. Hess.

### b.    Plaintiff "Opened The Door" To Each Category Of Documents In The Proposed Order

In an effort to continue withholding documents, Plaintiff asserts that it "opened the door" to discovery of only its client contracts and associated schedules.  (*See* Exhibit D at 2.)  Plaintiff

## McANDREWS, HELD & MALLOY, LTD.

The Honorable Morris E. Lasker
March 21, 2006
Page 4

still refuses, for example, to produce documents concerning the negotiation of its client contracts. (*Id.*)  Contrary to Plaintiff's assertions, Plaintiff affirmatively raised the subject matter of each category in the Proposed Order, as explained below.

    i.    **MRA's Contracts (*e.g.*, Engagement Letters) With Its Clients, Including All Schedules And Attachments**

Despite Plaintiff's prior protestations of irrelevance, Plaintiff affirmatively raised the issue of Plaintiff's contracts with other clients.  In particular, Plaintiff MRA raised the issue of the differences and similarities between MRA's Engagement Letter with Ovion on the one hand and its contracts with other clients on the other hand.  For example, Mr. Musket asserts in his affidavit that MRA's contracts with other clients are "substantially the same as" MRA's Engagement Letter with Ovion.  (Docket No. 56, ¶ 2.)  MRA did not submit any documents to corroborate Mr. Musket's representations.[1]

The differences and similarities between the Ovion Engagement Letter and MRA's other contracts could be relevant to issues in this case, particularly in view of Mr. Musket's uncorroborated representations regarding the reason for the "Advisory Fee" provision in the Ovion Engagement Letter.  (Docket No. 56, ¶ 16.)  Moreover, Mr. Musket acknowledges that MRA has only about 40 client contracts.  (*Id.*, ¶ 2.)  Accordingly, including schedules and attachments, MRA's client contracts should total less than 400 pages combined, which is not burdensome.  MRA should be compelled to produce these documents.

    ii.    **The Negotiation Of MRA's Contracts With Its Clients Or Potential Clients**

Despite prior protestations of irrelevance, Plaintiff MRA affirmatively raised issues concerning the negotiation of its contracts with other clients.  For example, Mr. Musket states the following in his affidavit:

---

[1] In contrast to Mr. Musket's representations, Ovion previously submitted an MRA client contract, available on the internet, which differs significantly from MRA's Engagement Letter with Ovion.  (*See* Docket No. 34, Ovion Exhibit J (MRA contract with Somnus).)  Among other differences, the Somnus contract lacks provisions for an "Advisory Fee" in the event of a "Corporate Transaction."

## McANDREWS, HELD & MALLOY, LTD.

The Honorable Morris E. Lasker
March 21, 2006
Page 5

> This is definitely not a business driven by inventory like real estate brokerage but is more akin to a long courtship culminating in a marriage proposal. Our long history and success in this sector has resulted in many more requests for our help than we could possibly handle in an efficient manner. . . . For this reason, we have been very careful to seek assurances from prospective clients that they are committed to using MRA's services to obtain venture financing if we take on the project.

(Docket No. 56, ¶ 5.)  Mr. Musket's allegations are uncorroborated.  For example, MRA has not submitted a single document corroborating Mr. Musket's allegation that MRA has "been very careful to seek assurances from prospective clients that they are committed to using MRA's services to obtain venture financing."  (*Id.*)  Assuming, *arguendo*, that MRA has been "very careful" in seeking such assurances, then MRA must have documented its efforts and the assurances that it allegedly received.  Accordingly, in view of Mr. Musket's uncorroborated allegations, MRA should be compelled to produce documents concerning its negotiations with clients and prospective clients.

### iii.        Disputes Between MRA And Its Clients

Despite prior protestations of irrelevance, Plaintiff MRA affirmatively raised issues concerning its disputes with other clients.  For example, Mr. Musket states in his affidavit: "Through its nearly 15 years of doing business MRA has never brought any legal action against a former client company nor has any action been brought against it."  (Docket No. 56, ¶ 2.) Notably, MRA does <u>not</u> allege that it has not threatened litigation against its clients.  Mr. Musket's allegations are uncorroborated.

As noted in Mr. Callister's affidavit, Ovion informed MRA shortly after Jim Call from AMS telephoned Ovion in August, 2004.  (Docket No. 68, ¶ 39.)  MRA expressed no interest in participating in Ovion's discussions with MRA, apparently because Mr. Musket had a poor working relationship with Mr. Call.  (*Id.*)  Accordingly, MRA's prior disputes with its clients involving Mr. Call could be significant in understanding why MRA elected not to participate in Ovion's discussions with AMS.  MRA's disputes with other clients also are relevant to Ovion's counterclaims.  In short, MRA should be compelled to produce documents concerning its disputes with other clients.

# McANDREWS, HELD & MALLOY, LTD.

The Honorable Morris E. Lasker
March 21, 2006
Page 6

**iv.    Fees Received By MRA And Any Investment By MRA (Or Any Affiliated Persons Such As The ProMed Entities) In Any Investment Vehicle For Which MRA Earned Fees**

Despite prior protestations of irrelevance, Plaintiff MRA raised issues concerning fees it has received and investments by MRA in the same investment vehicles from which MRA earned fees. For example, Mr. Musket states the following in his affidavit:

> MRA's contracts, including that for Ovion, obligate MRA to rebate at least 25% (and often much more) of any pretax fees generated in the same investment vehicle for which it earned fees. This co-investment puts a significant portion of MRA's profit at the same risk as management and the venture investors it solicits, distinguishing it from its peers.

(Docket No. 56, ¶ 4.) Contrary to Mr. Musket's representations, MRA does not obligate itself to invest in its clients. Rather, MRA insists on the right to invest "in its sole discretion." (Docket No. 49, Exhibit A, § 5.) In any event, MRA creates an irrevocable conflict of interest where MRA, allegedly representing its client, negotiates the terms under which MRA will have the right to invest in its own client. Although MRA endeavors to cloak this conflict of interest with positive verbiage, MRA acknowledges that its practices are not normal or accepted within the industry. (Docket No. 56, ¶ 4 ("distinguishing [MRA] from its peers").)

MRA's practices are relevant to Defendants' counterclaims. Moreover, despite its prior protestations of irrelevance, MRA raised this subject matter in opposition to Defendants' summary judgment motion. MRA should be compelled to produce the documents in question.

## 2.    Protective Order

Defendants previously submitted a proposed protective order, which is attached hereto as Exhibit B. This proposed protective order permits parties and non-parties to designate information as either Confidential or Outside Counsel Eyes Only, as appropriate. In order to facilitate discovery in the case, Defendants respectfully request entry of this proposed protective order.

The Court has not stayed discovery in relation to the subpoenas that Defendants' served on various venture capital firms. In several instances, however, these firms have indicated that they will not produce documents unless they can designate documents as Confidential and

## McANDREWS, HELD & MALLOY, LTD.

The Honorable Morris E. Lasker
March 21, 2006
Page 7

Outside Counsel Eyes Only.  For example, counsel representing four of the subpoenaed firms states:  "Please be advised that my clients are unwilling to produce documents until a suitable protective order has been granted."  (Exhibit G (01/26/06 email).)  The same counsel also states:

> On behalf of our venture capital clients, we support Ovion, Inc.'s efforts to permit third parties to designate materials both Confidential and Confidential Attorneys' Eyes Only.  These materials may contain highly sensitive, nonpublic information, to which our clients exercise care to maintain its confidentiality, and which would be valuable to these parties, as the parties in this litigation have in the past and likely will in the future solicit venture capital financing.
>
> * * *
>
> Once an adequate order has been entered, we will agree to produce the documents within five (5) business days upon receipt of the protective order.

