

DLA Piper US LLP
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
T 617.406.6000
F 617.406.6100
W www.dlapiper.com

FILED
IN CLERKS OFFICE
2007 SEP -4 P 3: 31
U.S. DISTRICT COURT
DISTRICT OF MASS.

September 4, 2007

**BY HAND**

The Honorable Morris E. Lasker
United States District Court for the District of Massachusetts
John Joseph Moakley United States Courthouse
One Courthouse Way, Suite 4730
Boston, MA 02210

Re: *Musket Research Associates, Inc. v. Ovion, Inc., et al.;*
*Ovion, Inc. v. Musket Research Associates, Inc., et al.*
Civil Action No. 05 10416 MEL

Dear Judge Lasker:

Thank you for the opportunity to update you on the status of our case. We propose disposition of this matter as follows:

First, Ovion, Inc. ("Ovion") should be ordered to pay Musket Research Associate, Inc. ("MRA") sanctions pursuant to the Court' s January 26, 2006 order.

Second, Ovion's counterclaims against MRA, David Musket, and Sue Ann Latterman (the "MRA Parties"), as well as Ovion's claim that the parties have agreed to a settlement, should be dismissed for lack of prosecution because Ovion has taken no steps to pursue them for more than one year.

Finally, the Court should reject Ovion's belated effort to recast the parties' ultimately unsuccessful settlement negotiations, which terminated more than a year ago, into a binding agreement.

***Background***

MRA, a small firm specializing in raising venture capital for start-up companies, brought this lawsuit to recover compensation for work it performed for Ovion based on Ovion's repeated representations that it was committed to pursuing venture financing rather than a corporate acquisition. By repeatedly denying its desire to "hedge its bets" by pursuing parallel financing paths, Ovion kept MRA driving diligently toward the goal of a traditional venture financing while Ovion secretly negotiated a corporate acquisition. Had Ovion been honest about its intentions, MRA would have either passed on the engagement or modified its contract to avoid the outcome that has now transpired. With only a couple of principals whose primary compensation is tied to arranging successful venture financings, MRA does not have the time or resources to play the "stalking horse" for a corporate acquisition. Although the Court has disagreed, MRA continues to believe strongly that Ovion's conduct was actionable and that such bad faith business practices should not be legally condoned.





In its counterclaims, Ovion alleges that MRA failed to live up to its obligations under the parties' agreement. In fact, as the documents the parties exchanged in discovery indisputably demonstrate, MRA worked honorably, diligently, and productively for Ovion throughout the term of their engagement, from July 2004 through its dismissal in February 2005. MRA contacted over 40 venture capital firms, set up dozens of meeting with top-tier funds, created extensive due-diligence materials, and promoted Ovion through hundreds of e-mails, calls, and meetings. MRA's efforts, for which it received no compensation, undoubtedly improved Ovion's negotiating position with its corporate suitors and, ultimately, Ovion's sales price. Given this background, MRA regards Ovion's counterclaims as reactive and frivolous.

***The Court's January 26, 2006 Order for Sanctions Should Be Enforced***

At the end of December of 2005, Ovion issued numerous non-party subpoenas to over 50 venture capital firms across the country (the firms MRA depends on for the success of its business) without giving prior notice to MRA, in violation of Fed. R. Civ. P. 45(b)(1). Ovion had attached to these subpoenas a memorandum that falsely and without foundation accused MRA of engaging in extortion (the "Extortion Memo"). Upon learning of the violation, MRA demanded that Ovion withdraw the unlawful subpoenas and the Extortion Memo immediately and take steps to mitigate the harm to MRA's reputation. Instead of immediately agreeing to this request, Ovion strung MRA along for several days, forcing MRA to spend time and resources litigating a matter that should have been cut and dried. While Ovion defended its actions, its process servers continued to serve the December subpoenas and the Extortion Memo on non-parties only exacerbating the damage. Ultimately, after Ovion agreed to take only half-measures to cure its violation of the rules (withdrawing some subpoenas but refusing to withdraw the Extortion Memo or to acknowledge any violation of the rules to the non-parties), MRA brought a motion to quash and for sanctions.

