UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MUSKET RESEARCH ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> OVION, INC., WILLIAM S. TREMULIS, and JEFFREY P. CALLISTER, <br><br> Defendants. <br><br>——————————————————<br><br> OVION, INC., <br><br> Counterclaimant, <br><br> v. <br><br> MUSKET RESEARCH ASSOCIATES, INC., DAVID B. MUSKET, and SUE ANN LATTERMAN, <br><br> Counterdefendants. | No. 05 10416 MEL |

## MRA'S OPPOSITION TO OVION'S MOTION TO VACATE
## AWARD OF FEES AND COSTS

Ovion, Inc.'s ("Ovion") motion to vacate the Court's January 26, 2006 sanctions order (the "Order") should be denied because it rests on two fundamentally flawed premises. First, Ovion claims that the Court did not understand that Ovion withdrew the subpoenas it issued in violation of Rule 45(b)(1) of the Federal Rules of Civil Procedure <u>before</u> Musket Research Associates, Inc. ("MRA") filed its motion to quash and for sanctions. The record is clear, however, that the Court was well aware of this fact, but still regarded Ovion's Rule 45(b)(1) violations, as well as its "highly inadvisable" decision to enclose a memorandum accusing MRA

BOST1\494723.1

of extorting its client with the subpoenas, to be sanctionable. Moreover, contrary to Ovion's claims, the Court has <u>never</u> indicated an intent to vacate the sanctions award. Second, Ovion argues that following the entry of the order MRA agreed to waive its attorney's fee award as part of a proposed settlement of the case. But MRA never agreed to any such thing.

## Background

MRA is a small firm specializing in raising venture capital for start-up companies. Over the December 2005 holidays and just prior to one of the largest healthcare conferences of the year, Ovion issued numerous non-party subpoenas to over 50 venture capital firms across the country (the firms MRA depends on for the success of its business) without giving prior notice to MRA, in violation of Rule 45(b)(1). Ovion had attached to these subpoenas a memorandum that falsely and without foundation accused MRA of engaging in extortion (the "Extortion Memo").[1] Upon learning of the violation, MRA demanded that Ovion withdraw the unlawful subpoenas and the Extortion Memo immediately and take steps to mitigate the harm to MRA's reputation. Instead of immediately agreeing to this request, Ovion strung MRA along for several days, forcing MRA to spend time and resources litigating a matter that should have been cut and dried. While Ovion defended its actions, its process servers continued to serve the December subpoenas and the Extortion Memo on non-parties only exacerbating the damage. Ultimately, after Ovion agreed to take only half-measures to cure its violation of the rules (withdrawing some subpoenas but refusing to withdraw the Extortion Memo or to acknowledge any violation of the rules to the

---

[1] Under the heading, "MRA's Present Attempts to Extort Ovion Are Consistent With MRA's Pattern of Extorting Its Clients By Threatening Litigation Based on Unfounded Claims," Ovion claimed, without any factual basis, that MRA had attempted to extort money from Ovion and other MRA clients. <u>See</u> Defendant's Memorandum in Support of Motion to Compel the MRA Parties To (1) Answer Interrogatories and (2) Produce Documents and Things at 3.

non-parties), MRA brought a motion to quash and for sanctions. The Court denied the motion to quash but awarded MRA its attorneys' fees and costs, finding that Ovion's actions were "highly inadvisable" and had "unnecessarily inflamed the relationship between the parties." A copy of the Order is attached as <u>Exhibit A</u>. On February 22, 2006, MRA submitted an affidavit verifying its fees and costs. A copy of the affidavit is attached as <u>Exhibit B</u>.

## ARGUMENT

### A. The Court Properly Found Ovion's Conduct Sanctionable Notwithstanding Its Withdrawal of the Subpoenas.

Ovion admitted in its opposition to MRA's motion that it had violated Rule 45(b)(1). Standing alone, this admission gave the Court a sufficient basis to award sanctions. <u>See</u> <u>Spencer v. Steinman</u>, 179 F.R.D. 484, 489 (E.D. Pa. 1998) (rejecting attorney's "no harm no foul defense" and assessing sanctions based on abuse of Rule 45 subpoena power). Ovion now claims, however, that the Court did not understand that the subpoenas in question had been withdrawn before MRA filed its motion, and that if the Court had realized this, it would not have issued the Order.