(Exhibit G (01/27/06 letter).)  In addition, as discussed above, AMS and Dr. Isaacson have stated that they are prepared to produce documents in response to MRA's subpoenas when an appropriate protective order has been entered.  (*See* Exhibit E at 2; Exhibit F at 3.)  Moreover, Ovion has produced information to MRA that Ovion received from non-parties.  Ovion produced some of this information based on the understanding that it would be treated as Outside Counsel Eyes Only.

With respect to Ovion's confidential documents that were provided to non-parties, Ovion has proposed that these documents should be treated like Ovion's confidential documents that were provided to AMS.  In other words, these documents would be treated as Confidential, but not Outside Counsel Eyes Only, after the first phase of a deposition of MRA.  (*See* Exhibit C; Docket No. 53, ¶ 5.)  In view of Ovion's compromise proposal, Ovion respectfully requests that the Court enter the proposed protective order attached as Exhibit B to facilitate discovery in this case.

Respectfully submitted,


 s/ Leland G. Hansen
Leland G. Hansen
One of the Attorneys for Defendants


Enclosures (Exhibits A—G)

# Exhibit A

Judge Lasker
March 21, 2006

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

| | |
|---|---|
| Musket Research Associates, Inc.,<br><br>                    Plaintiff,<br><br>        v.<br><br>Ovion, Inc.,<br>William S. Tremulis, and<br>Jeffrey P. Callister,<br><br>                    Defendants.<br>―――――――――――――――――――<br>Ovion, Inc.,<br><br>                    Counterclaimant,<br><br>        v.<br><br>Musket Research Associates, Inc.,<br>David B. Musket, and<br>Sue Ann Latterman,<br><br>                    Counterdefendants. | **Case No. 05-10416 MEL** |

**[PROPOSED] ORDER**

This Court, having considered the submissions and arguments of the parties, hereby

**ORDERS**:

Within ten (10) days after the Court lifts the stay on discovery between the parties,

Plaintiff and Counterdefendants (collectively "MRA") shall produce all documents and things

concerning each of the following:

a)  MRA's contracts (*e.g.*, engagement letters) with its clients, including all schedules

     and attachments;

b)  the negotiation of MRA's contracts with its clients or potential clients;

c) disputes between MRA and its clients; and

d) fees received by MRA and any investment by MRA (or any affiliated persons such as the ProMed entities) in any investment vehicle for which MRA earned fees.

Dated: _____      _____
                             United State District Court Judge

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Ovion, Inc., <br> William S. Tremulis, and <br> Jeffrey P. Callister, <br><br> Defendants. | |
| Ovion, Inc., <br><br> Counterclaimant, <br><br> v. <br><br> Musket Research Associates, Inc., <br> David B. Musket, and <br> Sue Ann Latterman, <br><br> Counterdefendants. | Case No. 05-10416 MEL |

## [DEFENDANTS' PROPOSED] PROTECTIVE ORDER

This Court, having considered the arguments and evidence raised in the context of Plaintiff Musket Research Associates, Inc.'s motion for a protective order, the memoranda in support of and opposition to, and the records on file, hereby ORDERS:

### (1)    PROCEEDINGS AND FORM OF INFORMATION GOVERNED

This Order shall govern any information furnished by any party or nonparty to any party in connection with this litigation. The form of information governed by this Order includes, but is not limited to, documents and things, responses to requests to produce documents or other things, privileged document logs, responses to interrogatories, responses to requests for admissions, deposition testimony and exhibits, and all copies, extracts, summaries, compilations, designations and portions thereof.

1

## (2)     DEFINITION OF CONFIDENTIAL INFORMATION

a.     The term "Confidential Information" shall mean information that the designating party reasonably and in good faith believes constitutes information which if disclosed: (1) would reveal trade secrets, confidential or proprietary information, or technical or business advantages, (2) would violate a legal or contractual obligation of the designating party to protect from disclosure, or (3) would be invasive of an individual's privacy interests.

b.     The term "Confidential – Outside Counsel Eyes Only Information" shall mean information that the designating party reasonably and in good faith believes constitutes information which, if disclosed to persons described in section 6(d) below, (1) would reveal trade secrets, confidential or proprietary information, or technical or business advantages, (2) would violate a legal or contractual obligation of the designating party to protect from disclosure, or (3) would be invasive of an individual's privacy interests. .

The scope of this Order shall be understood to encompass not only those items or things which are expressly designated as Confidential Information or Confidential – Outside Counsel Eyes Only Information, but also any information derived therefrom, and all copies, excerpts, and summaries thereof, as well as testimony and oral conversation derived therefrom.

## (3)     DESIGNATION OF CONFIDENTIAL INFORMATION

a.     Any information produced in this litigation that is reasonably believed by the producing party to contain Confidential Information shall be designated as "CONFIDENTIAL" and any information produced in this litigation that is reasonably believed by the producing party to contain Confidential – Outside Counsel Eyes Only Information shall be designated as "OUTSIDE COUNSEL EYES ONLY".

b.     The designation of Confidential Information or Confidential – Outside Counsel Eyes Only Information shall be made at the following time:

(1)     For documents and things, at the time of the production of the documents or things;

(2)     For written responses to interrogatories or requests for admissions, at the

2

time of the written response;

   (3) For declarations, pleadings, and exhibits thereto, at the time of the filing or use of such declaration, pleading or exhibit;

   (4) For deposition testimony, at the time of the testimony (see section 8 (b)) or within twenty (20) days after receipt by the designating party of the transcript of the deposition;

   (5) For disclosures at a hearing or trial, at the time of such hearing or trial; and

   (6) For oral disclosures (other than deposition, hearing or trial testimony), at the time of such oral disclosure and through confirmation in writing within twenty (20) days of the disclosure thereof.

  c. The designation of Confidential Information or Confidential – Attorney Eyes Only Information shall be made in the following manner:

   (1) For documents and exhibits, by placing a legend on at least the first page and each page on which affected information appears;

   (2) For tangible objects, by placing a label or tag on the object or the container therefor, or if not practicable, as otherwise agreed, in writing;

   (3) For written responses to interrogatories or requests for admissions, in writing on at least the cover page of any such responses and separately within each such response;

   (4) For declarations and pleadings, in writing on the cover page sheet of any such declaration or pleading;

   (5) For depositions, by making a statement on the record at the time of the deposition, or in writing within twenty (20) days after receipt by the designating party of the transcript of the deposition;

   (6) For hearings and trial, by making a statement on the record; and

   (7) For any other oral disclosures, by making a statement at the time of the disclosure and through confirmation in writing within twenty (20) days of the disclosure.

  d. It shall be the duty of the party seeking protection of Confidential Information or

Confidential – Outside Counsel Eyes Only Information to indicate to the other party or its attorney of record which of the materials and testimony are considered Confidential Information or Confidential – Outside Counsel Eyes Only Information. Designations shall be made with as much specificity as reasonably possible.

e.    Each party retains the right to subsequently re-designate information it has produced in this litigation and to require such information to be treated in accord with such designations from that time forward. Upon re-designation of any information to a higher level of confidentiality, the receiving party shall take reasonable efforts to secure the return of the re-designated information from unqualified persons as described in paragraph 6, and if data or information has been extracted or copied from the re-designated information by an unqualified person, that information or data shall be expunged and not be used by the unqualified person.

f.    If it comes to a party's attention that information it designated for protection does not qualify for protection at all, or does not qualify for the level of protection initially asserted, that party must promptly notify all other parties that it is withdrawing the mistaken designation.