In a lengthy opposition, Ovion admitted that it had violated Fed. R. Civ. P. 45(b)(1). However, Ovion asserted that MRA's motion for sanctions was moot because Ovion had withdrawn the subpoenas at issue before MRA filed its motion. Ovion repeated this contention to the Court at the hearing on MRA's motion. The Court rejected this argument. On January 26, 2006, the Court ordered Ovion to "pay Musket's costs, including reasonable attorneys' fees, for bringing the motion caused by the acknowledged violation [of Fed. R. Civ. P. 45(b)(1)]." A copy of the order is enclosed as Exhibit A. As grounds for the sanction, the Court found that Ovion's actions had "unnecessarily inflamed the relationship between the parties." The Court further ordered that the parties refrain from attaching any documents to subpoenas issued to non-parties going forward. On February 22, MRA submitted an affidavit outlining its fees and costs incurred as a result of Ovion's admitted violation. A copy of the affidavit is enclosed as Exhibit B.

On March 8, at the hearing on Ovion's motion for summary judgment, Ovion attempted to re-litigate the issue of sanctions, arguing, as it had in both its opposition and at oral argument, that sanctions should not be imposed because it had ultimately withdrawn the subpoenas at issue before MRA filed its motion. According to notes taken by MRA's counsel, the Court invited Ovion to put any request regarding the sanctions order in writing and to allow MRA to respond. Ovion never did so. Instead, on March 21, 2006 Ovion wrote a seven-page letter to the Court, which, while comprehensively addressing a number of outstanding issues in the case, made no mention of the sanctions order. (This omission is particularly remarkable given that Ovion has since claimed, most recently at the August 21, 2007 status conference, that the Court announced at the summary judgment hearing that it intended to reverse its sanctions order. MRA is confident that the Court's notes will confirm it did no such thing.)

Now, a year and half after the order issued, Ovion seeks to re-litigate this issue, which has already been decided, yet again. The Court should deny Ovion's belated request and grant MRA its costs and reasonable attorneys' fees, as set forth in MRA's February 22 affidavit. Ovion should not be allowed to continue to openly flout this Court's order.

***Ovion's Counterclaims Should Be Dismissed for Lack of Prosecution***

On March 15, 2006, the Court granted Ovion's motion for summary judgment, which disposed of all of MRA's claims against Ovion but did not address Ovion's counterclaims against the MRA Parties. The parties attempted to settle these claims but were unable to reach agreement on a number of issues, including Ovion's obligation to pay MRA sanctions pursuant to the January 26, 2006 order.

Over one year ago on August 25, 2006, Ovion broke off settlement discussions with MRA, claiming it intended to ask the Court to enforce an e-mail exchange with the MRA Parties' counsel as a binding settlement agreement. Instead of making a prompt motion with the Court, however, Ovion simply sat on its hands--and on its counterclaims. Ovion took no steps to enforce the alleged settlement. And Ovion took no steps to pursue its counterclaims through motion practice or discovery.

The Court has the discretion, and should exercise it here, to dismiss Ovion's counterclaims for lack of prosecution. See Link v. Wabash R.R., 370 U.S. 626, 629 (1962)("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."). Under LR 41.1, a party that appears not to have diligently prosecuted their claims must show good cause for why their case should remain on the docket. Ovion cannot make that showing. For more than a year, Ovion has done nothing to pursue its claims--including its claim to have entered an alleged settlement with the MRA Parties. Through this inaction, Ovion has demonstrated a "lack of interest in vindicating whatever rights [it] might have had." Zavala-Santiago v. Gonzalez-Rivera, 553 F.2d 710, 713 (1st Cir. 1977). Ovion will likely argue that it took no action to prosecute its counterclaims because it had reached a settlement with MRA. But this argument cannot excuse its failure to promptly seek enforcement of that alleged settlement. Indeed, Ovion failed to raise the issue with the Court until the Court ordered a status conference on August 21, 2007, almost a full year after Ovion told the MRA Parties it intended to seek relief.