Contrary to Ovion's claim, the Court was fully aware of Ovion's argument and the factual basis for it at the time it issued the Order. Ovion argued in its written opposition that MRA's request for sanctions was inappropriate because Ovion had withdrawn the subpoenas at issue <u>before</u> MRA filed its motion.[2] If the Court did not grasp this by reading it, Ovion repeated

---

[2] <u>See</u> Defendants' Preliminary Opposition and Memorandum In Opposition To MRA's Motion To Quash And For Sanctions at 8 ("Ovion withdrew all the subpoenas for which MRA raised an objection about timing of service . . . . Any legitimate objection about service of the subpoenas is now moot. All this transpired before MRA filed its motion.").

3

the argument again at the hearing.  Notably, MRA never contested the factual premise of this argument, but rather argued that Ovion's withdrawal of the subpoenas had been "too little too late."  The bottom line is that the Court understood Ovion's argument, it just did not agree with it.

On January 26, 2006, the Court ordered Ovion to "pay Musket's costs, including reasonable attorneys' fees, for bringing the motion caused by the acknowledged violation [of Rule 45(b)(1)]."  As grounds, the Court found that Ovion's action in attaching the Extortion Memo to its subpoenas was "highly inadvisable" and had "unnecessarily inflamed the relationship between the parties."  The Court ordered that the parties refrain from attaching any documents to subpoenas issued to non-parties going forward.

Contrary to Ovion's claim, the Court has never indicated an intention to revoke the Order.  It certainly did not do so at the March 8, 2006 hearing on Ovion's motion for summary judgment.  Following argument on its summary judgment motion, Ovion raised three issues, each of which the Court dealt with separately:

- Ovion argued for reconsideration of the Order.  The Court instructed Ovion that it could not make this request informally, but would have to submit any request for reconsideration in writing and allow MRA to respond.

- Ovion asked the Court to endorse a "eyes only" protective order for (i) non-parties producing documents and (ii) Ovion documents given to it under conditions of confidentiality by non-parties.  Again, the Court instructed Ovion to submit its proposal in writing to MRA.

- Ovion asked that MRA disclose prior agreements referenced in David Musket's affidavit, submitted in opposition to Ovion's motion for summary judgment.  The Court agreed that it was reasonable for MRA to produce any documents referred to in its affidavits.  The Court instructed Ovion to draft an order and provide it to MRA for review.

The Court did not indicate at any intent to vacate the sanctions award at any time during the hearing.

4

Ovion's conduct following the hearing reflects this understanding. Two days after the hearing, Ovion sent the following e-mail:



```
From:          lhansen@mhmlaw.com
Sent:          Friday, March 10, 2006 6:09 PM
To:            art.beeman@dlapiper.com; Ames, Brooks A.
Subject:       Ovion/Musket Research

Attachments:   proposed order 03 10 06.pdf

                    Art & Brooks:

To follow up on our discussions with Judge Lasker, I have attached a
proposed order for your review.

Also, to resolve the protective order issue, I propose that the parties
stipulate (1) to entry of the two tier protective order proposed by
defendants and (2) that, after the first phase of a deposition of
plaintiff or the resolution of any dispute regarding the sufficiency of
plaintiff's deposition testimony, whichever is later (this language from
order entered on 02/07/06), any information produced by defendants that
defendants provided to potential corporate partners shall be treated as
confidential rather than outside counsel eyes only.  Non-parties could
designate information as OCEO and defendants could designate information
that it received from non-parties as OCEO.

Leland

Leland Hansen
lhansen@mhmlaw.com
```

The attached order required MRA to produce additional agreements and related documents. Significantly, Ovion did <u>not</u> claim, as it does now, that the Court had indicated it would vacate the sanctions order. Nor did Ovion submit a proposed order to that effect. In fact, Ovion made no mention of the attorneys' fee issue at all. This does not square with Ovion's current claim that the Court had told the parties it was going to vacate the order.