### (4)    RESOLUTION OF DISPUTES REGARDING DESIGNATION OF CONFIDENTIAL INFORMATION

a.    In the event that any party contests the designation of Confidential Information or Confidential – Outside Counsel Eyes Only Information, such party shall so inform the other parties to this lawsuit in writing, and all parties shall make good faith efforts to resolve the dispute.

b.    In the event that the parties are unable to resolve the dispute regarding designation of Confidential Information or Confidential – Outside Counsel Eyes Only Information, the party contesting the designation may raise the issue in a manner approved by the Court.

c.    A party designating a document as Confidential Information or Confidential – Outside Counsel Eyes Only Information must show good cause why the designated information falls under the definition of paragraph 2(a) or 2(b), respectively. Until the matter is resolved by written agreement of the parties or by order of the court, no person in possession of information

4

designated Confidential Information or Confidential – Outside Counsel Eyes Only Information shall, without prior written consent of the designating party or approval of the court, disclose such information to any person outside the parameters of this order.

### (5)   FAILURE TO DESIGNATE

Any party or third party who fails to designate information as Confidential Information or Confidential – Outside Counsel Eyes Only Information may later do so, and such information shall be treated by the receiving party as being so designated as Confidential Information or Confidential – Outside Counsel Eyes Only Information from the time the receiving party is notified in writing of the designation. The parties agree that the disclosure of Confidential Information or Confidential – Outside Counsel Eyes Only Information by the designating party in producing discovery to the receiving party, regardless of whether the information was designated as Confidential Information or Confidential – Outside Counsel Eyes Only Information at the time of disclosure, shall not be treated as a waiver in whole or in part of the designating party's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject, and shall not exempt it from the provisions of this Protective Order where notice has otherwise been given that it is Confidential Information or Confidential – Outside Counsel Eyes Only Information. Where a party or non-party changes the designation of confidentiality under this Protective Order, that party or non-party shall promptly furnish the information re-designated in accordance with paragraphs 3.c – 3.e above.

### (6)   ACCESS TO CONFIDENTIAL INFORMATION

Access to Confidential Information designated as "CONFIDENTIAL" shall be limited to, and only to, the following "qualified persons" only, under the following conditions, and shall not be shown to any other persons except as stated below:

a.      Outside attorneys of record to any party in connection with this litigation, and if the attorney of record is a member of a law firm, the employees and staff of the law firm. Before

5

any such person is permitted access to any of the Confidential Information, such person shall be informed of the existence and contents of this Protective Order.

      b.     Independent organizations retained by the attorneys to provide litigation support services in this litigation such as jury consultants, trial consultants, graphic artists, database support groups, illustrative exhibit preparation organizations and the like. Before any such person is permitted access to any Confidential Information, the person shall be informed of the existence and contents of this Protective Order, and shall comply with paragraph 8(a).

      c.     Independent experts and consultants, both testifying and non-testifying, retained in this litigation by the attorneys of record, insofar as the attorneys of record may deem it necessary for the preparation or trial of the litigation to consult with such experts or consultants, provided that any such actual or contemplated expert or consultant is not employed and was not employed by any of the parties hereto, and the conditions set forth in paragraph 8 are fulfilled in relation to any such actual or contemplated expert or consultant.

      d.     William S. Tremulis, Jeffrey P. Callister, David M. Musket, and Sue Ann Latterman, and limited, designated employees of Ovion, Inc., Musket Research Associates, Inc., and related business entities who are required in good faith to assist in the conduct of the litigation.

      e.     Court reporters and videotape technicians employed in depositions in the litigation.

      f.     The Court, its personnel and members of the jury.

      g.     Such other persons as hereafter may be designated by written agreement in this litigation or by order of the Court.

### (7)   ACCESS TO CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY INFORMATION

Access to information marked "OUTSIDE COUNSEL EYES ONLY" shall be limited to, and only to, those persons listed in paragraph 6 (a), (b), (c), (e), (f), and (g). Persons described in paragraph 6(d) shall not be given access to information marked "OUTSIDE COUNSEL EYES

ONLY".

### (8)    DISCLOSURE PURSUANT TO PARAGRAPHS 6.b – 6.d

a.    Each person referred to in paragraphs 6.b – 6.d hereof to whom Confidential Information or Confidential – Outside Counsel Eyes Only Information is to be given, shown, disclosed, made available or communicated in any way, shall first execute the Declaration, agreeing to be bound by the terms of this Protective Order.

b.    At least five (5) business days prior to a party giving, showing, disclosing, making available or communicating Confidential Information or Confidential – Outside Counsel Eyes Only Information to any person referred to in paragraphs 6.b – 6.d, the party shall deliver to all other parties a copy of the Declaration signed by the person to whom Confidential Information or Confidential – Outside Counsel Eyes Only Information is proposed to be disclosed, and a description setting forth the person's (i) name, (ii) residence and office addresses, (iii) present employer and job description, (iv) consulting activities, (v) relationship to the parties to this litigation, and (vi) a brief job and consulting history for the past three years. If available or reasonably obtainable, the most recent curriculum vitae or resume of an independent expert or consultant shall also be provided.

A party shall be entitled to object to such disclosure to any person referred to in paragraphs 6.b – 6.d within five (5) business days after receipt of the Declaration by stating specifically in writing the reasons why that party believes such person should not receive Confidential Information or Confidential – Outside Counsel Eyes Only Information. The parties shall promptly meet and confer to resolve the dispute over such disclosure.

c.    If a party needs further information regarding the person referred to in paragraphs 6.b – 6.d in order to make a decision as to whether to object to that person, such party may request such further information within five (5) business days after receipt of the Declaration. Such party shall then be entitled to object to disclosure to that person within five (5) business days after receipt of the requested information, or receipt of a refusal to provide such information.

d.     The objecting party shall have five (5) business days following the receipt of written notification by the opposing party that it is concluding the meet and confer process to move for an order that disclosure not be made to the person, or be made only under certain conditions. The objecting party shall have the burden of establishing grounds for barring the disclosure.  The objecting party shall seek to have any such motion presented to the Court at the earliest possible date on the Court's motion calendar.  If no such motion is made in such time and manner, then the objecting party shall be deemed to have waived its objection.

e.     No disclosure of Confidential Information or Confidential – Outside Counsel Eyes Only Information shall be made to any person referred to in paragraphs 6.b – 6.d until the time for serving objections to that independent expert or consultant has passed, or, in the event that an objection is timely served, until the time for moving the Court has passed, or in the event that such a motion is timely made, until the time as the Court has made a ruling thereon, and then, only in accordance with such ruling.

f.     The filing and pendency of objections or motions shall not limit, delay, or defer any disclosures of the Confidential Information or Confidential – Outside Counsel Eyes Only Information to persons as to whom no such objection has been made, nor shall it delay or defer any other pending discovery unless the level of confidentiality bears directly on a party's ability to conduct such discovery.

### (9)     USE OF CONFIDENTIAL INFORMATION OR CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY INFORMATION GENERALLY

a.     Confidential Information or Confidential – Outside Counsel Eyes Only Information  disclosed pursuant to this Protective Order shall be held in confidence by each person to whom it is disclosed.

b.     Information furnished by any party or non-party shall be used by a receiving party solely for purposes of this litigation, shall be protected from any unauthorized or unrelated use, and shall  not be used or disseminated by a receiving party for any competitive, commercial, business, research or development purpose.  But see Sections 11 and 22.