***MRA Never Entered Into a Binding Settlement Agreement With Ovion***

Ovion claims that the MRA Parties and Ovion have reached a settlement in this matter. At the outset, this claim cannot properly be resolved through an exchange of letters. Nor should it be resolved by this Court given that this Court may ultimately be required to adjudicate the underlying claims. The MRA Parties expect that clarification on the two issues cited above will likely expedite a final settlement and render any further action by this Court to be unnecessary. If this proves not to be the case, the MRA Parties recommend that, to the extent the Court believes this is a live issue, the Court refer it to a magistrate judge for consideration. As set forth below, the MRA Parties believe a resolution of Ovion's argument that a settlement has been reached, cannot be decided on this record and will require the taking of evidence and the resolution of disputed facts, issues that should not be heard by a Judge who may be resolving the underlying merits of the claims.

In light of all the surrounding circumstances, it is clear that the parties never reached a binding settlement agreement. Following the Court's decision on summary judgment, Ovion's counsel, Leland Hansen, contacted the MRA Parties' counsel, Art Beeman, to discuss settling the case. In May of 2006, in a series of phone conversations, they discussed a settlement in which both sides would agree to waive the claims they had asserted against each other in the lawsuit. But a number of stumbling blocks remained. Beeman made it clear to Hansen that MRA expected to be paid the sanctions the Court had ordered in its





January 26, 2006 order. And Beeman told Hansen that the MRA Parties did not wish to waive any claims arising from Ovion's defamatory statements concerning the MRA Parties outside of the lawsuit.

On May 31, 2006, Hansen e-mailed a letter to Beeman setting forth the terms of a proposed settlement in the following bullet points:

- Entry of a consent judgment dismissing all claims and counterclaims with prejudice.
- Each side to release all claims, known and unknown, against the other side and its representatives.
- All parties to pay their own costs and fees. Stipulation vacating the Court's order of January 26, 2006 as to any sanctions.
- Appropriate protections for information designated as Confidential and Outside Counsel Eyes Only and information filed under seal.

With respect to the third bullet point, the MRA Parties understood this term to contemplate that the MRA Parties would agree to vacate the Court's order as to sanctions after those fees had been paid. As the MRA Parties understood it, vacating the order was a way for Ovion (and its counsel) to save face publicly, notwithstanding Ovion's payment of the underlying sanction award.

On June 1, Beeman's partner, Pam Fulmer, e-mailed Hansen that the MRA Parties agreed "in principle to the terms that you propose in your letter." However, Fulmer instructed Hansen to "prepare a draft settlement agreement memorializing these terms for our review and approval, and email to me as a Word document." Under Massachusetts law, when parties have agreed to execute a final written agreement, there is a "strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled." Rosenfeld v. United States Trust Co., 290 Mass. 210, 216 (1935). Here, Fulmer's e-mail made it clear that a binding agreement would not be formed unless and until the parties had reached agreement with respect to the terms of a final settlement agreement, and she requested the document in Word format so that she could make appropriate revisions.

This is not a case in which a final settlement agreement was intended to "to serve as a polished memorandum of an already binding contract." Goren v. Royal Invs. Inc., 25 Mass. App. Ct. 137, 140 (1987). Ovion knew, or should have known when it received Fulmer's e-mail, that several key terms remained to be negotiated, including:

- The amount of fees that Ovion would have to pay MRA in order for the MRA Parties to agree to vacate the January 26, 2006 order.
- The extent to which the parties would agree to release claims not arising out of the litigation.
- The manner in which confidential information would be protected.

The parties clearly had not entered into a binding agreement—had not achieved a meeting of the minds—on these terms or any others. They had merely agreed to agree on the terms of a settlement subject to further negotiations of the details. Such agreements are not enforceable under Massachusetts law. "We adhere to the principle that '[a]n agreement to reach an agreement is a contradiction in terms and imposes no obligations on the parties thereto,' in the circumstances that justify and give rise to it: where parties have merely reached the stage of imperfect negotiation prior to formalizing a contract, and have





not yet reduced their agreement to terms." Lafayette Place Associates v. Boston Redevelopment Authority, 427 Mass. 509, 517 (1998) (quoting Rosenfeld, 290 Mass. at 217).