On March 21, 2006, after the parties could not agree on the form of the discovery order, Ovion wrote a seven-page letter to the Court, which, while comprehensively addressing the discovery order dispute and requesting that the Court enter a protective order of Ovion's

5

choosing, made no mention of the sanctions order. Again, this simply does not square with Ovion's current claims.

### B.   MRA Never Agreed to Waive the Sanctions Award.

Contrary to Ovion's claim, MRA has remained steadfast in its insistence that Ovion pay the fees contemplated by the Order. Following the Court's decision on summary judgment, Ovion's counsel, Leland Hansen, contacted MRA's counsel, Art Beeman, to discuss settling the case. In May of 2006, in a series of phone conversations, they discussed a settlement in which both sides would agree to waive the claims they had asserted against each other in the lawsuit. But a number of stumbling blocks remained. Beeman made it clear to Hansen that MRA expected to be paid the sanctions the Court had ordered in its January 26, 2006 order. And Beeman told Hansen that MRA, David Musket, and Sue Ann Latterman (the "MRA Parties"), did not wish to waive any claims arising from Ovion's defamatory statements concerning the MRA Parties outside of the lawsuit.

On May 31, 2006, Hansen e-mailed a letter to Beeman setting forth the terms of a proposed settlement in the following bullet points:

- Entry of a consent judgment dismissing all claims and counterclaims with prejudice.

- Each side to release all claims, known and unknown, against the other side and its representatives.

- All parties to pay their own costs and fees. Stipulation vacating the Court's order of January 26, 2006 as to any sanctions.

- Appropriate protections for information designated as Confidential and Outside Counsel Eyes Only and information filed under seal.

With respect to the third bullet point, the MRA Parties understood this term to contemplate that MRA would agree to vacate the Court's order as to sanctions <u>after</u> those fees had been paid. As

6

the MRA Parties understood it, vacating the order was a way for Ovion (and its counsel) to save face publicly, notwithstanding Ovion's payment of the underlying sanction award.

On June 1, Beeman's partner, Pam Fulmer, e-mailed Hansen that the MRA Parties agreed "in principle to the terms that you propose in your letter." However, Fulmer instructed Hansen to "prepare a draft settlement agreement memorializing these terms for our review and approval, and email to me as a Word document." Under Massachusetts law, when parties have agreed to execute a final written agreement, there is a "strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled." Rosenfeld v. United States Trust Co., 290 Mass. 210, 216 (1935). Here, Fulmer's e-mail made it clear that a binding agreement would not be formed unless and until the parties had reached agreement with respect to the terms of a final settlement agreement, and she requested the document in Word format so that she could make appropriate revisions.

This is not a case in which a final settlement agreement was intended to "to serve as a polished memorandum of an already binding contract." Goren v. Royal Invs. Inc., 25 Mass. App. Ct. 137, 140 (1987). Ovion knew, or should have known when it received Fulmer's e-mail, that several key terms remained to be negotiated, including:

- The amount of fees that Ovion would have to pay MRA in order for the MRA Parties to agree to vacate the January 26, 2006 order.

- The extent to which the parties would agree to release claims not arising out of the litigation.

- The manner in which confidential information would be protected.

The parties clearly had not entered into a binding agreement—had not achieved a meeting of the minds—on these terms or any others. They had merely agreed to agree on the terms of a settlement subject to further negotiations of the details. Such agreements are not enforceable under Massachusetts law. "We adhere to the principle that '[a]n agreement to reach an

agreement is a contradiction in terms and imposes no obligations on the parties thereto,' in the circumstances that justify and give rise to it: where parties have merely reached the stage of imperfect negotiation prior to formalizing a contract, and have not yet reduced their agreement to terms." Lafayette Place Associates v. Boston Redevelopment Authority, 427 Mass. 509, 517 (1998) (quoting Rosenfeld, 290 Mass. at 217).