8

**(10)    USE OF CONFIDENTIAL INFORMATION OR CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY INFORMATION IN CONDUCT OF THIS LITIGATION**

a.    Confidential Information or Confidential – Outside Counsel Eyes Only Information may be used by the attorneys of record in good faith in conducting discovery, provided that the Confidential Information or Confidential – Outside Counsel Eyes Only Information is protected pursuant to the terms and conditions of this Protective Order.

b.    Confidential Information or Confidential – Outside Counsel Eyes Only Information may be disclosed to a witness not already allowed access to such information under this Protective Order if:

(1)    the Confidential Information or Confidential – Outside Counsel Eyes Only Information was previously received or authored by the witness;

(2)    the Confidential Information or Confidential – Outside Counsel Eyes Only Information was produced by or obtained from the witness or from an entity for whom the witness is or was a director, officer, employee, consultant or agent;

(3)    counsel for the party designating the material as Confidential Information or Confidential – Outside Counsel Eyes Only Information agrees that the material may be disclosed to the witness; or,

(4)    upon order of the Court for good cause shown.

c.    If the Confidential Information or Confidential – Outside Counsel Eyes Only Information is used in any deposition, then, at the option of the disclosing party, that portion of the proceeding shall be conducted outside the presence of all unqualified persons and any testimony or transcript relating thereto shall be designated as Confidential Information or Confidential – Outside Counsel Eyes Only Information. In the event of disclosure under this paragraph, only the court reporter, videographer, deponent, his/her counsel, and persons to whom disclosure may be made, and who are bound by the Protective Order, may be present during the disclosure or discussion of Confidential Information or Confidential – Outside Counsel Eyes Only Information. Disclosure of Confidential Information or Confidential – Outside Counsel

9

Eyes Only Information pursuant to this paragraph shall not constitute a waiver of the confidential status of the material so disclosed.

        d.      Notwithstanding the parties' designation of Confidential Information or Confidential – Outside Counsel Eyes Only Information, any court hearing which refers to or describes Confidential Information or Confidential – Outside Counsel Eyes Only Information shall in the Court's discretion be held in open court with records unsealed unless there is a specific showing that confidentiality is required. The parties have the option to request that the proceeding shall be conducted in camera, out of the presence of all unqualified persons, and any transcript relating thereto shall, subject to the Court's approval, be designated as Confidential Information or Confidential – Outside Counsel Eyes Only Information.

### (11)   PARTY'S OWN INFORMATION

The restrictions on the use and dissemination of information established by this Protective Order are applicable only to Information received by a party from another party or from a nonparty. A party is free to do whatever it desires with its own information.

### (12)   RENDERING ADVICE TO CLIENTS

Nothing in this Protective Order shall bar or otherwise restrict any attorney from rendering advice to his client with respect to this litigation and, in the course of rendering advice, referring to or relying in a very general way on the examination of Confidential Information or Confidential – Outside Counsel Eyes Only Information, provided, however, that in rendering such advice and in otherwise communicating with his client, the attorney shall not disclose the contents of any Confidential Information or Confidential – Outside Counsel Eyes Only Information produced by another party if that disclosure would be contrary to the terms of this Protective Order.

### (13)   NO WAIVER

Other than as specified herein, the taking of or the failure to take any action to enforce the provisions of this Protective Order, or the failure to object to any designation or any such action or omission, shall not constitute a waiver of any right to seek and obtain protection or relief in

this litigation or any other litigation, such right including, but not limited to, the right to claim that any information is or is not proprietary to any party, is or is not entitled to particular protection or that such information does or does not embody trade secrets of any party. The procedures set forth herein shall not affect the rights of the parties to object to discovery on grounds other than those related to trade secrets or proprietary information claims, nor shall it relieve a party of the necessity of proper responses to discovery requests.

### (14)   SUBPOENA FROM THIRD PARTIES

In the event any party or nonparty, which has possession, custody or control of any Confidential Information or Confidential – Outside Counsel Eyes Only Information received from another party or nonparty, receives from a third party a subpoena or other process or order to produce such information, the party or nonparty that received the subpoena or other process or order (1) shall notify the attorneys of record of the party or nonparty claiming such confidential treatment of the Confidential Information or Confidential – Outside Counsel Eyes Only Information sought by such subpoena or other process or order, (2) shall furnish those attorneys of record with a copy of said subpoena or other process or order, and (3) shall cooperate with respect to any procedure sought to be pursued by the party or nonparty claiming such confidential treatment. The party or nonparty asserting the confidential treatment shall have the burden of defending against such subpoena, process, or order. The party or person receiving the subpoena or other process or order will not produce Confidential Information or Confidential – Outside Counsel Eyes Only Information so long as any motion or proceeding initiated to bar or condition disclosure is pending.

### (15)   NO PROBATIVE VALUE

This Protective Order shall not abrogate or diminish any contractual, statutory or other legal obligation or right of any party or person with respect to any Confidential Information or Confidential – Outside Counsel Eyes Only Information. The fact that information is designated Confidential or Confidential – Outside Counsel Eyes Only under this Protective Order shall not be deemed to be determinative of what a trier of fact may determine to be confidential or

proprietary. This Order shall be without prejudice to the right of any party to bring before the Court the question of (a) whether any particular material is or is not confidential, (b) whether any particular information or material is or is not entitled to a greater or lesser degree of protection than provided hereunder; or (c) whether any particular information or material is or is not relevant to any issue of this case, provided that in doing so the party complies with the foregoing procedures. Absent a stipulation of all parties, the fact that information has been designated "CONFIDENTIAL" or "OUTSIDE COUNSEL EYES ONLY" under this Order shall not be admissible during the trial of this litigation, nor shall the jury be advised of such designation. The fact that any information is disclosed, used or produced in discovery or trial herein shall not be construed admissible, or offered in any litigation or proceeding, before any court, agency or tribunal as evidence of or concerning whether or not such information is confidential or proprietary.

### (16)    PRIVILEGED MATERIAL

Nothing in this Order shall be deemed to waive any applicable privilege or immunity, or to limit the relief available to a party claiming that it inadvertently disclosed information subject to any privilege or immunity. Nothing in this Order shall require disclosure of information that is protected by the attorney-client privilege, work product immunity, legal prohibition against disclosure or other privilege or immunity.

### (17)    ACCIDENTAL OR INADVERTENT DISCLOSURE OF CONFIDENTIAL INFORMATION OR CONFIDENTIAL – ATTORNEYS EYES ONLY INFORMATION

In the event of any accidental or inadvertent disclosure of Confidential Information or Confidential – Outside Counsel Eyes Only Information, other than in a manner authorized by this Protective Order, counsel for the party responsible for the disclosure shall immediately notify opposing counsel of all the pertinent facts, and make every effort to prevent further unauthorized disclosure including, retrieving all copies of the Confidential Information or Confidential – Outside Counsel Eyes Only Information from the recipient(s) thereof, and securing the agreement of the recipient(s) not to further disseminate the Confidential Information

or Confidential – Outside Counsel Eyes Only Information in any form. Compliance with the forgoing shall not prevent the designating party from seeking further relief from the court.

### (18)    REDACTIONS

Any producing party may redact from the documents and things it produces matter that the producing party claims is subject to attorney-client privilege, work product immunity, a legal prohibition against disclosure, or other privilege or immunity. The producing party shall mark each document or thing where matter has been redacted with a legend stating "REDACTED FOR PRIVILEGE," as appropriate, or a comparable notice. Where a document consists of more than one page, at least the first page and each page on which information has been redacted shall be so marked. The producing party shall preserve an unredacted version of each such document. This provision shall not affect any obligation to provide a log of information redacted or otherwise withheld on the basis of attorney-client privilege, work product immunity, a legal prohibition against disclosure, or other privilege or immunity.