On June 5, 2006, Ovion forwarded a draft settlement agreement and a stipulation and order of dismissal to the MRA Parties. Shortly afterwards, Beeman and Hansen resumed discussions concerning the terms of a proposed settlement. Again, the same stumbling blocks surfaced as had surfaced in their previous discussions (i.e., the payment of sanctions owed to MRA under the Court January 26, 2006 order, the scope of the proposed release required of the MRA Parties). In addition, the parties disagreed over the appropriate manner in which information that had been designated Confidential or Attorney's Eyes Only should be protected. Ovion demanded that all designated information would have to be destroyed. MRA agreed to allow destruction of only the documents labeled Attorney's Eyes Only as they had not seen them anyway. MRA protested that any documents it had sent to clients, virtually all of which had been labeled "Confidential", as well as any documents supporting such written or verbal disclosures to potential Ovion investors must be retained under the securities laws regulating it as a broker/dealer. A copy of an e-mail exchange between Beeman and Hansen that refers to these disagreements is enclosed as Exhibit C.

Instead of negotiating these legitimate disagreements over the terms of the proposed settlement, Ovion chose to claim that it had already obtained a binding agreement and informed the MRA Parties that it would seek relief from the Court. In fact, this was simply bluster on the part of Ovion. It had no intent of attempting to enforce the alleged settlement agreement with the MRA Parties. This failure to seek relief is compelling evidence that Ovion understood that the MRA Parties had never agreed to any settlement agreement and that any attempt to try to enforce a settlement would be fruitless.

In conclusion, the MRA Parties respectfully request that the Court order Ovion to pay MRA, forthwith, the fees set forth in MRA's February 22, 2006 affidavit, dismiss Ovion's counterclaims (and its claim to enforce an alleged settlement) for failure of prosecution, and, if necessary, refer Ovion's settlement claims to a magistrate.

Sincerely,

Brooks A. Ames

BAA/lnf
Enclosures

cc: Leland G. Hansen, Esq.

A

**ENDORSEMENT**

MUSKET RESEARCH ASSOCIATES, INC. v. OVION, INC., WILLIAM S. TREMULIS, and JEFFREY P. CALLISTER
05-CV-10416-MEL

LASKER, D.J.

Plaintiff Musket Research Associates, Inc. ("Musket") moves to quash the non-party subpoenas issued by Ovion, Inc. ("Ovion"). Musket contends that the subpoenas were issued in violation of Fed. R. Civ. P. 45(b)(1) and seeks sanctions against Ovion's counsel for this impropriety.

It is not disputed that Ovion violated Rule 45(b)(1) by failing to give Musket prior notice of approximately twenty-five non-party subpoenas. Ovion has admitted to and apologized for this error. I find no evidence that Ovion's violation was ill-intentioned, and Ovion has reasonably cured the damage by withdrawing and properly re-issuing the subpoenas.

Musket also complains that Ovion flouted the spirit of Rule 45(b)(1) by attaching a defamatory memorandum to the subpoenas, essentially accusing Musket of extorting its clients by threatening frivolous lawsuits. I make no determination as to whether such accusations are actionable. Given Ovion's explanation that the memorandum was included in a good faith effort to provide subpoenaed parties with background information about the case, and given that the memorandum was publicly available on the Court docket, I find that the memorandum was not improperly provided to third parties. Nevertheless, Ovion's actions were highly inadvisable in that they unnecessarily inflamed the relationship between the parties. The parties are therefore instructed not to follow this practice during the remainder of the litigation.

Accordingly, Musket's motion to quash is DENIED. However, Ovion is ordered to pay Musket's costs, including reasonable attorneys' fees, for bringing the motion caused by the acknowledged violation.

It is so ordered.