On June 5, 2006, Ovion forwarded a draft settlement agreement and a stipulation and order of dismissal to the MRA Parties. Shortly afterwards, Beeman and Hansen resumed discussions concerning the terms of a proposed settlement. Again, the same stumbling blocks surfaced as had surfaced in their previous discussions (i.e., the payment of sanctions owed to MRA under the Court January 26, 2006 order, the scope of the proposed release required of the MRA Parties). In addition, the parties disagreed over the appropriate manner in which information that had been designated Confidential or Attorney's Eyes Only should be protected. Ovion demanded that all designated information would have to be destroyed. MRA agreed to allow destruction of only the documents labeled Attorney's Eyes Only as they had not seen them anyway. MRA protested that any documents it had sent to clients, virtually all of which had been labeled "Confidential", as well as any documents supporting such written or verbal disclosures to potential Ovion investors must be retained under the securities laws regulating it as a broker/dealer. A copy of an e-mail exchange between Beeman and Hansen that refers to these disagreements is enclosed as Exhibit C.

Instead of negotiating these legitimate disagreements over the terms of the proposed settlement, Ovion chose to claim that it had already obtained a binding agreement and informed the MRA Parties that it would seek relief from the Court. In fact, this was simply bluster on the part of Ovion. It had no intent of attempting to enforce the alleged settlement agreement with the MRA Parties. This failure to seek relief is compelling evidence that Ovion understood that the

8

BOST1\494723.1

MRA Parties had never agreed to any settlement agreement and that any attempt to try to enforce a settlement would be fruitless.

## Conclusion

The Court should deny Ovion's motion.  The Court, with the benefit of comprehensive briefing and oral argument from both sides, properly ruled on MRA's motion and awarded sanctions on January 26, 2006.  The Court has never indicated any intent to vacate this award, and MRA has never agreed to waive it.  Therefore, the only remaining step is for the Court to determine the appropriate amount of the award.  MRA has previously submitted an affidavit of counsel setting out its relevant fees and costs, a copy of which is attached as <u>Exhibit B</u>.  But MRA is prepared to provide any additional documentation the Court deems is necessary to determine the award.

Respectfully submitted,

MUSKET RESEARCH ASSOCIATES, INC.
DAVID B. MUSKET and
SUE ANN LATTERMAN

By their attorneys,

/s/ Brooks A. Ames
Brooks A. Ames (BBO #641192)
DLA PIPER US LLP
33 Arch Street – 26th Floor
Boston, MA  02110-1447
(617) 406-6045 (*telephone*)
(617) 406-6145 (*fax*)

              Arthur S. Beeman (admitted *pro hac vice*)
              Pamela K. Fulmer (admitted *pro hac vice*)
              DLA PIPER US LLP
              153 Townsend Street, Suite 800
              San Francisco, CA 94107
              (415) 836-2541 (*telephone*)
              (414) 836-2501 (*fax*)

Dated: November 8, 2007

BOST1\494723.1

# EXHIBIT A

**ENDORSEMENT**

MUSKET RESEARCH ASSOCIATES, INC. v. OVION, INC., WILLIAM S. TREMULIS, and JEFFREY P. CALLISTER
05-CV-10416-MEL

LASKER, D.J.

Plaintiff Musket Research Associates, Inc. ("Musket") moves to quash the non-party subpoenas issued by Ovion, Inc. ("Ovion"). Musket contends that the subpoenas were issued in violation of Fed. R. Civ. P. 45(b)(1) and seeks sanctions against Ovion's counsel for this impropriety.

It is not disputed that Ovion violated Rule 45(b)(1) by failing to give Musket prior notice of approximately twenty-five non-party subpoenas. Ovion has admitted to and apologized for this error. I find no evidence that Ovion's violation was ill-intentioned, and Ovion has reasonably cured the damage by withdrawing and properly re-issuing the subpoenas.

Musket also complains that Ovion flouted the spirit of Rule 45(b)(1) by attaching a defamatory memorandum to the subpoenas, essentially accusing Musket of extorting its clients by threatening frivolous lawsuits. I make no determination as to whether such accusations are actionable. Given Ovion's explanation that the memorandum was included in a good faith effort to provide subpoenaed parties with background information about the case, and given that the memorandum was publicly available on the Court docket, I find that the memorandum was not improperly provided to third parties. Nevertheless, Ovion's actions were highly inadvisable in that they unnecessarily inflamed the relationship between the parties. The parties are therefore instructed not to follow this practice during the remainder of the litigation.