### (19)    TERMINATION OF LITIGATION

Within 60 days of the final disposition of the above-entitled case, whether by judgment and exhaustion of all appeals, by voluntary dismissal or by settlement, each party and its attorneys of record:

(i)    Shall destroy or return to the disclosing party, or its attorney of record, the Confidential Information or Confidential – Outside Counsel Eyes Only Information subject to this Protective Order in the possession, custody or control of the receiving party and its attorneys of record and staff;

(ii)    Shall insure that all the Confidential Information or Confidential – Outside Counsel Eyes Only Information subject to this Protective Order in the possession, custody or control of persons who are referred to in paragraphs 6.b – 6.d and 6.g and received such information via the party or its attorneys of record, is destroyed or returned to the disclosing party, or its attorney of record;

(iii)    Shall destroy all notes, memoranda or other documents which contain excerpts

13

from any of the Confidential Information or Confidential – Outside Counsel Eyes Only Information subject to this Protective Order, and shall ensure that all persons do the same who are referred to in paragraphs 6.b – 6.d and 6.g and received such information via the party or its attorneys of record; and

(iv) Shall deliver to the disclosing party, or its attorney of record, written confirmation that there has been compliance with the terms of this paragraph or that there has not been compliance and the reason for such noncompliance, upon receipt of which the disclosing party may make application to the Court for such further order as may be appropriate. Notwithstanding the above, outside counsel for each party may retain one copy of all pleadings, discovery requests and responses, transcripts, and deposition and trial exhibits, regardless of whether such documents and things contain Confidential Information or Confidential – Outside Counsel Eyes Only Information. These documents and things shall be maintained in accordance with the terms of this Protective Order.

**(20)   ENFORCEMENT OF THIS PROTECTIVE ORDER**

This Protective Order shall remain in force and effect until modified, superceded or terminated on the record by written stipulation of the parties or by order of the Court. This Protective Order shall survive the final conclusion of the litigation and the Court shall have jurisdiction to enforce this Order beyond the conclusion of this litigation.

**(21)   VIOLATION OF THE PROTECTIVE ORDER**

In the event any person or party shall violate or threaten to violate the terms of this Protective Order, the aggrieved designating party may immediately apply to obtain injunctive relief against any such person or party violating or threatening to violate any of the terms of this Protective Order. The parties and any other person subject to the terms of this Protective Order agree that this Court shall retain jurisdiction over it and them for the purpose of enforcing this Protective Order.

**(22)    MODIFICATION OF THIS PROTECTIVE ORDER**

In the event any party hereto seeks a court order that in any way seeks to vary the terms of this Protective Order, said party shall make such request in the form of a written stipulation, application upon at least ten (10) business days notice to the other party, or noticed motion to all parties that must be served and filed in accordance with local court rules.


Dated:_____          _____

                                   United States District Court Judge

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF MASSACHUSETTS

# BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc., <br><br>         Plaintiff, <br><br>    v. <br><br> Ovion, Inc., <br> William S. Tremulis, and <br> Jeffrey P. Callister, <br><br>         Defendants. | |
| Ovion, Inc., <br><br>         Counterclaimant, <br><br>    v. <br><br> Musket Research Associates, Inc., <br> David B. Musket, and <br> Sue Ann Latterman, <br><br>         Counterdefendants. | **Case No. 05-10416 MEL** |

## AFFIDAVIT REGARDING RECEIPT OF CONFIDENTIAL INFORMATION AND CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY INFORMATION

I, _____, declare that:

My address is _____, and the address of my present employer is _____ _____.

My present occupation or job description is _____

_____.

In addition to my other job functions, I am working as a consultant to

_____.

16

My relationship to Plaintiff/Defendant is _____

_____.

I have received a copy of the Stipulation and Protective Order (the "Protective Order") in this litigation.

I have carefully read and understood the provisions of the Protective Order, agree to be bound by it, and specifically agree I will not use or disclose to anyone any of the contents of any Confidential Information or Confidential – Outside Counsel Eyes Only Information received under the protection of the Protective Order except as permitted under the Protective Order.

I understand that I am to retain all copies of any of the materials that I receive which have been so designated as Confidential Information or Confidential – Outside Counsel Eyes Only Information in a container, cabinet, drawer, room or other safe place in a manner consistent with the Protective Order and that all copies are to remain in my custody until I have completed my assigned or legal duties. I will return all Confidential Information or Confidential – Outside Counsel Eyes Only Information and things which come into my possession or which I have prepared relating thereto, to counsel for the party by whom I am retained. I acknowledge that such return or the subsequent destruction of such materials shall not relieve me from any of the continuing obligations imposed upon me by the Protective Order.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at _____ on _____.

_____
[SIGNATURE]

17

# Exhibit C

Judge Lasker
March 21, 2006

From: Leland Hansen
Sent: Friday, March 10, 2006 5:09 PM
To: 'art.beeman@dlapiper.com'; 'brooks.ames@dlapiper.com'
Subject: Ovion/Musket Research

Art & Brooks:

To follow up on our discussions with Judge Lasker, I have attached a
proposed order for your review.

Also, to resolve the protective order issue, I propose that the parties
stipulate (1) to entry of the two tier protective order proposed by
defendants and (2) that, after the first phase of a deposition of
plaintiff or the resolution of any dispute regarding the sufficiency of
plaintiff's deposition testimony, whichever is later (this language from
order entered on 02/07/06), any information produced by defendants that
defendants provided to potential corporate partners shall be treated as
confidential rather than outside counsel eyes only.  Non-parties could
designate information as OCEO and defendants could designate information
that it received from non-parties as OCEO.

Leland

Leland Hansen
lhansen@mhmlaw.com
*****************************************************************

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**

| |
|---|
| Musket Research Associates, Inc., |
| Plaintiff, |
| v. |
| Ovion, Inc., |
| William S. Tremulis, and |
| Jeffrey P. Callister, |
| Defendants. |
| Ovion, Inc., |
| Counterclaimant, |
| v. |
| Musket Research Associates, Inc., |
| David B. Musket, and |
| Sue Ann Latterman, |
| Counterdefendants. |

**Case No. 05-10416 MEL**

**[PROPOSED] ORDER**

This Court, in view of the parties' submissions and the discussion with counsel for the parties at the hearing on March 8, 2006, hereby **ORDERS**:

Plaintiff and counterdefendants ("MRA") shall produce the following:

a)    all contracts (*e.g.*, engagement letters) between MRA and its clients;

b)    all schedules and attachments associated with MRA's contracts with its clients;

c)    all drafts, correspondence, and other documents and things relating to the negotiation of MRA's contracts with its clients; and

d)    all correspondence, communications, and other documents and things relating to disputes between MRA and its clients.

Dated: _____

**Approved as to form**:

March 10, 2006

_____
United State District Court Judge

_____

Brooks A. Ames (BBO #641192)
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
Boston, MA  02110-2600
(617) 406-6045 (telephone)
(617) 406-6145 (facsimile)

*Attorneys for Plaintiff and Counterdefendant Musket Research Associates, Inc. and Counterdefendants David B. Musket and Sue Ann Latterman.*

_____

Leland G. Hansen (*pro hac vice*)
Christopher V. Carani (*pro hac vice*)
MCANDREWS, HELD & MALLOY, LTD.
500 W. Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000 (telephone)
(312) 775-8100 (facsimile)

*Attorneys for Defendant and Counterclaimant Ovion, Inc. and Defendants William S. Tremulis and Jeffrey P. Callister.*

# Exhibit D

Judge Lasker
March 21, 2006



**DLA Piper Rudnick Gray Cary US LLP**
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
T 617.406.6000
F 617.406.6100
W www.dlapiper.com

BROOKS A. AMES
brooks.ames@dlapiper.com
T 617.406.6045  F 617.406.6145

March 13, 2006

<u>**VIA E-MAIL (lhansen@mhmlaw.com)**</u>
<u>**AND FIRST-CLASS MAIL**</u>

Leland G. Hansen, Esq.
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, 34th Floor
Chicago, IL  60661

   Re: *Musket Research Associates, Inc. v. Ovion, Inc., et al.*
     *Ovion, Inc. v. Musket Research Associates, Inc., et al.*
     <u>Civil Action No. 05 10416 MEL</u>

Dear Leland:

   This letter responds to your March 10th e-mail and Proposed Order.