Dated: January 26, 2006
Boston, Massachusetts

/s/ Morris E. Lasker
U.S.D.J.

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| MUSKET RESEARCH ASSOCIATES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>OVION, INC., WILLIAM S. TREMULIS, and JEFFREY P. CALLISTER,<br><br>Defendants.<br><br>And related Counterclaims. | **No. 05 CV-10416 MEL** |

**AFFIDAVIT OF PAMELA K. FULMER IN SUPPORT OF MUSKET RESEARCH ASSOCIATES REQUEST FOR SANCTIONS RELATING TO EMERGENCY MOTION TO QUASH**

I, Pamela K. Fulmer, depose and state as follows:

1. I am a Partner with the law firm of DLA Piper Rudnick Gray Cary, LLP, ("DLA Piper") counsel of record for Plaintiff and Counter-defendant Musket Research Associates Inc. ("MRA") and Counter-defendants David Musket and Sue Ann Latterman in this action. I have personal knowledge of the matters stated herein, and if called as a witness, could and would testify competently thereto.

2. On January 26, 2006 this Court entered an Order on MRA's Emergency Motion to Quash Subpoenas. The Court's order recognized that Defendant Ovion Inc. ("Ovion"), on its own admission, had violated Rule 45(b)(1) by not giving MRA and its counsel prior notice of certain third party subpoenas, prior to service of the subpoenas. The Court further ordered Ovion

to pay MRA's "costs including reasonable attorneys' fees, for bringing the motion caused by the acknowledged violation."

3. Ovion's failure to comply with Rule 45(b)(1) caused MRA to incur significant attorneys' fees and costs relating to the improper service of the subpoenas. First, despite the fact that MRA pointed out Ovion's clear violation of the Rule during the first week of January, 2006, Ovion initially refused to acknowledge that any violation had occurred. In addition, Ovion refused to withdraw the subpoenas as specifically requested by counsel for MRA, necessitating MRA to file the Emergency Motion to Quash. As a result, this forced MRA to engage in expensive legal and factual research regarding the issue, and to confer with Ovion's counsel in lengthy correspondence, as well as telephonically. Second, many of the venture funds that received subpoenas were important business contacts of MRA. Thus MRA's principals were justifiably concerned about the possible negative effect of the subpoenas (and the Defamatory Memorandum) on these key relationships. This concern translated into multiple calls to counsel, which were very time consuming. Third, the sheer volume of the subpoenas meant that a large amount of attorney time was required just figuring out the scope of the service, and what third parties had been served at any given time. Fourth, the serious potential impact to the reputation of the client and the high degree of concern generated by Ovion's actions, required extensive partner involvement and advice on the issues. Finally, because the subpoenas were served nationwide, a great deal of effort was expended exploring the potential for relief in multiple jurisdictions.

4. Based on the Court's January 26, 2006 Order, I reviewed our law firm's invoices to MRA, in order to determine the total amount of attorneys' fees and costs incurred by MRA in connection with bringing the motion to quash. Based on my review, MRA has incurred at least a total of $62,398.00 in fees, and $1,845.00 in costs relating to the motion, for a total of $64,243.00. These fees and costs are broken down as follows:

| Attorney or Paralegal | Time Spent | Hourly Rate | Total |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Arthur Beeman | 15.7 | $616.27 | $9,675 |
| Pamela Fulmer | 42.8 | 485.07 | 20,761 |
| Greg Jung | 32.9 | 440.00 | 14,476 |
| Brooks Ames | 48.2 | 326.99 | 15,761 |
| Nili Yavin | 8.5 | 168.00 | 1,428 |
| Jessica Manchester | .9 | 330.00 | 297 |
| TOTAL FEES | | | $62,398.00 |

MRA also incurred Westlaw charges of $1.845.00 relating to the motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this affidavit was executed on February 21, 2006 in San Francisco, California.

/s/
Pamela K. Fulmer

I hereby attest that I have on file all holograph signatures for any signature indicated by a "conformed" signature /s/ within this e-filed document.