Accordingly, Musket's motion to quash is DENIED. However, Ovion is ordered to pay Musket's costs, including reasonable attorneys' fees, for bringing the motion caused by the acknowledged violation.

It is so ordered.

Dated:   January 26, 2006
         Boston, Massachusetts         /s/ Morris E. Lasker
                                           U.S.D.J.

# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| MUSKET RESEARCH ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> OVION, INC., WILLIAM S. TREMULIS, and JEFFREY P. CALLISTER, <br><br> Defendants. <br><br> And related Counterclaims. | No. 05 CV-10416 MEL |

### AFFIDAVIT OF PAMELA K. FULMER IN SUPPORT OF MUSKET RESEARCH ASSOCIATES REQUEST FOR SANCTIONS RELATING TO EMERGENCY MOTION TO QUASH

I, Pamela K. Fulmer, depose and state as follows:

1.  I am a Partner with the law firm of DLA Piper Rudnick Gray Cary, LLP, ("DLA Piper") counsel of record for Plaintiff and Counter-defendant Musket Research Associates Inc. ("MRA") and Counter-defendants David Musket and Sue Ann Latterman in this action. I have personal knowledge of the matters stated herein, and if called as a witness, could and would testify competently thereto.

2.  On January 26, 2006 this Court entered an Order on MRA's Emergency Motion to Quash Subpoenas. The Court's order recognized that Defendant Ovion Inc. ("Ovion"), on its own admission, had violated Rule 45(b)(1) by not giving MRA and its counsel prior notice of certain third party subpoenas, prior to service of the subpoenas. The Court further ordered Ovion

to pay MRA's "costs including reasonable attorneys' fees, for bringing the motion caused by the acknowledged violation."

3.  Ovion's failure to comply with Rule 45(b)(1) caused MRA to incur significant attorneys' fees and costs relating to the improper service of the subpoenas. First, despite the fact that MRA pointed out Ovion's clear violation of the Rule during the first week of January, 2006, Ovion initially refused to acknowledge that any violation had occurred. In addition, Ovion refused to withdraw the subpoenas as specifically requested by counsel for MRA, necessitating MRA to file the Emergency Motion to Quash. As a result, this forced MRA to engage in expensive legal and factual research regarding the issue, and to confer with Ovion's counsel in lengthy correspondence, as well as telephonically. Second, many of the venture funds that received subpoenas were important business contacts of MRA. Thus MRA's principals were justifiably concerned about the possible negative effect of the subpoenas (and the Defamatory Memorandum) on these key relationships. This concern translated into multiple calls to counsel, which were very time consuming. Third, the sheer volume of the subpoenas meant that a large amount of attorney time was required just figuring out the scope of the service, and what third parties had been served at any given time. Fourth, the serious potential impact to the reputation of the client and the high degree of concern generated by Ovion's actions, required extensive partner involvement and advice on the issues. Finally, because the subpoenas were served nationwide, a great deal of effort was expended exploring the potential for relief in multiple jurisdictions.

4.  Based on the Court's January 26, 2006 Order, I reviewed our law firm's invoices to MRA, in order to determine the total amount of attorneys' fees and costs incurred by MRA in connection with bringing the motion to quash. Based on my review, MRA has incurred at least a total of $62,398.00 in fees, and $1,845.00 in costs relating to the motion, for a total of $64,243.00. These fees and costs are broken down as follows:

| **Attorney or Paralegal** | **Time Spent** | **Hourly Rate** | **Total** |
| --- | --- | --- | --- |

| | | | |
|---|---|---|---|
| Arthur Beeman | 15.7 | $616.27 | $9,675 |
| Pamela Fulmer | 42.8 | 485.07 | 20,761 |
| Greg Jung | 32.9 | 440.00 | 14,476 |
| Brooks Ames | 48.2 | 326.99 | 15,761 |
| Nili Yavin | 8.5 | 168.00 | 1,428 |
| Jessica Manchester | .9 | 330.00 | 297 |
| TOTAL FEES | | | $62,398.00 |

MRA also incurred Westlaw charges of $1.845.00 relating to the motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this affidavit was executed on February 21, 2006 in San Francisco, California.