   We note at the outset that discovery is not a one way street.  Thus, we have attached a draft Proposed Order, which requires both Ovion and MRA to produce documents that support the allegations contained in their supporting affidavits.  It is only fair that Ovion produce the documents that support the allegations made in the affidavits Ovion submitted from Jim Call, Dr. Keith Isaacson, and Robert Hess.  We believe that this is in keeping with the direction Judge Lasker gave us at last Wednesday's hearing and is also consistent with the principle you articulated in support of your request for discovery of the contracts identified in David Musket's affidavit.

   During the course of this litigation Ovion has already demonstrated its ability to exercise custody and control over the documents of American Medical Systems, Inc. ("AMS"), Dr. Isaacson, and Mr. Hess.  For instance, Ovion submitted selected AMS documents as exhibits to Jim Call's Affidavit.  In addition, you represent AMS and Dr. Isaacson for purposes of discovery in this litigation and have already agreed to produce documents responsive to MRA's subpoenas on behalf of these third parties.  Therefore, Ovion is fully capable of complying with our Proposed Order.

**Serving clients globally**



We have excluded parts c and d from your Proposed Order. Having reviewed Musket's Affidavit carefully, we see nothing that opens the door to discovery of these document categories. Judge Lasker made clear that he did not intend to revoke his denial of Ovion's motion to compel. He merely agreed that documents supporting claims made in affidavits should be turned over.

With respect to the protective order issue, we agree with Judge Lasker's observation that the burden should be on the party or nonparty seeking "attorney's eyes only" protection to demonstrate to the Court that its information is entitled to such extraordinary protection. We are in the process of preparing a draft Order to this effect and will forward to you under separate cover.

Finally, MRA is agreeable to renewing full discovery while Judge Lasker has Ovion's motion for summary judgment under advisement. Please let us know if Ovion would like to vacate the stay.

I look forward to hearing from you.

Sincerely,

Brooks A. Ames

BAA/lnf
Enclosure

cc:     Christopher V. Carani, Esq. (by E-Mail)

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| Musket Research Associates, Inc., <br><br>     Plaintiff, <br><br>     v. <br><br> Ovion, Inc., <br> William S. Tremulis, and <br> Jeffrey P. Callister, <br><br>     Defendants. | **Case No. 05-10416 MEL** |
| Ovion, Inc., <br><br>     Counterclaimant, <br><br>     v. <br><br> Musket Research Associates, Inc., <br> David B. Musket, and <br> Sue Ann Latterman, <br><br>     Counterdefendants. | |

## [PROPOSED] ORDER

This Court hereby **ORDERS:**

1.    Plaintiff will produce all contracts (e.g. engagement letters) between Musket Research Associates, Inc. ("MRA") and its clients.

2.    Plaintiff will produce all schedules and attachments associated with MRA's contracts with its clients.

3.    Defendants will produce all American Medical System, Inc. ("AMS") documents concerning AMS's invitation to Dr. Keith Isaacson ("Dr. Isaacson"), referenced in paragraph 8 of the Affidavit of Jim Call ("Call Affidavit").

4.      Defendants will produce all AMS documents concerning AMS's knowledge of Ovion Inc.'s ("Ovion") efforts to market a transcervical sterilization product, referenced in paragraph 4 of the Call Affidavit.

5.      Defendants will produce all AMS documents concerning AMS's meeting with Dr. Isaacson that occurred on or about July 21, 2004, and is referenced in paragraph 6 of the Call Affidavit.

6.      Defendants will produce all AMS documents concerning Jim Call's conversation with Jeff Callister, referenced in paragraph 11 of the Call Affidavit.

7.      Defendants will produce all AMS documents concerning Ovion's visit to AMS, referenced in paragraph 12 of the Call Affidavit.

8.      Defendants will produce all Isaacson documents concerning his invitation to meet with AMS, referenced in paragraph 6 of the Affidavit of Dr. Keith Isaacson ("Isaacson Affidavit").

9.      Defendants will produce all Isaacson documents concerning his consulting role for Ovion and Ovion's request that he speak with potential Ovion investors, referenced in paragraph 8 of the Isaacson Affidavit.

10.     Defendants will produce all Isaacson documents concerning his visit to AMS in July 2004, referenced in paragraph 9 of the Isaacson Affidavit.

11.     Defendants will produce all Isaacson documents concerning Isaacson's conversation with Jeff Callister and Steven Tremulis after Isaacson's AMS visit, referenced in paragraph 12 of the Isaacson Affidavit.

12.     Defendants will produce all Isaacson documents concerning the capacity in which he was retained by Ovion, notwithstanding his denial of being retained as a "finder" in paragraph 16 of his affidavit.

13.    Defendants will produce all of Robert L. Hess's ("Hess") documents concerning his knowledge that Ovion had talked with some potential corporate partners, referenced in paragraph 5 of the Affidavit of Robert L. Hess ("Hess Affidavit").

14.    Defendants will produce all Hess documents concerning his advice to Ovion with respect to corporate partners, referenced in paragraphs 5 and 6 of the Hess Affidavit.

Dated: _____          _____

United States District Court Judge

**Approved as to form:**

, 2006

_____          _____

Brooks A. Ames (BBO #641192)          Leland G. Hansen
DLA PIPER RUDNICK GRAY CARY US LLP          Christopher V. Carani
33 Arch Street, 26th Floor          MCANDREWS, HELD & MALLOY, LTD.
Boston, MA  02110          500 W. Madison Street, 34th Floor
(617) 406-6045 (telephone)          Chicago, Illinois  60661
(617) 406-6145 (facsimile)          (312) 775-8000 (telephone)
          (312) 775-8100 (facsimile)

*Attorney for Plaintiff and Counterdefendant*
*Musket Research Associates, Inc. and*          *Attorneys for Defendant and*
*Counterdefendants David B. Musket and*          *Counterclaimant Ovion, Inc. and*
*Sue Ann Latterman.*          *Defendants William S. Tremulis and*
          *Jeffrey P. Callister.*

3

**Exhibit E**

LAW OFFICES

# McANDREWS, HELD & MALLOY, LTD.

34TH FLOOR
500 WEST MADISON STREET
CHICAGO, ILLINOIS 60661

TELEPHONE: (312) 775-8000
FACSIMILE: (312) 775-8100
WWW.MHMLAW.COM

GEORGE P. McANDREWS
JOHN J. HELD
TIMOTHY J. MALLOY
WILLIAM M. WESLEY
LAWRENCE M. JARVIS
GREGORY J. VOGLER
JEAN DUDEK KUELPER
HERBERT D. HART III
ROBERT W. FIESELER
THOMAS J. WIMBISCUS
STEVEN J. HAMPTON
PRISCILLA F. GALLAGHER
STEPHEN F. SHERRY
PATRICK J. ARNOLD JR.
GEORGE F. WHEELER
JANET M. MCNICHOLAS
CHRISTOPHER C. WINSLADE
EDWARD A. MAS II
GREGORY C. SCHODDE
EDWARD W. REMUS
DONALD J. POCHOPIEN
SHARON A. HWANG
DAVID D. HEADRICK
ALEJANDRO MENCHACA