/s/
Brooks A. Ames

---

**From:** lhansen@mhmlaw.com [mailto:lhansen@mhmlaw.com]
**Sent:** Friday, August 25, 2006 8:46 AM
**To:** Beeman, Arthur
**Cc:** Fulmer, Pam; Ames, Brooks A.
**Subject:** RE: Your Letter of May 31, 2006

Art:

It appears that we will have to seek relief from Judge Lasker.

Leland

---

**From:** Arthur.Beeman@dlapiper.com [mailto:Arthur.Beeman@dlapiper.com]
**Sent:** Monday, August 21, 2006 1:34 PM
**To:** Leland Hansen
**Cc:** Pam.Fulmer@dlapiper.com; brooks.ames@dlapiper.com
**Subject:** RE: Your Letter of May 31, 2006

Leland:

This is to respond to your email below of August 16, 2006.

It's fair to say that both parties in this matter will need to concede on certain issues if we are to reach a settlement in the near term. It is entirely disingenuous for you to contend that we have already reached agreement on the terms and conditions of an enforceable settlement. As you know, during discussions between counsel, we had apparently reached an agreement in principle on the outline of a settlement. However, since that time, we have been unable to agree upon the specific terms and conditions for a settlement. Your threat to go to court to enforce a settlement that never was is disruptive and puts at risk the prospects for resolution at this time. Though we seem to be going around in circles of late, we will make one final attempt to clarify the outstanding issues to facilitate a settlement at this time:

1. Mutual ageement to relinquish claims for known and unknown acts that have arisen out of and are subject to this litigation from July 21, 2004 up to the date of signing a final settlement agreement.

2. Destruction of all documents. Since MRA's principals were prevented from reviewing virtually all of the relevant discovery documents in this case due the "attorneys eyes only" stipulation, they will agree to have us destroy all the documents that bear such designation. As a registered broker/dealer MRA is obligated to maintain records of all solicitation activities including copies of any materials involved in such solicitation. As you well know, many of the documents in this case relate to MRA's work product and should be available to MRA as what will turn out to be their sole benefit for their efforts on behalf of Ovion.

3. Once again, we want to clearly state to you that we are confident your contentions that the court has vacated its award of attorneys' fees to my client is unsupported by the record in this case. Both Brooks and I heard nothing that remotely suggested this outcome during or after our hearing. We would be quite surprised if Judge Lasker reversed his previous ruling given the way the case developed. In an effort to reach some compromise, our clients had voluntarily discounted the amount we billed them for the handling of the inappropriate and defamatory service of the subpoenas to $45,000. If you go back to the court for clarification, we will be looking for the full amount. This is simply the payment of attorneys fees for an overly aggressive legal process that was clearly condemned and sanctioned by the court. MRA will agree to keep the payment of these fees confidential so your client will not have to be concerned about any MRA claim to have "won" a settlement.

4. Finally, your client's counterclaims are without merit and we would vigorously defend your assertion of them in the event we don't settle.

Notwithstanding the above, and our conviction that we have a solid appeal issue, we continue to agree in principle to settle on the terms outlined above subject to final documentation.

Please get back to me by the end of this week.

Art

---

**From:** lhansen@mhmlaw.com [mailto:lhansen@mhmlaw.com]
**Sent:** Wednesday, August 16, 2006 5:16 PM
**To:** Beeman, Arthur
**Cc:** Fulmer, Pam; Ames, Brooks A.
**Subject:** RE: Your Letter of May 31, 2006

Art:

I have attached (1) a revised Settlement and Release Agreement, (2) a redline against the prior version, (3) a Stipulation and Dismissal (unchanged), and (4) exhibit B (unchanged). I made one change to the Settlement and Release Agreement in view of the time that has past.

Our patience is exhausted. Your clients previously agreed to these terms. You have never proposed any revisions to the language memorializing those terms.

Please return an executed copy of the Settlement and Release Agreement, signed by each of your clients, so that I receive it no later than noon Chicago time on Monday, August 21. Otherwise, you will force us to seek relief from Judge Lasker.

Leland

---