/s/
Pamela K. Fulmer

I hereby attest that I have on file all holograph signatures for any signature indicated by a "conformed" signature /s/ within this e-filed document.

/s/
Brooks A. Ames

# EXHIBIT C

**From:** lhansen@mhmlaw.com [mailto:lhansen@mhmlaw.com]
**Sent:** Friday, August 25, 2006 8:46 AM
**To:** Beeman, Arthur
**Cc:** Fulmer, Pam; Ames, Brooks A.
**Subject:** RE: Your Letter of May 31, 2006

Art:

It appears that we will have to seek relief from Judge Lasker.

Leland

---

**From:** Arthur.Beeman@dlapiper.com [mailto:Arthur.Beeman@dlapiper.com]
**Sent:** Monday, August 21, 2006 1:34 PM
**To:** Leland Hansen
**Cc:** Pam.Fulmer@dlapiper.com; brooks.ames@dlapiper.com
**Subject:** RE: Your Letter of May 31, 2006

Leland:

This is to respond to your email below of August 16, 2006.

It's fair to say that both parties in this matter will need to concede on certain issues if we are to reach a settlement in the near term. It is entirely disingenuous for you to contend that we have already reached agreement on the terms and conditions of an enforceable settlement. As you know, during discussions between counsel, we had apparently reached an agreement in principle on the outline of a settlement. However, since that time, we have been unable to agree upon the specific terms and conditions for a settlement. Your threat to go to court to enforce a settlement that never was is disruptive and puts at risk the prospects for resolution at this time. Though we seem to be going around in circles of late, we will make one final attempt to clarify the outstanding issues to facilitate a settlement at this time:

1. Mutual ageement to relinquish claims for known and unknown acts that have arisen out of and are subject to this litigation from July 21, 2004 up to the date of signing a final settlement agreement.

2. Destruction of all documents. Since MRA's principals were prevented from reviewing virtually all of the relevant discovery documents in this case due the "attorneys eyes only" stipulation, they will agree to have us destroy all the documents that bear such designation. As a registered broker/dealer MRA is obligated to maintain records of all solicitation activities including copies of any materials involved in such solicitation. As you well know, many of the documents in this case relate to MRA's work product and should be available to MRA as what will turn out to be their sole benefit for their efforts on behalf of Ovion.

3. Once again, we want to clearly state to you that we are confident your contentions that the court has vacated its award of attorneys' fees to my client is unsupported by the record in this case. Both Brooks and I heard nothing that remotely suggested this outcome during or after our hearing. We would be quite surprised if Judge Lasker reversed his previous ruling given the way the case developed. In an effort to reach some compromise, our clients had voluntarily discounted the amount we billed them for the handling of the inappropriate and defamatory service of the subpoenas to $45,000. If you go back to the court for clarification, we will be looking for the full amount. This is simply the payment of attorneys fees for an overly aggressive legal process that was clearly condemned and sanctioned by the court. MRA will agree to keep the payment of these fees confidential so your client will not have to be concerned about any MRA claim to have "won" a settlement.

4. Finally, your client's counterclaims are without merit and we would vigorously defend your assertion of them in the event we don't settle.

Notwithstanding the above, and our conviction that we have a solid appeal issue, we continue to agree in principle to settle on the terms outlined above subject to final documentation.

Please get back to me by the end of this week.

Art

---

**From:** lhansen@mhmlaw.com [mailto:lhansen@mhmlaw.com]
**Sent:** Wednesday, August 16, 2006 5:16 PM
**To:** Beeman, Arthur
**Cc:** Fulmer, Pam; Ames, Brooks A.
**Subject:** RE: Your Letter of May 31, 2006

Art:

I have attached (1) a revised Settlement and Release Agreement, (2) a redline against the prior version, (3) a Stipulation and Dismissal (unchanged), and (4) exhibit B (unchanged). I made one change to the Settlement and Release Agreement in view of the time that has past.

Our patience is exhausted. Your clients previously agreed to these terms. You have never proposed any revisions to the language memorializing those terms.

Please return an executed copy of the Settlement and Release Agreement, signed by each of your clients, so that I receive it no later than noon Chicago time on Monday, August 21. Otherwise, you will force us to seek relief from Judge Lasker.

Leland