KIRK A. VANDER LEEST
RICHARD T. McCAULLEY JR.
PETER J. McANDREWS
LELAND B. HANSEN
JAMES M. HAFERTEPE
JONATHAN R. SICK
ELIGIO C. PIMENTEL
JAMES P. MURPHY
DEAN A. PELLETIER
MICHAEL B. HARLIN
JAMES R. NUTTALL
ROBERT A. SURRETTE
JOSEPH M. BARICH
SCOTT P. McBRIDE
PATRICIA J. McGRATH
TROY A. GROETKEN
GERALD C. WILLIS
JOHN A. WIBERG
WILHELM L. RAO
SANDRA A. FRANTZEN
RONALD H. SPUHLER
CHRISTOPHER V. CARANI
RONALD A. DiCERBO
JENNIFER E. LACROIX

JOSEPH F. HARDING
JOSEPH M. BUTSCHER
SARA J. BARTOS
JOHN L. ABRAMIC
MICHAEL J. FITZPATRICK
DAVID Z. PETTY
MICHAEL T. CRUZ*
MIRUT P. DALAL
CHRISTOPHER N. GEORGE
MATTHEW A. ANDERSON
YUFENG MA
DENNIS H. JASKOVIAK
DEBORAH A. LAUGHTON
WILLIAM B. GONT
DENNIS P. HACKETT
HOPETON S. WALKER
SHAWN L. PETERSON
OGNYAN I. BEREMSKI
PHILIP H. SHERIDAN
CHRISTOPHER R. CARROLL
CHRISTOPHER M. SCHARFF
CONSUELO G. ERWIN
PETER J. PROMMER

MERLE S. ELLIOTT
BRIAN C. BIANCO
PAUL W. MCANDREWS
ANDREW B. KARP
LAURA M. PERSONICK
JONATHAN M. RUSHMAN
JEREMY N. GAYED
CHRISTOPHER J. BUCHKO
LEONARD D. CONAPINSKI
MICHAEL J. KRAUTNER
ADAM J. FAIER
JAMES H. WILLIAMS
SARAH A. KOFFLIN
ALI H. SHAH
PATRICK V. BRADLEY
CHRISTINA F. POLYN
——
OF COUNSEL
S. JACK SAUER

*ADMITTED TO PRACTICE IN CA

February 10, 2006

**Via E-mail & U.S Mail**

Brooks A. Ames
DLA Piper Rudnick Gray Cary US LLP
One International Place, 21st Floor
Boston, Massachusetts 02110-2613

<blockquote>
Re:    *Musket Research Associates, Inc. v. Ovion, Inc., et al.;*
*Ovion, Inc. v. Musket Research Associates, Inc., et al.*
Civil Action No. 05 10416 MEL
</blockquote>

Dear Brooks:

We have been retained by Dr. Keith Isaacson for purposes of discovery in the above captioned matter. All future communications with Dr. Isaacson relating to this matter should be through our office. As you are aware, we also represent Ovion, Inc., William S. Tremulis, and Jeffrey P. Callister in this matter.

I write in response to your letter to Dr. Isaacson dated February 7, 2006, and the subpoena to Dr. Isaacson dated January 19, 2006.

Dr. Isaacson objects to the subpoena to the extent that it purports to: (1) subject Dr. Isaacson to undue burden, (2) require the disclosure of privileged or other protected matter, (3) require the disclosure of trade secrets or other confidential research, development, or commercial information, and (4) impose an obligation on Dr. Isaacson beyond the scope of the Federal Rules of Civil Procedure and the local rules of the District of Massachusetts. For example, the subpoena seeks information that Dr. Isaacson considers highly confidential, such as information relating to his compensation. Ovion, Mr. Callister, and Mr. Tremulis join in these objections.

## McANDREWS, HELD & MALLOY, LTD.

Brooks A. Ames
February 10, 2006
Page 2


As per your February 7 letter, the deposition of Dr. Isaacson, if any, will not proceed on February 10.

Subject to the above objections, Dr. Isaacson is willing to produce within a reasonable time, through our office, non-privileged documents located in a reasonable search, if any, that were in his possession, custody, or control by February 17, 2005, provided that an appropriate protective order is in place.

Sincerely,

Leland G. Hansen

# Exhibit F

LAW OFFICES

## McANDREWS, HELD & MALLOY, LTD.

34TH FLOOR
500 WEST MADISON STREET
CHICAGO, ILLINOIS 60661

TELEPHONE: (312) 775-8000
FACSIMILE: (312) 775-8100
WWW.MHMLAW.COM

GEORGE P. McANDREWS
JOHN J. HELD
TIMOTHY J. MALLOY
WILLIAM M. WESLEY
LAWRENCE M. JARVIS
GREGORY J. VOGLER
JEAN DUDEK KUELPER
HERBERT D. HART III
ROBERT W. FIESELER
THOMAS J. WIMBISCUS
STEVEN J. HAMPTON
PRISCILLA F. GALLAGHER
STEPHEN F. SHERRY
PATRICK J. ARNOLD JR.
GEORGE F. WHEELER
JANET M. McNICHOLAS
CHRISTOPHER C. WINSLADE
EDWARD A. MAS II
GREGORY C. SCHODDE
EDWARD W. REMUS
DONALD J. POCHOPIEN

SHARON A. HWANG
DAVID D. HEADRICK
ALEJANDRO MENCHACA
KIRK A. VANDER LEEST
RICHARD T. McCAULLEY JR.
PETER J. McANDREWS
LELAND G. HANSEN
JAMES M. HAFERTEPE
JONATHAN R. SICK
ELIGIO C. PIMENTEL
JAMES P. MURPHY
DEAN A. PELLETIER
MICHAEL B. HARLIN
JAMES R. NUTTALL
ROBERT A. SURRETTE
JOSEPH M. BARICH
SCOTT P. McBRIDE
PATRICIA J. McGRATH
TROY A. GROETKEN
GERALD C. WILLIS
JOHN A. WIBERG

WILHELM L. RAO
SANDRA A. FRANTZEN
RONALD H. SPUHLER
CHRISTOPHER V. CARANI
RONALD A. DICERBO
JENNIFER E. LACROIX
JOSEPH F. HARDING
JOSEPH H. BUTSCHER
SARA J. BARTOS
JOHN L. ABRAMIC
MICHAEL J. FITZPATRICK
DAVID Z. PETTY
MICHAEL T. CRUZ*
MIRUT P. DALAL
CHRISTOPHER N. GEORGE
MATTHEW A. ANDERSON
YUFENG MA
DENNIS H. JASKOVIAK
DEBORAH A. LAUGHTON
WILLIAM B. GONT
DENNIS P. HACKETT

HOPETON S. WALKER
SHAWN L. PETERSON
OGNYAN I. BEREMSKI
PHILIP H. SHERIDAN
CHRISTOPHER R. CARROLL
CHRISTOPHER M. SCHARFF
CONSUELO G. ERWIN
PETER J. PROMMER
MERLE S. ELLIOTT
BRIAN C. BIANCO
PAUL W. McANDREWS
LAURA M. PERSONICK
ANDREW B. KARP
JONATHAN M. RUSHMAN
JEREMY N. GAYED
CHRISTOPHER J. BUCHKO

————

OF COUNSEL
S. JACK SAUER

*ADMITTED TO PRACTICE IN CA

October 28, 2005

**Via E-mail**
**Confirmation by U.S Mail**

Brooks A. Ames
DLA Piper Rudnick Gray Cary US LLP
One International Place, 21st Floor
Boston, Massachusetts 02110-2613

Re:    *Musket Research Associates, Inc. v. Ovion, Inc., et al.;*
       *Ovion, Inc. v. Musket Research Associates, Inc., et al.*
       Civil Action No. 05 10416 MEL

Dear Brooks:

We have been retained by American Medical Systems, Inc. ("AMS") for purposes of discovery in the above captioned matter. All future communications with AMS or its employees relating to this matter should be through our office. As you are aware, we also represent Ovion, Inc., William S. Tremulis, and Jeffrey P. Callister in this matter.

I am writing regarding the subpoena that you sent to José Jimenez on or about October 14, 2005.

As an initial matter, the subpoena is not enforceable because you failed to provide the necessary fees and mileage as required by Rule 45. Also, it is not clear to whom the subpoena is directed. The subpoena states that it is directed to the "Custodian of the Records." If that designation refers to an individual or group of individuals, then the subpoena was not properly served. Mr. Jimenez agreed to accept service of a subpoena only on behalf of AMS. Moreover,

## McANDREWS, HELD & MALLOY, LTD.

Brooks A. Ames
October 28, 2005
Page 2

no one at AMS has the title "Custodian of the Records." We are not sure what you mean by that designation in this instance. For example, we assume that you do not intend to depose, on November 14, every AMS employee who is a "custodian" of any of the documents called for in Schedule A. In short, if the subpoena is directed to an individual or group of individuals (as opposed to AMS as a corporation), then the subpoena has not been properly served and the individual or group of individuals has not been sufficiently identified. Under these circumstances, no witness will appear and no documents will be produced.

We assume that you intended to direct the subpoena to AMS. Based on that assumption, we provide the following response.[1]

First, as to the request for a deposition, the subpoena is deficient because you failed to "describe with reasonable particularity the matters on which examination is requested," as required by Rule 30(b)(6). Indeed, you provided no description of the matters for examination. No witness will appear. AMS also objects to the request for a deposition to the extent that the request (1) subjects AMS to undue burden, (2) requires disclosure of privileged or other protected matter, (3) requires disclosure of trade secrets or other confidential research, development, or commercial information, and (4) purports to impose an obligation on AMS or its employees beyond the scope of the Federal Rules of Civil Procedure and the local rules of the District of Minnesota and the District of Massachusetts. Ovion, Mr. Tremulis, and Mr. Callister join in these objections.

Second, as to the requests for the production of documents, including the "Instructions & Definitions" in Schedule A, AMS objects to the extent that the requests (1) subject AMS to undue burden, (2) require disclosure of privileged or other protected matter, (3) require disclosure of trade secrets or other confidential research, development, or commercial information, and (4) purport to impose an obligation on AMS or its employees beyond the scope

---

[1] AMS, Ovion, Mr. Tremulis, and Mr. Callister reserve the right to make further objections after the object and scope of the subpoena have been clarified.

## McANDREWS, HELD & MALLOY, LTD.

Brooks A. Ames
October 28, 2005
Page 3

of the Federal Rules of Civil Procedure and the local rules of the District of Minnesota and the District of Massachusetts. In particular, the documents requests, individually and collectively, are overly broad and unduly burdensome. Moreover, each of the document requests appears to call for the production of trade secrets and confidential information. Many of the requests appear to call for the disclosure of privileged or other protected matter. Ovion, Mr. Tremulis, and Mr. Callister join in these objections.

Subject to the objections, AMS is willing within a reasonable time to produce, through our firm, documents in AMS's possession, custody, or control as described below, provided (1) you confirm that the subpoena is directed to AMS as opposed to an individual or group of individuals and (2) an appropriate protective order is in place.

1. Regarding categories 1 – 18 and 20 – 21, AMS will produce, subject to the objections, non-privileged documents located in a reasonable search, if any, that were in its possession, custody, or control by February 17, 2005.

2. Regarding category 19, AMS will produce, subject to the objections, non-privileged documents located in a reasonable search concerning MRA or Ovion, if any, that were in AMS's possession, custody, or control by February 17, 2005.

As you know, Ovion has already produced a copy of the merger and acquisition agreement. There is no reason for AMS to produce another copy.

Please let me know if you have any questions or concerns.

Very truly yours,

Leland G. Hansen

# Exhibit G

**From:** dkaleba@cooley.com [mailto:dkaleba@cooley.com]
**Sent:** Thursday, January 26, 2006 10:19 AM
**To:** Leland Hansen
**Cc:** gfondo@cooley.com
**Subject:** RE: Ovion protective order?

Leland,

I have not yet heard a response from you to my letter, and per your previous conversation with Grant Fondo, concerning the entry of a protective order relating to the Ovion subpoena.  Please be advised that my clients are unwilling to produce documents until a suitable protective order has been granted.  If an order has been entered, we respectfully request a copy.

Additionally, we will request reasonable copies paid to us prior to production of the documents.  We will invoice you directly for the copy costs.

If you have any questions, please do not hesitate to contact me.

Regards,
Daniel Kaleba

_____

**From:**    Kaleba, Daniel
**Sent:**    Friday, January 20, 2006 4:55 PM
**To:**    'lhansen@mhmlaw.com'
**Cc:**    Fondo, Grant
**Subject:**    Ovion protective order?

Hello Leland,

Nice to speak with you today.

I am just writing to check on the status of the protective order discussions between MRA and Ovion.  Please provide us a copy of the protective order if one has been agreed upon.

Thank you,
Daniel Kaleba

| Cooley Godward LLP | ATTORNEYS AT LAW | Broomfield, CO<br>720 566-4000 |
|---|---|---|

ATTORNEYS AT LAW

Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA
94306-2155
Main    650 843-5000
Fax     650 857-0663
www.cooley.com
DANIEL R. KALEBA
(650) 843-5498
dkaleba@cooley.com

Broomfield, CO
720 566-4000
Reston, VA
703 456-8000
San Diego, CA
858 550-6000
San Francisco, CA
415 693-2000
Washington, DC
202 842-7800

January 27, 2006

VIA EMAIL AND U.S. MAIL

Leland Hansen
McAndrews, Held & Malloy
500 West Madison, 34th Floor
Chicago, IL 60661

Re:    *Musket Research Assoc. v. Ovion, Inc., et al.,*
       **re Third Party Subpoena to InterWest**
       **Partners, Onset Ventures, Sutter Hill**
       **Ventures, and Versant Ventures**

Dear Mr. Hansen:

Thank you for your January 26, 2006 letter concerning the parties' efforts to enter a protective order. As you know, Cooley Godward LLP represents several venture capital funds and their related entities, purportedly noticed in the third party subpoenas as InterWest Partners, Onset Ventures, Sutter Hill Ventures, and Versant Ventures.

On behalf of our venture capital clients, we support Ovion, Inc.'s efforts to permit third parties to designate materials both Confidential and Confidential Attorneys' Eyes Only. These materials may contain highly sensitive, nonpublic information, to which our clients exercise care to maintain its confidentiality, and which would be valuable to these parties, as the parties in this litigation have in the past and likely will in the future solicit venture capital financing.

You may submit this letter to the Court considering the protective order if you believe it will be helpful to your motion.

Please keep us advised on the status of the motion and the pending entry of the protective order. We will continue to work with our clients to collect documents responsive to the subpoena. As we discussed, though, our clients are unwilling to produce documents until an adequate protective order is entered. Please consider this our formal objection to the production of such documents until an appropriate protective order is entered.

We respectfully request that you agree to stay the production of our clients' documents pending the resolution of the protective order. Once an adequate order has been entered, we will agree to produce the documents within five (5) business days upon receipt of the protective order. As we have also discussed, our clients reserve all of their rights to seek a protective order should the entered order not adequately address the confidentiality of these materials.

# Cooley Godward LLP

Leland Hanson
January 27, 2006

Please advise if this proposed schedule is agreeable to you, and do not hesitate to contact me should you have any questions.

Sincerely,

Daniel R. Kaleba